NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
AMANDA ELBOGEN (Cal. Bar No. Pending)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5748
     Facsimile: (213) 894-0141
     E-mail:    amanda.elbogen@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-387-FMO |
|---|---|
| Plaintiff, | UNOPPOSED *EX PARTE* APPLICATION TO CONTINUE TRIAL AND FOR FINDINGS OF EXCLUDABLE TIME UNDER THE SPEEDY TRIAL ACT; DECLARATION OF AMANDA ELBOGEN; PROPOSED ORDER |
| v. | |
| STEVEN DUARTE, | |
| Defendant. | **CURRENT PRETRIAL CONFERENCE DATE:** 12/18/2020<br>**PROPOSED PRETRIAL CONFERENCE DATE:** 05/20/2021<br><br>**CURRENT TRIAL DATE:** 01/05/2021<br>**PROPOSED TRIAL DATE:** 06/01/2021 |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Amanda Elbogen, hereby applies ex parte to request that the Court continue the trial date and make findings of excludable time under the Speedy Trial Act.

//

//

This application is based upon the attached memorandum of points and authorities, the attached declaration, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 2, 2020　　　　　　Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

　/s/
AMANDA ELBOGEN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

By this ex parte application, the government respectfully requests that the Court continue the trial date in this matter from January 5, 2021 to June 1, 2021, and the pre-trial conference from December 18, 2020 to March 20, 2021, and make certain findings regarding excludable time.

On November 23, 2020, November 24, 2020, and December 1, 2020, government counsel communicated with Deputy Federal Public Defender Oliver Cleary, counsel for defendant STEVEN DUARTE ("defendant") concerning this application. During those discussions, Mr. Cleary informed the government that, because his client is being detained at Metropolitan Detention Center Los Angeles ("MDC"), he has not been able to speak with his client to discuss a trial continuance. Mr. Cleary advised the government that though he had not been able to discuss a continuance with his client, he does not oppose this ex parte application.

**II. PROCEDURAL HISTORY**

The Indictment in this case charging defendant with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1), was filed on September 1, 2020. (Dkt. No. 1.) Defendant first appeared before a judicial officer of the court in which the charges in this case were pending on October 13, 2020. (Dkt. No. 9.) The Speedy Trial Act, 18 U.S.C. § 3161, originally required that the trial commence on or before December 22, 2020. On October 13, 2020, the Court set a trial date of January 5, 2021. Defendant currently is detained at MDC pending trial.

In this ex parte application, the government respectfully requests that the Court continue the trial date to June 1, 2021, and the pretrial conference date to May 20, 2021, and make certain findings regarding excludable time. This is the first request for a continuance.

**III. COVID-19**

The country is in the midst of a global pandemic -- one that has claimed over 7,000 lives in Los Angeles County, over 18,000 lives in California, and over 265,000 lives in the United States.[1] These numbers are currently surging. On November 24, 2020, the Los Angeles County Department of Public Health reported that the county had experience the highest number of deaths in one day since September 9, 2020.[2] Even where death does not result, COVID-19 can, and does, lead to severe illness. Indeed, COVID-19 has resulted in thousands of hospitalizations in Los Angeles County, including ICU hospitalizations.[3] COVID-19 has also wreaked havoc on the economy

---

[1] See "LA County Daily COVID-19 Data," Los Angeles Cnty. Dep't of Public Health (updated daily), available at http://www.ph.lacounty.gov/media/Coronavirus/data/index.htm; "COVID-19 Updates," Cal Dep't of Public Health (updated daily), available at https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx#COVID-19 by the Numbers; "Coronavirus Disease 2019 (COVID-19)," Centers for Disease Control & Prevention (updated daily), available at https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

[2] See L.A. Cnty. Dep't of Public Health, "L.A. County Experiences Highest New COVID-19 Deaths Reported in Months Following Surging COVID-19 Cases and Hospitalizations - Alarming Increases in Cases and Hospitalizations Must Slow to Avoid Overwhelming Healthcare System," (Nov. 24, 2020), available at http://publichealth.lacounty.gov/phcommon/public/media/mediapubhpdetail.cfm?prid=2821 (indicating that there were 1,575 people with COVID-19 hospitalized, with 26% of those people in the ICU, while just two weeks earlier there were only 888 people with COVID-19 hospitalized).

