Oliver P. Cleary [SB#168440]
468 N. Camden Drive, #200
Beverly Hills, CA 90210
T: (424) 324-8874
olivercleary@gmail.com

Attorney for defendant,
Steven Duarte

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: CR 20-cr-00387-FMO |
| Plaintiff, | MOTIONS: |
| vs. | 1) TO SUPPRESS, |
| | 2) TO DISMISS, |
| | 3) IN LIMINE |
| STEVEN DUARTE | |
| Defendant. | |

## MEMORANDUM OF POINTS AND AUTHORITIES

It has been settled law since the 1970's that in order for a police officer to initiate an investigatory stop of a motorist, there must at least exist reasonable suspicion that the motorist is engaging in illegal activity." *Bingham v. City of Manhattan Beach,* 341 F.3d 939, 948 (9th Cir.2003), *abrogated on other grounds by Virginia v. Moore,* 553 U.S. 164, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008), *as recognized in Edgerly v. City of San Francisco,* 599 F.3d 946, 956 n. 14 (9th Cir.2010). In order to form a reasonable suspicion, an officer must have "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal

1
2
activity." *United States v. Lopez-Soto,* 205 F.3d 1101, 1105 (9th Cir.2000) (internal quotation marks omitted).

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
   When a vehicle is stopped, passengers have also been "seized" and may challenge the legality of the seizure.  *See* <u>Brendlin v. California</u>, 551 U.S. 249 (2007).  Additionally, reasonable suspicion to stop a vehicle does not automatically confer reasonable suspicion to search every passenger in that car.  *See* <u>United States v. I.E.V.</u>, 705 F.3d 430 (9th Cir. 2012) (reversing conviction and holding that narcotic dog alert to car generally did not allow *Terry* stop-and-frisk without individualized suspicion.)  Of course, a seizure reasonable at its inception….may become unreasonable as a result of its duration or for other reasons.  *See* <u>United States v. Cha</u>, 597 F.3d 995 (9th Cir. 2010).  For example, unreasonably prolonged detentions invalidate stops that otherwise may have been valid at inception. <u>Illinois v. Caballes</u>, 543 U.S. 405, 407 (2005).  Finally, if there is an objectively reasonable suspicion that a crime has been committed-even a minor traffic violation-then officers may perform a vehicle stop irrespective of their subjective motives in doing so.  <u>Wren v. United States</u>, 517 US 806, 809-810 (1996) **Here,** defendant Steven DUARTE's rights were violated when the vehicle he was in was stopped without reasonable and probable cause.  Therefore, defendant has standing.

21
<u>THE FACTS:</u>

22
23
   Defendant DUARTE neither adopts nor admits the following events taken from the police report written in this case:

24
25
26
27
   On Friday evening, March 20, 2020, at 9:30 pm, Steven DUARTE was riding in his friend's red 2007 Infiniti G7 when officers WUNDERLICH (#946) and VILLICANA (#988) of the Inglewood Police Department's Special

28

Enforcement Team noticed the front windows were tinted limiting their view into the passenger compartment of the vehicle.

The officers were driving a black unmarked patrol vehicle while wearing black polo shirts with a cloth badge embroidered on the left breast and "POLICE" screened on the back in yellow.  Assisting WUNDERLICH and VILLICANA were units 4E6 with officers THOMPSON (#1009) and BOBBS(#997) and 4E5 with officers LEE (#985) and VEGA (#983). In response to seeing the tinted front windows, the officers pulled a u-turn and trailed the red Infiniti until they allegedly observed the Infinity fail to stop at the corner of 109th and Doty Ave.  For this and the alleged equipment violation, WUNDERLICH turned on the patrol vehicle's forward facing red lights and siren and illuminated the front floodlights and spot light.

Then, VILLICANA observes once their lights are illuminated the right rear passenger window roll down and an arm extend out the window to discard a black object.  The assisting units were told to look for a handgun on Doty Ave just north of 109th.  In response to the lights and sirens, the red Infiniti stopped on 108th street just east of Doty Avenue.

