Oliver P. Cleary
Attorney at Law [CSB#168440]
468 N. Camden Drive, #200
Beverly Hills, CA 90210
T: (424) 324-8874

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: CR 20-cr-00387-FMO |
| Plaintiff, | Notice and Motion to Dismiss for Preindictment Delay [FRCrP 48(b)] |
| vs. | |
| STEVEN DUARTE | Date: 8/6/21<br>Time: 2:00 pm<br>Court: 6A |
| Defendant. | |

A case languishes as the days, weeks and months pass, witnesses disappear, memories fade, and a defendant's ability to defend himself suffers. But, here, the government utilized that time to gather evidence to strengthen their case against the defendant.  For this violation of the defendant Due Process Rights under the Fifth Amendment, defendant seeks a dismissal of the charges due to the exceedingly lengthy and prejudicial delay.

Dated: 7/23/2021

Respectfully submitted,
*/s/Oliver P. Cleary*
Attorney for Defendant,
Steven Duarte

1

# I.

## Facts

On March 20, 2020, Duarte was arrested for possession of a firearm by a prohibited person.  After spending five days at the Inglewood Police Department Jail, he was released with no charges filed.  More than 6-months later, on September 1, 2020, an Indictment was filed in federal court charging him for those same events.  Finally, Duarte was arrested on a felony warrant on November 13, 2020. Meanwhile, on October 21, 2020, the government sought Mr. Duarte's cell phone records almost a month before they effectuated his arrest.  Whenever a preindictment delay adversely affects a defendant's rights to an appreciable degree, the due process clause of the Fifth Amendment is implicated.  Here, a delay adversely affected Duarte's ability to defend himself all the while the government was pursuing ways in which to strengthen their own case.  For this, Duarte is entitled to seek a dismissal.

# II.

## Delay Impaired Duarte's Ability to Defend Himself

The right to a speedy trial is "as fundamental as any of the rights secured by the Sixth Amendment," Klopfer v. North Carolina, 386 U.S. 213, 223, because it protects several demands of criminal justice: the prevention of undue delay and oppressive incarceration prior to trial; the reduction of anxiety and concern accompanying public accusation; and limiting the possibilities that long delay will impair the ability of an accused to defend himself. Smith v. Hooey, 393 U.S. 374, 377-378 (1969). See also People v. Prosser, 309 N.Y. 353, 356, 130 N.E.2d 891, 894 (1955).  Undue delay may be as offensive to the right to a speedy trial before as after an indictment or information. The anxiety and concern attendant on public

accusation may weigh more heavily upon an individual who has not yet been formally indicted or arrested for, to him, exoneration by a jury of his peers may be only a vague possibility lurking in the distant future. Indeed, the protection underlying the right to a speedy trial may be denied when a citizen is damned by clandestine innuendo and never given the chance promptly to defend himself in a court of law. Those who are accused of crime but never tried may lose their jobs or their positions of responsibility, or become outcasts in their communities. United States v. Marion, 404 U.S. 307, 332.

Here, because of delays in the pre-indictment stage, Duarte ability to defend himself diminished meanwhile, the government continued to seek through judicial process means to strengthen their case against him.  (Exhibit 1, Application for Cell Warrant).

For Defendant Duarte, these delays often result in the loss of alibi witnesses, the destruction of material evidence, and the blurring of memories. At least when a person has been accused of a specific crime, he can devote his powers of recall to the events surrounding the alleged occurrences. When there is no formal accusation, however, the prosecution may proceed methodically to build its case while the prospective defendant proceeds to lose his.

The duty which the Sixth Amendment places on the Government to proceed expeditiously with criminal prosecutions would have little meaning if those officials could determine when that duty was to commence. To be sure, "[t]he right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances." Beavers v. Haubert, 198 U.S. 77, 87 (1905).  But it is precisely because this right is relative that we should draw the line so as not to condone illegitimate delays whether at the *pre-* or the *post-* indictment stage.

III.
### Duarte's Right to a Speedy Trial Applies
### Pre-Indictment as well as Post Indictment

The Supreme Court in <u>United States v. Marion, supra,</u> opined;

> "[T]he statute of limitations does not fully define the appellees' rights
> with respect to the events occurring prior to indictment. Thus, the
> Government concedes that the Due Process Clause of the Fifth
> Amendment would require dismissal of the indictment if it were
> shown at trial that the pre-indictment delay in this case caused
> substantial prejudice to appellees' rights to a fair trial and that the
> delay was an intentional device to gain tactical advantage over the
> accused.[16] Cf. <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); <u>Napue v.
> Illinois</u>, 360 U.S. 264 (1959).

The Supreme Court determined, as the court should here, that when, the
government takes tactical advantage of a delay to build their case against Mr.
Duarte, this unexplained and inexcusable pre-indictment delay, if intentional, is
sufficient to find Mr. Duarte's Speedy Trial Rights have been denied and dismiss
the Indictment as a violation of the Due Process Clause of the Fifth Amendment.

IV.

### Government Neglect is no Excuse

Purposeful governmental delay is unreasonable. Clearly, a deliberate attempt
by the government to use delay to harm the accused, through `purposeful or
oppressive,' means is unjustifiable. <u>Id.</u> 404 US 335  Through gathering cell phone
data seven months after the incident and one month before arresting the defendant,
the purposefulness of the delay is evident.

Clearly, the government sought evidence in the form of Subscriber/ Registration/Account Information, Call Detail Records and Cellular Site Location data, PEN Register / Trap-and-Trace with Cellular Site Location data to establish the location or movements of the defendant.  (see Exhibit 1, p 3 of 11) This tactical advantage was taken by the government rather than to use its limitless power and resources to swiftly move forward with a grand jury or in the filing of a criminal complaint.  Instead, Defendant Duarte remained uncharged and aware of the case being purposefully built against him by the government.  This is a clear and unequivocal violation of defendant's right to Due Process through the Fifth Amendment.  As such, defendant Duarte respectfully request the court grant his motion.

