Oliver P. Cleary [SB#168440]
468 N. Camden Drive, #200
Beverly Hills, CA 90210
T: (424) 324-8874
olivercleary@gmail.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>    vs.<br><br>STEVEN DUARTE<br><br>             Defendant. | Case No.: CR 20-cr-00387-FMO<br><br>Notice and Motion to Suppress Evidence Seized After Illegal Traffic Stop<br><br>Date: 8/6/21<br>Time: 2:00 pm<br>Court: 6A |

    Defendant Duarte was stopped on March 20, 2021 while riding as a passenger in a friend's car.  Anna Ortiz, the registered owner, was driving her red Infinity G37 when initiated a traffic stop.  While spotlighting the vehicle, officers claim they observed a gun being tossed from the rear window.  One they searched Ortiz's vehicle, officers located a magazine with 6 bullets in between the console and front seat. Officers also located the gun tossed from the window in the street.

    This motion seeks to suppress the evidence based on violations of defendant's Fourth Amendment rights.

Dated: 7/23/2021

                                                      Respectfully submitted,
                                                      */s/Oliver P. Cleary*
                                                      Attorney for Defendant,
                                                      Steven Duarte

# Table of Contents

Table of Authorities…………………………………………………..……….3

      Memorandum of Points & Authorities…………………..……………..5

I.    Facts……………………………………,,…………………………..….6

II.   The Front Window of Anna Ortiz's Infinity Was Not Illegally Tinted……………………………………………………..…………....7

III.  Anna Ortiz Stopped At the Stop Sign………….…..……………..….7

IV.  Without Reasonable Suspicion, Stop is Illegal and Any Evidence Seized if Fruits of the Poisonous Tree…………………………………...8

V.   Exclusionary Rule Applies to Fruit of the Poisonous Tree…………....9

CONCLUSION……………………………………………………………….9

Exhibit 1………………………………………………………………13-14

# Table of Authorities

**Cases:**

Bingham v. City of Manhattan Beach, 341 F.3d 939, 948 (9th Cir.2003), abrogated on other grounds by Virginia v. Moore, 553 U.S. 164, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008), as recognized in Edgerly v. City of San Francisco, 599 F.3d 946, 956 n. 14 (9th Cir.2010)……………………………………………………………………...5

United States v. Lopez-Soto, 205 F.3d 1101, 1105 (9th Cir.2000) (internal quotation marks omitted)……………………………………………………………...…5

Brendlin v. California, 551 U.S. 249 (2007)……………………………………….5

United States v. I.E.V., 705 F.3d 430 (9th Cir. 2012)………………………...……5

United States v. Cha, 597 F.3d 995 (9th Cir. 2010)…………………………………..5

Illinois v. Caballes, 543 U.S. 405, 407 (2005)……………………………………….5

Wren v. United States, 517 US 806, 809-810 (1996)……………………………….6

United States v. Wallace, 213 F.3 1216 (9th Cir. 2000)……………………………7

United States v. King, 244 F.3d 736, 741-42 (9th Cir.2001)………………………7

United States v. Mariscal, 285 F3d, 1127 (9th Cir. 2002)…………………………..8

United States v. Arvizu, 534 U.S. 266 (2002); United States v. Cortez, 449 U.S. 411, 417-18 (1981)……………………………………………………………………8

United States v. Garcia-Camacho, 53 F.3d 244, 246 (9th Cir. 1995) (citations omitted); accord United States v. Sigmond-Ballesteros, 285 F.3d 1117, 1121 (9th Cir. 2002)……………………………………………………………………………...8

Wong Sun v. United States, 371 U.S. 471 (1963)…………………………………..8

Silverman v. United States, 365 U.S. 505 (1961)…………………………………..8

Murray v. United States, 487 U.S. 533, 540 (1988)………………………………..8

**Statutes:**

California Vehicle Code §26708(c)……………………………………………..…..7

California Vehicle Code §26708(d)(2)……………………………………………..7

California Vehicle Code §22450(A)…………………………………………….…..8

## MEMORANDUM OF POINTS AND AUTHORITIES

It has been settled law since the 1970's that in order for a police officer to initiate an investigatory stop of a motorist, there must at least exist reasonable suspicion that the motorist is engaging in illegal activity." <u>Bingham v. City of Manhattan Beach</u>, 341 F.3d 939, 948 (9th Cir. 2003), abrogated on other grounds by <u>Virginia v. Moore</u>, 553 U.S. 164, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008), as recognized in <u>Edgerly v. City of San Francisco</u>, 599 F.3d 946, 956 n. 14 (9th Cir. 2010). In order to form a reasonable suspicion, an officer must have "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." <u>United States v. Lopez-Soto</u>, 205 F.3d 1101, 1105 (9th Cir. 2000) (internal quotation marks omitted).

