TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
KYLE W. KAHAN (Cal. Bar No. 298848)
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
Assistant United States Attorneys
General Crimes Section
1100/1200 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-2238/0304
Facsimile: (213) 894-0141
E-mail: kyle.kahan@usdoj.gov
juan.rodriguez@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

STEVEN DUARTE,

Defendant.

No. CR 20-387-FMO

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS DNA EVIDENCE AND REQUEST FOR A *FRANKS* HEARING; DECLARATION OF JOSE BARRAGAN

Hearing Date: August 13, 2021
Hearing Time: 2:00 p.m.
Location: Courtroom of the Hon. Fernando M. Olguin

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Kyle W. Kahan and Juan M. Rodriguez, hereby files its opposition to defendant's motion to suppress DNA evidence and request for a Franks hearing. (Dkt. 57.)

//

//

This opposition is based upon the attached memorandum of points and authorities, the declaration of Inglewood Police Department Detective and Task Force Officer Jose Barragan, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 30, 2021

Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

*/s/ Kyle W. Kahan*
KYLE W. KAHAN
JUAN M. RODRIGUEZ
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**


MEMORANDUM OF POINTS AND AUTHORITIES....................................1

I. INTRODUCTION.........................................................1

II. STATEMENT OF FACTS..................................................2

A. Defendant's Arrest and Interview.....................................2

B. The DNA Search Warrant Affidavit.....................................3

1. Pre-Interview Facts: the Traffic Stop and Discovery of Firearm and Ammunition..................4

2. Interview Description................................................6

III. ARGUMENT...........................................................6

A. The Search Warrant for Defendant's DNA Was Valid.....................6

1. There was No Omission or Misstatement in the Affidavit...............7

2. In Any Case, Suppression is Not Warranted, As There was More than Adequate Probable Cause in the Affidavit Even Setting Aside the Brief Interview Description..................7

B. Defendant is Not Entitled to Franks Hearing Because He Has Failed to Show Any Alleged Omissions Were Made Knowingly or Recklessly and Were Material................10

1. A Defendant Alleging Material Omissions Faces a Significant Burden..................10

2. Defendant's Allegations Fail to Sustain His Burden of Proving Any Omissions Were Recklessly Made..................12

3. Defendant Cannot Prove that Any Alleged Omissions were Material..................13

C. Detective Barragan Relied in Good Faith on the Validity of the Search Warrant When He Presented It To Defendant and Collected His DNA..................14

IV. CONCLUSION..........................................................15

# TABLE OF AUTHORITIES

## CASES


Bravo v. City of Santa Maria, 665 F.3d 1076 (9th Cir. 2011) .... 8

Ewing v. City of Stockton, 588 F.3d 1218 (9th Cir. 2009) .... 7, 8

Franks v. Delaware, 438 U.S. 154 (1978) .... 10

Illinois v. Gates, 462 U.S. 213 (1983) .... 8

United States v. Burnes, 816 F.2d 1354 (9th Cir. 1987) .... 11

United States v. Chavez-Miranda, 306 F.3d 973 (9th Cir. 2002) .... 11

United States v. Chesher, 678 F.2d 1353 (9th Cir. 1982) .... 10

United States v. DeLeon, 979 F.2d 761 (9th Cir. 1992) .... 8

United States v. Dozier, 844 F.2d 701 (9th Cir. 1988) .... 11

United States v. Fowlie, 24 F.3d 1059 (9th Cir. 1994) .... 14

United States v. Fowlkes, 804 F.3d 954 (9th Cir. 2015) .... 11

United States v. Hammett, 236 F.3d 1054 (9th Cir. 2001) .... 10, 11

United States v. Kyllo, 37 F.3d 526 (9th Cir. 1994) .... 11

United States v. Leon, 468 U.S. 897 (1984) .... 14

United States v. Lococo, 514 F.3d 860 (9th Cir. 2008) .... 11

United States v. Ocampo, 937 F.2d 485 .... 8

United States v. Perdomo, 800 F.2d 916 (9th Cir. 1986) .... 10

## TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION PAGE

United States v. Ruiz, 758 F.3d 1144 (9th Cir. 2014) ....7

United States v. Seybold, 726 F.2d 502 (9th Cir. 1984) ....9

United States v. Tate, 524 F.3d 449 (4th Cir. 2008) ....11

United States v. Wardlow, 951 F.2d 1115 (9th Cir. 1991) ....1

**RULES**

C.D. Cal. L. Cr. R. 12-1.1 ....1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The latest in a series of six motions, including a different motion to suppress, a motion to dismiss, and a motion to exclude prior convictions, defendant -- a felon with a history of firearm, narcotic sales, and evading law enforcement convictions -- now seeks to suppress the DNA evidence collected from his cheek pursuant to a valid search warrant. (Dkt. 57 (the "motion").)[1] That DNA sample from defendant's cheek was later found to match DNA found on the charged firearm in this case.

