TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
KYLE W. KAHAN (Cal. Bar No. 298848)
Assistant United States Attorneys
General Crimes Section
     1100/1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0304/2238
     Facsimile: (213) 894-0141
     E-mail:   juan.rodriguez@usdoj.gov
               kyle.kahan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-387-FMO |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF TYLER VILLICANA; DECLARATION OF NICOLAS BOBBS |
| v. | |
| STEVEN DUARTE, | |
| Defendant. | Hearing Date:  August 13, 2021 Hearing Time:  2:00 p.m. Location: Courtroom of the Hon. Fernando M. Olguin |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Juan M. Rodriguez and Kyle W. Kahan, hereby files its Opposition to Defendant STEVEN DUARTE'S Motion to Suppress Evidence. (Docket Entry ("Dkt.") 58.)

//

//

//

This Opposition is based upon the attached memorandum of points and authorities, the declarations of Inglewood Police Department Officers Tyler Villicana and Nicolas Bobbs, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 30, 2021                Respectfully submitted,

                                    TRACY L. WILKISON
                                    Acting United States Attorney

                                    SCOTT M. GARRINGER
                                    Assistant United States Attorney
                                    Chief, Criminal Division


                                     /s/
                                    _____
                                    JUAN M. RODRIGUEZ
                                    KYLE W. KAHAN
                                    Assistant United States Attorneys

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION..................................................1

II.   STATEMENT OF FACTS...........................................2

III.  ARGUMENT.....................................................6

      A.   Officer Villicana Had Reasonable Suspicion to Conduct
           an Investigatory Traffic Stop on Two Bases..............6

      B.   Even If the Stop was Unlawful, IPD Had Independent
           Probable Cause to Search the Vehicle Once IPD Observed
           a Black Firearm Tossed From the Rear Passenger Window
           of the Vehicle.........................................9

      C.   The Firearm Also Cannot Be Suppressed Because
           Defendant Affirmatively Abandoned It Before the
           Traffic Stop..........................................10

      D.   Defendant, as Only a Passenger, Lacks Standing to
           Challenge the Search and Seizure; Further, the Search
           Conditions Independently Justified the Search.........12

IV.   CONCLUSION..................................................16

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

Arizona v. Gant,
   556 U.S. 332 (2009) ............................................. 10

California v. Acevedo,
   500 U.S. 565 (1991) .............................................. 9

California v. Hodari D.,
   499 U.S. 621 (1991) ............................................. 11

Graham v. Connor,
   490 U.S. 386 (1989) .............................................. 9

Heien v. North Carolina,
   574 U.S. 54 (2014) ............................................ 6, 8

Hester v. United States,
   265 U.S. 57 (1924) ............................................. 12

Illinois v. Gates,
   462 U.S. 213 (1983) .............................................. 9

People v. Douglas,
   240 Cal. App. 4th 855 (2015) .................................. 14

People v. Jones,
   231 Cal. App. 4th 1257 (2014) ................................. 14

People v. Schmitz,
   55 Cal. 4th 909 (2012) ........................................ 13

Rakas v. Illinois,
   439 U.S. 128 (1978) ........................................ 12, 13

Samson v. California,
   547 U.S. 843 (2006) ........................................ 14, 15

United States v. Arvizu,
   534 U.S. 266 (2002) .............................................. 7

ii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                             PAGE

