TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
Assistant United States Attorney
KYLE W. KAHAN (Cal. Bar No. 298848)
Special Assistant United States Attorney
General Crimes Section
     1100/1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0304/2238
     Facsimile: (213) 894-0141
     E-mail:   juan.rodriguez@usdoj.gov
               kyle.kahan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-387-FMO |
|---|---|
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR DISCOVERY |
| v. | Hearing Date: August 13, 2021 |
| STEVEN DUARTE, | Hearing Time: 2:00 p.m. |
| | Location: Courtroom of the Hon. Fernando M. Olguin |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Juan M. Rodriguez and Special Assistant United States Attorney Kyle W. Kahan, hereby files its response to STEVEN DUARTE's ("defendant") motion for discovery. (Dkt. 55.)

//

This response is based upon the attached response, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 30, 2021                    Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

*/s/*
KYLE W. KAHAN
Special Assistant United States Attorney
JUAN M. RODRIGUEZ
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## I. INTRODUCTION

In his motion, defendant makes very serious allegations that the government has engaged in "flagrant" Brady violations and seeks the extraordinary remedy of dismissal without identifying a single discovery violation. (Dkt. 55 (the "motion").) Rather, his motion seeks generalized production of Brady materials and lists generic categories of discovery that a defendant in any case may be entitled to, without specifying any materials the government has purportedly not disclosed. This boilerplate motion should be denied. Nowhere in his motion does defendant specify a single piece of evidence that the government has failed to turn over to defense, let alone any Brady material. In fact, he cannot point to any such deficiency, as the government has been diligent, proactive, and responsive to each of defendant's requests throughout this case. Indeed, the government has turned over approximately 1159 pages of discovery to date, comprised of reports, photographs, certified court records, and information regarding defendant's criminal history, expert materials, and five audio files. The government also has proactively asked the defense what, if any, additional discovery it still seeks. Throughout this case, the government has complied, and will continue to comply with its discovery obligations, including the preservation of any and all evidence. There is certainly no basis for a finding of any Brady or discovery violation, nor any basis for the extreme, and unwarranted, request for dismissal of the indictment.

## II. STATUS OF DISCOVERY

On September 1, 2020, defendant was indicted on a single-count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). (Dkt. 1.) On November 13, 2020,

3

this Court ordered the government to comply with its obligation to produce exculpatory evidence under Brady and its progeny. On December 29, 2020, defendant requested discovery, pursuant to Fed. R. Crim P. 12(b)(2)(B) and 26.2, Brady, and all other applicable rules and statutes, and further specifically requested: (1) defendant's statements; (2) reports of investigation, notes, texts, emails, posts, etc.; (3) reports of scientific tests or examinations; (4) Brady material; (5) evidence seized; (6) preservation of evidence; (7) inspection of tangible objects; (8) evidence of bias or motive; (9) impeachment evidence; (10) evidence of criminal investigation of any government witness; (11) evidence affecting perception, recollection, ability to communicate, or truth telling; (12) names of any witnesses favorable to the defendant; (13) other statements relevant to the defendant; (14) Jencks Act material; (15) Giglio information; (16) law enforcement personnel files; (17) expert disclosures; and (18) expert summaries.

On November 23, 2020, the government made its initial production of approximately 115 pages, consisting of reports, certified court records, and photographs. The government supplemented those productions with additional discovery on April 22, May 4, May 11, May 25, June 3, July 14, July 15, July 16, July 20, July 22, July 23, and July 28, 2021. These disclosures included, among other materials, laboratory reports, notes, and data, search warrants and affidavits, a Miranda consent form, prior conviction records, dispatch audio, interview reports of expert witnesses as well as their curriculum vitae, credentials, and their anticipated expert opinions at trial, photographs, and Henthorn disclosures.

Nonetheless, on July 23, 2021, defendant filed a motion seeking all of the aforementioned discovery and all other discovery defendant is entitled to. (Dkt. 55.) This motion listed the exact same categories that defense counsel had requested in his December 29, 2020 letter to the government.

In an abundance of caution, following the filing of defendant's motion, the government proactively reached out to defense counsel to inquire whether there was, in fact, any outstanding discovery that defense counsel requested. On July 28, 2021, defendant requested additional discovery, specifically any body or dash camera video/audio recording of defendant's incident, stop, detention, arrest, and/or interview. Notably, the government had already produced approximately 975 pages and photos to defense, prior to this request. However, the government, consistent with its obligations, did further due diligence as to this requested discovery and ultimately found six additional photographs to disclose. On July 28, 2021, the government produced the additional six photographs related to a previously produced report, none of which are exculpatory.

