TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JUAN M. RODRIGUEZ (Cal. Bar No. 313284)
KYLE W. KAHAN (Cal. Bar No. 298848)
Assistant United States Attorneys
General Crimes Section
    1100/1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0304/2238
    Facsimile: (213) 894-0141
    E-mail:    juan.rodriguez@usdoj.gov
             kyle.kahan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-387-FMO |
|---|---|
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial Date: August 24, 2021<br>Trial Time: 9:00 a.m. |
| STEVEN DUARTE, | Location: Courtroom of the<br>Hon. Fernando M. |
| Defendant. | Olguin |

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Juan M. Rodriguez and Kyle W. Kahan, hereby files its Trial Memorandum.

//

//

//

//

//

//

The government respectfully reserves the right to supplement or modify this memorandum as may be appropriate.

Dated: July 30, 2021          Respectfully submitted,

                              TRACY L. WILKISON
                              Acting United States Attorney

                              SCOTT M. GARRINGER
                              Assistant United States Attorney
                              Chief, Criminal Division


                                 /s/
                              JUAN M. RODRIGUEZ
                              KYLE W. KAHAN
                              Assistant United States Attorneys

                              Attorneys for Plaintiff
                              UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                              PAGE

TABLE OF AUTHORITIES..................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES....................................1

I.    INTRODUCTION.....................................................1

II.   STATUS OF CASE..................................................1

      A.    Indictment................................................1

      B.    Discovery.................................................1

      C.    Trial.....................................................2

      D.    Defendant.................................................2

      E.    Government Witnesses......................................2

      F.    Stipulations..............................................3

      G.    Pretrial Motions..........................................3

III.  THE CHARGED OFFENSE.............................................4

      A.    Governing Statute.........................................4

      B.    Elements of 18 U.S.C. § 922(g)(1).........................4

            1.    Mens Rea............................................5

            2.    Possession..........................................6

            3.    Interstate Commerce.................................7

IV.   STATEMENT OF FACTS..............................................7

V.    LEGAL AND EVIDENTIARY ISSUES....................................9

      A.    Authentication and Foundation.............................9

      B.    Physical Evidence........................................10

      C.    Expert Opinion Testimony.................................11

      D.    Lay Law Enforcement Testimony............................13

      E.    Cross-Examination of Defendant...........................14

      F.    Photographs..............................................15

      G.    Maps and Diagrams........................................15

**<u>TABLE OF CONTENTS  (CONTINUED)</u>**

<u>DESCRIPTION</u>                                                                              <u>PAGE</u>

     H.   Affirmative Defenses....................................16

     I.   Reciprocal Defenses.....................................16

VI.  CONCLUSION.................................................17

# **TABLE OF AUTHORITIES**

DESCRIPTION.............................................. PAGE(S)

