Oliver P. Cleary [CSB#168440]
Attorney at Law
468 N. Camden Dr., Suite 200
Beverly Hills, CA 90210
T: (424) 324-8874
Email: olivercleary@gmail.com

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br><br>STEVEN DUARTE<br><br>　　　　　　Defendant. | Case No. 20-cr-00387-AB<br><br>DEFENDANT'S SENTENCING POSITION PAPER & EXHIBITS IN SUPPORT<br><br>Date: 1/27/22<br>Time: 1:00 PM<br>Courtroom: 7B |

I.

SENTENCING REQUEST

　　Defendant, STEVEN DUARTE, by and through his counsel of record, Oliver P. Cleary, hereby submits the following sentencing position paper and exhibits in support of his request for a custodial sentence of no more than 38-months.  This request is based on the relevant § 3553(A) factors, defendant's Extraordinary Mental and Emotional Conditions (§ 5H1.3), history of employment and family responsibility, and, Overstated Criminal History.

II.

COURT SHOULD DEPART UNDER USSG § 5H1.3 BASED ON DUARTE'S
EXTRAORDINARY MENTAL AND EMOTIONAL CONDITIONS

　　In 2010, the Commission amended USSG § 5H1.3 to relax departures slightly for

1
Sentencing Position

mental and emotional conditions by saying that these factors "may be relevant in determining whether a departure is warranted" if they are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines.[1] In United States v. Walter, 256 F.3d 891 (9th Cir. 2001), the Court of Appeals reversed a denial of a downward departure holding the district court should have considered departing under § 5H1.3 because the facts of this case appeared to be "the type of extraordinary circumstances that may justify consideration of the psychological effects of childhood abuse." Here, DUARTE's physical and emotional conditions are relevant when, as here, it shows extraordinary childhood circumstances which resulted in lasting effects.

DUARTE was only 8-years old when his father was fatally shot by an Inglewood Police Officer. (PSR ¶57). To this day, DUARTE suffers from Posttraumatic Stress Disorder[2] (PTSD) resulting from witnessing his father being shot to death by police. (*See* Exhibit 1, *filed under seal,* p. 5 of 13, ¶4) DUARTE's mother, Ms. Maria Lourdes Ceja-Mata, recalls the events of that tragic day having a devastating effect on Mr. DUARTE. Although he did not see the shooting occur, he was able to hear the gunshot and see his father staggering out of the back yard before he collapsed on the ground. Id. Ms. Ceja-Mata can attest to a significant change in Mr. DUARTE's personality as a result of his father's death. Ms. Ceja-Mata recalls Steven constantly asking about his father and having nightmares where he would wake up screaming. He became more withdrawn and started experiencing behavioral problems at school. Id.

Following his father's death, DUARTE's mother "did all she could" to support him and his siblings while dealing with the loss of their father. (PSR ¶ 58) As early childhood trauma is present to an usual degree in this instant offense, a departure on this basis is appropriate. United States v. Reinoso, 350 F.3d 51 (2d Cir. 2003).

---

[1] Appendix C, Amendment 739, November 1, 2010.

[2] *Diagnostic Criteria 309.81 (F443.10) DSM-V, Postraumatic Stress Disorder.*

In addition to the fact that DUARTE witnessed his father's death, his father and mother had "domestic issues" and, on occasion, police were called to the home. Because DUARTE's father abused alcohol and drugs, Steven could not recall a time during his childhood where his father was sober. As a result, the father did not work and the mother was the sole provider for the family. (PSR ¶56) The death of the father left the mother as the family's sole provider, to her credit, she was able to provide for her family. (PSR ¶58)

As revealed in Exhibit 1, Mr. DUARTE presents with significant impairments with executive functioning which impact his behavior. (Exhibit 1, p. 7 of 13, ¶2) Specifically, Mr. DUARTE lacks cognitive flexibility making it more likely that he will react rather than respond to social situations, particularly when under pressure. Id. Here, DUARTE's clinical interview and diagnostic testing are consistent with his history of trauma. (Id. p. 8 of 13, ¶2)

DUARTE continues to "evince behaviors and emotions consistent with Post-Traumatic Stress Disorder" (PTSD) and the clinical evaluation supports that. (Id. at p. 9 of 13, ¶3) The examiner opined that one of the more significant manifestations of symptoms for DUARTE is his abject refusal to engage in substantive conversations about his father, especially his passing. In his opinion, Mr. DAURTE's behavior is, at least in part, influenced by the unresolved trauma of his father's death. Id.