[3] Id. (indicating that there were 1,575 people hospitalized in L.A. County with COVID-19, with 26% of those people in the ICU, while

1  and schools as continued outbreaks thwart efforts to reopen.[4]
2  Following the recent surge, on November 28, 2020, Los Angeles County
3  issued a new Safer at Home Order, "to ensure that County of Los
4  Angeles (County) residents remain in their residences as much as
5  practicable, to limit close contact with others outside their
6  household in both indoor and outdoor spaces and to further reduce the
7  risk of community transmission of COVID-19 resulting from the
8  unprecedented surge of new daily cases."[5] Los Emergency
9  proclamations, restrictions, and guidance changes daily.

10     In recognition of this public health crisis, and following the
11 President's declaration of a national emergency and the California
12 Governor's declaration of a State of Emergency in response to COVID-
13 19, since March 13, 2020, the Court has issued general orders that
14 have suspended jury selection and jury trials as a result of the
15 COVID-19 pandemic. Specifically, on March 13, 2020, the Central
16 District of California entered a General Order suspending jury

---

just two weeks earlier there were only 888 hospitalized with COVID-19); see also Luke Money, "Hospitals Could Soon Be Overwhelmed by COVID-19 Surge, L.A. County Officials Say," L.A. Times (Nov. 18, 2020), available at https://www.latimes.com/california/story/2020-11-18/la-county-coronavirus-covid-19-surge-hospitals-new-restrictions.

[4] See Sandhya Kambhampati, et al., "How a Rush to Reopen Drove Los Angeles County Into a Health Crisis," L.A. Times (Aug. 13, 2020), available at https://www.latimes.com/projects/how-rushed-la-reopening-sparked-covid-19-cases/.

[5] L.A. Cnty. Dep't of Public Health, "Temporary Targeted Safer At Home Health Officer Order for Control of COVID-19: Tier 1 Substantial Surge Response" (effective through December 20, 2020), available at http://publichealth.lacounty.gov/media/coronavirus/docs/HOO/HOO_SaferatHome_SurgeResponse.pdf (explaining that "[o]ver the last five (5) calendar days, the County of Los Angeles is averaging over 4,500 newly diagnosed COVID-19 cases per day" and "[b]etween November 13-27, 2020, hospitalizations of confirmed COVID-19 patients have increased by 101% to 1,893").

selection and jury trials scheduled to begin before April 13, 2020. C.D. Cal. General Order No. 20-02, In Re: Coronavirus Public Emergency, Order Concerning Jury Trials and Other Proceedings (March 13, 2020). The same day, the Court entered another General Order imposing health- and travel-related limitations on access to Court facilities. C.D. Cal. General Order No. 20-03, In Re: Coronavirus Public Emergency, Order Concerning Access to Court Facilities (March 13, 2020). On March 19, 2020, by Order of the Chief Judge, the Court instituted its Continuity of Operations Plan ("COOP"), closing all C.D. Cal. courthouses to the public (except for hearings on criminal duty matters) and taking other emergency actions though May 1, 2020. C.D. Cal. Order of the Chief Judge No. 20-042 (March 19, 2020). On March 29, 2020, by Order of the Chief Judge, the Court found "that emergency conditions due to the COVID-19 virus outbreak will materially affect the functioning of the courts within the Central District of California." C.D. Cal. Order of the Chief Judge No. 20-043 (March 29, 2020).

On April 13, 2020, the Court extended the COOP through June 1, 2020. C.D. Cal. General Order 20-05 (April 13, 2020). On May 28, 2020, the Court extended the activation of the COOP Plan through and including June 22, 2020. C.D. Cal. General Order 20-08, In Re: Coronavirus Public Emergency, Order Concerning Phased Reopening of the Court, at 2 (May 28, 2020). This extension order also set forth a plan for reopening, which is to occur in three phases. The last phase (Phase 3) contemplates the resumption of jury trials, but a date for commencement of this phase was not given.

The Court has since twice extended the findings and authorizations in the Order of the Chief Judge 20-043 by 90 days.