Officer WUNDERLICH and VILLICANA recognized DUARTE.  Officer BOBBS located a handgun in the middle of Doty Ave. just north of 108th Street.  A subsequent search revealed a clip with 6 rounds of ammunition inside the passenger compartment located between the front seat and the center console. DUARTE residence was searched and no further contraband was found during the search at 3631 W. 111th Street.

///

///

3

I.
## HAVING WINDOW TINT ON FRONT PASSANGER WINDOW IS NOT A VEHICLE CODE VIOLATION

California Vehicle Code section 26708(c) provided, at the time of the traffic stop, in relevant part:

> [A] clear, colorless, and transparent material may be installed, affixed, or applied to the front side windows, located to the immediate left and right of the front seat if the following conditions are met.including the specified minimum light transmittance of 70 percent….

Accordingly, a front window tinted to that degree would still provide a *clear, unobstructed view* of the driver's compartment of the vehicle and fully comply with Section 26708(d)(2) of the California Vehicle Code. US v. Wallace, 213 F.3 1216 (9th Cir. 2000).

Here, a suspicion based on such a mistaken view of the law cannot be the reasonable suspicion required for the Fourth Amendment, because "the legal justification [for a traffic stop] must be objectively grounded." In other words, if an officer makes a traffic stop based on a mistake of law, the stop violates the Fourth Amendment.

Id. (citations omitted); see also United States v. King, 244 F.3d 736, 741-42 (9th Cir.2001) (a mistaken belief that a driver's conduct violated the law could not support a reasonable suspicion that a crime had been committed, even if the officer otherwise behaved reasonably). US v. Mariscal, 285 F3d, 1127 (9th Cir. 2002)

II.
## OFFICERS FAILED TO OBSERVE A VIOLATION OF CVC 22450(A)

Officers also attempt to justify the stop claiming an alleged violation of vehicle code section 22450(A) which states in pertinent part;

4

the driver of any vehicle approaching a stop sign at the entrance to, or within, an intersection shall stop at a limit line, if marked, otherwise before entering the crosswalk on the near side of the intersection.

**Here,** the vehicle stopped at the limit line as per the vehicle code.  The stop sign was located in advance of and not adjacent to the limit line.  Hence, the stop that occurred at the limit line just past the stop sign was in compliance with the vehicle code. No violation of the vehicle code was observed.  As such, no valid traffic violation was observed by officers WUNDERLICH (#946) and VILLICANA (#988) to justify the stop of the vehicle.

An officer may not detain a motorist without "a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Arvizu, 534 U.S. 266 (2002); United States v. Cortez, 449 U.S. 411, 417-18 (1981).  This "objective basis, or 'reasonable suspicion' must consist of 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" United States v. Garcia-Camacho, 53 F.3d 244, 246 (9th Cir. 1995) (citations omitted); accord United States v. Sigmond-Ballesteros, 285 F.3d 1117, 1121 (9th Cir. 2002) (finding that district court erred in finding that vehicle stop was constitutional).

**Here**, the arresting officer did not have reasonable suspicion to stop the vehicle Mr. DUARTE was riding in. The alleged justification for the stop of the car rests almost entirely on observations such as the windows were too darkly tinted limiting the officer's view into the passenger compartment or failing to stop at the stop sign not the limit line. As such, these fail to justify the warrantless stop in this case.  As such, all items seized due to this stop must be suppressed.

5

III.

## AS A RESULT OF THE UNCONSTITUTIONAL STOP,
## THE COURT SHOULD SUPPRESS ALL EVIDENCE
## DERIVED FROM THE ILLEGAL STOP

All evidence and the fruits of the unconstitutional detention, all resulting evidence must be suppressed.  See Wong Sun v. United States, 371 U.S. 471 (1963); see also United States v. Romero-Bustamente, 337 F.3d 1104 (9th Cir. 2003) (finding Fourth Amendment violation, suppressing alien material witnesses, and requiring dismissal of indictment).

IV.