CONCLUSION

For the above stated reasons, the court should grant defendant Duarte's Motion to Dismiss the Indictment.


Dated: April 23, 2021                    Respectfully submitted,
                                         *Oliver P. Cleary*
                                         Attorney for Defendant,
                                         Steven Duarte

IT IS HEREBY CERTIFIED THAT:

I, Oliver Cleary, am a citizen of the United States and am at least eighteen years of age.  My business address is 468 N. Camden Dr., #200, Beverly Hills, CA 90210.

I have caused service of <u>MOTION TO DISMISS INDICTMENT</u> filed on the court's electronic filing system (CM/ECF) to which the following recipients are currently on the list to receive e-mail notices for this case and have thus been served electronically at the following email addresses:

Juan.rodriguez@usdoj.gov,

Kyle.kahan@usdoj.gov,

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 7/23/21

*s/Oliver Cleary*
Attorney at Law
468 N. Camden Dr, #200
Beverly Hills, CA 90210
Tel. 424.324.8874

Exhibit 1

AGENCY CASE NO. 2020-17470__ _____          SW NO._____

## SUPERIOR COURT OF CALIFORNIA

### County of Los Angeles

# SEARCH WARRANT



**Officer Camilio Garcia** swears under oath that the facts expressed by him in the attached and incorporated **Statement of Probable Cause** are true and that based thereon he has probable cause to believe and does believe that the articles, property, electronic communications, and data described below are lawfully seizable pursuant to Penal Code Section 1524 et seq., 18 USC § 2703(c), 2703(d), 3122, and/or 3123, as indicated below, and are now located at the location(s) set forth below.   Wherefore, Affiant requests that this Search Warrant be issued.

_____
(Signature of Affiant)

| | | |
|---|---|---|
| SEALING ORDER REQUESTED: | ___ YES | ___ NO |
| NIGHT SEARCH REQUESTED: | _X_ YES | ___ NO |

IMMEDIATE COMPLIANCE BY

TELECOMMUNICATIONS COMPANY REQUESTED:   _X_  YES   ___ NO

**THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY PEACE OFFICER IN THE COUNTY OF LOS ANGELES:** proof by affidavit, having been this day made before me by Officer Camilio Garcia, finds that there is probable cause to believe that the property and/or person described herein may be found at the locations set forth herein and is lawfully seizable pursuant to Penal Code Section 1524 et seq., as indicated below by **X** (s) in that:

_____   When the property was stolen or embezzled [§1524(a)(1) Penal Code];

_____   When the property or things were used as the means of committing a felony [§1524(a)(2) Penal Code];

_____   When the property or things are in the possession of any person with the intent to use them as a means for committing a public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing them from being discovered [§1524(a)(3) Penal Code];

_____   When the property or things to be seized consist of any item or constitute any evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony [§1524(a)(4) Penal Code];

__X__   Warrant issued to arrest a person [§1524(a)(6) Penal Code];

__X__   Will assist in locating an individual who has committed or is committing a felony [§1524(a)(12) Penal Code];

**For Number:** ███████████████

Rev 2-26-15

bds

Search Warrant

Page 1 of 11

USAO_000348

<u>PLACE TO BE SEARCHED:</u> **AT&T Wireless, 5057 Whittier Blvd., Los Angeles, CA 90022**

**Verizon Wireless, 5438 Whittier Blvd., Commerce, CA 90022**

**T-Mobile Communications, 5730 Whittier Blvd., Commerce, CA 90022**

**Sprint Corporation, 5616 Whittier Blvd., Commerce, CA 90022**

**Cricket Communications, 10307 Pacific Center Dr., San Diego, CA. 92121**

And any other telecommunications company, provider of electronic communications or remote computing services, subsidiaries, or entities, including, but not limited to;

ALLEGIANCE TELECOM, ARCHWIRELESS, AT&T, AT&T BROADBAND, COVAD, CCCA Inc, DBA: BELL SOUTH, BELL SOUTH TELEPHONE COMPANY, CELLULAR ONE, CELLCO PARTNERSHIP d.b.a VERIZON WIRELESS, VERIZON, VERIZON CALIFORNIA INC., CENTRAL WIRELESS PARTNERSHIP, SPRINT CORPORATION, SPRINT SPECTRUM L.P., U.S. SPRINT, SPRINT-NEXTEL, CONEXONE WIRELESS PARTNERSHIP, COMCAST, CONNECT COMMUNICATIONS CORPORATION, COX, COX-INTERNET.COM, COX COMMUNICATIONS INC. D.B.A COX CALIFORNIA TELECOM INC., FONES4ALL, FRONTIER COMMUNICATIONS, LEVEL3 COMMUNICATIONS, PAC-WEST TELECOM, CITIZENS COMMUNICATIONS, CONTINENTAL CABLEVISION, EVANS TELEPHONE COMPANY, GST TELECOM INC., IN TOUCH COMMUNICATIONS, M-POWER COMMUNICATIONS, MCI, MCI WORLDCOM / UUNET, NORTHWESTERN BELL, NETWORK SERVICES LLC, NEXTEL, NEXTEL PARTNERS, OPTEL TELECOM, PACIFIC TELESIS GROUP, PACWEST TELECOM, PAGENET, PAGEMART, PINGER, QWEST, QWEST CORPORATION, QWEST WIRELESS, QWEST COMMUNICATIONS, QUALCOMM INC., SKYPE COMMUNICATIONS SARL, T-MOBILE, OMNI POINT COMMUNICATION INC., VIRGIN MOBILE, TEXT PLUS, TEXT NOW,TIME WARNER TELECOM, TWC, RCN, TRI STATE RADIO PAGING INC., TSR WIRELESS,  US CELLULAR, U.S. TELEPACIFIC COMMUNICATIONS, TELEPACIFIC COMMUNICATIONS, U.S. WEST, WINSTAR TELECOMMUNICATIONS, WORLD COM, WORLD COM WIRELESS, XO COMMUNICATIONS, XO CALIFORNIA INC., C T CORPORATION SYSTEM, CRICKET COMMUNICATIONS, METRO PCS, VOICESTREAM COMMUNICATIONS, VONAGE, GOOGLE INC., MICROSOFT, HOTMAIL, TWITTER, FACEBOOK, INSTAGRAM, ENFLICK, YAHOO AND APPLE