When a vehicle is stopped, passengers have also been "seized" and may challenge the legality of the seizure. *See* <u>Brendlin v. California</u>, 551 U.S. 249 (2007). Additionally, reasonable suspicion to stop a vehicle does not automatically confer reasonable suspicion to search every passenger in that car. *See* <u>United States v. I.E.V.</u>, 705 F.3d 430 (9th Cir. 2012) (reversing conviction and holding that narcotic dog alert to car generally did not allow *Terry* stop-and-frisk without individualized suspicion.) Of course, a seizure reasonable at its inception….may become unreasonable as a result of its duration or for other reasons. *See* <u>United States v. Cha</u>, 597 F.3d 995 (9th Cir. 2010). For example, unreasonably prolonged detentions invalidate stops that otherwise may have been valid at inception. <u>Illinois v. Caballes</u>, 543 U.S. 405, 407 (2005). Finally, if there is an objectively reasonable suspicion that a crime has been committed-even a minor traffic violation-then officers may perform a vehicle stop irrespective of their subjective motives in doing so. <u>Wren v. United States</u>, 517 US 806, 809-810 (1996) Here**,**

defendant Steven Duarte's rights were violated when the vehicle he was in was stopped without reasonable and probable cause. Therefore, defendant has standing.

## I.
## Facts

Defendant DUARTE neither adopts nor admits the following events taken from the police report written in this case:

On Friday evening, March 20, 2020, at 9:30 pm, Steven DUARTE was riding in his friend's red 2007 Infiniti G7 when officers WUNDERLICH (#946) and VILLICANA (#988) of the Inglewood Police Department's Special Enforcement Team noticed the front windows were tinted limiting their view into the passenger compartment of the vehicle.

The officers were driving a black unmarked patrol vehicle while wearing black polo shirts with a cloth badge embroidered on the left breast and "POLICE" screened on the back in yellow. Assisting WUNDERLICH and VILLICANA were officers THOMPSON (#1009) and BOBBS (#997) and officers LEE (#985) and VEGA (#983). In response to seeing the tinted front windows, the officers pulled a u-turn and trailed the red Infiniti until they allegedly observed the Infinity fail to stop at the corner of 109th and Doty Ave. For this and the alleged equipment violation, WUNDERLICH turned on the patrol vehicle's forward facing red lights and siren.

Illuminated by the front floodlights and spot light, VILLICANA observes the right rear passenger window of the Infinity roll down and an arm extend out the window to discard a black object. The assisting units were told to look for a handgun on Doty Ave just north of 109th. In response to the lights and sirens, the red Infiniti stopped on 108th street just east of Doty Avenue.

Officer WUNDERLICH and VILLICANA removed Ortiz and Duarte from the vehicle and instigate a search of the vehicles interior. At the initial inspection, nothing is found inside the vehicle. After Officer BOBBS located a handgun in the middle of Doty Ave. just north of 108th Street, he returns to where the Infinity is located and volunteers to search it again. Bobbs' subsequent search revealed a clip with 6 rounds of ammunition inside the passenger compartment located between the front seat and the center console. Duarte is arrested for the firearm and bullets.

## II.
**The Front Window of Anna Ortiz's Infinity was not Illegally Tinted.**

California Vehicle Code section 26708(c) provided, at the time of the traffic stop, in relevant part:

> [A] clear, colorless, and transparent material may be installed, affixed, or applied to the front side windows, located to the immediate left and right of the front seat if the following conditions are met.including the specified minimum light transmittance of 70 percent….

Accordingly, a front window tinted to that degree would still provide a *clear, unobstructed view* of the driver's compartment of the vehicle and fully comply with Section 26708(d)(2) of the California Vehicle Code. US v. Wallace, 213 F.3 1216 (9th Cir. 2000).

Here, a suspicion based on such a mistaken view of the law cannot be the reasonable suspicion required for the Fourth Amendment, because "the legal justification [for a traffic stop] must be objectively grounded." In other words, if an officer makes a traffic stop based on a mistake of law, the stop violates the Fourth Amendment. Id. (citations omitted); see also United States v. King, 244 F.3d 736, 741-42 (9th Cir.2001) (a mistaken belief that a driver's conduct violated the law could not support a reasonable suspicion that a crime had been committed, even if

the officer otherwise behaved reasonably). US v. Mariscal, 285 F3d, 1127 (9th Cir. 2002)

### III.
### Anna Ortiz Stopped at the Stop Sign

Officers also attempt to justify the stop claiming an alleged violation of vehicle code section 22450(A) which states in pertinent part;

> the driver of any vehicle approaching a stop sign at the entrance to, or within, an intersection shall stop at a limit line, if marked, otherwise before entering the crosswalk on the near side of the intersection.