Defendant alleges that Inglewood Police Department and Task Force Officer Jose Barragan recklessly omitted material facts from the affidavit he authored as part of a search warrant to collect defendant's DNA. Defendant's motion is meritless and should be denied. First, defendant's statement that he requested a lawyer is factually inaccurate, as he never asked for one during the interview. Second, even if this Court were to omit the entire interview from its evaluation of the affidavit, it would not have an impact on the overall probable cause established in the search warrant--all the probable cause in the affidavit detailed facts prior to the interview; the interview itself contained just one possibly inculpatory statement (that defendant was in the rear seat of the vehicle that was stopped) that had no effect on the affidavit's

---

[1] As a procedural matter, the declaration accompanying the motion is not signed by defendant, as the signature line indicates that defendant's signature is "to follow." This violates the Court's Local Rules and justifies the denial of an evidentiary hearing. United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991) (defendant "forfeited his right to a hearing by not properly submitting a declaration"); see also C.D. Cal. L. Cr. R. 12-1.1.

overall probable cause. Indeed, prior to the interview portion, the affidavit lays out, in detail, the facts of the stop, including the suspect vehicle's right rear passenger tossing a firearm out of the adjacent window, the discovery of defendant in the right rear passenger seat, and the recovery of both a loaded Smith & Wesson .380 magazine hidden in front of the right rear passenger seat and the discarded firearm--a Smith & Wesson .380 handgun. Third, defendant is not entitled to a Franks hearing because he has made no showing of any material or intentional omissions in the affidavit. Finally, even if this Court were to disregard the affidavit, Detective Barragan relied in good faith on the approved search warrant to collect defendant's DNA. The Court should deny defendant's motion in its entirety.

## II. STATEMENT OF FACTS

### A. Defendant's Arrest and Interview

On March 20, 2020, defendant, in plain view of law enforcement, tossed a firearm frame and receiver out of a moving vehicle; later, he was found in possession of a loaded, compatible magazine hidden in between the center console and passenger seat, right in front of his seat. Based on the recovery of the firearm and ammunition and defendant's status as a felon, defendant was arrested by Inglewood Police officers for Felon in Possession of a Firearm.

After defendant's arrest, Inglewood Police Department Detective and Task Force Officer Jose Barragan interviewed defendant. (Declaration of Jose Barragan ("Declaration"), at ¶ 5.) As part of the interview, Detective Barragan provided defendant with a Miranda admonishment form and DNA consent form. (Id.; Exhibit A, Miranda Form.) Defendant read and signed the Miranda admonishment form but

refused to sign the DNA consent form. (Declaration, at ¶ 5; Exhibit A.) Detective Barragan explained that he needed defendant's DNA sample and advised defendant of the terms and conditions of his probation, including him being subject to warrantless searches by law enforcement. (Declaration, at ¶ 6.) Defendant again refused to consent to giving his DNA and told Detective Barragan the only way he would provide a sample was through a warrant. (Id.) Defendant did not ask for an attorney. (Id. at ¶ 8; Exhibit B, Search Warrant and Affidavit.) Detective Barragan informed defendant that this would involve writing a report and submitting it to a judge for approval; defendant again refused to consent. (Declaration, at ¶ 6.) During the interview, Detective Barragan never threatened defendant, nor did he say he could take the case federal or threaten to shove a buccal swab down his throat. (Id. at ¶ 9-11.)

Detective Barragan then drafted a search warrant and affidavit to obtain a buccal swab of defendant's DNA, which is described in further detail below. (Id. at ¶ 12.) On March 24, 2020, the Honorable Judge Scott T. Millington of the Superior Court of California – County of Los Angeles approved the search warrant. (Id.) With the warrant in hand, Detective Barragan returned to the Inglewood Police Department jail and presented the approved warrant to defendant. (Id. at ¶ 13.) Detective Barragan then buccal swabbed defendant for his DNA. (Id.)