United States v. Bautista,

  599 F. App'x 645 (9th Cir. 2015) ..................................15

United States v. Camou,

  773 F.3d 932 (9th Cir. 2014) .....................................10

United States v. Cella,

  568 F.2d 1266 (9th Cir. 1977) ....................................12

United States v. Choudhry,

  461 F.3d 1097 (9th Cir. 2006) .....................................7

United States v. Cortez,

  449 U.S. 411 (1981) ............................................6, 7

United States v. Ewing,

  638 F.3d 1226 (9th Cir. 2011) ....................................10

United States v. Garza,

  980 F.2d 546 (9th Cir. 1992) .....................................10

United States v. King,

  244 F.3d 736 (9th Cir.2001) .......................................8

United States v. Lopez-Soto,

  205 F.3d 1101 (9th Cir. 2000) .....................................7

United States v. McClendon,

  713 F.3d 1211 (9th Cir. 2013) ....................................11

United States v. McCloud,

  No. 4:17-CR-00025-JD-1, 2018 WL 3009097 (N.D. Cal. June 15, 2018) 16

United States v. McLaughlin,

  525 F.2d 517 (9th Cir. 1975) .....................................12

United States v. Miller,

  694 F. App'x 609 (9th Cir. 2017) .............................14, 15

iii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                        PAGE

United States v. Nordling,
  804 F.2d 1466 (9th Cir. 1986) ...................................11

United States v. Pratt,
  699 F. App'x 656 (9th Cir. 2017) ................................ 8

United States v. Pulliam,
  405 F.3d 782 (9th Cir. 2005) ...................................13

United States v. Ross,
  456 U.S. 798 (1982) ............................................10

United States v. Smith,
  790 F.2d 789 (9th Cir. 1986) ...................................10

United States v. Stephens,
  206 F.3d 914 (9th Cir. 2000) ...................................11

United States v. Twilley,
  222 F.3d 1092 (9th Cir. 2000) ..................................13

United States v. Valdes-Vega,
  738 F.3d 1074 (9th Cir. 2013) ................................... 7

United States v. Wardlow,
  951 F.2d 1115 (9th Cir. 1991) ..........................2, 3, 4, 5

Whren v. United States,
  517 U.S. 806 (1996) ............................................. 7

Statutes

18 U.S.C. § 922(d)(1)............................................. 6

18 U.S.C. § 922(g)(1)............................................. 6

Cal. Penal Code § 3453............................................13

California Penal Code § 3453(f)...................................15

California Vehicle Code 22450(a)............................1, 3, 6

### TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                          PAGE

California Vehicle Code 26708.........................................3

California Vehicle Code 26708(C)...............................1, 3, 6

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

On March 20, 2020, convicted felon STEVEN DUARTE ("defendant") was on active post-release community supervision and was a passenger in driver Ana Ortiz's vehicle. Ana Ortiz ("Ortiz"), who was then on probation with full active search conditions of person and property, failed to stop at a stop sign, in violation of California Vehicle Code 22450(a); further, her vehicle had a separate equipment violation – tinted front windows limiting an officer's view into the passenger compartment of the vehicle, in violation of California Vehicle Code 26708(C). Inglewood Police Department ("IPD") Officer Tyler Villicana ("Officer Villicana") and his partner, Officer Troy Wunderlich ("Officer Wunderlich"), observed both of these California Vehicle Code violations while on patrol in Inglewood.

Officer Wunderlich then activated the police vehicle's forward facing red lights, siren, floodlights, and spotlight in an attempt to conduct a traffic stop for the above-mentioned traffic and equipment violations. Upon doing so, as the vehicle was still in motion, Officer Villicana observed the right rear window roll down and an arm extend out the window and discard a black firearm. Ultimately, the vehicle yielded to law enforcement. Upon yielding, the officers saw Ortiz was in the driver's seat and defendant was in the right rear passenger seat (where the firearm had been discarded). Officer Wunderlich searched the vehicle pursuant to a probation compliance search, pursuant to the driver's probation status, and located six rounds of .380 caliber ammunition. Later DNA testing revealed defendant's DNA on both the abandoned firearm and the ammunition in the car.

1   On July 23, 2021, defendant filed a Motion to Suppress Evidence.

2   (Defendant's Motion to Suppress Evidence ("Def. Mot."), Dkt. 58.) [1]

3   In the Motion, defendant argued that IPD officers lacked reasonable

4   suspicion to conduct the traffic stop and, as a result, the firearm

5   discarded from the moving vehicle and the ammunition recovered from

6   inside the vehicle "must be suppressed."  (Def. Mot., at 9.)