**III. ARGUMENT**

    **A. There Has Been No Discovery Violation, Let Alone a Brady Violation**

There is no question that the government has complied, and will continue to comply, with all of its discovery obligations under the Federal Rules of Criminal Procedure, federal statute, and relevant case law. Indeed, to date, the government has produced approximately 1159 pages of discovery to defense counsel, including, but not limited to, reports, photographs, certified court records, and information regarding defendant's criminal history, as well as expert

5

1 materials, five audio files, and a CD containing DNA laboratory data.
2 The government has not only complied with all of its discovery
3 obligations, but has voluntarily and solely as a matter of discretion
4 exceeded the scope of discovery mandated by the Federal Rules of
5 Criminal Procedure, federal statute, or relevant case law.
6     Nowhere in defendant's motion does he acknowledge the
7 government's prior discovery productions, or explain how those
8 productions could be construed as deficient in any way.  Nor can he;
9 the government has responded appropriately to each of defense
10 counsel's request and, following the filing of the motion, even
11 reached out to defense to seek clarification on what, if any, types
12 of discovery defendant believed he still needed.
13     Contrary to defendant's request, the government is under no
14 obligation to disclose the entirety of "law enforcement personnel
15 files."  Rather, the government is only required to "disclose
16 information favorable to the defense that meets the appropriate
17 standard of materiality."  United States v. Cadet, 727 F.2d 1453,
18 1467-68 (9th Cir. 1984) (finding that it was an abuse of discretion
19 for the district court to order entire personnel files be produced to
20 the defense for inspection).  The government has interviewed its law
21 enforcement witnesses and consulted with agencies in possession of
22 potential impeachment information for examination of personnel files.
23 Based off these discussions, on July 16, 2021, the government,
24 pursuant to its obligations under Brady and Henthorn and this Court's
25 deadlines, disclosed materials related to a government witness that
26 meet the appropriate standard of materiality.  On July 23, 2021 and

July 30, 2021, the government produced supplemental materials to the July 16, 2021 disclosure.[1]

Likewise, the government is under no obligation to produce Jencks statements until after that witness has testified on direct examination in the jury trial. 18 U.S.C. § 3500(a). Nevertheless, the government has produced the statements and reports of all prospective government witnesses, with the exception of the case agent and another officer's notes taken during interviews to obtain declarations used in the government's oppositions to defendant's motion to suppress evidence and motion to suppress DNA evidence. (Dkts. 72, 77.) Because those declarations have been produced and contain all the substance of the officers' notes, they are not statements under either Jencks or Rule 26.2. See United States v. Williams, 291 F.3d 1180, 1191 (9th Cir. 2002) (production of notes not required when substance of notes preserved in formal memorandum that is produced).

Defendant also has requested a broad list of discovery, including handwritten notes, electronic messages such as emails or text messages, investigator notes, prosecution reports,[2] and law enforcement audio and video footage of the incident. The government is not aware of any of these materials in its possession that it has not already disclosed. Moreover, some of the materials, such as handwritten notes of defendant's interview or body camera footage, simply do not exist.

---

[1] The government will be conducting a manual review of law enforcement witnesses' personnel files on August 5, 2021.

[2] The government is not entirely sure what defendant means by "prosecution reports." The government is under no obligation to turn over any internal work product, including prosecution memorandums.

1    In regard to defendant's request to inspect the evidence, the
2 government has previously offered defendant the opportunity to
3 inspect the evidence at least seven times between April and June
4 2021.  Defendant has yet to accept the government's offer to inspect
5 the evidence.  Defendant has also not made any request for his expert
6 witness to review the evidence or conduct any examinations on any of
7 the physical evidence.
8    Finally, defendant has requested the name of any witness who
9 made statements concerning the crime or about defendant's involvement
10 that could impact defendant's guilt.  The government is not aware of
11 any additional witnesses in this case.  Any witnesses involved in
12 this case are included in the incident reports or expert witness
13 reports, all of which have been disclosed to defendant.
14    **B.    There Is No Basis for Dismissal**
15    Despite failing to identify any specific evidence or category of
16 evidence that the government had failed to produce, defendant seeks
17 dismissal of the indictment with prejudice.  (Motion, at 3.)
18 Specifically, defendant alleges, without any factual support, that
19 the "prosecution failed to safeguard the protections of the Due
20 Process Protections Act . . . [and] defendant asks this [C]ourt to
21 dismiss the indictment with prejudice."  (Mot. at 3.)  The government
22 has complied with the scope of discovery mandated by the Federal
23 Rules of Criminal Procedure, federal statute, and relevant case law.
24 Accordingly, there is simply no basis for this extreme remedy.
25    A district court may dismiss an indictment for misconduct either
26 for a due process violation or under a court's supervisory powers.
27 United States v. Chapman, 524 F.3d 1073, 1084 (9th Cir. 2008); United
28 States v. Kohring, 637 F.3d 895, 912-13 (9th Cir. 2011).

In order to dismiss an indictment for a due process violation, a court must find such "outrageous government conduct" that it resulted in a due process violation. Id at 913. This is an incredibly high standard and is limited to "extreme cases in which the government's conduct violates fundamental fairness and is 'shocking to the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment.'" United States v. Gurolla, 333 F.3d 944, 950 (9th Cir. 2003) (citing United States v. Russell, 411 U.S. 423, 431-32 (1973)). Here, given that there has been no government misconduct (and none even specifically alleged in the motion), there is no due process violation and thus no basis for this Court to dismiss the indictment.

**IV.  CONCLUSION**

Defendant does not allege any particular discovery violation, nor can he; nor does he allege any factual basis supporting dismissal of the indictment in this case. Accordingly, given that the government has abided by, and will continue to abide by, Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, defendant's requests should be denied.[3]

---

[3] Notably, the government has filed a Rule 5(f) declaration regarding its Brady and discovery obligations. (See Dkt. 74.)

9