Lucero v. Stewart,

   892 F.2d 52 (9th Cir. 1989) ..................................... 15

Ohler v. United States,

   529 U.S. 753 (2000) ............................................ 14

Rehaif v. United States,

   139 S. Ct. 2191 (2019) .......................................... 5

Richardson v. United States,

   526 U.S. 813 (1999) ............................................. 6

United States v. Andersson,

   813 F.2d 1450 (9th Cir. 1987) .................................. 11

United States v. Barragan,

   871 F.3d 689 (9th Cir. 2017) ................................... 13

United States v. Black,

   767 F.2d 1334 (9th Cir. 1985) .................................. 14

United States v. Carrasco,

   257 F.3d 1045 (9th Cir. 2001) ................................... 6

United States v. Chu Kong Yin,

   935 F.2d 990 (9th Cir. 1991) ................................... 10

United States v. Cuozzo,

   962 F.2d 945 (9th Cir. 1992) ................................... 14

United States v. DeJohn,

   368 F.3d 533 (6th Cir. 2004) .................................... 6

United States v. Dunn,

   946 F.2d 615 (9th Cir. 1991) ................................... 12

iii

1

**TABLE OF AUTHORITIES (CONTINUED)**

2    DESCRIPTION                                                          PAGE

3    United States v. Gadson,

4      763 F.3d 1189 (9th Cir. 2014) ................................. 10, 13

5    United States v. Harrington,

6      923 F.2d 1371 (9th Cir. 1991) ................................. 10, 11

7    United States v. Johnson,

8      459 F.3d 990 (9th Cir. 2006) ................................... 5, 6

9    United States v. May,

10     622 F.2d 1000 (9th Cir. 1980) ................................... 15

11   United States v. Miranda-Uriarte,

12     649 F.2d 1345 (9th Cir. 1981) ................................... 14

13   United States v. Moreno,

14     243 F.3d 551 (9th Cir. 2000) ................................... 13

15   United States v. Oaxaca,

16     569 F.2d 518 (9th Cir. 1978) ................................... 14

17   United States v. Pena-Gutierrez,

18     222 F.3d 1080 (9th Cir. 2000) ................................... 15

19   United States v. Pino-Noriega,

20     189 F.3d 1089 (9th Cir. 1999) ................................... 13

21   United States v. Pollock,

22     757 F.3d 582 (7th Cir. 2014) .................................... 6

23   United States v. Rousseau,

24     257 F.3d 925 (9th Cir. 2001) .................................... 7

25   United States v. Sherwood,

26     98 F.3d 402 (9th Cir. 1996) .................................... 12

27   United States v. Stearns,

28     550 F.2d 1167 (9th Cir. 1977) ................................... 14

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

United States v. Stone,

  706 F.3d 1145 (9th Cir. 2013) ...................................... 5

United States v. Thongsy,

  577 F.3d 1036 (9th Cir. 2009) ...................................... 6

United States v. Verrecchia,

  196 F.3d 294 (1st Cir. 1999) ....................................... 6

United States v. VonWillie,

  59 F.3d 922 (9th Cir. 1995) ....................................... 13

United States v. Wilson,

  437 F.3d 616 (7th Cir. 2006) ....................................... 5

United States v. Young,

  248 F.3d 260 (4th Cir. 2001) ...................................... 16

Statutes

18 U.S.C. § 922(g)(1) ........................................... 1, 4, 6

18 U.S.C. § 924(d)(1) .............................................. 1

28 U.S.C. § 2461(c) ................................................ 1

California Vehicle Code 22450(a) ................................... 7

California Vehicle Code 26708(C) ................................... 7

Rules

Fed. R. Crim. P. 16(b)(1) ......................................... 16

Fed. R. Crim. P. 16(c) ............................................ 16

Fed. R. Crim. P. 16(d)(2)(C) ...................................... 16

Fed. R. Crim. P. 16(g) ............................................ 11

Fed. R. Evid. 611(a) .............................................. 15

Fed. R. Evid. 702 ................................................. 11

Fed. R. Evid. 703 ................................................. 11

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                    PAGE

Fed. R. Evid. 704.................................................11

Fed. R. Evid. 901.................................................10

Federal Rules of Criminal Procedure 12.1..........................16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On March 20, 2020, Inglewood Police Department ("IPD") officers observed STEVEN DUARTE ("defendant"), a five-time convicted felon, throw a firearm from the rear passenger seat of a moving vehicle. Approximately one block from the traffic stop, IPD officers found the firearm that defendant had thrown, a Smith and Wesson .380 caliber pistol.  Additionally, after pulling the vehicle over, the officers confirmed defendant was on court-ordered supervision with search conditions.  In a search of the vehicle, the officers found a Smith and Wesson magazine with six .380 caliber bullets loaded within it. A subsequent test revealed that the magazine in the car fit inside the recovered pistol.  For these acts, defendant is now charged with felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

### II.   STATUS OF CASE

#### A.    Indictment

On September 1, 2020, a grand jury returned a single-count indictment charging defendant with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).  (Dkt. 1.)  The indictment also includes forfeiture allegations pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c).