Based on the clinical criteria stated in the DSM V, the examiner believes Mr. DUARTE meets the clinical criteria for PTSD, namely;

A.  Exposure to actual or threatened death, serious injury, or sexual violence and one (or more) of the following ways:

    a.  Directly experiencing the traumatic event.

B.  Presence of one (or more) of the following intrusion symptoms associated with a traumatic event(s), beginning after the traumatic event(s) occurred:

    a.  Recurrent, involuntary, and intrusive distressing memories of the traumatic

        event.
- b. Recurrent distressing dreams in which the content and or affect of the dream or related to the traumatic event.
- c. Intense or prolong psychological distress that exposure to internal or external cues that symbolize resemble an aspect of the traumatic event.

C. Persistent avoidance of stimuli associated with the traumatic event, beginning after the traumatic event occurred, as evidenced by one or both of the following:

- a. Avoidance of our efforts to avoid distressing memories, thoughts, or feelings about or closely associated with the traumatic event.
- b. Avoidance of our efforts to avoid external reminders (people, places, conversations, activities, objects, situation) that arouse distressing memories, thoughts, or feelings about or closely associated with the traumatic event.

D. Negative alterations in cognitions and mood associated with the traumatic event, beginning or worsening after the traumatic event occurred, as evidenced by two (or more) of the following:

- a. Persistent and exaggerated negative beliefs or expectations about oneself, others, or the world.
- b. Persistent negative emotional state.
- c. Feelings of detachment or estrangement from others.

E. Marked alterations in arousal and reactivity associated with the traumatic event, beginning or worsening after the traumatic event occurred, as evidenced by two (or more) of the following:

- a. Irritable behavior and angry outbursts.
- b. Reckless and self-destructive behavior.
- c. Hypervigilance.
- d. Exaggerated startle response.
- e. Problems with concentration.
- f. Sleep disturbance.

F. Duration of the disturbance is greater than one month.

G. The disturbance causes clinically significant distress or impairment in social, occupational, or other important areas of functioning.

H. The disturbance is not attributable to the physiological effects of a substance or another medical condition.

Counted among the symptoms displayed by individuals, such as DUARTE, who have PTSD are; persistent and exaggerated negative beliefs or expectations about oneself, others, or the world (e.g., "I am bad," "No one can be trusted," "The world is completely dangerous,")[3], reckless or self-destructive behavior, hypervigilance, exaggerated startle response, problems concentrating, and, sleep disturbances, all of which have been noted as part of DUARTE's psychological make-up. (See Exhibit 1, p. 7 of 13, ¶2) The consequences of PTSD to an individual such as DUARTE are poor social and family relationships, lower income, and lower educational and occupational success.[4]

The present evaluation also supports that Mr. DUARTE presents with delays in cognitive functioning as evinced by deficits in executive functioning, attention, learning and memory due to mild cognitive disorder, albeit with an unspecified etiology. (Exhibit 1, p. 10 of 13, ¶3) Based on the fact that Mr. DUARTE has experienced a significant amount of trauma in his life, his unresolved PTSD, and, neuropsychological deficits, the Court should grant a departure for Mental and Emotional Conditions under USSG § 5H1.3[5].

III.
3553(a) FACTORS

The section 3553(a) factors[6] pertinent to Mr. DUARTE's case include;

---

[3] *Diagnostic Criteria 309.81 (F443.10) DSM-V, Postraumatic Stress Disorder.*

[4] *Id.*

[5] *US v. Walter,* 256 F.3d 891 (9th Cir. 2001) (District Court should have considered departing under §5H1.3 because the facts of this case appeared to be "the type of extraordinary circumstances that may justify consideration of the psychological effects of the childhood abuse").

[6] the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; . . . the [guidelines] sentencing range . . . ; any pertinent policy statement issued by the Sentencing Commission; and, the need to avoid unwarranted sentence disparities.