C.D. Cal. Order of the Chief Judge No. 20-080, In Re: Coronavirus Public Emergency, Use of Video and Telephonic Conference Technology in Certain Criminal Proceedings, at 1 (June 26, 2020); C.D. Cal. Order of the Chief Judge No. 20-097, In Re: Coronavirus Public Emergency, Use of Video and Telephonic Conference Technology in Certain Criminal Proceedings, at 1 (September 23, 2020).

On August 6, 2020, the Court entered General Order 20-09, which supersedes General Order 20-08. C.D. Cal. General Order No. 20-09, In Re: Coronavirus Public Emergency, Order Concerning Phased Reopening of the Court (Aug. 6, 2020). The Order recognizes (1) that "the number of people infected by [COVID-19], continues to grow, with thousands of confirmed cases and deaths in the Central District of California; and (2) the Centers for Disease Control and Prevention and other public health authorities have advised the taking of precautions to reduce the possibility of exposure to the virus and slow the spread of the disease, including implementing physical distancing and reducing the size of in-person gatherings." Id. at 1. In addition, with certain exceptions, the Courthouses will be closed to the public, and until further notice, no jury trials will be conducted in criminal cases. Id. at 2-3.

Specifically, in connection with the continued suspension of criminal jury trials, the Court made the following findings:

> The Center for Disease Control and Prevention has warned that "in the coming months, most of the U.S. population will be exposed to this virus." The COVID-19 rates of infection, hospitalizations and deaths have significantly increased in the Central District of California in the last thirty days such that holding jury trials substantially increases the chances of transmitting the Coronavirus. The Court concludes that conducting jury trials would also likely place prospective jurors,

7

> defendant, attorneys, and court personnel at unnecessary risk. Therefore, the Court finds that suspending criminal jury trials in the Central District of California because of the increase in reported COVID-19 infections, hospitalizations, and deaths serves the ends of justice and outweigh the interests of the public and the defendants in a speedy trial.

Id.; see also United States v. Juan Carlos Recinos, No. 19-CR-00724-CJC, Dkt. 58 (C.D. Cal. Aug. 19, 2020) (denying request to issue juror summons in this District because "the suspension of criminal jury trials served the ends of justice and outweighed the interests of the public and the defendants in a speedy trial").

**IV. DISCUSSION**

Here, the time between December 2, 2020 and June 1, 2021, inclusive, should be excluded under the Speedy Trial Act.

The Speedy Trial Act requires a trial to begin within 70 days of indictment or initial appearance, whichever occurs later, 18 U.S.C. § 3161(c)(1), and entitles the defendant to dismissal of the charges (with or without prejudice) if that deadline is not met, § 3162(a)(2). Certain periods of time, however, are excluded from this 70-day clock. Id. § 3161(h). Some periods of time are automatically excluded, including periods of delay resulting from the absence or unavailability of the defendant or an essential witness, § 3161(h)(3)(A), and other periods of time are excluded only when a judge continues a trial and finds, on the record, that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." Id. § 3161(h)(7)(A).

8

**A. Time Should Be Excluded from the Speedy Trial Act Under the Ends-of-Justice Provision**

The time between December 2, 2020 and June 1, 2021 should be excluded from the Speedy Trial Act under the ends-of-justice provision, 18 U.S.C. § 3161(h)(7)(A). As the above facts reflect, the ends of justice amply justify excludable time here. A pandemic, like a natural disaster or other emergencies, grants this Court the discretion to order an ends-of-justice continuance. See Furlow v. United States, 644 F.2d 764, 767-69 (9th Cir. 1981) (affirming Speedy Trial exclusion after eruption of Mt. St. Helens); accord United States v. Stallings, 701 F. App'x 161, 170-71 (3d Cir. 2017) (prosecutor had "family emergency"); United States v. Hale, 685 F.3d 522, 533-36 (5th Cir. 2012) (case agent had "catastrophic family medical emergency"); United States v. Scott, 245 F. App'x 391, 394 (5th Cir. 2007) (Hurricane Katrina); United States v. Richman, 600 F.2d 286, 292, 293-94 (1st Cir. 1979) (a "paralyzing blizzard"; informant also hospitalized).