## EXLUSIONARY RULE DEMANDS GUN BE
## SUPPRESSED AS FRUITS OF THE ILLEGAL DETENTION

"The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion." Wong Sun, 371 U.S. at 485.  It also prohibits introduction of testimony concerning knowledge acquired during an unlawful search or arrest.  See Silverman v. United States, 365 U.S. 505 (1961).  "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all."  Wong Sun, 371 U.S. at 485 (quoting Silverthorne Lumber Co., Inc. v. United States, 251 U.S. 385, 392 (1920)).  Unless evidence is obtained on the basis of information wholly unconnected with the initial unlawful search or arrest, it must be suppressed.  See Murray v. United States, 487 U.S. 533, 540 (1988).

///

///

## V.

MOTION TO DISMISS THE INDICTMENT FOR A
VIOLATION OF THE SPEEDY TRIAL ACT

Congress enacted the Speedy Trial Act, 18 U.S.C. § 3161 et seq., as part of its desire to provide greater protection against improper delay in criminal trials than afforded under the Sixth Amendment.  See United States v. Mehrmanesh, 652 F.2d 766, 769 (9th Cir. 1981); accord United States v. Nance, 666 F.2d 353, 360 (9th Cir. 1982).  It therefore provides specific timetables and remedies to ensure that criminal cases do not languish due to ordinary docket congestion or similar causes.  See Nance, 666 F.2d at 355-56.  The Act also "put teeth into the speedy trial guarantee" by mandating dismissal when its parameters were exceeded. Mehrmanesh, 652 F.2d at 769.   If the time limits in the statute are exceeded, the district court must dismiss upon the defendant's motion.  See § 3162(a)(1) & (2); United States v. Taylor, 487 U.S. 326, 332 (1988).  The trial court's only discretion is whether to dismiss with or without prejudice.  See United States v. Engstrom, 7 F.3d 1423, 1427 (9th Cir. 1993).

Defendant DUARTE is presently charged in an Indictment filed on September 1, 2020 and has been in custody since November 13, 2020.  Mr. DUARTE's Speedy Trial Rights were first violated when the government moved to continue his January 5, 2021 trial date to June 1, 2021.  Mr. DUARTE was not in agreance with the government's motion at that time and maintains a desire to proceed to trial as soon as possible.  Nevertheless, the first order granting the government's ex parte application continuing the trial date occurred on December 4, 2020 and continued the trial to June 1, 2021.  Defendant DUARTE objects to continuing his trial beyond June 1, 2021.  DUARTE moves the court for an order

dismissing the case with prejudice should he not be brought to trial on or before June 1, 2021.

MOTIONS IN LIMINE:

## VI.
## THE COURT SHOULD ORDER IMMEDIATE PRODUCTION OF ALL HENTHORN, BRADY, GIGLIO, AND JENCKS MATERIALS

The Court should remind the government of its continuing obligation to timely produce all *Henthorn, Brady, Giglio*, and *Jencks* materials prior to and even after the applicable deadlines have passed. The government's obligation to provide exculpatory evidence pursuant to *Brady* in a timely manner is not diminished by the fact that such evidence also constitutes evidence that must be produced later pursuant to the Jencks Act, 18 U.S.C. §3500, or by that fact that such evidence need not be produced according to Rule 16. See United States v. Tarantino, 846 F.2d 1384, 1414 n. 11 (D.C. Cir. 1988); see also Advisory Committee Note to Fed. R. Crim. P. 16 (1974) ("The rule is intended to prescribe the minimum amount of discovery to which the parties are entitled.") Should relevant and discoverable information come to light, the defense requests its timely disclosure.

## VII.
## Mr. DUARTE'S ALLEGED PRIOR BAD ACTS MAY NOT BE USED AGAINST HIM

A.  The Government Has Not Complied with the Notice Requirements of Fed. R. Evid. 404(b).

Fed. R. Evid. 404(b) requires that the Government give notice of the "general nature" of any prior act evidence that it may seek to introduce.  As of this writing, the Government has said only that it will seek to admit whatever prior convictions it can.  Because the Government has provided no notice of the "general

nature" of such evidence -- let alone discovery -- any such evidence should be excluded for failure to comply with Rule 404(b).

B. <u>404(b) Evidence Must be Excluded.</u>

In this country it is a settled and fundamental principle that persons charged with crimes must be tried for what they allegedly did, not for who they are.  <u>See</u> <u>United States v. Hodges</u>, 770 F.2d 1475, 1479 (9th Cir. 1985).  The Ninth Circuit Court of Appeals has observed:

Under our system, an individual may be convicted only for the offense of which he is charged and not for other unrelated criminal acts which he may have committed.  Therefore, the guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that defendant engaged in other acts of wrongdoing.  <u>Id.</u>

No matter how vile or despicable a person may appear to be, he or she is entitled to a fair trial.  <u>Id.</u>  Constitutional provisions clearly provide that individuals may only be convicted for the crimes with which they are charged; they may not be subject to criminal conviction merely because they have a detestable or abhorrent background.  <u>Id.</u>  "Our entire system of justice would deteriorate if we did not jealously protect these constitutional safeguards for all citizens." <u>South Dakota v.</u> <u>Moeller</u>, 548 N.W. 2d 465, 468 (S.D. 1996) (referring to prior acts evidence).

Mr. DUARTE moves to exclude evidence of his prior conviction for felon in possession of a firearm under two theories.  First, Mr. DUARTE's prior conviction does not fit within the definition of 404(b) under existing Ninth Circuit law.  <u>See</u> <u>United States v. Bibo-Rodriguez</u>, 922 F.2d 1398, 1400 (9th Cir.); <u>cert. denied</u>, 501 U.S. 1234 (1991) (Evidence of prior criminal conduct may be admitted to prove knowledge if only if all four prongs of four part test are met by the government).  Second, if this court determines that Mr. DUARTE's prior conviction is admissible

pursuant to 404(b), Mr. DUARTE maintains that the "probative value" of the prior conviction "is substantially outweighed by the danger of unfair prejudice" and the admission of such evidence would be a violation of both Mr. DUARTE's Fifth Amendment Due Process right, and his Sixth Amendment right to a fair trial.

C.  Exclusion of Prior Firearm Conviction As Irrelevant And Not Similar.

The government may seek to introduce evidence of Mr. DUARTE's prior firearm conviction under the guise of Rule 404(b), evidence of knowledge.  The government's use of this evidence will be simply a veiled attempt to introduce propensity evidence.  Fed. R. Evid. 404(b) states in relevant part -

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of . . .intent. . . [or] knowledge, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial.Fed. R. Evid. 404(b).

Rule 404(b) strictly forbids use of evidence of prior crimes or bad acts merely to prove bad character.  United States v. Garcia-Orozco, 997 F.2d 1302, 1303-04 (9th Cir. 1993).  The use of evidence pursuant to this rule "must be narrowly circumscribed and limited" and "may not be introduced unless the government establishes its relevance to an actual issue in the case."  Id. at 1304 (citing United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir. 1985)).  The purpose of Rule 404(b) is to "avoid a danger that the jury will punish the defendant for offenses other than those charged, or at least that it will convict when unsure of guilt, because it is convinced that the defendant is a bad man deserving of punishment."  United States v. Hill, 953 F.2d 452, 457 (9th Cir. 1991).

However, evidence of prior criminal conduct may be admitted to prove knowledge under Rule 404(b) only if the government establishes (1) the other act

evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) the other act is similar to the offense charged.  Bibo-Rodriguez, 922 F.2d at 1400.  When the government's theory of admission under Fed. R. Evid. 404(b) is knowledge, "the government must prove a logical connection between knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act."  United States v. Mayans, 17 F.3d 1174, 1181-82 (9th Cir. 1994) (citing United States v. Hernandez-Miranda, 601 F.2d 1104 (9th Cir. 1979)).  Evidence of a prior conviction is not admissible simply because the defendant was convicted of the same offense as the current charge. The prior conviction becomes relevant and admissible only where the same offense was committed in a sufficiently similar way to suggest a "logical connection" between the knowledge gained from the prior act and the charged offense.  Id.  The government must specifically articulate the basis for the admission of the evidence and why it is relevant.

In order for the government to establish a "logical thread" or "common thread", the similarity between the two offenses must be "striking" and "undeniable."  United States v. Rubio-Villareal, 927 F.2d 1495 (9th Cir. 1991) (defendant charged with importing cocaine that was contained in a secret compartment and the Ninth Circuit upheld admission of a prior conviction for importing marijuana that was located in a secret compartment); Bibo-Rodriguez, 922 F.2d 1398 (upholding introduction of evidence where the defendant was charged with importing cocaine in a secret compartment in a vehicle across the border, and had subsequently found to be transporting marijuana across the border in a secret compartment, to prove the defendant's knowledge of the contraband); United States v. Longoria, 624 F.2d 66 (9th Cir. 1980)

The similarities in this case are not "striking" or "undeniable." What is undeniable is only that Mr. DUARTE was previously convicted of one of the charged offenses in this case. However, the prior conviction is not relevant to demonstrate knowledge because the common thread of "possession" is not enough to bring the offense within the exception of Rule 404(b). Therefore, the government should be precluded from introducing the evidence.

D. Exclusion of Mr. DUARTE's Prior Conviction Under 403.

Even when all of the other requirements of "extrinsic acts" evidence are met, the evidence may be accepted only if, on balance, its probative value is not substantially outweighed by the danger of unfair prejudice to the defendant. Fed. R. Evid. 403. Rule 403 provides "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." As to a criminal defendant, Rule 403's term "unfair prejudice" speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on an improper basis rather than on proof specific to the offense charged. Old Chief v. United States, 519 U.S. 172, 173 (1997). Such improper grounds certainly include generalizing from a past bad act that a defendant is by propensity the probable perpetrator of the current crime. Id. In this case, evidence of Mr. DUARTE's prior conviction may lead the jury to a conviction based upon an improper basis, propensity. This result is exactly what Rule 403 forbids and evidence of Mr. DUARTE's prior conviction should be excluded.

VIII.

MR. DUARTE'S ALLEGED PRIOR CONVICTIONS
SHOULD NOT BE USED TO IMPEACH UNDER RULE 609.

According to the rap sheet produced by the Government, Mr. DUARTE suffered at least four prior felony convictions. It is anticipated that if Mr.

DUARTE testifies, the Government will attempt to introduce prior convictions as impeachment material under Rule 609(a)(1) of the Federal Rules of Evidence. However, even under Rule 609(a)(1), such evidence is inadmissible.

Rule 609 provides:

(a) General rule.  For the purpose of attacking the credibility of a witness,

(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and <u>evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs the prejudicial effect to the accused</u>.

Fed. R. Evid. 609(a)(1) (emphasis added).  The plain language of Rule 609(a)(1) and the 1990 Advisory Committee Note clearly indicate that the standard governing the admissibility of a criminal defendant's prior felony conviction is more stringent than the standard governing the admissibility of prior felony convictions of other witnesses.  <u>See</u> 3 Jack B. Weinstein & Margaret A. Berger, <u>Weinstein's Evidence</u> § 609[04], at 609-42 (1996) ("The amended Rule 609(a)(1) was intended to resolve the problems of fairness by treating criminal defendants differently from other witnesses.  The Advisory Committee was aware of the 'unique risk of prejudice' faced by criminal defendants who want to testify on their own behalf: that prior conviction evidence will be 'misused by a jury as propensity evidence.'") (quoting 1990 Advisory Committee Note).  Specifically, in cases where the witness is not a criminal defendant, it is presumed that the prior conviction is admissible and therefore the party seeking exclusion has the burden of showing that the probative value of the prior conviction "is substantially outweighed by the danger of unfair prejudice" under Rule 403.  Such a standard,

however, does <u>not</u> apply to the prior convictions of testifying criminal defendants. Rather, there is a presumption against the admission of a criminal defendant's prior conviction and "[t]he Government bears the burden of showing . . . that the proffered evidence's probative value <u>substantially</u> outweighs its prejudicial effect." <u>United States v. Alexander</u>, 48 F.3d 1477, 1488 (9th Cir.), <u>cert. denied</u> 516 U.S. 878 (1995) (emphasis added).

Whether the Government has successfully rebutted the presumption against admissibility depends on the balancing of five factors outlined by the Ninth Circuit in <u>United States v. Cook</u>, 608 F.2d 1175 (9th Cir. 1979) (en banc), <u>overruled on other grounds in</u> <u>Luce v. United States</u>, 469 U.S. 38 (1984). These factors are: (1) the impeachment value of the prior conviction; (2) the temporal relationship between the conviction and the subsequent history of the defendant; (3) the similarity between the prior offense and the offense charged; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue. <u>Cook</u>, 608 F.2d at 1185 n.8 (citing <u>Gordon v. United States</u>, 383 F.2d 936, 940 (D.C. Cir. 1967), <u>cert. denied</u> 390 U.S. 1029 (1968)). After evaluating these five factors, it is clear that the Government cannot show that the probative value of Mr. DUARTE's prior convictions substantially outweighs its prejudicial effect so as to rebut the presumption against admissibility.

With respect to the first factor (the impeachment value of the prior conviction), Chief Justice Berger explained: "A 'rule of thumb' thus should be that convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not . . . ." <u>Gordon</u>, 383 F.2d at 940.[9] Because Mr. DUARTE's prior felonies are not violent crimes, it would appear that its impeachment value is minimal. None of his prior convictions involve fraud.

The second factor (the remoteness of the prior conviction and the subsequent history of the defendant) also weighs in favor of exclusion.  The third factor (the similarity between the prior conviction and the instant offense) weighs against admission as to the firearm conviction, which is similar on a generic, categorical level.   The fourth factor (the importance of the defendant's testimony) strongly weighs in favor of exclusion.  The firearm case is over five years old, and the notice required under Fed. R. Evid. 609(b) has not been given.  Chief Justice Berger explained the fourth factor as follows:

One important consideration is what the effect will be if the defendant does not testify out of fear of being prejudiced because of impeachment by prior convictions.  Even though a judge might find that the prior convictions and the risk of prejudice to the defendant does not warrant their exclusion, he may nevertheless conclude that it is more important that the jury have the benefit of the defendant's version of the case than to have the defendant remain silent out of fear of impeachment.

Gordon, 383 F.2d at 940-41.  In other words, when the defendant's testimony is critical, he should not be forced to decline testifying because he fears that prior convictions will be admitted.  Thus, the question becomes whether Mr. DUARTE's testimony is critical in this case.  Clearly, it is.  "The need for defendant's version of the events, 'unembarrassed by mention of his previous difficulties with the law,' is particularly great 'where inferences founded upon unexplained acts are likely to be heavily operative.'"  3 Weinstein & Berger, § 609[03], at 609-40.

Finally, with respect to the fifth factor (the centrality of the credibility issue), it is conceded that if Mr. DUARTE testifies, his credibility will be a central issue.  After all, whenever a defendant testifies, his credibility is at issue.  However, the

15

fifth factor is generally concerned with cases where "there is a clear-cut conflict between the testimony of prosecution and defense witnesses so that someone has to be lying." <u>Id.</u>  Put simply, the fifth factor is concerned with those cases where the issue will be "narrowed to the credibility of two persons -- the accused and his accuser," and this is not one of those cases.  <u>Gordon</u>, 383 F.2d at 941.  Here, the main issue will be whether the allegations are accurate.

In sum, when considering the balance of the five factors, it becomes clear that the Government cannot meet its burden of showing that the probative value of Mr. DUARTE's prior convictions substantially outweighs their prejudicial effect. It should also be noted that Mr. DUARTE does not intend to offer any character evidence, and does not intend "to misrepresent his character or to testify falsely as to his prior criminal record."  <u>United States v. Bagley</u>, 772 F.2d 482, 488 (9th Cir. 1985) (holding that district court abused its discretion in admitting prior conviction).  As a result, his prior convictions should be excluded.

IX.

CONCLUSION

For the above stated reasons, the court should grant defendant DUARTE's Motions to Suppress the Evidence and Dismiss the Indictment.  In the even the court declines to grant the defendant's pre-trial motions,  defendant respectful requests the court grant his Motions In Limine to exclude his priors, prior bad acts, and other evidence to insure a fair trial on the issues at bar.

Dated: April 23, 2021                              Respectfully submitted,
                                                    _Oliver P. Cleary_
                                                    Attorney for Defendant,
                                                    Steven Duarte

16

EXHIBIT 1

Oliver P. Cleary [SB#168440]
468 N. Camden Drive, #200
Beverly Hills, CA 90210
T: (424) 324-8874
olivercleary@gmail.com

Attorney for defendant,
Steven Duarte

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.

STEVEN DUARTE

        Defendant.

Case No.: CR 20-00387-FMO

**DEFENDANTSTEVEN DUARTE'S DECLARATION IN SUPPORT OF MOTION [L. Cr. R. 12.1]**

TO:  THE CLERK OF THE ABOVE-ENTITLED COURT,  TRACY WILKISON, ACTING UNITED STATES ATTORNEY, AND, THE ASSIGNED ASSISTANT UNITED STATES ATTORNEY:

     COMES NOW defendant, STEVEN DUARTE, who declares under the laws of the United States of America, the following is true and correct and if called as a witness, defendant could competently testify to the matters stated herein;

1.  On March 20, 2020, at approximately 9:30 pm, Anna Ortiz and I were travelling on South Prairie Ave and took a right turn onto West 109th St, in Inglewood.

2.  We were heading eastbound on 109th Street and took a left-turn heading north on Doty Avenue when an unmarked vehicle behind us turned on lights, sirens, and flood lights.

3.  Officer T. Wunderlich (#946) turned the vehicle around and began trailing Anna Ortiz for an alleged equipment violation, tinted windows in violation of 26708(c) C.V.C., and, because he recognized DUARTE from previous contacts.

4.  When Ortiz turned north onto Doty Avenue, Villicana (#988) and Wunderlich (#946) allegedly observed Ortiz commit a traffic violation by failing to stop at a stop sign in violation of 22450 (a) C.V.C..

5.  In response, Officers activated their vehicle's forward facing red lights and sirens. In addition, they illuminated the spotlight and front floodlights.

6.  At that time, Officer T. Villicana (#988) allegedly observed the rear window roll down, an arm extend from that window, and discard a black firearm from Anna Ortiz's vehicle.

7.  Ortiz pulled her car over on the corner of West 108th Street and stopped.

8.  Wunderlich and Villicana both knew DUARTE from previous contacts. In fact, upon approaching Ortiz's stopped vehicle, an officer said: "Duarte, put your hands out the window"!

9.  DUARTE was removed by Officers from the vehicle and placed in handcuffs at the corner of Doty Avenue and West 108th Street.

10. Officers, N. Bobbs (#977), riding as assisting unit "4E6", together with Officer W. Thompson (#1009), arrived to the location.  Bobbs also knew DUARTE from previous contacts.

11. Officer N. Bobbs (#977) has previously stopped DUARTE without probable cause in order to search DUARTE's vehicle in an attempt to locate incriminating evidence.

12. Here, it is Officer Bobbs (#977) who allegedly located the firearm in the center of the street on Doty Avenue just north of 109th Street.

13. ORTIZ came to a stop at the corner of 109th and Doty Avenue before being pulled over.  She did not run the stop sign.

14. There was not a limited view of the passenger compartment of the vehicle as the front passenger windows were open at the time.

15. DUARTE nor ORTIZ consented to the stop, detention, or arrest in this case.

Dated:                                          *to be filed once signed by defendant*
                                                STEVEN DUARTE

Oliver P. Cleary [SB#168440]
468 N. CAMDEN DR., #200
BEVERLY HILLS, CA 90210
Tel. (424) 324-8874

Attorney for defendant,
       Steven Duarte

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>  vs.<br><br><br>STEVEN DUARTE,<br><br>       Defendant. | Case No.: 20-cr-00387-FMO<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, Oliver Cleary, am a citizen of the United States and am at least eighteen years of age.  My business address is 468 N. Camden Dr., #200, Beverly Hills, CA 90210.

I have caused service of <u>MOTION TO SUPPRESS/DISMISS INDICTMENT/MOTIONS IN LIMINE</u> filed on the court's electronic filing system (CM/ECF) to which the following recipients are currently on the list to receive e-mail notices for this case and have thus been served electronically at the following email addresses:

      AUSARachel.Agress@usdoj.gov

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 4/23/21                        *s/Oliver Cleary*