Here after referred to as "Service Provider." **ATTENTION: Subpoena Compliance.**  I verified that Service Provider is a California corporation or foreign corporation doing business in California at the aforementioned location, and is a provider of electronic communication service as defined in California Penal Code Section 1524.2(a)(1) and 18 USC § 2510(15). I request night service be authorized so Service Provider may be served after hours via FAX or e-mail and/or to allow law enforcement to monitor the phone data requested herein 24 hours a day for the duration of this Search Warrant.

<u>FOR THE FOLLOWING TARGET TELEPHONE NUMBER(S):</u>

**Target Telephone 1**

[REDACTED]

Hereinafter referred to as "**Target Telephone Number**."

**THE INGLEWOOD POLICE DEPARTMENT**, hereby applies for a Search Warrant authorizing the producing of and disclosure of the following information and services pursuant to Penal Code Section 1524(a)(12), Title 18 USC §§ 2703(c), 2703(d), 3122, and/or 3123 and has certified that the information likely to be obtained is relevant to an ongoing joint criminal investigation conducted by the Federal Bureau of Investigation (FBI), The Inglewood Police Department (IPD), and the Los Angeles Regional Criminal Information Clearinghouse (LA CLEAR), in connection with possible violations of Federal Crime Statute Title 21 United States Code, Section 841(a)(1), Possession with Intent to Distribute a Controlled Substance (methamphetamine):

**IT IS HEREBY ORDERED** that, based upon probable cause, Service Provider shall provide the following information and services for the account associated with the Target Telephone Number(s). The information and services requested within this Search Warrant not only applies to the original Target Telephone Number(s), but also includes any telephone number(s) currently and/or subsequently assigned to the same handset, SIM card, and/or subscriber within 60 days prior to the date this warrant was signed. Additionally, the information and services requested in this Search Warrant not only applies to Service Provider, but to any other telecommunications carrier that provides service to the Target Telephone Number(s) due to roaming agreements and/or changes in service.

The following information and services shall be provided within 24 hours of request for the time period beginning

**October 20th, 2020** and continuing for a thirty (30) day period from the date this Search Warrant was signed by the Court:

- **Subscriber/Registration/Account Information**, to include: Name, address, date of birth, driver's license number, employment information, social security number and any other identifying customer information, activation/suspension dates, billing information, payment method (to include any credit card and/or bank account numbers), account notes, additional telephone numbers/persons listed on the account, make/model of handset, information as to where the target telephone was purchased, the pin number, unlock code or key, Electronic Serial Number (ESN), International Mobile Equipment Identifier (IMEI), International Mobile Subscriber Identity (IMSI), Mobile Station Identifier (MSID), Mobile Identification Number (MIN), and Mobile Equipment Identifier (MEID). Additionally, if the Target Telephone Number(s) is a "Pre-Paid" account, Service Provider shall supply information as to the amount of minutes remaining on the account and most recent date any monies, including the amount, were credited to the Subscriber Account.

- **Call Detail Records with Cellular Site Location**, to include: Originating date and time and ending date and time of cell site/sector, beginning and ending location for each call, Location Area Code (LAC), Cellular Identification (CID), voice over LTE (VOLTE) call detail records, VOIP call detail records, Per Call Measurement Data (PCMD), Range To Tower (RTT-EVDO) Data, Network Event Location System (NELOS) switch information, latitude, longitude, orientation, sector, azimuth, beam width, direction and strength of signal from the cellular tower. The Call Detail Records should include all inbound and outbound calls, direct dispatched number(s), whether published or non-published, blocked or un-blocked, including SMS and MMS text message history with content and cell sites which have been accessed, sent, stored and received, all Voicemail, text and data content stored on the server, direct connect record with cell sites, picture detail and picture content, historical GPS with latitude and longitude coordinates, IP address login information for data sessions and Source and Destination Port Information for those logins, to include cell site/sectors (physical address), orientation, facing, offsets, and period of telephone activation and/or registration for the Target Telephone(s). The records are requested in Pacific Standard Time (PST), records to set the Universal Time Code (UTC) to Pacific Standard Time which could be -7 UTC or -8 UTC based on the current daylight savings time, and A "cheat sheet" or understanding of how to decipher said documents.

- **PEN Register / Trap-and-Trace with Cellular Site Location:** The installation and use of a pen register/trap-and-trace device with cellular site location information, including text message and data activity/transaction information (no content), the "caller identification feature" without geographical limitations, and dialed digits after connection (post-cut-through digits) for a **thirty (30) day period**, from the date this Search Warrant was signed by the Court. The installation and use of a pen register on the Target Telephone Number(s) registers numbers dialed or otherwise transmitted from the Target Telephone Number(s) and records the date and time of such transmission and length of time the call was connected for outgoing calls. The installation and use of a trap-and-trace device on the Target Telephone Number(s), including the "caller identification feature" without geographical limitations, captures the incoming electronic or other impulses which identifies the originating numbers of wire or electronic communications and records the date, time, and duration of calls created by such incoming impulses.
- Service Provider shall provide, on an ongoing and/or real time basis, the location of cell site/sector (physical address) at call origination and termination, direction of signal, strength of signal, Automated Message Accounting (AMA) data, dialed digit extraction, extended digit dialing, and a listing of control channels/PN offsets and their corresponding cell sites;

Rev 2-26-15

bds

USAO_000250

The following paragraph only pertains to information and services which shall be provided within 24 hours of request for the time period beginning the date this search warrant was signed by the court and continuing for a **thirty (30) day period (pursuant to 1534(b)(1))** from the date this Search Warrant was signed by the Court, as it pertains to real time GPS precision location information:

- **GPS Precision Location Information:** Service Provider shall initiate a signal to determine the location of the Target Telephone Number(s) mobile device on the Service Provider's network or with such other reference points as may be reasonably available at five (5) minute intervals for a **thirty (30) day period** from the date this Search Warrant was signed by the Court.  Service Provider shall provide this information over the telephone upon demand and/or send the information to the e-mail addresses provided by the Inglewood Police Department and Federal Bureau of Investigation **for the following Target Telephone Number**

███████████

IT IS ORDERED that Service Provider shall notify the **Federal Bureau of Investigation (FBI), the Inglewood Police Department (IPD), and the Los Angeles Regional Criminal Information Clearinghouse (LA CLEAR)** of any changes to the Target Telephone Number(s) and/or the account associated with the Target Telephone Number(s) during the time period covered by this Search Warrant.

IT IS ORDERED that the Target Telephone Number(s) account remain active during the time period covered by this Search Warrant even if it has been scheduled for deactivation due to non-payment or breach of contract.  The law enforcement agency executing the Search Warrant will incur future billing costs at the point of deactivation and compensate Service Provider for such additional billing costs from the date of deactivation and continuing through the time authorized by this Search Warrant.

IT IS ORDERED that the Service Provider upon the direction of any law enforcement agent, shall conduct an IMEI inquiry of the corresponding Subject Telephone Number(s) IMEIs to determine all IMSIs/cellular telephone numbers utilized with the aforementioned devices from the **time period starting thirty (30) days prior to the signing of this warrant, up through the date this warrant is signed and continuing for thirty (30) days from the signing date of this warrant.** Any and all related wireless carriers shall then provide account information, subscriber information, call detail records with cell sites, SMS history and content, data sessions with IP addresses for logins, VOIP call detail records with location information, PCMD, RTT, historical GPS, and NELOS data for the IMSIs/cellular telephone numbers identified from the aforementioned IMEI inquiry for the **time period starting thirty (30) days prior to the signing of this warrant, through the date this warrant is signed and continuing for a period of thirty (30) days thereafter.**  That the Service Provider(s) upon the direction of any law enforcement agent conduct a search of the IMSI information corresponding to Target Telephone Number(s) **beginning thirty (30) days prior to the signing of this warrant and continuing for thirty (30) days from the signing date of this warrant** to determine if that IMSI was used in any other devices and the respective Service Provider shall provide IMEI history information for all devices identified to include all associated IMSI/cellular telephone numbers for those devices **beginning thirty (30) days prior to (October 20th, 2020) and continuing thirty (30) days after the signing of this warrant, as authorized.** Service Provider(s) shall provide account information, subscriber information, call detail records with cell sites, SMS history and content, data sessions with IP addresses for logins, PCMD, RTT, historical GPS, and NELOS data, for the identified IMSIs/cellular telephone numbers for a period **beginning thirty (30) days prior to (October 20th, 2020) and continuing for thirty (30) days from the signing date of this warrant, as authorized.**

IT IS ORDERED that Service Provider shall furnish information, facilities, and technical assistance 24 hours a day, 7 days a week, necessary to accomplish the installation and operation of the pen register/trap-and-trace unobtrusively and within minimum disruption of normal telephone service.

**Regarding Third Party Information, IT IS ORDERED** that any and all telecommunication carriers subject to regulation by the Federal Communications Commission (FCC) to provide telecommunications services within the United States of America as listed on an ongoing basis under FCC Form 499-A (including telephone companies, internet service providers, and VOIP providers), shall provide, within 24 hours of request from Law Enforcement, **the following information for any incoming/outgoing numbers dialed or captured from the Target Telephone Number(s)** and/or any other identifying numbers relevant to this ongoing investigation, including: Telephone numbers, Electronic Serial Numbers (ESN), Mobile Identification Numbers (MIN), Mobile Station Identity (MSID), International Mobile Subscriber Identity (IMSI), and International Equipment Identity (IMEI) numbers, for the time period beginning October 20th, 2020 and continuing for a **Thirty (30) day period** from the date this Search Warrant was signed by the Court:

- **Subscriber/Registration/Account Information**, to include: Name, address, date of birth, driver's license number, employment information, social security number and any other identifying customer information, activation/suspension dates, billing information, payment method (to include any credit card and/or bank account numbers), account notes, additional telephone numbers/persons listed on the account, make/model of handset, Electronic Serial Number (ESN), International Mobile Equipment Identifier (IMEI), International Mobile Subscriber Identity (IMSI), Mobile Station Identifier (MSID), Mobile Identification Number (MIN), and Mobile Equipment Identifier (MEID).

- **Call Detail Records with Cellular Site Location**, to include: Originating date and time and ending date and time of cell site/sector, beginning and ending location for each call, Location Area Code (LAC), Cellular Identification (CID), voice over LTE (VOLTE) call detail records, VOIP call detail records, Per Call Measurement Data (PCMD), Range To Tower (RTT-EVDO) Data, Network Event Location System (NELOS) switch information, latitude, longitude, orientation, sector, azimuth, beam width, direction and strength of signal from the cellular tower.

- The Call Detail Records should include all inbound and outbound calls, direct dispatched number(s), whether published or non-published, blocked or un-blocked, including SMS and MMS text message history with content and cell sites which have been accessed, sent, stored and received, all Voicemail, text and data content stored on the server, direct connect record with cell sites, picture detail and picture content, historical GPS with latitude and longitude coordinates, IP address login information for data sessions and Source and Destination Port Information for those logins, to include cell site/sectors (physical address), orientation, facing, offsets, and period of telephone activation and or registration for the Target Telephone(s). The records are requested in Pacific Standard Time (PST), records to set the Universal Time Code (UTC) to Pacific Standard Time which could be -7 UTC or -8 UTC based on the current daylight savings time, and A "cheat sheet" or understanding of how to decipher said documents.

**IT IS FURTHER ORDERED**, that the Los Angeles Police Department, or any other law enforcement department/agency, including, the Federal Bureau of Investigation (FBI), Homeland Security Investigations (HSI), Los Angeles County Sheriff's Department, Los Angeles Regional Criminal Information Clearinghouse (LACLEAR), and any other local, state or federal agency, working in conjunction with the Los Angeles Police Department, is authorized to utilize any lawful means and/or equipment to further analyze the requested data received from the respective telephone company(s)s in an effort to ascertain the current location of said cellular device at any time of the duration of this search warrant.

**FURTHERMORE**, I find there is probable cause to believe the information sought by way of this Search Warrant could be aided by the lawful use of a "tracking device-cell site simulator" which could assist law enforcement in locating and/or identifying the individual(s) described and/or responsible for the crime(s) described in this Search Warrant and authorize the use and lawful possession of a "tracking device-cell site simulator" in conjunction with the records sought by this search warrant.

**"Tracking Device" defined pursuant to Title 18 U.S. § 3117(b) and California Penal Code §1534(b)(6):** As used herein, the term "tracking device" means any electronic or mechanical device that permits the tracking of the movement of a person or object can also be known as a "Cell Site Simulator".

**IT IS FURTHER ORDERED**, that no law enforcement agency acting on behalf of this warrant, utilize any equipment or device to intercept any "aural transfer" as defined in PC 629.51(a)(4), or other electronic communications, including SMS (text) messages, multi-media messages, writings, sounds, images, web addresses, or any other communication not expressed and authorized by this order.

**IT IS FURTHER ORDERED**, that, based on the details described within the Probable Cause of this Search Warrant, the **Service Provider(s)** is ordered to execute/provision the Target Telephone(s) "Forthwith" and begin sending/providing the requesting agency the information authorized pursuant to this Search Warrant, upon receiving this Order, regardless of the time of day or night, or **Service Provider(s)** "normal" business hours.

**NON-DISCLOSURE ORDER / DELAYED NOTICE OF SERVICE OF WARRANT REQUEST (Pursuant to  Title 18 USC § 3123(d)) and Penal Codes § 1534(b)(4) and 1546.2): IT IS HEREBY ORDERED**, good cause having been established in the affidavit filed herewith, that Service Providers, T-MOBILE, VERIZON WIRELESS, SPRINT, ATT AND CRICKET and any other service provider to whom this order is served upon, including any of their representatives, agents and employees, shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of this Search Warrant or the existence of this investigation to the subscriber(s) of the Target Telephone Number(s) or the subscriber(s) of the incoming calls to or outgoing calls from the Target Telephone Number(s), nor are law enforcement officers required to serve a copy of this warrant or notify the person who was tracked or whose property was tracked for a period of 90 days pending further order of this Court as doing so would cause serious jeopardy to an investigation. Such disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify coconspirators, and flee from apprehension and prosecution.

**IT IS FURTHER ORDERED**, that, pursuant to **Penal Code § 1546.1 (d) (2),** any information obtained through the execution of this warrant that is unrelated to the objective of the warrant shall be sealed and shall not be subject further review, use, or disclosure absent an order from the Court.

**IT IS FURTHER ORDERED**, that, pursuant to **Penal Code § 1546.1 (d) (3),** any and all service providers that produce information pursuant to this Search Warrant provide an affidavit that verifies the authenticity of the information.

**AND TO SEIZE IT / THEM IF FOUND** and bring it / them forthwith before me, or this Court, at the courthouse of this Court.

**STATEMENT OF PROBABLE CAUSE:**

I, Camilio Garcia, being duly sworn, do hereby depose and state the following:

Your Affiant name is Camilio Garcia, I have been employed as a sworn Police Officer for the City of Inglewood over eighteen years. I am currently assigned to the Gangs and Narcotics Division Federal Task Force with the Violent Gangs Task Force in conjunction with the FBI for the past five years, which is a unit that specializes in the investigations of gangs, gang members, and gang crimes. I have investigated, or assisted other Detectives in the investigation of a large number of gang related crimes. These investigations have included, but are not limited to, homicide, attempt homicide, assault with a deadly weapon, carjacking, weapons violations, narcotics sales/trafficking, robbery and vandalism. During my tenure, I was assigned to the Inglewood Police Department's Patrol Division, the Special Enforcement team, Anti-Crime team, the SWAT team, and the USE of Force Cadre

Along with assisting detectives from the Inglewood Police Department, I have, on several occasions, assisted the Los Angeles Police Department, Los Angeles Sheriff's Department, Ontario PD, Hawthorne PD, Redondo Beach PD, Gardena PD, Torrance PD, Probation/Parole Agents, and the Department of Homeland Security, Louisville Kentucky PD, New Port PD Virginia and the Federal Bureau of Investigations in gang related investigations.

I have contacted, interviewed, assisted in the arrest of and/or arrested well over 1000 gang members and continue to contact gang members on a weekly basis. During the course of my contacts with gang members, I have regularly questioned, interviewed, and spoke with gang members concerning their gangs, territories, rivalries, beliefs, monikers, hand signs, crimes, activities and the manner in which they commit their crimes, hide and dispose of contraband and evidence. I have contacted gang members as suspects, witnesses, and victims.  I have also spoken with family members of gang members regarding the gang life style, beliefs, dangers and perceived benefits.

I have qualified as a gang expert in the California Superior Court in Inglewood and the Criminal Court Building in Los Angeles.

I have received over two hundred hours of formal Law Enforcement training, which included training on the various types of street gangs, prison gangs, gang tattoos, gang hand signs, life style and philosophy of gang and there members, gang monikers, criminal gang related investigations and search warrants. I have participated in and conducted numerous investigations surrounding the tracking and apprehension of fugitives both on the state and federal level. During the course of my time with this special assignment and prior assignment as a police officer, I have arrested more than 50 fugitives.

USAO_000254

### SYNOPSIS

Inglewood Police Department is working an ongoing investigation in conjunction with the FBI. Inglewood PD arrested Steven Duarte for possession of a firearm on March 20th, 2020, Inglewood PD Case Number 20-17470. IPD Officers saw Duarte throw a firearm from a moving vehicle. The Firearm was recovered and during the search of vehicle in which Duarte was occupying as a passenger, a gun magazine with live rounds, matching the aforementioned firearm were recovered from the vehicle. For further information as it pertains to this case, please see "Attachment A."

A Federal Felony Warrant for Felon in Possession of Firearm 18 U.C.USC 922(g) has been placed on Duarte. This affidavit is made in support of a search warrant requesting the following telephone related information: **Subscriber/Account Information, Call Detail Records with Cellular Site Location, GPS Precision Location Information,** and **PEN Register / Trap-and-Trace with Cellular Site Location / Third Party Information** for the **Target Telephone Number(s.)**

Your Affiant has a basic understanding of how the cellular telephone network operates. I know that when any person utilizes their cellular phone, the date, time, duration, outgoing dialed number and incoming numbers (even if caller identification is blocked by the calling party) for voice calls is stored as well as the cellular tower location and sector used  for the beginning and ending of each call.  The cellular telephone providers also store the date and time of text messages sent and received and the cell phone numbers that the target phone was in contact with as well as the cellular tower location and sector that used to send or receive a text message.  Some cellular telephone providers store the content of the text messages sent and received.  The cellular telephone providers also store IP packet data session logs and IP addresses used and some cellular telephone providers also store the cellular tower location and sector at the beginning and ending of the data session. This is very basic information and does not provide an exact location of the person nor does it identify the other party.  Your Affiant is aware that cellular towers are strategically placed throughout the world by phone companies in an attempt to provide a seamless operation so people can travel virtually anywhere and make or receive a call.

Some cellular towers are divided into sectors, depending on the cellular provider. Each individual sector is mounted on the tower and faces a specific direction to provide cellular coverage for the people in a general area. The range of the tower depends on environmental factors and whether it is located in a highly populated urban environment or desolate rural area. Cellular towers do not provide an exact location of the suspect; they can only provide the physical location of the tower itself and a direction from the tower a phone was when it used that tower and sector for service.

Your Affiant is aware some cellular companies offer GPS capabilities and/or cellular tower triangulation to law enforcement after receiving a Search Warrant, while other cellular companies do not offer either of these services and can only provide cellular tower locations.  Utilizing GPS and/or cellular tower triangulation gives a much smaller area to search and greatly increases the likelihood that law enforcement will be able to locate the suspect and/or Target Telephone(s). Cellular companies typically provide GPS and/or cellular tower triangulation at fifteen minute intervals, not on a real time basis. Indeed, this location information is beneficial and definitely helps law enforcement get into an area where the suspect may be; however, traditional and non-traditional investigative techniques are still required to locate the suspect and/or Target Telephone(s) exact location.

Your Affiant is aware of the ease of being able to purchase a pre-paid phone has caused law enforcement problems when attempting to locate wanted felons because it becomes very difficult, sometimes impossible, to determine the identity of a subscriber when it is allowable to use a false name, such as "Mickey Mouse" or "John Doe", when obtaining/purchasing a pre-paid cellular phone account.  Your Affiant has personally encountered many false subscriber names and addresses associated to cellular telephone subscriptions during past investigations.  It seems to be a growing trend for suspects to list false information on their pre-paid cellular phone accounts. **Therefore, Your Affiant is seeking an extended period of cell phone records and subscriber information from October 13th, 2020 in order to obtain evidence of association of the target cell phone and cell phone number with the Suspect(s). Additionally, the patterns of cell sites used will assist Your Affiant in identifying areas to search for the Suspect(s). Your Affiant is also seeking the content of historical text messages sent and received as that information may yield evidence of the crime as well as the location of the Suspect(s).**

Your Affiant is aware that cellular telephones communicate wirelessly across the cellular infrastructure, including towers which route and connect individual communications. When sending or receiving a communication, a cellular telephone broadcasts certain signals to the cellular tower which is routing its communication.

Law enforcement may monitor these signals when cellular telephones initiate or receive calls, and may also initiate a communication with the Target Cellular Telephone in order to cause it to emit signals.  By collecting analyzing these signals, law enforcement can, sometimes, precisely determine the location of the cellular telephone itself.

USAO_000255

Your Affiant is also aware that obtaining and preserving historical telephone records could also prove to be fruitful, as such records could assist Investigators not only with identifying those who may have been in contact with the Victim(s) or potential co-conspirators, but may also allow Investigators many other opportunities, including, but not limited to, confirmation or the disproving of alibis, statements, and other observations.

Your Affiant knows that records such as those associated with telephones, specifically cellular telephones, are not kept or preserved indefinitely by the service providers. Obtaining and preserving these records at this point in the investigation will assure the Investigators assigned to the case now will have them available and if the case were to go "cold", future Investigators will have access to the records which would otherwise likely not be obtainable.

## NIGHT SEARCH REQUEST

Your Affiant requests night service be authorized allowing service of the Search Warrant to Service Provider Subpoena Compliance at any time, day or night, within ten days of issuance. Based on my training and experience, I know that most Service Providers have Law Enforcement Compliance Analysts on duty 24 hours a days, 7 days a week to process requests. I know it is common for law enforcement to send Search Warrants to the telecommunication companies via e-mail or FAX after midnight for billing purposes if they know they will not be able to monitor the PEN register/trap-and-trace and/or GPS location information until the following day. Over the years, I have learned that utilizing this method serves three important functions: 1. If the fugitive turns off his phone between the hours of 10pm-7am, Law Enforcement would not be able to track & find the fugitive. Law Enforcement would not be able to establish the pattern of life for the Fugitive 2. It reduces unnecessary costs because Service Provider can charge up to $100.00 per day for their services, 3. Our request will be processed quicker because it will be at the top of Service Provider's list for that particular day. Moreover, the authorization of night service is no more intrusive than serving Service Provider during business hours because this request will be sent via e-mail or FAX to their Subpoena Compliance Unit; I will not be making entry into a business or any other structure to serve this Search Warrant. I also request permission to monitor the pen register/trap-and-trace as well as GPS precision location information at any time, day or night, for the thirty (30) day time period covered by this Search Warrant. Furthermore, I request law enforcement officers and agents have permission to pause or stop activation and/or monitoring of the pen register/trap-and trace and/or GPS precision location information at any time during the thirty day period covered by this Search Warrant and may resume activation and/or monitoring without further order from this Court, so as long as the activation and/or monitoring is resumed during the thirty day period authorized by this Search Warrant.

Therefore, by way of this search warrant, your Affiant is requesting **the authorization to receive the following information from the respective telecommunications companies; Subscriber/Account Information, Call Detail Records with Cellular Site Location, GPS Precision Location Information, Third Party Subscriber Information and Call Detail Records, and PEN Register / Trap-and-Trace with Cellular Site Location, outlined in this Search Warrant Order.**

Your affiant is **NOT** requesting to monitor or intercept any aural communications or any other communications such as text (SMS) messages, emails, BBM messages, Instant Messages, web browsing, etc.

The facts set forth in this declaration are based upon my own personal observations, my training and experience, and information obtained during this investigation from other law enforcement officers.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

**Officer Camilio Garcia #852**

**Inglewood Police Department**

**FBI Los Angeles Metro Task Force on Violent Gangs**

This **Search Warrant** and **Affidavit,** and attached and incorporated **Statement of Probable Cause** were sworn to as true and subscribed before me on this 21st day of October 2020 at 11:19 A.M. / P.M. Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

_____
(Signature of Magistrate)

HOBBS SEALING APPROVED:        YES        NO

NIGHT SEARCH APPROVED:    X  YES    ___  NO

IMMEDIATE COMPLIANCE BY

TELECOMMUNICATIONS COMPANY APPROVED:    X  YES    ___  NO

Judge of the Superior Court of California, County of Los Angeles, _____ Court, Dept / Div  5  ,

___Southwest___ **Judicial District**

___Pamela Villanueva___
(Magistrate's Printed Name)

USAO_000258

ATTACHMENT -A



**Inglewood Police Department**
**GENERAL OFFENSE HARDCOPY**
**(29800(A)(1) FRARM/FELN/ADDICT)**
**GO# IN 2020-17470**

USAO 000259



**Inglewood Police Department**
**GENERAL OFFENSE HARDCOPY**
(29800(A)(1) FRARM/FELN/ADDICT)

GO# IN 2020-17470
ACTIVE

---

## Related Text Page(s)

| | |
|---|---|
| **Document** | INITIAL REPORT |
| **Author** | 988 - VILLICANA TYLER |
| **Related Date/Time** | MAR-21-2020 (SAT.) 18 |

---

SOURCE OF ACTIVITY:


On Friday, 03/20/2020 at approximately 2136 hours; Officer T. Wunderlich #946 and I (Officer T. Villicana #988) were on assigned patrol as members of the I.P.D. Special Enforcement Team. We were driving a black unmarked I.P.D. Patrol vehicle (#500) while wearing black polo shirts with a cloth badge embroidered on the left breast and "POLICE" screened on the back in yellow. Officer Wunderlich was the driver and I was the passenger.

INVESTIGATION:

As Officer Wunderlich was driving West on 109th Street (towards Prairie Avenue) I observed a red 2007 Infiniti G37 (CA Lic# 8HSB089) turn East on 109th Street (from Prairie Avenue). As the vehicle drove by us, I noticed the front windows were tinted and the tint limited our view into the passenger compartment of the vehicle (violation of 26708(C) C.V.C. - Tinted windows).

Officer Wunderlich turned our vehicle around and we trailed the vehicle East on 109th Street towards Doty Avenue. At the intersection of 109th Street and Doty Avenue, the vehicle turned North onto Doty Avenue and failed to stop at the stop sign (violation of 22450 (a) C.V.C. - Stop sign violation). Officer Wunderlich activated our forward facing red lights and siren to conduct a traffic stop for the above mentioned equipment violation and traffic violation. Officer Wunderlich also illuminated our front floodlights and his spot light.

Once our lights illuminated, I observed the right rear window roll down and an arm extended out the window, and discard a black handgun. The handgun hit a car parked on the east curb line of Doty Avenue, just north of 109th Street. I contacted assisting units 4E6 (Officer W. Thompson #1009 and Officer N. Bobbs #997) and 4E5 (Officer D. Lee #985 and Officer A. Vega #983) via my radio, and notified them of the location of the handgun. I maintained visual of the right rear passenger, through the open rear window, and did not observe the right rear passenger move from the right rear seat.

The vehicle yielded on 108th Street, just East of Doty Avenue. Officer Wunderlich contacted the driver, later identified as ▮▮▮▮▮▮▮, and I contacted the right rear passenger, Steven Duarte. Based on our



**Inglewood Police Department**

**GENERAL OFFENSE HARDCOPY**

**(29800(A)(1) FRARM/FELN/ADDICT)**

GO# IN 2020-17470

ACTIVE

---

observations of the right rear passenger throwing a gun out of the window, we detained ██████ and Duarte pending further investigation.  There were no other passengers in the vehicle.

It should be noted, Officer Wunderlich and I recognized Duarte from previous contacts and were aware Duarte is a self-admitted and documented 18 Street gang member.  Duarte goes by the moniker of "Shorty."  Officer Wunderlich and I were also aware Duarte was previously arrested for firearm related charges and is currently on P.R.C.S. Community Supervision.

Officer Lee, Officer Vega, Officer Thompson, and Officer Bobbs responded to the location where we observed the firearm thrown out of the vehicle.  Officer Bobbs located the firearm in the center of the street, on Doty Avenue just north of 109th Street.  Officer Bobbs photographed the firearm and rendered the pistol safe. The pistol was a black, semi-automatic, Smith and Wesson .380 caliber pistol, serial number #EAT2760.  The magazine was missing from the magazine well and Officer Bobbs said the firearm appeared to be in good working condition.

I conducted a wants/warrants inquiry on ██████ and Duarte.  The inquiry revealed ██████ was on active probation for Burglary with a discharge date of 04/06/2021.  The inquiry additionally confirmed Duarte's active P.R.C.S. Community Supervision status.  I contacted L.A. County Probation and confirmed Duarte's search and seizure conditions.

Officer Wunderlich conducted a probation compliance search of the vehicle and located a Smith and Wesson .380 caliber magazine with 6 .380 caliber bullets loaded within it.  The magazine was stuffed between the center console and the passenger front seat (towards the rear of the seat).  It should be noted, the magazine was located within arm's reach of the rear passenger (Duarte).  Officer Wunderlich inserted the magazine into the magazine well of the handgun and it fit perfectly.  The handgun and the magazine were the same brand and caliber.

Based on our observations of the rear passenger (Duarte) throwing the firearm out of the car, and the location of the loaded magazine, we placed Duarte under arrest for 29800 (a)(1) P.C. - Felon in possession of a firearm.

I conducted a firearm registration inquiry on the pistol.  The inquiry revealed the pistol was reported stolen to the Roseburg Police Department on 12/18/2019 (Report #19-6002).

Investigation Continued:

Officer Wunderlich spoke to ██████ who stated the following: ██████ said on Friday (03-20-20) at approximately 2120 hours, she picked up her friend (Steven Duarte) on 110th Street and were going to hang out.  ██████ additionally said she did not know Duarte had a gun when she picked him up.

---

**Inglewood Police Department**

GO# IN 2020-17470
ACTIVE

**GENERAL OFFENSE HARDCOPY**

**(29800(A)(1) FRARM/FELN/ADDICT)**

Officer Wunderlich, Officer Vega, Officer Lee, Sergeant G. McDonough, and I responded to Duarte's residence at 3631 W. 111th Street to conduct a probation compliance search.  No further contraband was found during the search.

ARREST/BOOKING:

Based on our observations, the stolen status of the gun, Duarte being a documented member of the 18 Street gang, and the magazine being loaded and located with arm's reach of Duarte in the vehicle; Duarte was placed under arrest for the following charges:

1) 29800(a)(1) P.C. - Felon in possession of a firearm
2) 25400(a)(1) P.C. Possession of a concealed firearm
3) 25850(a) P.C. - Possession of a loaded firearm
4) 25400(c)(3) P.C. - Possession of a firearm by an active member of a street gang
5) 25400(c)(2) P.C. - Possession of a stolen firearm
6) 25850(c)(2) P.C. - Possession of a loaded stolen firearm

Officer Thompson conducted a Preliminary Field Medical Screening of Duarte and Duarte answered no to all questions.  Duarte was transported and booked at the Inglewood Police Department Jail with the approval of the Watch Commander, Lt. Held. Prior to entering the jail facility, Officer W. Thompson instructed Duarte to read and acknowledge the posted sign indicating the restriction of weapons and narcotics in the jail facility. The sign indicates paraphernalia brought into the jail facility will result in an additional charge.

Officer W. Thompson and Officer Bobbs (both male officers) conducted a strip search of Duarte in the I.P.D. strip cell area. Lt. Held stood by as witness to the search. No further contraband was located.

I notified L.A. County Probation Officer T. Jackson of Duarte's arrest. Officer Jackson placed Duarte on a probation violation hold (1203.2 P.C.).

MEDICAL:

None

EVIDENCE:

For further see evidence tab.

PHOTOGRAPHS:

Officer Wunderlich took several digital photographs of the vehicle, firearm, and the magazine.  Officer Wunderlich uploaded all of the photographs into the Laserfiche system under this same G.O. number.



GO# IN 2020-17470
ACTIVE

## Inglewood Police Department
### GENERAL OFFENSE HARDCOPY
#### (29800(A)(1) FRARM/FELN/ADDICT)

---

A/O's NOTES:

█████ was advised on 26708(c) C.V.C. - Window tint and 22450(a) C.V.C. - Stop sign violation.  She was F.I.'d, photographed, and released in the field.

Officer Vega completed a Forensics request form for D.N.A. and print processing of the firearm and the magazine.

---