When a vehicle stops at the limit-line and not where the actual sign is located, that vehicle has correctly stopped per the vehicle code.  Here, the stop sign was located in advance of and not adjacent to the limit-line.  Hence, the stop that occurred at the limit-line just past the stop sign is in not a violation of the vehicle code.  As such, no valid traffic violation was observed by officers WUNDERLICH (#946) and VILLICANA (#988) to justify the stop of the vehicle.

### IV.
### Without Reasonable Suspicion, Stop is Illegal and Any
### Evidence Seized Is Fruit of the Poisonous Tree

An officer may not detain a motorist without "a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Arvizu, 534 U.S. 266 (2002); United States v. Cortez, 449 U.S. 411, 417-18 (1981).  This "objective basis, or 'reasonable suspicion' must consist of 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" United States v. Garcia-Camacho, 53 F.3d 244, 246 (9th Cir. 1995) (citations omitted); accord United States v. Sigmond-Ballesteros,

285 F.3d 1117, 1121 (9th Cir. 2002) (finding that district court erred in finding that vehicle stop was constitutional).

**Here**, the arresting officer did not have reasonable suspicion to stop the vehicle Mr. DUARTE was riding in. The alleged justification for the stop of the car rests almost entirely on observations such as the windows were too darkly tinted limiting the officer's view into the passenger compartment or failing to stop at the stop sign not the limit line. As such, these fail to justify the warrantless stop in this case. As such, all items seized due to this stop must be suppressed.

## V.
## Exclusionary Rule Applies to Fruit of the Poisonous Tree

"The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion." Wong Sun, 371 U.S. at 485. It also prohibits introduction of testimony concerning knowledge acquired during an unlawful search or arrest. See Silverman v. United States, 365 U.S. 505 (1961). "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all." Wong Sun, 371 U.S. at 485 (quoting Silverthorne Lumber Co., Inc. v. United States, 251 U.S. 385, 392 (1920)). Unless evidence is obtained on the basis of information wholly unconnected with the initial unlawful search or arrest, it must be suppressed. See Murray v. United States, 487 U.S. 533, 540 (1988).

## CONCLUSION

All evidence and the fruits of the unconstitutional detention, all resulting evidence must be suppressed. For the above stated reasons, the court should grant defendant Duarte's Motions to Suppress the Evidence.

| | | |
|---|---|---|
| 1 | Dated: 7/23/2021 | Respectfully submitted, |
| 2 | | *Oliver P. Cleary* |
| 3 | | Attorney for Defendant, Steven Duarte |

IT IS HEREBY CERTIFIED THAT:

    I, Oliver Cleary, am a citizen of the United States and am at least eighteen years of age. My business address is 468 N. Camden Dr., #200, Beverly Hills, CA 90210.

    I have caused service of MOTION TO SUPPRESS to be filed on the court's electronic filing system (CM/ECF) to which the following recipients are currently on the list to receive e-mail notices for this case and have thus been served electronically at the following email addresses:

Juan.Rodriguez@usdoj.gov

Kyle.kahan@usdoj.gov

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 7/23/2021      *s/Oliver Cleary*
                                                      Attorney for Defendant
                                                      Steven Duarte

# EXHIBIT 1

**Declaration of Steven Duarte In Support of Suppression Motion**

I, STEVEN DUARTE, declare under the laws of the United States of America, the following is true and correct and if called as a witness, I could competently testify to the matters stated herein;

1. On the date of March 20, 2020, I was a passenger in Anna ORTIZ's 2007 Infiniti G37.
2. At around 9:30 pm, she was driving north on Prairie Ave and made a right turn eastbound onto W. 109th St.
3. As she began turning on 109th St, her vehicle's headlights illuminated a car parked parallel to the curb on our left side with the headlights completely off.
4. I was able to see two occupants inside the vehicle sitting motionless.
5. As we proceeded down the street, the same vehicle started trailing behind us.
6. The trailing vehicle's lights were completely off.
7. We came to a complete stop at the stop-sign on corner of W. 109th St. and Doty Ave.
8. After making a proper stop, we made a left turn northbound onto Doty when suddenly the unmarked vehicle behind us activated bright lights.
9. ORTIZ pulled her car over on the right side of West 108th Street and came to a stop.
10. Police vehicles were behind us and we were told to put our hands outside the vehicle.
11. Multiple officers approached the vehicle with guns drawn.

12. An officer got me out of the vehicle, handcuffed me and placed me on the curb next to the unmarked police car that had been following us.

13. I was sitting on the curb approximately 15'-20' from officer Wunderlich as he searched ORTIZ's entire vehicle finding nothing.

14. Officer Wunderlich asked officer Bobbs who was walking up do a second search.

15. It was only officer Bobbs search Ortiz's vehicle that he said he found a magazine with ammunition inside the from console area of Ortiz's vehicle.

16. The front passenger windows were rolled down at the time making it impossible to view whether or not the windows were tinted.

Dated:                                        *to be signed and submitted*
                                                 STEVEN DUARTE