**B. The DNA Search Warrant Affidavit**

The search warrant affidavit laid out the following facts, which included facts regarding the traffic stop and recovery of the firearm and ammunition, followed by a brief section describing the above interview.

1. Pre-Interview Facts: the Traffic Stop and Discovery of Firearm and Ammunition

With regard to the arrest of defendant itself, the affidavit explained the following: At approximately 9:36 p.m., Inglewood Police Department Officers Wunderlich and Villicana were on assigned patrol on 109th Street in Inglewood, California. (Exhibit B, at p. 4). Officer Villicana observed a red 2007 Infiniti G37 bearing California license plate number 8HSB089 commit two traffic violations. (Id. at pp. 4-5.) Specifically, Officer Villicana saw that the Infiniti's front driver and passenger side windows were tinted in such a way that limited the officers' view into the passenger compartment, in violation of California Vehicle Code Section 26708(c). (Id.) Officer Villicana also saw the Infiniti fail to stop at a stop sign at 109th Street and Doty Avenue, in violation of California Vehicle Code Section 22450(a). (Id.)

Officer Wunderlich activated his police vehicle's forward-facing red lights and siren to conduct a traffic stop. (Id. at 5.) Officer Wunderlich also illuminated his vehicle's front floodlights and activated its spotlight. (Id.) Officer Villicana then saw the Infiniti's right rear passenger window roll down and an arm extend outside of it. (Id.) Officer Villicana then saw the arm discard a black handgun onto the street. (Id.) The handgun hit a parked car on Doty Avenue's east curb line just north of 109th Street. (Id.) Officer Villicana continued to watch the right rear passenger through the now-opened window and did not observe any movement. (Id.)

Officer Wunderlich contacted the driver, Ana Ortiz, while Officer Villicana contacted the right rear passenger, defendant Steven Duarte. (Id.) Because the officers saw the right rear

passenger, Duarte, throw a firearm out of the Infiniti and onto the street, the officers detained both Ortiz and Duarte. (Id.) Officer Villicana notified assisting Inglewood Police Department Officers Thompson and Bobbs of where he observed the firearm land after it was thrown out of the vehicle. (Id.) Officer Bobbs found the firearm in the center of Doty Avenue just north of 109th Street. (Id.) Officer Bobbs photographed the firearm and rendered it safe. (Id.) The firearm was a black, semi-automatic, Smith and Wesson .380 caliber pistol with serial number #EAT2760. (Id.) The firearm's magazine was missing but otherwise appeared to be in good working condition. (Id.)

Meanwhile, Officer Villicana conducted a wants/warrants check on Ortiz and Duarte. (Id. at p. 6.) Officer Villicana learned that Ortiz was on active probation for burglary and that Duarte was on active post-release community supervision. (Id.) He then contacted Los Angeles County Probation and confirmed that Duarte had an active search and seizure condition. (Id.) Officer Wunderlich conducted a probation compliance search of the Infiniti and discovered a Smith and Wesson .380 caliber magazine loaded with six .380 caliber bullets stuffed between the center console and passenger front seat. (Id.) The magazine was located within arm's reach of the rear passenger -- Duarte. (Id.) Officer Wunderlich inserted the magazine into the firearm recovered by Officer Bobbs and discovered that it fit perfectly. (Id.) Both the firearm and magazine were of the same brand and caliber. (Id.) A firearm registration inquiry revealed that the firearm had been reported stolen to the Roseburg Police Department on December 18, 2019. (Id.)

Based on defendant's throwing of a firearm out of the Infiniti, and the location of the loaded magazine just in front of him, Officers Wunderlich and Villicana arrested defendant for multiple felony firearm charges. (Id.)

2. Interview Description

Following the above description of the vehicle stop and arrest, the affidavit continued on to briefly explain the post-arrest interview of defendant. Specifically, the affidavit noted that Detective Barragan read Duarte a department-issued Miranda form, which included defendant's right to remain silent, that anything he said could be used against him in court, that he had the right to an attorney and to have one present during questioning, and that an attorney would be appointed to represent him free of charge if he could not afford one. (Exhibit A; Exhibit B, at p. 7.) Duarte said that he understood his rights and signed and dated the form. (Exhibit A; Exhibit B, at p. 7.) Duarte told Detective Barragan that he had only known Ortiz for a month. (Exhibit B, at p. 7.) Duarte said he was in the vehicle's rear seat but had only been drinking a beer when it was stopped by the police. (Id.) Duarte denied being in possession of any firearm. (Id.) Duarte refused to provide Detective Barragan a DNA sample via a buccal swab. (Id.) Duarte said that the only way he would submit to a DNA sample would be pursuant to a judge's order. (Id.)

**III. ARGUMENT**

**A. The Search Warrant for Defendant's DNA Was Valid**

The Court should reject defendant's attempt to suppress the DNA evidence obtained pursuant to a valid search warrant. "To prevail on a claim that the police procured a warrant through deception, the

party challenging the warrant must show that the affiant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." United States v. Ruiz, 758 F.3d 1144, 1148 (9th Cir. 2014) (citing Ewing v. City of Stockton, 588 F.3d 1218, 1223 (9th Cir. 2009)). The only basis for defendant's challenge is two alleged omissions in the affidavit: (1) defendant's alleged request for a lawyer during his post-arrest interview, and (2) Detective Barragan's alleged coercive behavior toward defendant. As will be explained, there is no factual basis to find that either of those events occurred. Even if the Court were to find that those omissions occurred, the Court must then "consider the effect of [those] omissions." Id.

1. There was No Omission or Misstatement in the Affidavit

Detective Barragan's affidavit in support of the search warrant contained neither an omission nor misstatement. Specifically, defendant did not request an attorney during the interview. (Declaration, at ¶ 8; Exhibit B.) Likewise, at no point did Detective Barragan threaten, either verbally or physically, pressure, badger, or offer to release defendant from custody. (Declaration, at ¶ 9-11.) Detective Barragan's affidavit and declaration, as attached to this motion, provides background on these facts, and shows that defendant's assertions are simply not based in fact.

2. In Any Case, Suppression is Not Warranted, As There was More than Adequate Probable Cause in the Affidavit Even Setting Aside the Brief Interview Description

In any event, even assuming that the search warrant affidavit omitted defendant's request for an attorney, that information was not material to probable cause and it was therefore not a constitutional error. Ruiz, 758 F.3d at 1148. "If the officer omitted facts

required to prevent technically true statements in the affidavit from being misleading, the court determines whether the affidavit, once corrected and supplemented, establishes probable cause." Ewing, 588 F.3d at 1223. "If probable cause remains after amendment, then no constitutional error has occurred." Bravo v. City of Santa Maria, 665 F.3d 1076, 1084 (9th Cir. 2011). The standard for probable cause for a search warrant "is whether, based on common sense considerations, there was a 'fair probability that contraband or evidence of a crime [would] be found in a particular place.'" United States v. DeLeon, 979 F.2d 761, 764 (9th Cir. 1992) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). In short, the magistrate "need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." United States v. Ocampo, 937 F.2d 485, 490 (9th Cir. 1991).

Even supplementing the search warrant affidavit with the two alleged omissions, the affidavit as a whole provided a substantial basis for the state magistrate to find probable cause to issue the search warrant for defendant's DNA sample. The affidavit relayed the following:

(1) the investigating officers' observations of the Infiniti's right rear passenger throwing a black handgun out the window;

(2) the investigating officers' observations and encounter with defendant in the Infiniti's right rear passenger seat;

(3) the recovery of a black, Smith & Wesson .380 caliber semi-automatic handgun frame and receiver with a missing magazine in the area where the investigating officers observed defendant discard the handgun;

(4) the discovery of defendant's active probation and post-release community supervision status, which including a search and seizure condition;

(5) the search of the Infiniti's interior and recovery of a loaded .380 caliber handgun magazine from between the center console and passenger seat and within arm's reach of the rear passenger; and

(6) an investigating officer's conclusion that the magazine and handgun fit perfectly.

The affidavit also set forth Detective Barragan's training and experience, upon which courts may rely. See United States v. Seybold, 726 F.2d 502, 504 (9th Cir. 1984). Taken together, these facts -- which are unchallenged by defendant -- set forth a compelling set of circumstances supporting probable cause for the DNA swab.

At most, the alleged omissions bear on whether the statements that defendant made in his post-arrest interview were voluntary. However, none of defendant's interview statements (which were mostly inculpatory or describing defendant's refusal to provide a DNA sample) were material to probable cause. Defendant contends that the alleged omissions were necessary context for his statement that he would submit to a buccal swab only if a judge orders a DNA sample. (Motion at 7.) Yet, defendant's consent or lack of consent to a DNA sample is simply irrelevant to there was probable cause for a search warrant to be issued for defendant's DNA; if the warrant issued, officers would not need defendant's consent to take a swab.

Thus, even supplementing the search warrant affidavit with the alleged omissions, the rest of the facts in the affidavit alone were more than sufficient to support a finding of probable cause.

Accordingly, this Court should thus uphold the state magistrate's decision to issue the warrant based on the probable cause laid out in the affidavit.

### B. Defendant is Not Entitled to Franks Hearing Because He Has Failed to Show Any Alleged Omissions Were Made Knowingly or Recklessly and Were Material

#### 1. A Defendant Alleging Material Omissions Faces a Significant Burden

The standard under Franks v. Delaware, 438 U.S. 154 (1978) is exceptionally high. To obtain a Franks hearing, defendant bears the burden to prove (1) a "substantial preliminary showing" of a (2) false statement or omission that was (3) knowingly or recklessly, as opposed to negligently, made, and was (4) material, that is, necessary to the probable cause determination. See, e.g., United States v. Perdomo, 800 F.2d 916, 920 (9th Cir. 1986). The defendant bears the burden of proving by a preponderance of the evidence a Franks violation. Franks, 438 U.S. at 171-72.

As the Ninth Circuit has made clear, "the Court in Franks placed special emphasis on the strict requirement of proof, finding that there must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." United States v. Hammett, 236 F.3d 1054, 1058 (9th Cir. 2001) (quotations omitted) (emphasis in original); United States v. Chesher, 678 F.2d 1353, 1360 (9th Cir. 1982) (defendant's showing "cannot be merely conclusory" but instead "must be accompanied by a detailed offer of proof"). This is because Franks "was careful [] to avoid creating a rule which would make evidentiary hearings into an affiant's veracity commonplace, obtainable on a bare allegation of bad faith." Chesher, 678 F.2d at 1360.

The burden on a defendant who invokes Franks on the basis of a purported omission, as opposed to an affirmative misrepresentation, is even higher. See United States v. Burnes, 816 F.2d 1354, 1358 (9th Cir. 1987) ("The mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit."); United States v. Tate, 524 F.3d 449, 454-55 (4th Cir. 2008) ("When relying on an omission, rather than on a false affirmative statement, [defendant's] burden increases yet more [because] an affidavit offered to procure a search warrant cannot be expected to include . . . every piece of information gathered in the course of an investigation.") (citations and quotations omitted). Even a negligent omission does not constitute a Franks violation. United States v. Dozier, 844 F.2d 701, 705 (9th Cir. 1988). Moreover, a defendant must "demonstrate that had there been no omission, the affidavit would have been insufficient to establish probable cause." United States v. Kyllo, 37 F.3d 526, 529 (9th Cir. 1994); United States v. Fowlkes, 804 F.3d 954, 969 (9th Cir. 2015) (defendant must show the affidavit "supplemented by the omissions would not be sufficient to support a finding of probable cause").

It is thus no surprise then that the Ninth Circuit has repeatedly upheld the denial of requests for Franks hearings in cases similar to the one currently before the Court. See United States v. Chavez-Miranda, 306 F.3d 973, 979 (9th Cir. 2002) (defendant's "bare assertion falls short of the preponderance of the evidence that Franks requires"); Hammett, 236 F.3d at 1058 (the "record contains nothing to suggest that the misstatement in the warrant affidavit . . . was made intentionally or recklessly"); United States v. Lococo, 514 F.3d 860, 864-65 (9th Cir. 2008) (as amended)

("Defendants haven't shown that the wiretap application contained false statements or material omissions, so there was no need for a hearing under [Franks]").

2. Defendant's Allegations Fail to Sustain His Burden of Proving Any Omissions Were Recklessly Made

Defendant alleges two omissions from the affidavit: 1) Defendant's request for a lawyer during the March 20, 2020 interview; and 2) allegations that Detective Barragan "continued to badger, cajole, harass, importune and otherwise molest [defendant] to try and get him to consent to the buccal swab." (Motion, at 6.) These alleged omissions fail to present a "substantial preliminary showing" of any omission from the affidavit, let alone that the omissions were made recklessly or were material.

First, there was no omission to begin with. Detective Barragan provided the state magistrate with all the relevant and pertinent facts necessary to establish probable cause. This included facts that were exculpatory and that would detract from probable cause, such as defendant's denial of possessing the firearm and his unwillingness to submit to a DNA swab. Defendant's assertions that Detective Barragan recklessly omitted material facts, including multiple threats, lack any credible support. Detective Barragan did not include any facts related to threats because he did not make any threats. (Declaration, at ¶ 9-11.) Moreover, while Detective Barragan is unable to remember whether defendant requested an attorney, the absence of that information from the affidavit indicates that defendant did not ask for one. (Declaration, at ¶ 8.)

Detective Barragan could not have recklessly or intentionally omitted facts or mislead the magistrate because defendant's

allegations are simply untrue. Moreover, there is no showing of reckless or intentional omission. Even if defendant's allegations were true, there is no evidence or argument that these omissions were made recklessly or intentionally. Indeed, defendant offers no argument explaining how any omissions could be categorized as being done recklessly or intentionally.

3. Defendant Cannot Prove that Any Alleged Omissions were Material

Even if this Court supplemented the affidavit with the alleged omissions, the outcome would remain the same: probable cause to take defendant's DNA. Defendant, without any authority, asserts that these omissions prevented a magistrate from asserting his or her judgment concerning the validity of the warrant. (Motion, at 7.) However, defendant fails to explain how his purported request for an attorney, or Detective Barragan's request for gang-related information, or any subsequent interrogation by Detective Barragan would impact a magistrate's determination on probable cause. At most, the omissions would support the idea that defendant rejected possessing a firearm even under pressure from Detective Barragan; but that denial is already included in the affidavit.

Further, if supplemented into the affidavit, the omissions still do not impact what created the overwhelming probable cause in this case: that defendant was seen tossing a firearm out of a car window and was within an arm's reach of a loaded magazine that fit perfectly into the recovered firearm. In fact, defendant's inculpatory statement placing him in the backseat was already independently included in the affidavit, along with his exculpatory statements. (Exhibit B, at p. 7.) The officers' observations and discoveries are

the probable cause supporting a warrant for defendant's DNA, not anything derived from the interview.

Accordingly, defendant has failed to meet his burden of proving that the alleged omissions were made knowingly or recklessly and that they were material. This Court should thus reject defendant's motion and deny the request to conduct a Franks hearing.

**C. Detective Barragan Relied in Good Faith on the Validity of the Search Warrant When He Presented It To Defendant and Collected His DNA.**

Even assuming, for the sake of argument, that probable cause was lacking -- which it was not -- the evidence gathered in the search is nonetheless admissible because the executing officers relied in good faith on the validity of the search warrant. United States v. Leon, 468 U.S. 897, 918 (1984). Searches conducted pursuant to a warrant "will rarely require any deep inquiry into reasonableness" because a warrant issued by a neutral magistrate "normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." Id. at 922 (citations and quotations omitted). An officer's reliance must be objectively reasonable, but an officer manifests objective good faith so long as the officer does not rely on "an affidavit that is so lacking in indicia of probable cause that official belief in its existence is entirely unreasonable." United States v. Fowlie, 24 F.3d 1059, 1067 (9th Cir. 1994) (citing Leon, 468 U.S. at 923).

Here, Detective Barragan relied on the approved search warrant to retrieve a DNA sample from defendant. (See Declaration, at ¶ 13.) The affidavit set forth sufficient facts establishing a fair probability that defendant was in possession of a firearm and ammunition on March 20, 2020, and that the retrieval of defendant's

DNA sample would assist in determining his guilt. Detective Barragan reasonably acted on the approved warrant to retrieve a DNA sample from defendant. Accordingly, because the affidavit contained at least indicia of probable cause, if not more, Detective Barragan reasonably executed the warrant and retrieved defendant's DNA sample.

## IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion to suppress DNA evidence and request for a Franks hearing.