7   Defendant is wrong.  First, IPD Officer Villicana had reasonable

8   suspicion to initiate a traffic stop after seeing that the vehicle

9   was in violation of the law prohibiting tinted windows, and after

10   seeing the vehicle commit a moving traffic violation (failing to stop

11   at a stop sign).  Second, after observing a black firearm being

12   tossed from the vehicle, IPD certainly had independent probable cause

13   to search the vehicle.  Third, defendant lacks any expectation of

14   privacy and Fourth Amendment standing to challenge its seizure

15   because he affirmatively abandoned the firearm by tossing it out of

16   the vehicle.  Fourth, defendant, as only a passenger of the car – and

17   particularly a passenger on post release community supervision

18   ("PRCS") status – lacks standing to challenge the search and seizure

19   of the car, and the resulting discovery of the ammunition.

20   **II.   STATEMENT OF FACTS**

21   On March 20, 2020, IPD Officers Villicana, Wunderlich, and Bobbs

22   were on duty together in a black unmarked IPD patrol vehicle in

23

24

25   ──────────────

26   [1] As a procedural matter, the declaration accompanying the
     motion is not signed by defendant, as the signature line indicates
     that defendant's signature is "to follow."  This violates the Court's

27   Local Rules and justifies the denial of an evidentiary hearing.
     United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991)

28   (defendant "forfeited his right to a hearing by not properly
     submitting a declaration"); see also C.D. Cal. L. Cr. R. 12-1.1.

1    Inglewood, California.  Officer Wunderlich was driving.  (Declaration

2    of Tyler Villicana ("Villicana Decl."), at ¶ 3.)

3        At approximately 9:36 p.m., Officers Wunderlich and Villicana

4    were driving West on 109th Street (towards Prairie Avenue) when

5    Officer Villicana observed a red 2007 Infiniti G37 (CA Lic# 8HSB089)

6    turn East on 109th Street (from Prairie Avenue).  (Id., at ¶ 4.)  As

7    the vehicle drove by them, Officer Villicana noticed the front

8    windows were rolled up and tinted and the tint limited his view into

9    the passenger compartment of the vehicle, in violation of California

10   Vehicle Code 26708(C).[2]  (Id.)  Officer Wunderlich turned the vehicle

11   around and trailed the vehicle East on 109th Street towards Doty

12   Avenue.  At the intersection of 109th Street and Doty Avenue, the

13   vehicle turned North onto Doty Avenue and failed to stop at the stop

14   sign, in violation of California Vehicle Code 22450(a).  (Id.)

15   Officer Wunderlich then activated the police car's forward facing red

16   lights, siren, and illuminated the front floodlights and spot light

17   to conduct a traffic stop for the above mentioned equipment and

18   traffic violation.  (Id.)

19

20

---

21        [2] California Vehicle Code 26708 states "[n]otwithstanding
     subdivision (a) [which prohibits objects or materials placed,
22   displayed, installed, affixed, or applied upon the windshield or side
     or rear windows], transparent material may be installed, affixed, or
23   applied to the topmost portion of the windshield if the following
     conditions apply:(1) [t]he bottom edge of the material is at least 29
24   inches above the undepressed driver's seat when measured from a point
     five inches in front of the bottom of the backrest with the driver's
25   seat in its rearmost and lowermost position with the vehicle on a
     level surface;(2) [t]he material is not red or amber in color; (3)
26   [t]here is no opaque lettering on the material and any other
     lettering does not affect primary colors or distort vision through
27   the windshield;(4) [t]he material does not reflect sunlight or
     headlight glare into the eyes of occupants of oncoming or following
28   vehicles to any greater extent than the windshield without the
     material."

1   Once the lights were illuminated, Officer Villicana observed the

2   right rear window roll down and an arm extend out the window and

3   throw a black firearm.  (Id., at ¶ 6.)  The firearm hit a vehicle

4   parked on the east curb line of Doty Avenue, just north of 109th

5   Street.  (Id.)  Officer Villicana contacted assisting units,

6   including Officer Bobbs, to notify them of the location of the

7   firearm.  (Id.)  Officer Villicana maintained visual of the right

8   rear passenger, through the open rear window, and did not observe the

9   right rear passenger move from the right rear seat.  (Id.)

10   The vehicle yielded on 108th Street, just East of Doty Avenue.

11   (Id., at ¶ 7.)  Officer Wunderlich contacted the driver, who was

12   later identified as Ana Ortiz, and Officer Villicana contacted the

13   right rear passenger, Steven Duarte.  (Id.)  Based on Officer

14   Villicana's observations of the right rear passenger throwing a

15   firearm out of the window, Ortiz and defendant were detained pending

16   further investigation. There were no other passengers in the vehicle.

17   (Id.)

18   Officer Villicana recognized defendant from his previous

19   contacts with defendant (although he did not see defendant's face in

20   this instance before the officers stopped the car).  Officer

21   Villicana was also aware defendant was previously arrested for

22   firearm related charges and was on PRCS.  (Id., at ¶ 8.)  To confirm,

23   Officer Villicana conducted a wants/warrants inquiry on Ortiz and

24   defendant.  (Id.)  The inquiry revealed Ortiz was on active probation

25   for Burglary with a discharge date of April 6, 2021.  (Id.)  In

26   addition, the inquiry confirmed defendant's active PRCS status.

27   (Id.)  Officer Villicana also contacted Los Angeles County Probation

28

4

to confirm, and indeed did confirm, defendant's full search and seizure conditions. (Id.)

Given that Ortiz was on active probation, Officer Wunderlich conducted a probation compliance search of the vehicle and located a Smith and Wesson .380 caliber magazine with six .380 caliber bullets loaded within it. (Id., at ¶ 9.) The magazine was stuffed between the center console and the passenger front seat, towards the rear of the seat. (Id.) Based on where the magazine was located, Officer Villicana determined that the magazine was located within arm's reach of the rear passenger, which was defendant. (Id.)

Officer Bobbs ultimately arrived to the east curb line of Doty Avenue, just north of 109th Street, the location where Officer Villicana observed the firearm thrown out of the vehicle. (Declaration of N. Bobbs ("Bobbs Decl."), ¶ 4.) Officer Bobbs located the firearm in the center of the street, on Doty Avenue just north of 109th Street, and proceeded to photograph the firearm and render it safe. The firearm was a black, semi-automatic, Smith and Wesson .380 caliber pistol, serial number #EAT2760. (Id., at ¶ 5.) The magazine was missing from the magazine well. (Id.)

Officer Bobbs then transported the firearm to Officers Villicana and Wunderlich, both of whom were at 108th Street, just East of Doty Avenue. (Id.) There, Officer Wunderlich inserted the magazine, which was recovered from inside the vehicle, into the magazine well of the firearm. (Id.) The magazine fit perfectly into the firearm frame. (Id.) Further, the firearm and magazine were of the same brand and caliber. (Id.)

Subsequent DNA testing of the firearm and ammunition revealed that defendant's DNA on both the abandoned firearm and the ammunition in the vehicle.  (See Dkt. 72.)

Following the traffic stop, on September 1, 2020, a federal grand jury indicted defendant for being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1), and for forfeiture of the seized firearm and ammunition under 18 U.S.C. § 922(d)(1).  (Dkt. 1.)

**III. ARGUMENT**

**A.  Officer Villicana Had Reasonable Suspicion to Conduct an Investigatory Traffic Stop on Two Bases**

Defendant's primary argument, that there was not reasonable suspicion to stop the car, is factually unsupportable.  Officer Villicana saw that the vehicle had an equipment violation, namely, a violation of California Vehicle Code Section 26708(C) (window tint impermissibly limiting view into the vehicle.  He also saw the vehicle commit a moving traffic violation, namely, a violation of California Vehicle Code Section 22450(a) (failing to stop at a stop sign).  These two separate violations gave Villicana reasonable suspicion to conduct an investigatory traffic stop.

The Fourth Amendment only requires reasonable suspicion in the context of investigative traffic stops.  Heien v. North Carolina, 574 U.S. 54, 60 (2014).  Reasonable suspicion is "a particularized and objective basis for suspecting the particular person stopped of criminal activity."  United States v. Cortez, 449 U.S. 411, 412 (1981).  It requires "that the totality of the circumstances — the whole picture — must be taken into account."  Id., at 417.  "This process allows officers to draw on their own experience and

specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." United States v. Arvizu, 534 U.S. 266, 273 (2002) (quotation marks omitted). It also precludes a "divide-and-conquer analysis" because even though each of the suspect's "acts was perhaps innocent in itself . . . taken together, they [may] warrant[ ] further investigation." Id., at 274 (quotation marks omitted). As the Supreme Court has repeatedly emphasized, reasonable suspicion "does not deal with hard certainties, but with probabilities." Cortez, 449 U.S. at 418. "The reasonable-suspicion standard is not a particularly high threshold to reach." United States v. Valdes-Vega, 738 F.3d 1074, 1078 (9th Cir. 2013).

A traffic stop is therefore justified when "specific, articulable facts ... together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." United States v. Choudhry, 461 F.3d 1097, 1100 (9th Cir. 2006). Indeed, suspicion that a "[a] traffic violation [occurred] is [alone] sufficient to establish reasonable suspicion." Id. (citations omitted); see Whren v. United States, 517 U.S. 806, 810 (1996) ("decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred").[3]

---

[3] Although Whren uses the term "probable cause," subsequent cases make clear that the Supreme Court was not announcing a change to the standards required to perform a traffic stop, but rather was merely referencing the facts of the case at hand, wherein the parties agreed that the police had probable cause to conduct the stop in issue. See, e.g., United States v. Lopez-Soto, 205 F.3d 1101, 1104-05 (9th Cir. 2000) ("We do not believe the Court in Whren intended to change this settled rule" that only reasonable suspicion is required in the context of investigative traffic stops).

1    Here, on the night of March 20, 2020, Officer Villicana saw the

2    vehicle defendant was in commit two vehicle code violations.  One

3    violation was sufficient to justify the investigatory stop, let alone

4    two.

5    In contesting the lawfulness of the stop, defendant submits a

6    declaration on his own behalf, asserting that "the front passenger

7    windows were rolled down at the time making it impossible to view

8    whether or not the windows were tinted" and that "[the vehicle] came

9    to a complete stop at the stop-sign on corner of W. 109th St. and

10   Doty Ave."  (Def. Mot., Ex. 1, Declaration of Steven Duarte, ¶¶ 7,

11   16.)

12   In judging the weight to place on defendant's self-serving

13   statements, this Court should consider the fact that defendant's

14   assertion that the windows rolled down is contradicted by photographs

15   showing that the front windows were up and tinted, while the rear

16   back window was open which allowed defendant to throw out the

17   firearm.  (Villicana Decl., Ex. 1.)

18   Second, even if the stop was based on a reasonable mistake of

19   fact, the stop is lawful.  Heien, 574 U.S. at 60-61 (denying motion

20   to suppress evidence resulting from an investigatory stop based on

21   reasonable mistake of law) cf. United States v. King, 244 F.3d 736,

22   741-42 (9th Cir.2001)(holding "a belief based on a mistaken

23   understanding of the law cannot constitute the reasonable suspicion

24   required for a constitutional traffic stop"); United States v. Pratt,

25   699 F. App'x 656, 657 (9th Cir. 2017) (denying motion to suppress

26   evidence resulting from an investigatory stop based on reasonable

27   mistake of fact).  In an attempt to suppress the evidence, the

28   defendant incorrectly asserts that if Officer Villicana's

8

observations were incorrect then the stop was "based on a mistake of law." (Def. Mot. at 7:22-24.)  At worst, the stop was based on a reasonable mistake of fact (<u>i.e.</u>, whether the tint was impermissible and whether Ortiz properly stopped at the stop sign). <u>Graham v. Connor</u>, 490 U.S. 386, 396-97 (1989) ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving").  Accordingly, this Court should deny defendant's Motion.

**B.   Even If the Stop was Unlawful, IPD Had Independent Probable Cause to Search the Vehicle Once IPD Observed a Black Firearm Tossed From the Rear Passenger Window of the Vehicle**

Even if IPD did not have reasonable suspicion to conduct an investigatory stop, the search of the vehicle was justified and lawful because IPD had probable cause to search the vehicle once the officer observed a black firearm tossed from the vehicle.[4]

The automobile exception to the Fourth Amendment warrant requirement grants police officers authority to search a vehicle, as well as all containers found inside, if they have probable cause to believe that the vehicle contains evidence of a crime. <u>California v. Acevedo</u>, 500 U.S. 565, 580 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained.").  Probable cause is defined as a "fair probability that contraband or evidence of a crime will be found in a particular place." <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983).  Whether probable cause exists is based on

---

[4] Notably, defendant does not address this argument anywhere in his motion.

9

the "totality of the circumstances" known to the arresting officers. United States v. Smith, 790 F.2d 789, 792 (9th Cir. 1986). Moreover, "law enforcement officers may draw upon their experience and expertise in determining the existence of probable cause." United States v. Garza, 980 F.2d 546, 550 (9th Cir. 1992).

Notably, the automobile exception is broader than the exception for searches incident to arrest, letting officers search "any area of the vehicle in which the evidence might be found" and "for evidence relevant to offenses other than the offense of arrest." United States v. Camou, 773 F.3d 932, 941 (9th Cir. 2014) (citing Arizona v. Gant, 556 U.S. 332, 347 (2009)). In other words, where police have probable cause to search a car, they may search all compartments, containers, and packages within the vehicle. United States v. Ross, 456 U.S. 798, 821 n.28 (1982) (probable cause to search entire vehicle for drugs justified search of packages in trunk of vehicle); United States v. Ewing, 638 F.3d 1226, 1233 (9th Cir. 2011) (probable cause to search vehicle for drugs permitted officers to unfold and examine currency).

Here, after Officer Villicana observed defendant toss a firearm out of the vehicle, Officer Villicana had probable cause to arrest defendant and probable cause to believe the vehicle contained further evidence of criminal activity. Accordingly, for this second independent reason, this Court should deny defendant's Motion.

### C. The Firearm Also Cannot Be Suppressed Because Defendant Affirmatively Abandoned It Before the Traffic Stop

Defendant also argues that if the Court finds that the investigatory stop was unlawful and suppresses the ammunition, it must suppress the firearm pursuant to the exclusionary rule. (Def.

10

Mot. at 9:11-22.)  Defendant is, again, incorrect.  Defendant affirmatively and unquestionably abandoned the firearm by throwing it out the car window; it is black letter law that he therefore relinquished any Fourth Amendment interest in it.

Defendants who "voluntarily abandon property lack standing to complain of its search or seizure."  United States v. Nordling, 804 F.2d 1466, 1469 (9th Cir. 1986).  The abandonment inquiry focuses on "whether, through words, acts, or other objective indications, a person has relinquished a reasonable expectation of privacy in the property at the time of the search or seizure."  Id., at 1469.  The determination is based on "the totality of circumstances, and two important factors are denial of ownership and physical relinquishment of the property."  Id.  For the government to prevail on a theory of abandonment, the abandonment must be voluntary and not the product of an unlawful seizure.  See United States v. Stephens, 206 F.3d 914, 917 (9th Cir. 2000).  If a defendant abandons contraband while fleeing from police but before he is caught, because he has not submitted to officers' show of authority at time of abandonment, contraband is not "fruit" of seizure as no seizure has occurred.  California v. Hodari D., 499 U.S. 621 (1991).

Here, defendant voluntarily tossed the firearm before the vehicle yielded to IPD.  Defendant thus forfeited any expectation of privacy and has no Fourth Amendment standing to challenge its seizure.  United States v. McClendon, 713 F.3d 1211, 1214 (9th Cir. 2013) (holding that defendant was not seized prior to tossing firearm and, thus, lost his ability to challenge the admissibility of the firearm as a fruit of an illegal seizure); California v. Hodari D., 499 U.S. 621, 625-29 (1991) (holding that a person is not seized for

1    purposes of the Fourth Amendment when he or she fails to submit to a

2    law enforcement officer's show of authority and is not physically

3    touched by the officers); see also Hester v. United States, 265 U.S.

4    57, 58-59 (1924) (holding that officers' search of items that

5    defendant threw away when "[o]ne of the officers pursued" did not

6    violate Fourth Amendment because "[t]he defendant's own acts, and

7    those of his associates, disclosed the [items]—and there was no

8    seizure in the sense of the law when the officers examined the

9    contents of each after it had been abandoned"); United States v.

10   Cella, 568 F.2d 1266, 1283 (9th Cir. 1977) ("The requisite intent [to

11   abandon] has been held to be present by such acts as: throwing

12   contraband out of a moving vehicle when pursued by police."); United

13   States v. McLaughlin, 525 F.2d 517, 519-20 (9th Cir. 1975) (holding

14   that defendant abandoned marijuana thrown from truck during attempted

15   traffic stop).

16       Accordingly, for this third independent reason, this Court

17   should deny defendant's Motion.

18       **D.   Defendant, as Only a Passenger, Lacks Standing to Challenge
             the Search and Seizure; Further, the Search Conditions
19           Independently Justified the Search**

20       Finally, there is no dispute that defendant was only a passenger

21   in the vehicle.  Indeed, defendant's unsigned declaration explicitly

22   concedes this point. (Def. Mot., Ex. 1 at ¶ 1.)

23       "A person who is aggrieved by an illegal search and seizure only

24   through the introduction of damaging evidence secured by a search of

25   a third person's premises or property has not had any of his Fourth

26   Amendment rights infringed." Rakas v. Illinois, 439 U.S. 128, 134

27   (1978).  In other words, a defendant does not have Fourth Amendment

28   standing to challenge the search of a vehicle in which he was a mere

passenger with no possessory interest in the car.  United States v. Pulliam, 405 F.3d 782, 789 (9th Cir. 2005).

Here, as a passenger with no possessory interest in the car, defendant "has no reasonable expectation of privacy in a car that would permit [his] Fourth Amendment challenge to a search of the car."  United States v. Twilley, 222 F.3d 1092, 1095 (9th Cir. 2000).  Defendant was seated in the rear passenger seat and was being driven by Ortiz, the car's registered owner.

Moreover, defendant is also be precluded from claiming "any legitimate expectation of privacy in the ... area [between the front seat and center console] of the car in which [he was] merely [a] passenger" as this is an "area[ ] in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy."  Rakas, 439 U.S. at 148-49.  Thus, defendant lacks standing to challenge the search and seizure.

Further, defendant also lacks standing because Officers Wunderlich and Villicana were aware of defendant's PRCS search conditions and Ortiz's probation search conditions at the time of the search.  The California Supreme Court has held that an officer who is aware of a vehicle passenger's parole status may conduct a warrantless search not only of the seat that he or she occupied, but also any area inside the vehicle where the parolee could have placed or discarded an item.  People v. Schmitz, 55 Cal. 4th 909, 927-28 (2012); see Cal. Penal Code § 3453 (f) ("The person, and his or her residence and possessions, shall be subject to search at any time of the day or night, with or without a warrant, by an agent of the supervising county agency or by a peace officer").  California regulations require that all PRCS supervisees receive written

notification of their search conditions via CDCR Form 1515-CS, which includes an explicit search condition stating: "You, your residence, and any other property under your control may be searched without a warrant day or night by an agent of the supervising county, any peace officer, or law enforcement officer."  Cal. Code Regs. tit. 15, § 3075.2(b)(5)(A) (incorporating CDCR Form 1515-CS by reference) (emphasis added); United States v. Miller, 694 F. App'x 609, 610 (9th Cir. 2017)("Upon being released under PRCS, inmates are required to sign CDCR Form 1515-CS, which advises them of [the PRCS] search condition.")  The statutory PRCS search terms are mandatory.  See People v. Jones, 231 Cal. App. 4th 1257, 1266-67 n.8 (2014) ("PRCS conditions, like parole conditions, are not a matter of choice, and there is no voluntary consent to the conditions"); People v. Douglas, 240 Cal. App. 4th 855, 864 (2015) ("A PRCS search condition . . . is imposed on all individuals subject to PRCS").

Because PRCS is treated like parole, a defendant subject to PRCS searches enjoys even less of a privacy interest than a probationer. See Miller, 694 F. App'x at 610 ("California appellate courts have likened PRCS to parole . . . On the continuum of state-imposed punishments, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment")(citing Douglas 240 Cal. App. 4th at 864; Jones, 231 Cal. App. 4th at 1266; Samson v. California, 547 U.S. 843, 850 (2006) (holding that suspicionless search of a California parolee did not violate the Fourth Amendment)).

Miller is particularly instructive.  In Miller, a defendant convicted of felon in possession of a firearm appealed the district court's denial of his motion to suppress evidence.  There, as here,

14

the defendant was subject to PRCS.  And there, as here, the relevant
contraband was discovered in a search of a vehicle that defendant did
not own, when officers searched the vehicle after knowing that
defendant was subject to PRCS.  See Miller, 694 F. App'x at 610.

In rejecting Miller's appeal, the Ninth Circuit held that "the
officers' search of the [vehicle] in which Miller was sitting when
the officers encountered him was reasonable, because the governmental
interests in searching Miller's seat in the vehicle outweighed his
expectation of privacy."  Id. at 609.  The Court further noted that
"Miller had a low expectation of privacy[,]" and that "[a]s a person
on [PRCS], Miller was subject to a mandatory search condition that
permitted the officers to perform a warrantless search of his
possessions."  Id. at 610.  The Court concluded: "A warrantless
search condition alone, even in the absence of reasonable suspicion
of criminal wrongdoing, is enough to justify a warrantless search of
a parolee." Id. at 610 (citing Samson, 547 U.S. at 850).  And, the
Court concluded that because the PRCS search terms authorized search
of property under Miller's control, even if he did not own it.  Id.

Here, there is no dispute that defendant was on PRCS on March
20, 2020.  Nor is there a dispute that Officer Villicana knew about
defendant's PRCS status before he searched the area of the vehicle
defendant was sitting in.  Moreover, the ammunition was found within
arms' reach of defendant, who was seated in the rear passenger seat.
Thus, Officer Villicana's search of the area of the vehicle defendant
was sitting in was lawful pursuant to California Penal Code § 3453(f)
and the Fourth Amendment.  See United States v. Bautista, 599 F.
App'x 645, 646 (9th Cir. 2015) ("The search of the car was valid
because the car constituted property under [parolee's] control");

15

1 <u>United States v. McCloud</u>, No. 4:17-CR-00025-JD-1, 2018 WL 3009097, at
2 *4 (N.D. Cal. June 15, 2018) ("The officers' objectively reasonable
3 belief that McCloud was [on PRCS] subject to a suspicionless search
4 condition is an alternative sufficient reason to deny the suppression
5 motion"). Accordingly, for this fourth independent reason, this
6 Court should deny defendant's Motion.

7 **IV.  CONCLUSION**

8 For the foregoing reasons, the government respectfully requests
9 that this Court deny defendant's Motion to Suppress.