#### B.    Discovery

The government has produced approximately 965 pages of discovery to defense counsel, including reports, photographs, certified court records, and information regarding defendant's criminal history, as well as expert materials, and five audio files.  As of the date of this Trial Memorandum, defense counsel has not produced any

reciprocal discovery despite the government requesting reciprocal discovery on November 23, 2020, April 22, April 30, May 4, May 11, May 25, June 3, July 14, July 15, July 16, July 20, July 22, July 23, and July 28, 2021.

### C. Trial

Trial Date: A jury trial in this matter is scheduled to begin on August 24, 2021, at 9:00 a.m., before this Court.[1]

Estimated Time: The government anticipates that its case-in-chief will last approximately two days.

### D. Defendant

Defendant is in custody pending trial.

### E. Government Witnesses

The government estimates that it will call seven witnesses in its case-in-chief: (1) IPD Officer Tyler Villacana ("Officer Villicana"); (2) IPD Officer Troy Wunderlich ("Officer Wunderlich"); (3) IPD Officer Nicolas Bobbs ("Officer Bobbs"); (4) IPD Officer Celeste Hewson; (5) IPD Detective Jose Barragan; (6) Federal Bureau of Investigation ("FBI") Special Agent ("SA") Daniel Lewis; and (7) Los Angeles County Sheriff's Department Senior Criminalist Luis Olmos.[2]

On July 14, 2021, the defense disclosed its intent to call Blain M. Kern as a DNA expert. However, despite government request,

---

[1] On July 27, 2021, the government filed an ex parte application to continue the trial from August 24, 2021 to August 31, 2021, or, in the alternative, to transfer to case to another Court with availability. (Dkt. 66.) Defendant objected to both forms of requested relief. (Dkt. 67.) The Court denied the government's ex parte. (Dkt. 69.)

[2] This represents the government's current witness list. The government reserves the right to not call any of these witnesses or to call additional witnesses, if it deems necessary at trial.

2

defense has failed to disclose any discovery related to this expert outside of his curriculum vitae, and has failed to provide his expert's opinion(s) and basis for his opinion(s).

**F.    Stipulations**

To date, defendant has declined to enter into any factual stipulations, including about his prior convictions and status as a felon, and defendant's knowledge of his felony status.  Accordingly, the government has filed a motion in limine to admit defendant's prior convictions substantively.  (Dkt. 52.)

Defendant has also declined to stipulate that the firearm and ammunition in this case were manufactured outside of the state of California and, therefore, were shipped or transported in interstate or foreign commerce to California.  Accordingly, and as specified further in this memorandum, the government intends to call an expert witness on this subject, which the government timely noticed.

The parties are meeting and conferring about additional possible stipulations regarding the admissibility of the government's exhibits.[3]

**G.    Pretrial Motions**

The government has filed three motions in limine to: (1) admit defendant's post-release community supervision status as inextricably intertwined with the charged offense and as evidence of motive, intent, and plan under Rule 404(b) (Dkt. 51); (2) admit evidence of defendant's prior convictions substantively and for impeachment

---

[3] The government provided defendant with a copy of the government's pre-trial exhibit stipulation on July 19, 2021 and a modified version, adding one document, on July 23, 2021.  As of July 23, 2021, when the exhibit list was required to be filed, the government had not heard back from defendant regarding any stipulations or objections.

purposes under Federal Rule of Evidence 609 (Dkt. 52); and (3) exclude improper impeachment evidence against government witnesses, which was filed under seal (Dkt. 53).

Defendant has filed five pretrial motions: (1) for release of Brady materials; (2) to dismiss on alleged Speedy Trial Violations; (3) to suppress DNA evidence; (4) to suppress evidence, namely the firearm, magazine, and ammunition; and (5) to suppress statements. (Dkts. 55-59.)  The government filed a response, three oppositions, and a statement of non-opposition, respectively, to each of defendant's motions.  (Dkts. 71, 72, 76, 77, 78.)

The Court has set a final status conference and motions hearing on August 13, 2021, at 2:00 p.m., to address these motions.

**III. THE CHARGED OFFENSE**

**A.   Governing Statute**

Title 18, United States Code, Section 922(g)(1) provides, in pertinent part, that "[i]t shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . [to] possess in or affecting commerce, any firearm or ammunition."

**B.   Elements of 18 U.S.C. § 922(g)(1)**

For defendant to be found guilty of being a felon in possession of a firearm and/or ammunition, the government must prove the following:

(1) defendant knowingly possessed a firearm and/or ammunition;

(2) the firearm and/or ammunition had been shipped or transported from one state to another or between a foreign nation and the United States;

(3) at the time the defendant possessed the firearm and/or

4

1  ammunition, the defendant had been convicted of a crime punishable by

2  imprisonment for a term exceeding one year; and

3       (4) at the time the defendant possessed the firearm and/or

4  ammunition, the defendant knew he had been convicted of a crime

5  punishable by imprisonment for a term exceeding one year.

6  Ninth Cir. Manual of Model Crim. Jury Instr. No. 8.65A (2010 ed.)

7  (modified in accordance with Rehaif v. United States, 139 S. Ct. 2191

8  (2019)).

9            1.   Mens Rea

10      Section 922(g) requires that a defendant knowingly possessed a

11 firearm and/or ammunition and that defendant knew he belonged to a

12 relevant category of persons barred from possessing a firearm and/or

13 ammunition.  Rehaif, 139 S. Ct. at 2200.  An act is done "knowingly"

14 if the defendant is aware of the act and does not act through

15 ignorance, mistake, or accident.  See Ninth Cir. Manual of Model

16 Crim. Jury Instr. No. 5.6 (2010 ed.).  Defendant need not know that

17 the firearm and/or ammunition traveled in or affected interstate

18 commerce.  United States v. Stone, 706 F.3d 1145, 1146 (9th Cir.

19 2013).

20      Moreover, because Section 922(g)(1) focuses on the status of the

21 defendant, and not on his state of mind at the time of the offense,

22 the government need not prove "bad motive or intent."  United States

23 v. Johnson, 459 F.3d 990, 996 (9th Cir. 2006).  In other words, a

24 defendant violates Section 922(g)(1) even if the defendant believes

25 "his gun [or ammunition] possession was reasonable and in good faith,

26 and thus without intention to violate the law."  Id.  Defendant's

27 "knowledge of the legality or illegality of his conduct is irrelevant

28 to his conviction on the felon-in-possession charge."  United States

1  v. Wilson, 437 F.3d 616, 620 (7th Cir. 2006).

2          2.   Possession

3      A defendant has "possession" of something if he "knows

4  of its presence and has physical control of it," or knows of its

5  presence and "has the power and intention to control it." United

6  States v. Thongsy, 577 F.3d 1036, 1040-41 (9th Cir. 2009) (italics

7  omitted); Ninth Cir. Manual of Model Crim. Jury Instr. No. 3.17 (2010

8  ed.).  Even a short period of possession may support a conviction

9  under 18 U.S.C. § 922(g)(1).  "The statute explicitly punishes

10 'possession,' not retention, and thus in no way invites investigation

11 into . . . how long that possession lasted." Johnson, 459 F.3d at

12 996 (brackets and internal quotation marks omitted).  Finally,

13 "[m]ore than one person can be in possession of something if each

14 knows of its presence and has the power and intention to control it."

15 United States v. Carrasco, 257 F.3d 1045, 1050 (9th Cir. 2001).

16     While jury unanimity is required for each principal element of a

17 crime, "'a federal jury need not always decide unanimously which of

18 several possible sets of underlying brute facts make up a particular

19 element, say, which of several possible means the defendant used to

20 commit an element of the crime.'" Richardson v. United States, 526

21 U.S. 813, 817 (1999).  Thus, "the particular firearm [or ammunition]

22 possessed is not an element of the crime under § 922(g), but instead

23 the means used to satisfy the element of "any firearm [or

24 ammunition]." United States v. DeJohn, 368 F.3d 533, 542 (6th Cir.

25 2004); United States v. Pollock, 757 F.3d 582, 587-88 (7th Cir. 2014)

26 (same); United States v. Verrecchia, 196 F.3d 294, 298-301 (1st Cir.

27 1999) (same).

28

### 3.   Interstate Commerce

To meet the jurisdictional element, "there need be only a minimal nexus that the firearm [or ammunition] ha[s] been, at some time, in interstate commerce."  United States v. Rousseau, 257 F.3d 925, 933 (9th Cir. 2001).  "[A] past connection to interstate commerce is sufficient"; the firearm or ammunition does not have to have been recently moved in or recently affected interstate commerce. Id.

**IV.   STATEMENT OF FACTS**

The government expects that the evidence at trial will establish the following facts, among others:

On March 20, 2020, IPD Officers Villicana, Wunderlich, and Bobbs were on duty in Inglewood.  Officers Wunderlich and Villicana were in the same black unmarked IPD patrol vehicle, which was driven by Officer Wunderlich.

At approximately 9:36 p.m., Officers Wunderlich and Villicana were driving West on 109th Street (towards Prairie Avenue) when Officer Villicana observed a red 2007 Infiniti G37 (CA License # 8HSB089) turn East on 109th Street (from Prairie Avenue).  As the vehicle drove by them, Officer Villicana noticed the front windows were tinted and the tint limited his view into the passenger compartment of the vehicle, in violation of California Vehicle Code 26708(C) (preventing the use of obstructive transparent materials on a vehicle's windshield).  Officer Wunderlich turned the vehicle around and trailed the vehicle East on 109th Street towards Doty Avenue.  At the intersection of 109th Street and Doty Avenue, the vehicle turned North onto Doty Avenue and failed to stop at the stop sign, in violation of California Vehicle Code 22450(a) (requiring a

vehicle approaching a stop sign to stop at a limit line before entering the crosswalk).  Officer Wunderlich then activated the forward-facing red lights, siren, and illuminated the front floodlights and the spot light to conduct a traffic stop for the above mentioned equipment and traffic violations.

Once the lights were illuminated, Officer Villicana observed the right rear window roll down and an arm extend out the window and throw a black firearm.  The firearm hit a vehicle parked on the east curb line of Doty Avenue, just north of 109th Street.  Officer Villicana contacted assisting units, including Officer Bobbs, and notified them of the location of the firearm.  Officer Villicana maintained visual of the right rear passenger through the open rear window, and did not observe the right rear passenger move from the right rear seat.

The vehicle yielded to the officers on 108th Street, just East of Doty Avenue. Officer Wunderlich contacted the driver, who was later identified as Ana Ortiz, and Officer Villicana contacted the sole passenger, defendant, in the right rear passenger seat.  Based on Officer Villicana's observations of the right rear passenger throwing a firearm out of the window, Ortiz and defendant were detained pending further investigation.  There were no other passengers in the vehicle.

Officer Villicana recognized defendant from his previous contacts with defendant.  From those contacts, Officer Villicana was aware that defendant had been  previously arrested for firearm-related charges and was on active post-release community supervision. Officer Villicana then conducted a wants/warrants inquiry on Ortiz, the driver, and defendant.  The inquiry revealed Ortiz was on active

probation for burglary.  In addition, the inquiry confirmed defendant's active post release community supervision status. Officer Villicana also contacted Los Angeles County Probation to confirm, and indeed did confirm, defendant's search and seizure conditions.  Given that Ortiz was on active probation, Officer Wunderlich conducted a probation compliance search of the vehicle and located a Smith and Wesson .380 caliber magazine with six .380 caliber bullets loaded within it.  The magazine was stuffed between the center console and the passenger front seat, towards the rear of the seat.  Officer Villicana noted that the magazine was located within arm's reach of defendant.

Officer Bobbs, alongside other officers, arrived on the east curb line of Doty Avenue, just north of 109th Street, where Officer Villicana saw the firearm thrown.  There, Officer Bobbs found a black, semi-automatic, Smith and Wesson .380 caliber pistol frame and receiver, serial number #EAT2760, with a missing magazine, in the center of Doty Avenue just north of 109th Street.  Officer Bobbs photographed the firearm and rendered it safe.

Officer Bobbs then transported the firearm to 108th Street, just East of Doty Avenue.  There, Officer Wunderlich inserted the recovered magazine into the recovered firearm frame's magazine well. The magazine fit perfectly into the frame; further, the firearm and magazine were of the same brand and caliber.

V. **LEGAL AND EVIDENTIARY ISSUES**

A. **Authentication and Foundation**

Federal Rule of Evidence 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a

finding that the matter in question is what its proponent claims."

Under Rule 901(a), evidence should be admitted, despite any

challenge, once the government makes a prima facie showing of

authenticity or identification so "that a reasonable juror could find

in favor of authenticity or identification . . . [because] the

probative force of the evidence offered is, ultimately, an issue for

the jury." United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th

Cir. 1991) (citations and internal quotation marks omitted); see also

United States v. Gadson, 763 F.3d 1189, 1204 (9th Cir. 2014).

### B.   Physical Evidence

The government will seek to introduce, with the Court's

permission, the physical firearm, magazine, and ammunition.  To be

admitted into evidence, physical evidence must be in "'substantially

the same condition' as when they were seized." United States v.

Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991) (citations omitted);

see also Fed. R. Evid. 901.  The Court may admit the evidence if

there is a "reasonable probability the article has not been changed

in important respects." Id.  Here, the firearm,[4] magazine, and

ammunition are in substantially the same condition they were in at

the time of seizure, which is supported by both the physical

appearance of the items and the photographs taken shortly after the

items were seized.

In establishing chain of custody as to an item of physical

evidence, the government is not required to call all persons who may

have come into contact with the evidence. Harrington, 923 F.2d at

---

[4] The firearm will be rendered safe at all times and accompanied
by the case agent, Jose Barragan, or another officer from the
Inglewood Police Department.

1374.  Moreover, a presumption of regularity exists in the handling

of exhibits by public officials.  Id.  Therefore, to the extent that

alleged or actual gaps in the chain of custody exist, such gaps go to

the weight of the evidence rather than to its admissibility.  Id.

Here, Officers Villicana, Wunderlich, and Bobbs were the seizing

officers for the items seized during the traffic stop; Bobbs will be

the witness introducing the firearm and Wunderlich will be the

witness introducing the magazine and ammunition.  This is sufficient

for "a reasonable juror [to] find the evidence had not been altered,"

which is all that is necessary to establish chain of custody.  Id.

### C.   Expert Opinion Testimony

A qualified expert witness may provide opinion testimony on a

fact at issue if specialized knowledge will assist the trier of fact.

Fed. R. Evid. 702.  The Court has broad discretion to determine

whether to admit expert testimony.  United States v. Andersson, 813

F.2d 1450, 1458 (9th Cir. 1987).  Expert opinion may be based on

hearsay or facts not in evidence, where the facts or data relied upon

are of the type reasonably relied upon by experts in the field.  Fed.

R. Evid. 703.  An expert may also provide opinion testimony even if

it embraces an ultimate issue to be decided by the trier of fact.

Fed. R. Evid. 704.

The government has timely designated and intends to call two

experts at trial: Los Angeles County Sheriff's Department Senior

Criminalist Luis Olmos and FBI SA Daniel Lewis.  The government has

noticed their testimony as expert testimony, and has provided defense

counsel summaries of the testimony they are expected to give.[5]  Both are qualified as experts to testify and provide their expert opinions.

Senior Criminalist Olmos will testify regarding the examination of the firearm for DNA evidence in this case, the comparison to the DNA profile for defendant, which was obtained pursuant to a warrant, and his analysis of the DNA results and testing in this case. Defendant has not objected to the introduction of Senior Criminalist Olmos's testimony or his qualifications as an expert.

SA Lewis will testify that the recovered firearm is Smith and Wesson model Bodyguard 380, .380 caliber pistol bearing serial number EAT2760, and the recovered ammunition is Blazer .380 Auto.  He will further testify that the firearm and ammunition are a "firearm" and "ammunition" as the terms are defined in Title 18, United States Code, Chapter 44, Section 921(a).  SA Lewis will also testify that the firearm and ammunition identified in the indictment were manufactured outside the state of California and traveled in, and had an effect on, interstate or foreign commerce, by virtue of their recovery in California.  Defendant has not objected to the introduction of SA Lewis' testimony or his qualifications as an expert.

The government should be permitted to introduce expert opinion testimony from both experts.  This testimony will assist the trier of fact in understanding the evidence and determining facts at issue. See United States v. Dunn, 946 F.2d 615, 618 (9th Cir. 1991) ("The

_____

[5] The government provided defendant notice pursuant to Fed. R. Crim. P. 16(g) on July 16, 2021.  The government provided the expert witnesses' opinions, bases and reasons for the opinions, and qualifications.

Ninth Circuit allows expert testimony regarding the identity of the manufacturer to establish that a gun travelled in interstate commerce before the defendant received it."); United States v. Sherwood, 98 F.3d 402, 408 (9th Cir. 1996) (affirming admission of fingerprint expert's testimony).

### D.   Lay Law Enforcement Testimony

Federal Rule of Evidence 701 "permits a lay witness to give opinion testimony as long as the opinion is (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." United States v. Pino-Noriega, 189 F.3d 1089, 1097 (9th Cir. 1999) (quotation marks omitted).  Lay opinion testimony by law enforcement officers is admissible and not necessarily expert testimony within the meaning of Rule 16(a)(1)(G).  See United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995); see also United States v. Barragan, 871 F.3d 689, 703-704 (9th Cir. 2017); Gadson, 763 F.3d at 1209 ("[A]n investigator who has accumulated months or even years of experience with the events, places, and individuals involved in an investigation necessarily draws on that knowledge when testifying; indeed, it is those out-of-court experiences that make the witness's testimony helpful to the jury.").  Rule 16 notice is not required for lay witnesses.  United States v. Moreno, 243 F.3d 551 (9th Cir. 2000) ("Rule 16 notice was not required, however, because this testimony was properly admitted as the opinion of a lay witness.").  The remaining five witnesses are testifying as lay witnesses.

13

1

        **E.    Cross-Examination of Defendant**

2        The government is unaware whether defendant intends to testify

3   at trial.  If defendant does testify, the government should be

4   permitted to fully cross-examine him.  Specifically, should defendant

5   testify, the government reserves the right to cross-examine him

6   regarding his prior convictions to: (1) impeach defendant's

7   "character for truthfulness" and (2) to refute defendant's

8   contention, if any, that he is unfamiliar with firearms, as more

9   fully explain in the government's motion in limine.  (Dkt. 52).

10       As explained in the government's motion in limine, a defendant

11  who testifies at trial waives his right against self-incrimination

12  and subjects himself to cross-examination concerning all matters

13  reasonably related to the subject matter of his testimony.  See,

14  e.g., Ohler v. United States, 529 U.S. 753, 759 (2000) ("It has long

15  been held that a defendant who takes the stand in his own behalf

16  cannot then claim the privilege against cross-examination on matters

17  reasonably related to the subject matter of his direct

18  examination.").  A defendant has no right to avoid cross-examination

19  on matters that call into question his claim of innocence.  United

20  States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981).

21  The scope of a defendant's waiver is co-extensive with the scope of

22  relevant cross-examination.  United States v. Cuozzo, 962 F.2d 945,

23  948 (9th Cir. 1992); United States v. Black, 767 F.2d 1334, 1341 (9th

24  Cir. 1985) ("What the defendant actually discusses on direct does not

25  determine the extent of permissible cross-examination or his waiver.

26  Rather, the inquiry is whether 'the government's questions are

27  reasonably related' to the subjects covered by the defendant's

28  testimony.").

14

### F.   Photographs

Photographs are generally admissible as evidence.  See United States v. Stearns, 550 F.2d 1167, 1171 (9th Cir. 1977) (photographs of crime scene admissible).  Photographs should be admitted so long as they fairly and accurately represent the event or object in question.  United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978).  Also, "[p]hotographs are admissible as substantive as well as illustrative evidence."  United States v. May, 622 F.2d 1000, 1007 (9th Cir. 1980).  Photographs may be authenticated by a witness who "identif[ies] the scene itself [in the photograph] and its coordinates in time and place."  See Lucero v. Stewart, 892 F.2d 52, 55 (9th Cir. 1989) (internal quotation marks omitted).

Here, at trial, Officers Villicana, Wunderlich, and Bobbs will authenticate many of the photographs, including photographs of the firearm, ammunition, magazine, and vehicle, that they took at the scene of the traffic stop.  These photographs of relevant evidence are admissible at trial.

### G.   Maps and Diagrams

The government intends to admit a screenshot of Google Maps Street View of the location of the traffic stop through one of the law enforcement officers with knowledge of the area to assist the trier of fact.  Diagrams are admissible under Federal Rule of Evidence 611(a), which permits a Court to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."  Fed. R. Evid. 611(a).  The Ninth

1  Circuit has held that diagrams used to explain location and

2  positioning are properly admitted into evidence.  United States v.

3  Pena-Gutierrez, 222 F.3d 1080, 1090-91 (9th Cir. 2000) (holding, in

4  an alien smuggling case, that court correctly admitted diagram

5  showing where alien was found in car).

6  **H.  Affirmative Defenses**

7       Defendant has not given notice of his intent to rely on any

8  defense of entrapment, mental incapacity, alibi, or any other

9  affirmative defense, despite the government's request for such notice

10  of intent.  Therefore, to the extent defendant may attempt to rely on

11  such a defense, the government reserves the right to object and to

12  move to preclude the defendant from asserting such a defense.

13  **I.  Reciprocal Defenses**

14       Rule 16 requires defendant to produce to the government three

15  categories of materials that he intends to introduce as evidence at

16  trial: (1) documents and tangible objects; (2) reports of any

17  examinations or tests; and (3) expert witness disclosures.  Fed. R.

18  Crim. P. 16(b)(1).  Rule 16 imposes on defendants a continuing duty

19  to disclose these categories of materials.  Fed. R. Crim. P. 16(c).

20  In those circumstances where a party fails to produce discovery as

21  required by Rule 16, the rule empowers the district court to

22  "prohibit the party from introducing evidence not disclosed, or it

23  may enter such other order as it deems just under the circumstances."

24  Fed. R. Crim. P. 16(d)(2)(C), (D).

25       Despite the government's requests, defendant has not produced

26  any reciprocal discovery.  Accordingly, to the extent that there

27  exists reciprocal discovery to which the government is entitled under

28  Federal Rules of Criminal Procedure 12.1, 12.2, 16(b), or 26.2 that

defendant has not produced, the government reserves the right to seek to have such materials excluded at trial.  <u>See</u> <u>United States v. Young</u>, 248 F.3d 260, 269-70 (4th Cir. 2001) (upholding exclusion under Rule 16 of audiotape evidence defendant did not produce in pretrial discovery where defendant sought to introduce audiotape on cross-examination of government witness not for impeachment purposes, but as substantive "evidence in chief" that someone else committed the crime).

**VI.  CONCLUSION**

The government respectfully reserves the right to supplement or modify this Trial Memorandum as may be appropriate.