1.    <u>3553(a)(1):   The Nature and Circumstances of the Offense</u>

Mr. DUARTE was observed disposing of a firearm from a moving vehicle by a gang-enforcement unit of the Inglewood Police.  There were no identifiable victims in this offense other than the societal interest in general. (PSR ¶ 9) The defendant did not impede or obstruct justice. (PSR ¶ 10)  Normally, acceptance of responsibility under USSG § 3E1.1 is not intended to apply to defendants such as DUARTE who put the government to their task at trial, however, a conviction by trial does not automatically preclude one from consideration for such a reduction where one clearly demonstrates acceptance of responsibility even though he exercised his constitutional right to trial. (PSR ¶ 22)  Mr.  DUARTE and Ms. Torres have five children, all of whom reside with Ms. Torres at 410 East 98th Street in Los Angeles: Arnoldo, age 13; Ethan, age 9; Alina, age 4; Steven, Jr., age 3; and Reign, age 2. All of the children are in good health; however, Steven, Jr. suffers from asthma. Duarte speaks with his children daily. (PSR ¶60)

<u>Mr. DUARTE's History and Character:</u>

Steven DUARTE is 29-years old and the father of five children. <u>Id.</u> The mother of his children, Cindy Torres, describes Steven as a "kind and compassionate man, family orientated, hardworking, responsible", and believes Steven "has learned a lesson a life lesson." (See Exhibit 2, Letters of Support, letter of Cindy Torres)  His character is good, his family supports him, and believes he will succeed.  Many supportive friends and relatives believe Steven is a good person, a hard worker, a family man, and, proud community member.  DUARTE has letters from community members who have known him since he was born.  They describe him as a valuable member of the community and a humble person. He has learned a life-lesson and has an attitude to better himself.  One letter describes the silver lining Steven knows; that it doesn't matter how many time you fall, it matters how many times you get up. (See Exhibit 2)

Since age 16, DUARTE has worked as a mechanic with his uncle, Jaime Duarte, at his

uncle's shop, Hawthorne Auto Repair (verified). In addition, in the two years prior to his arrest, DUARTE was self-employed full-time as an independent tow truck driver. DUARTE has specialized training and skill as a tow truck driver and mechanic. (PSR ¶79-80)

(a)     Seriousness

Mr. DUARTE's did not endanger any other member of the public, did not discharge the firearm, or, use it to intimidate or instill fear in any victims. Although the gun was allegedly stolen, DUARTE's possession of a firearm is not as serious as other situations in that there is no evidence DUARTE knew it was a stolen firearm nor any evidence that he posed a danger to members of the general public.

(b)     Deterrence

Under section 3553(a)(2)(b), this Court must impose a sentence that is sufficient to protect the public.  Deterrence has both a specific and a general function.  Specific deterrence dissuades the particular defendant from engaging in criminal conduct.  In contrast, general deterrence discourages others from engaging in similar criminal conduct.  A more difficult calculation, however, is the punishment necessary to dissuade others from engaging in similar conduct.  General deterrence uses a utilitarian calculation, subjecting defendants to longer periods of incarceration than retribution requires to "send a message" to other potential offenders.  Inherent in this general deterrence calculation is a tension between individual dignity and societal good, begging the question: Is it ethical to impose a greater-than necessary punishment upon an individual criminal defendant to protect society at large?

As described above, this Court must consider general deterrence independent of what punishment is needed to individually deter defendant from future criminal conduct.  In the present circumstances, **38-months** is more than sufficient to deter defendant from re-offending as well as deter other potential offenders from similar criminal activity.

(c)     Incapacitation

In this case, there is little need for incapacitation. There were no identifiable victims of Defendant's criminal conduct. (PSR ¶ 9) Defendant did not engage in any violent act, and it is highly unlikely that he will re-offend in the future. Therefore, incapacitation is not a significant concern in this case.

(d)     Rehabilitation

Rehabilitation, generally, endeavors to turn one person's path. Although rehabilitation plays a lesser role after the adoption of the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 et seq., section 3553(a) directs this Court to consider the protection of the public and the improvement of the offender's conduct. Here, DUARTE is a candidate for rehabilitation as DUARTE criminal history score is 13 the low-end of the threshold for Criminal History Category VI. As noted below, counsel believes defendant's Criminal History is overstated and DUARTE's potential recidivism risk is low.

### 3553(a)(3):     The Kinds of Sentences Available

In this instance, the options being proposed to the court for its consideration: that of the defendant, that of the prosecution, and, that of the probation department. The prosecution and the probation department both recommend 84-months. The defendant offers a guideline range of 37 to 46 months with a recommendation of 38-months.

### 3553(a)(4):     The Sentencing Commission's Advisory Guidelines Range

The defendant does not adopt the advisory guidelines recommendation of imprisonment of 84 to 105 months for the current offense. These guidelines are too harsh considering the circumstances of the offense, simple possession of a firearm and ammunition. These guidelines are calculated by using a sentencing formula and do not take into consideration all criteria needed to be evaluated in order to grant a fair sentence. Here, the goal should be to avoid "the utter travesty of justice that sometimes results from the guidelines' fetish with absolute arithmetic, as well as the harm that guideline calculations

can visit on human beings if not combined by common sense." United States v. Adelson, 441 F. Supp. 2d 506, 512.  Here, based on DUARTE's childhood trauma, psychological deficits, history of being a loving family man with five kids, and, history of working 7-days a week, a below guidelines sentence is warranted for this offense.

    3553(a)(5):   Pertinent Policy Statement issued by the Sentencing Commission

The defendant does not submit any pertinent policy statements that have been issued by the Sentencing Commission that apply to this case, however, the defendant does submit the guidelines range "fails properly to reflect §3553(a) considerations." Kimbrough v. United States 128 S.Ct. 558, 575 (2007) (quoting Rita v. United States 127 S. Ct. 2456, 2465 (2007)).

    3553(a)(6):   The Need to Avoid Unwarranted Sentencing Disparities

The primary purpose of § 3553(a)(6) – calling for "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar crimes" – is "to reduce unwarranted sentence disparities nationwide." United States v. Wills, 476 F.3d 103, 109 (2007). In 2020, in the 9th Circuit, the average prison sentence for a firearms offense committed by an Hispanic male, ages 26-30 years old, in Criminal History Category VI, was **40-months** according to the Interactive Data Analyzer (IDA) on the United States Sentencing Commission's webcite[7].  Here, the need to avoid unwarranted sentencing disparity weighs heavily in favor of a below guidelines sentence of **38-months** for Mr. DUARTE.

## IV.
## DUARTE'S CRIMINAL HISTORY IS OVERSTATED

A court may vary upward from the guideline range because a person's criminal record does not accurately reflect the extent and seriousness of past criminal conduct.  Likewise, a

---

[7] USSC.GOV; https://ida.ussc.gov/analytics/saw.dll?Dashboard Fiscal Year: 2020; Circuit: 9th Circuit; State: All; District: All; Race: Hispanic; Gender: Male; Age: 26-30; Citizenship: U.S. Citizen; Education: High school graduate or equivalent; Crime Type: Firearms; Guideline: §2K2.1; Drug Type: All; Sentencing Zone: All; Criminal History: VI; Career Offender Status: Exclude Career Offenders.

court may vary downward whenever defendant's criminal history substantially overstates the seriousness of defendant's criminal record or the likelihood the defendant will commit other crimes. (U.S.S.G. §4A1.3(a) and (b))

After *Booker,* the courts have affirmed downward variances in a variety of cases, including where defendant's category of VI was required by a terrorism enhancement, but significantly overstated defendant's likelihood of committing further offenses,[8] where defendant had a history of repeated access-device offenses and crashed his car while attempting to escape,[9] where defendant had a number of mitigating circumstances,[10] where defendant's criminal history differed meaningfully from the violent behavior often associated with defendants in criminal history category VI,[11] and the defendant was young, there were no guns in his prior offenses, and the defendant's argument that the sentence should have been lower, because, after *Booker,* it is "hard to conceive of below-range sentences that would be unreasonably high."[12]

Here, DUARTE scores a total of thirteen (13) criminal history points, just passing the threshold requirement to move an individual from criminal history category V to VI by one-point. In calculating defendant's criminal history points, it is of note that DUARTE scores one point from a misdemeanor conviction for which he received diversion. (¶30) In addition, six (6) criminal history points derive from two felony convictions; one for tagging & one for possession of less than a gram of cocaine. In 2016, Mr. DUARTE was convicted and sentenced to two years in state prison in a package deal for evading (VC2800.2), felon in

---

[8] *United States v. Stewart,* 590 F.3d 93 (2d Cir. 2009) (affirming downward variance for paralegal work on World Trade Center bombers legal team and violated restriction on communication with persons outside the prison).

[9] *United States v. Truong,* 587 F.3d 1049 (9th Cir. 2009) (the crash injured another person and defendant had 4,000 stolen or duplicated gift cards when arrested)

[10] *United States v. Collington,* 461 F.3d 805 (6th Cir. 2006) (relying on a number of mitigating circumstances)

[11] *United States v. McGhee,* 512 F.3d 1050 (8th Cir. 2008) (affirming consecutive sentences of 132 months on drug charges and 60 months on the firearms charges despite a guideline range of 235-293 months.)

[12] *United States v. Caraballo,* 447 F.3d 26 (1st Cir. 2006) (sentence was not unreasonable given defendant's history of violence).

possession of a firearm (PC29800(a)(1)), and, possession of a controlled substance for sale (HS11351.5). (PSR p. 8-9, ¶34-36) For this, DUARTE receives 8 of the total 13 criminal history points. Three-points for the two felonies plus 2-points for being on probation at the time of the instant offense. (PSR ¶38)   DUARTE was only 10 days away from probation terminated and was not violated as a result of this arrest.

Mr. DUARTE has suffered four misdemeanor convictions and four felony convictions. Of these, some are drug related, some police avoidance behavior, and, two firearm offenses. DUARTE has no serious or violent offenses in his record yet he is placed in Criminal History Category VI which should be reserved for Career Offenders and other bad actors. A more reasonable placement for DUARTE would be Criminal History Category V, not the highest Criminal History Category.

## CONCLUSION

In the Scooter Libby case, President Bush granted Mr. Libby executive clemency and declared that the low-end guideline sentence the federal judge imposed was "excessive." Specifically, the President stated:

> I respect the jury's verdict.  But I have concluded that the [low-end guideline] prison sentence given to Mr. Libby is excessive.  Therefore, I am commuting the portion of Mr. Libby's sentence that required him to spend thirty months in prison.  My decision to commute his prison sentence leaves in place a harsh punishment for Mr. Libby.  The reputation he gained through his years of public service and professional work in the legal community is forever damaged. His wife and young children have also suffered immensely.  He will remain on probation. The significant fines imposed by the judge will remain in effect.  The consequences of his felony conviction on his former life as a lawyer, public servant, and private citizen will be long lasting.

Thus, where a sitting President indicated that a low-end guideline sentence can be excessive and that a fine and probation are "harsh punishments" that can qualify as a stern penalty in some cases, it should serve as guidance for this Court in fashioning Mr. DUARTE's sentence. Former President Bush's Press Secretary Tony Snow reiterated that prison time was "excessive" and then stated that "principle" means that a "just decision" and "the right

thing" may sometimes require freeing a convicted felon from any prison term even if this will lead to "hits in the court of public opinion." Here, prison time beyond **38-**months for Mr. DUARTE would be excessive.

Dated: January 4, 2022  Respectfully submitted,

*/s/Oliver P. Cleary*
Attorney for Defendant,
Steven Duarte

CERTIFICATE OF SERVICE

I, Oliver P. Cleary, served the following parties this <u>SENTENCING POSITION</u> via the CM/ECF electronic filing system and to those registered to receive notice of such filings on the system:

Kyle Kahan, AUSA   kyle.kahan@usdoj.gov

Juan Rodriguez, AUSA   juan.rodriguez@usdoj.gov

Dated: JANUARY 4, 2022         *s/Oliver P. Cleary*
                                Oliver P. Cleary
                                Attorney for Defendant,
                                Steven Duarte