Here, failure to continue the trial in this case will likely make its completion impossible due to public-health risks and concerns. As the President of the United States, the Centers for Disease Control, the California Governor, the Los Angeles Mayor, and this Court's own General Orders have recognized, we are in the midst of a grave public-health emergency requiring people to take extreme measures to limit contact with one another. In addition to concerns for prospective jurors' health and the ability of the Court to obtain--and maintain--an adequate number of jurors, an ends-of-justice delay is particularly apt because:

9

- The closure of Los Angeles's public schools and other schools within the Central District of California will require a significant number of jurors to be unavailable to handle child-care responsibilities.

- It will be almost impossible for jurors--particularly jurors over 65--to maintain adequate social distance during jury selection, trial, and deliberations. Indeed, to leave their homes, such jurors would violate the recommendations of the Centers for Disease Control and multiple other public-health authorities.

Due to the restrictions imposed by current public-health concerns, it is also unreasonable to expect adequate preparation for pre-trial proceedings or for the trial itself within Speedy Trial Act time limits. Under these unusual and emergent circumstances, denial of a continuance is likely to deny all counsel reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

**B. Time Should Be Excluded from the Speedy Trial Act Due to the Unavailability of the Defendant**

The time between December 2, 2020, and the loosening of restrictions on inmate movement at MDC should also be excluded from the Speedy Trial Act due to the unavailability of the defendant. § 3161(h)(3)(A). Defendant's facility, MDC, has executed numerous policies to aggressively protect inmates' health.[6] Unfortunately, on

---

[6] See, e.g., Federal Bureau of Prisons, Overview of COVID-19 Pandemic Response Plan, August 31, 2020, available at https://www.bop.gov/foia/docs//Overview_of_COVID_Pandemic_Response_Plan_08312020.pdf.

November 16, 2020, MDC's Warden reported that, despite these efforts, 99 inmates had tested positive for COVID-19. (Ex. A ("MDC Nov. 16 Letter").) Currently, MDC has 90 active cases, no inmate deaths, and 191 inmates recovered.[7] MDC reports that three housing units are on isolation status and five are on quarantine status. (Ex. B ("MDC Nov. 23 Letter"), at 1.)

In response to the outbreak, MDC announced that it would be "limiting inmate movement for all inmates in the institution." (MDC Nov. 16 Letter, at 2.) As a result, MDC temporarily suspended all video teleconference ("VTC") hearings, VTC visits, legal and personal telephone calls, and in-person legal and social visitation. (Id.) As the Warden explained, "[a]lthough cognizant of the issues that these suspensions may present, we are implementing these procedures to avoid even the potential of exposure and spread of the virus to other inmates, staff and visitors. Any lesser measures creates the opportunity of the virus to spread even further within the institution and we simply cannot take that risk." (Id. at 2.)

On November 23, 2020, the Warden announced that they would be "extending our previously announced limits on internal movement with the institution through at least December 15, 2020. As a result, all VTC hearings, VTC visits, legal and social visitation, use of TRULINCS and all telephone calls are suspended through at least that date." (MDC Nov. 23 Letter at 1.)

Because of these limitations, defendant is not available for trial on January 5, 2021. Thus, the period from December 2, 2020

---

[7] BOP, COVID-19 Coronavirus (updated daily at 12pm Pacific), available at https://www.bop.gov/coronavirus/index.jsp (last visited Nov. 24, 2020).

11

until the defendant is again available for trial should also be excluded from the Speedy Trial Act under 18 U.S.C. § 3161(h)(3)(A).

**V.   CONCLUSION**

Based on the foregoing, the government respectfully requests that the Court continue the trial from January 5, 2021 to January 26, 2021, the pretrial conference to May 20, 2021, and enter a case-specific order finding excludable time from December 2, 2020 to June 1, 2021, inclusive, under 18 U.S.C. §§ 3161(h)(7)(A), (h)(7)(B)(i), and (h)(7)(B)(iv).  The Court should also enter a case-specific order finding excludable time from December 2, 2020 until the defendant is again available for trial under 18 U.S.C. § 3161(h)(3)(A).  However, nothing in the Court's order should preclude a finding that other provisions of the Speedy Trial Act dictate that additional time periods are excluded from the period within which trial must commence.

Dated: December 2, 2020                    Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

     /s/
AMANDA ELBOGEN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA