1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3     HONORABLE ANDRE BIROTTE, JUDGE PRESIDING

4  UNITED STATES OF AMERICA,        )
                                    )
5                                   )
                                    )
6                    Plaintiff,     )
                                    )
7                                   )
                                    )
8          Vs.                      )   No. CR20-00387-AB
                                    )
9                                   )
                                    )
10 STEVEN DUARTE,                   )
                                    )
11                                  )
                                    )
12                   Defendant.     )
                                    )
13 _____ )

14

15

16       REPORTER'S TRANSCRIPT OF PROCEEDINGS

17                 *MOTION HEARING*

18     *Sealed Page 45, line 4 to Page 56, line 24*

19     *Sealed Page 64, line 19 to Page 71, line 6*

20            LOS ANGELES, CALIFORNIA

21          THURSDAY, AUGUST 19, 2021

22

23          MIRIAM V. BAIRD, CSR 11893
         OFFICIAL U.S. DISTRICT COURT REPORTER
24            350 WEST FIRST STREET
                 FOURTH FLOOR
25       LOS ANGELES, CALIFORNIA 90012
               MVB11893@AOL.COM

1                    **A P P E A R A N C E S**

2

3    **ON BEHALF OF THE PLAINTIFF,**      JUAN M. RODRIGUEZ
     **UNITED STATES OF AMERICA:**        KYLE WALKER KAHAN
4                                         AUSA - OFFICE OF US
                                          ATTORNEY
5                                         GENERAL CRIMES SECTION
                                          312 NORTH SPRING STREET
6                                         SUITE 1200
                                          LOS ANGELES, CA 90012
7

8

9

     **ON BEHALF OF THE DEFENDANT,**      OLIVER P. CLEARY
10   **STEVEN DUARTE:**                   LAW OFFICE OF OLIVER P
                                          CLEARY
11                                        468 NORTH CAMDEN DRIVE
                                          SUITE 200
12                                        BEVERLY HILLS, CA 90210

13

14

15

16

17

18

19

20

21

22

23

24

25

1        LOS ANGELES, CALIFORNIA; THURSDAY, AUGUST 19, 2021; 1225

2                                    ---

3

4              THE COURT:  Everyone please be seated.  Let's call

5    the case if we could please.

6              THE CLERK:  CR20-00387-AB United States of America

7    vs. Steven Duarte.

8              MR. RODRIGUEZ:  Good afternoon, Your Honor.

9              Juan Rodriguez for the United States.  I'm also

10   joined at counsel table by AUSA Kyle Kahan and AUSA Lauren

11   Restrepo.

12             THE COURT:  Good afternoon to you all.

13             For the defense?

14             MR. RODRIGUEZ:  Good afternoon, Your Honor.

15             Oliver Cleary for the defense.  Nice to see

16   everyone in person.

17             THE COURT:  Nice to see you all too as well.

18             Mr. Duarte, I assume you had a long trip out here

19   today?

20             THE DEFENDANT:  Yes, I did.

21             THE COURT:  Welcome.  We're here today for a final

22   pretrial conference we're set for trial today.  I'm here to

23   do the trial.  Judge Olguin had some back-to-back trials, so

24   I offered to assist today.  So let me pull up my file.  One

25   moment, please.

1          We've got a number of motions that we need to go

2     over.  I'm just pulling up my docket so I have all of the

3     motions in front of me.  So for purposes -- let's start off

4     with our motions in limine.  That's the meatiest part of our

5     hearing today.  I've had a chance to read all of the motions

6     in limine, the oppositions, the replies.  So I'll just run

7     through them one by one.

8          Let's start with the government's motion in limine

9     with respect to introduction of evidence of Mr. Duarte's

10    post-release community supervision status.  My tentative is

11    to grant that motion.  I have some questions.  It seems to me

12    that the government, unless there's a stipulation, the

13    government has to prove knowledge that he's been convicted of

14    the felony.  I guess, the question I have, and I just want to

15    confirm, Mr. Cleary, Mr. Duarte is not stipulating to that

16    fact; correct?

17          MR. CLEARY:  Your Honor, we have not stipulated to

18    that fact as of yet.

19          THE COURT:  Okay.  What does what mean?  Does that

20    mean that could change?

21          MR. CLEARY:  That could change.

22          THE COURT:  I'm going make my reeling based on what

23    I know today.  If he's not stipulating, it seems to me

24    there's only a few ways that the government can prove

25    knowledge.  This is one of them.  If I'm missing something,

```
 1    let me know.  That's the basis for me saying that that this
 2    evidence would come in.  What are your thoughts, views on
 3    that, please.
 4              MR. CLEARY:  I think it's -- it's somewhat
 5    cumulative for the government to be asking to introduce the
 6    post-community release supervision that they want to
 7    introduce that, which is essentially introducing conviction
 8    for a felony.  The government has also sought to introduce
 9    several prior convictions as well.
10              THE COURT:  Right.
11              MR. CLEARY:  And so I think it's overkill when it
12    comes to what the government is seeking to introduce for --
13    against Mr. Duarte.  If they have a burden to show knowledge,
14    they can show knowledge with a conviction without having to
15    identify the type of conviction, which Mr. Duarte was
16    convicted, other than to identify it as a felony conviction,
17    and to -- to introduce that alone.
18              I would object to the post-release community
19    supervision because it's -- additionally, I think it comes
20    with the testimony attached, which is going to be the officer
21    testifying that there was a Fourth waiver.  That he was aware
22    waiver of a Fourth waiver.  He knew he was subject to search
23    et cetera, et cetera.  That's why he fled.  That's what the
24    government was arguing.  So, you know, it seems innocuous to
25    call it post-community release supervision, but with it comes
```

6

 1    the baggage that -- of additional things that the government

 2    wants to show through it.

 3               THE COURT:  Okay.  Now, in fairness, though, I

 4    think you would at least -- at least acknowledge, if he

 5    stipulates to this fact, a lot of this goes away; right?

 6               MR. RODRIGUEZ:  That's right.

 7               THE COURT:  Okay.  Let me switch to the government.

 8    Who from the government is drawing the short straw on this

 9    issue?

10               MR. KAHAN:  That would be me, Your Honor.

11               THE COURT:  Mr. Kahan, indulge me for a moment.  If

12    Mr. Duarte stipulates that he knew he had been convicted of a

13    felony, does the government still want to introduce this

14    evidence of post-conviction supervision?

15               MR. KAHAN:  Yes, Your Honor.  It would be

16    inextricably intertwined --

17               THE COURT:  Intertwined with what?

18               MR. KAHAN:  The narrative of why the search of the

19    vehicle happened at night in Inglewood.

20               THE COURT:  Well, but -- the search of the vehicle,

21    that's not an issue, is it?  My -- my question is does the

22    jury need to know why it happened?  They just need to know it

23    happened; right?

24               MR. KAHAN:  I just want to potentially alleviate

25    any concerns that jurors may have of officers searching a car

1    in Inglewood at night.

2          THE COURT:  Could that be alleviated via a jury

3    instruction?  I'm just trying to address what Mr. Cleary

4    mentioned about is this A, overkill; B, for lack of a better

5    term, are you trying too put too much mustard on the hot dog?

6    How would you intend to produce this evidence?  Are you going

7    to have an officer describe what post-conviction release

8    supervision is, what the purpose of it is, or is it just to

9    show that he knew that he had been convicted of a felony?

10   I'm trying to understand the government's position?

11         MR. KAHAN:  This is assuming that there are

12   stipulations.

13         THE COURT:  Well, let's -- no.  Let's assume for

14   this question, there isn't a stipulation.  Give me the offer

15   of proof as to how that evidence would play out if I allowed

16   this post-conviction release evidence to come in?

17         MR. KAHAN:  So if the post-release conviction

18   supervision -- post-release community supervision comes in,

19   it comes from a number of ways.  One, to explain --

20         THE COURT:  I'm not clear.  How would it come in?

21   Through an officer?

22         MR. KAHAN:  It would come in primarily through an

23   officer, as well as conviction records, which show he was

24   convicted in 2018 and sentenced to two years in prison, which

25   would correlate with what the officers would testify about

1    their knowledge of when and how he was on post release.

2              THE COURT:  Let's focus on the officer for a

3    second.  What would the officer say with respect to this

4    post-conviction community supervision?

5              MR. KAHAN:  They were familiar with the defendant;

6    that they knew he was on post-release community supervision;

7    that the subject of -- that it could only be applied to

8    people who are on felonies -- who are convicted of felonies;

9    and that those on post-release community supervision are

10   subject to search conditions.

11             THE COURT:  What is the relevance as to any of that

12   with respect to the charm at issue; that he's a felon in

13   possession of a weapon?

14             MR. KAHAN:  It goes two-fold.  One, it shows a

15   motive, intent, and plan as to why he discarded the firearm

16   and hid the magazine.

17             THE COURT:  Okay.  Wait.  I want to make sure I

18   understand.  You're saying because he was on the supervision,

19   that is why he tossed the gun?

20             MR. KAHAN:  That's one of the -- it -- it goes --

21   multiple ways.  One, he's a felon.  That's one way to show

22   that is why he tossed the gun and hid the magazine and not

23   allowed to possess it.  Two, if he's on active post-release

24   community supervision, that's different than someone who is

25   convicted of one felony in 2007 and is not on an active

```
 1    search condition.  If he's on active search condition and he
 2    has a gun, there's a motive, intent, and plan, the government
 3    plans to argue, that he knew that the officers who were about
 4    to pull him over were going to search him and the car, and
 5    that he was doing what he could in order to hide the
 6    contraband.
 7              THE COURT:  Okay.  So now, indulge me on this
 8    point.  If he stipulates that he was convicted of a -- that
 9    he knew he was convicted of a felony, do you still need that
10    evidence?
11              MR. KAHAN:  I think it's helpful to show why he --
12              THE COURT:  I get it is helpful.  Do you need it?
13              MR. KAHAN:  Do I need it to prove the elements, no.
14    It's something that I believe the government should be
15    entitled to demonstrate given 404(b).
16              THE COURT:  Would the government's position be that
17    even if he stipulates, you need it to show the reason why he
18    acted the way he did on that night?  Would that be it?
19              MR. KAHAN:  Need -- it's there to help with the
20    motive and intent as to why he threw the gun.  Need, no.  The
21    government need not prove motive in this case.  It's not --
22    not a specific intent.  We do need to -- we believe that
23    motive is an important element to explain everything.
24              THE COURT:  I'm jumping ahead.  Forgive me for
25    those of you who may not been here before.  I tend to do
```

1   this, but let's assume I allow that evidence to come in, why

2   do you need later on your other motion as to introduce to the

3   jury his prior convictions?  Doesn't this satisfy that?

4           MR. KAHAN:  Does the --

5           THE COURT:  That he's been convicted of a felony, I

6   should say.

7           MR. KAHAN:  I don't think a jury is necessarily

8   going to understand that post-release community supervision

9   is tied to a felony conviction.

10          THE COURT:  I thought you said one of the officers

11  would say these are people who have been convicted of a

12  felony.  That's why they have it.

13          MR. KAHAN:  That's correct.  Maybe I'm

14  misunderstanding Your Honor's question.

15          THE COURT:  My question is if you get this

16  testimony in, I thought later on there's another motion to

17  introduce his prior felony conviction?  Maybe -- did I

18  misunderstand the other motion?

19          MR. KAHAN:  Yes, Your Honor.  The prior felony

20  conviction is for impeachment purposes under Rule 609.

21          THE COURT:  So going into the specifics of those

22  convictions versus the existence of the conviction?

23          MR. KAHAN:  Impeachment and existence of the

24  conviction in the event the defendant decides to testify to

25  attack his credibility under 609 not for 404.

1          THE COURT:  Could an argument be made by Mr. Cleary

2     that it is cumulative?  You've already introduced evidence

3     that he's been convicted of a felony, if I allow this

4     post-conviction community supervision evidence in?

5          MR. KAHAN:  That could be an argument.  I don't

6     think it's necessarily a meritorious one.

7          THE COURT:  Why not?

8          MR. KAHAN:  Because the -- if the defendant is on

9     the stand -- a stipulation that he's been convicted is

10    different than the jury hearing from his mouth when

11    questioned by the government you've been convicted of this

12    felony in such and such time.  You've been convicted of this

13    felony such and such time.  The government is entitled to

14    examine the credibility of the witnesses, including the

15    defendant or any other defense witnesses and any sort of

16    prior conviction they have would impact the credibility.

17         THE COURT:  The last question, at least for now.

18    Just -- I'm not familiar with this post-conviction community

19    supervision.  Is it tied to a specific offense or is it

20    something that he just knew because you mentioned it is as a

21    result of --

22         MR. KAHAN:  2018 conviction for evasion of a

23    police --

24         THE COURT:  Evading conviction.  Okay.

25         MR. KAHAN:  Correct.  Post-release community

1    supervision is a -- it's a different form of parole that was

2    introduced after the Supreme Court ruled on realignment

3    issues back in, I believe, 2011, 2013.

4            THE COURT:  But it ties to a conviction?

5            MR. KAHAN:  It is tied to a specific felony

6    conviction.

7            THE COURT:  Okay.  So I guess then I jump back to

8    if the evidence is going to come in that he is on

9    post-conviction community supervision based on the felony

10   conviction for evasion, okay, the jury then knows he's now

11   been convicted of a felony; correct?

12           MR. KAHAN:  Correct.

13           THE COURT:  And that he's on supervision; correct?

14           MR. KAHAN:  Between that and a potential

15   stipulation, yes.

16           THE COURT:  No.  Let's say there is no stipulation.

17   Let's say he doesn't stipulate, and you're allowed to present

18   evidence that he's on post-conviction community supervision.

19   The testimony would be he was convicted of a felony, whether

20   we get into what that felony is, I'm not -- I don't know yet,

21   but assume that at least the fact he was convicted of a

22   felony based on that conviction, he was put on this

23   supervision which allows a search condition.

24           So then let's say that all comes in, the jury has

25   now heard he's been convicted of a felony and he has a search

1    condition.  So you've got the conviction and the motive.

2    Let's say he testifies, why do you need more when you already

3    have that?

4            MR. KAHAN:  Because the government has alleged

5    multiple convictions that led to him to be prohibited from

6    having a firearm --

7            THE COURT:  But the multiple convictions are not

8    necessary for the elements of the offense.  Just one

9    conviction is; correct?

10           MR. KAHAN:  Technically -- yes, Your Honor.  It is

11   one conviction, but because of the defendant's priors, the

12   government has alleged multiple convictions, and it's just

13   relevant to show that he's had multiple years of being a

14   felon with knowledge of being a felon from 2013 all the way

15   to his most recent conviction of 2018.

16           THE COURT:  Okay.  But respectfully, levels of

17   knowledge are not part of the elements; right?

18           MR. KAHAN:  That's correct.

19           THE COURT:  Okay.  Okay.  Fair enough.

20           Mr. Cleary, anything you wish to add with respect

21   to this motion and argument?

22           MR. RODRIGUEZ:  Yes, Your Honor.  I -- I would add

23   that I think that the -- that if there's a stipulation to an

24   element of the offense being a felon, that takes it outside

25   the ambit of the jury's decision-making.

```
 1          THE COURT:  Well, what about -- I tend to agree
 2   with one important exception.  They've also alleged, that the
 3   reason why they want this -- I think there's a number of
 4   reasons, but one of the key reasons is to show a motive that
 5   suggesting that -- I'm not placing judgment on this, but
 6   based on what I've read saying the reason why Mr. Duarte
 7   tossed the gun is because he knew he had this condition and
 8   he knew that if he got stopped, he was going to be searched.
 9   If he was searched, he would find the gun, so he tossed it.
10          Isn't the government allowed to at least present
11   some evidence to demonstrate, or at least that this condition
12   exists, and that could be the motive for Mr. Duarte's
13   actions?
14          MR. CLEARY:  My -- my position respectfully is no.
15   It's irrelevant.  Motive is irrelevant.  You know, good
16   reason to have gun or bad reason to have a gun.  We were --
17          THE COURT:  Let me stop you there.  I'm doing the
18   same thing I do with the government.  I will go back and
19   forth with you.  You're saying good reason -- motive is
20   irrelevant.  Good reason for having a gun or bad reason, but,
21   perhaps, the defense is he didn't have the gun?  If that's
22   the case, doesn't that put that motive in the play?
23          It seems to me based on the papers I've read, there
24   seems to be some suggestion that it's less hey, I've been
25   convicted of felony.  I may not want the jury to hear that.
```

```
1    I may not want them to hear the extent of all that, but I'm
2    assuming his defense is, I don't know whose gun that it is.
3    It wasn't mine.
4            If that's the case, doesn't that then -- again,
5    you're doing your job.  You need to do your job, but that --
6    doesn't that then at least allow the government an argument
7    that hey, there's a reason why he's distancing himself from
8    this gun; that he -- that he had this search condition.  When
9    the cops rolled up, he knew that there would be a problem?
10           MR. RODRIGUEZ:  Well, I think that the government
11   might be in a position to argue that should the defendant
12   take the stand and say he that the gun, for example, in
13   self-defense, it was necessary that he be armed because he
14   was threatened; that he feared for his life.  He only
15   possessed the gun because he needed the necessity from
16   defending himself from attack.  That I think would raise the
17   issue, no, sir, isn't it true that you are on supervision?
18   That's why -- so they could counter the defense of necessity.
19           I think when it comes to -- if he stipulates to the
20   felony, it comes to the straight position as to whether or
21   not why he tossed it and all of that stuff.  I mean,
22   shouldn't anybody who is a felon toss the gun because it's,
23   you know, not supposed to possess it?  Anybody would be
24   motivated to do that because it's not legal for a felon to
25   possess --
```

1      THE COURT:  True, but I mean, look the government

2   is doing what they're supposed to do.  They have this

3   additional information that may not exist in other cases that

4   at least suggest that Mr. Duarte knew that there was a search

5   condition, and he knew he would not be able to try to contest

6   that search condition and; therefore, had an extra incentive

7   to be disconnected from this weapon?

8      MR. RODRIGUEZ:  Well, I -- my position at this

9   point is that it's a too early to say.

10     THE COURT:  Okay.

11     MR. RODRIGUEZ:  That the government is basing it on

12  speculation.  We have no evidence that the defendant has

13  been, you know, acknowledged the terms of his condition of

14  PCRS, at least that I've seen, that there is something to

15  state that this is something he knew.  And that his priors

16  show that he knew -- we would have to get into the priors.

17  We'd have to look at the conditions that he was entered into,

18  whether or not he was shown those conditions.  Did he sign

19  and acknowledge those conditions.  It would go on and on and

20  on to that point, I think.

21     THE COURT:  All right.  Well, look, this is how the

22  Court is going to rule on this.  I do think if there's a

23  stipulation as it relates to the knowledge that he's been

24  convicted of a felony, my ruling might change.  I'm not

25  saying that to suggest there should be a stipulation.  Just

1    based on what we have now, the government has to prove that

2    he had knowledge that he was convicted of a felony.

3            This evidence does allow the government to do what

4    it has to do to prove that.  I'm a little concerned about the

5    motive piece, so I want to reserve my ruling as it relates

6    to -- well, I take that back.  I believe the evidence can

7    come in without a stipulation as it relates to the

8    post-conviction community supervision.  I have some issues

9    about impeachment.  We'll discuss that momentarily in light

10   of this ruling, because I think you have enough at this

11   point.  As it stands, that post-conviction community

12   supervision that status, that testimony will be allowed in

13   the case.

14           The next motion in limine.  The prior convictions.

15   Did you have a question, Counsel?

16           MR. KAHAN:  Yes, Your Honor, I was actually -- the

17   government had a request in terms of the order of motions.

18           THE COURT:  Okay.  You're making a request.  Go

19   ahead.

20           MR. KAHAN:  This is in regards to the -- we were

21   hoping to address the motion to suppress the DNA evidence

22   earlier on.  The reason why is the sole witness at least for

23   the government's side, for that matter, who is present in

24   court today has taken time off from his vacation in order to

25   be present in court today.  Given the constantly shifting

```
 1    pretrial conference dates, we were hoping to address that

 2    earlier so we could determine whether or not his testimony

 3    would be needed.

 4              THE COURT:  And which motion is that?

 5              MR. KAHAN:  Motion to suppress evidence to request

 6    a Franks hearing.

 7              THE COURT:  We will move to that.  A reasonable

 8    request.  Okay.  Suppress.

 9              Here's my ruling as it relates to it.  I read the

10    motion.  I understand the defense's position, but

11    respectfully, A, there's no need for Franks hearing, because

12    let's assume for the sake of this discussion, I accepted

13    everything that the defense said, that is not the basis for

14    the PC for the DNA.  So I don't have to decide whether what

15    happened beforehand.  Based on the facts of case, which at

16    least right now don't appear to be in dispute, there's PC --

17    I should say probable cause.

18              The statements that you wish to challenge, I don't

19    believe, based on Franks, are material to the issue of having

20    a Franks hearing.  Based on that, I'm inclined to deny the

21    request for a hearing and deny the motion to suppress.

22              Mr. Cleary, the floor is yours.  I want you to have

23    an opportunity to be heard.

24              MR. CLEARY:  Thank you, Your Honor.  I appreciate

25    the tentative.  I prefer a tentative in my favor.  That's
```

1    okay.

2              THE COURT:  Right.

3              MR. CLEARY:  Let me just reiterate that in -- in

4    Franks -- I understand where the Court is going.  I

5    understand we have a weapon.  He's told the magistrate

6    reviewing this search warrant affidavit, why they want the

7    vehicle swabbed.  However, the magistrate has to weigh

8    credibility when they are making a determination as to

9    whether there's probable cause.  There are many cases that

10   talk about the failure of the officers to reveal that the

11   snitch was convicted of felonies, for example.

12             THE COURT:  Right.  I think I know where you're

13   going.  Forgive me for interrupting, but that goes to the

14   materiality of the information.  Here -- I mean, the -- the

15   crux of it is officer says they observed somebody toss a gun.

16   They believe it's Mr. Duarte.  Based on on that, they want to

17   do DNA to see if the DNA matches.  I'm not sure I see them --

18   to me, that's where it sort of falls.  Where is the

19   materiality of all of this other stuff that is alleged to

20   have been said?

21             MR. CLEARY:  Well, the -- the materiality would go

22   to if, for example, the officer believes that there was a

23   weapon, and Mr. Duarte is the one who tossed from the vehicle

24   from the rear passenger, okay.  In the affidavit, the officer

25   insert that Mr. Duarte admitted to him he was the rear

1    passenger, that makes it more likely in mind of the

2    magistrate reviewing the affidavit that the rear passenger,

3    who admitted being the rear passenger, was the one observed

4    tossing the weapon.  Hence, it is more likely that his DNA

5    would be on the weapon as opposed to to the driver in the

6    front seat.

7            That fact was placed in the affidavit intentionally

8    because it was an admission allegedly that Mr. Duarte was

9    seated in the car from where the gun emerged from the

10   vehicle.  So I think that it goes a little bit more towards,

11   you know, a finding of reasonable probable cause against

12   Mr. Duarte when the officer inserts the statement that we

13   know is taken, at least the allegation is that it was taken

14   in violation of his Sixth Amendment rights because he had

15   requested counsel.

16           That's another ball of wax --

17           THE COURT:  Right.

18           MR. CLEARY:  Our position was that we think that --

19   that the magistrate should have known.  And if the magistrate

20   had known, for example, the officer had violated his Sixth

21   Amendment rights, perhaps, the magistrate would have said

22   this guy's credibility is not so great.  Although he does

23   admit, for example, Mr. Duarte refused DNA swab --

24           THE COURT:  Right.

25           MR. CLEARY:  There's a mix and match of things.

1    It's often the things that are omitted that count.  You know,

2    a violation of his rights in the totality, perhaps, the

3    magistrate would have said hey, you stepped all over this

4    guy's rights.  I'm not going to go along with this.  This

5    warrant is tainted because of an initial violation of his

6    Sixth Amendment rights.  I'm not going there.  You shouldn't

7    have done that.  He requested counsel.  All questioning

8    should have ceased.  You don't get to justify a warrant's

9    issuance based on what it turns up.  I'm going to deny it.

10   I'm not going to sign off on this.

11          I think the magistrate maybe would have done it,

12   but they didn't have the opportunity to because things were

13   missing.  That's where I'm going on that.  I think it -- it

14   may -- there may be instances when things like denial of

15   Sixth Amendment rights or inclusion of statement that was

16   taken in violation of the Sixth Amendment rights would factor

17   into probable cause determination by a neutral magistrate.

18   And by depriving this magistrate of that information, it

19   tainted this warrant.

20          THE COURT:  Okay.  Who is drawing the short straw

21   from the government?  Mr. Kahan, you're up again.  Your

22   response.

23          MR. KAHAN:  Defense counsel -- the defendant fails

24   to acknowledge the probable cause that was laid out in the

25   actual report, which was included in the affidavit as well as

officer Villacana and Wunderlich.  Observations of the right

rear passenger window rolling down, the gun being tossed out,

the stopping of the car, the lack of any sort of movement in

the car that could suggest that the driver and right rear

passenger switched places.  The observation of only two

people in the car.  The defendant and the right rear

passenger seat in the same area that the officer saw the gun

being tossed out of the car.  The recovery of the gun.  The

recovery of the magazine.  Any spot consistent where

defendant was seated and hidden the magazine had he been in

fact seated in the right rear passenger seat.

That is the probable cause.  That is the probable

cause that should lead to a DNA warrant being -- search

warrant being granted.

THE COURT:  What's your response to Mr. Cleary's

position that well, the magistrate knew that -- assuming all

of this is true, that he -- he, you know, threatened him, he

stomped on him.  He did all of these things.  The magistrate

might have said that is too much heavy handed --

MR. KAHAN:  Any alleged heavy handedness, you know,

for the record, Detective Barragan denies through his

declaration, has no effect on what Officer Villacana and

Wunderlich saw, which is the basis of the probable cause.

Even if any sort of alleged over zealousness by the

detective came in, it doesn't change the fact what was

1    included in the affidavit was the defendant denying that he

2    possessed the gun.  So the magistrate had the opportunity to

3    see that there was a statement by the defendant saying I did

4    not possess this gun.  The ability to observe -- to read and

5    review Officer Villacana's report to determine whether or not

6    probable cause had been met, and the magistrate concluded

7    yes, and issued the search warrant.

8              THE COURT:  Okay.  All right.  Well, thank you.

9              Mr. Cleary, I'm going to stick with my ruling.  I

10   understand your point.  I understand the theory.  I do think

11   the case law is very strong on this.  When you look at the

12   four corners of the request in the warrant, there's enough

13   probable cause.  They include the fact that Mr. Duarte didn't

14   want to do it.  So the motion to suppress is denied.  I'm

15   denying the request for a hearing.

16             MR. KAHAN:  If I can release that witness?

17             THE COURT:  Any other request for today?  I'm just

18   giving you a hard time.

19             MR. KAHAN:  That's it.

20             THE COURT:  All right.  Thank you.  Let's get back

21   to some of these other motions for today.

22             All right.  Government's motion in limine to admit

23   the prior convictions for impeachment and tie them with the

24   defendant's motion in limine.  So, Mr. Kahan, is this your

25   motion or are we -- Mr. Rodriguez, okay, welcome to the

1    party.  All right.  As it relates to this motion, is this --

2    should I assume this is only if Mr. Duarte testifies, or are

3    you trying to introduce these other convictions in your case

4    in chief?

5              MR. RODRIGUEZ:  Your Honor, yes, we're trying to

6    introduce the convictions in our case in chief.

7              THE COURT:  All of them?

8              MR. RODRIGUEZ:  Yes, because defendant refuses to

9    stipulate to the knowledge of conviction and to the

10   convictions generally.

11             THE COURT:  Okay.  Tell me why you need all of

12   them?  In light of the fact that if he refuses to stip, I've

13   already said you're going to get the evasion conviction in,

14   you're going to the get the post-community supervision in.

15   Don't get me wrong, I -- I think I know the answer, but the

16   question is, do you need all of these convictions?  That's

17   it?  Do you need all of them?  In particular, let's get right

18   to it.  Do you need the felon in possession?  I mean, isn't

19   that in fairness to Mr. Duarte, I mean, he doesn't even have

20   a chance to fight this, once the jury hears he's been

21   convicted of the same offense, kind of game over.

22             So why do you need all of these?

23             MR. RODRIGUEZ:  To directly answer your question,

24   Your Honor, the government does not need all of them.  Under

25   the case law, the government is entitled to it.  My

1    understanding is -- the government would suggest that under

2    Old Chief, that's exactly why the Old Chief ruling exists to

3    allow defendant to remove some of that prejudice by

4    stipulating to the conviction and to the knowledge.

5              THE COURT:  But he's not stipulating.

6              MR. RODRIGUEZ:  Exactly.

7              THE COURT:  So what is it, just payback for not

8    stipulating?

9              MR. RODRIGUEZ:  No, Your Honor.  The government is

10   entitled to under the case law to bring in -- because there's

11   no maximum amount of evidence that a government can introduce

12   to prove knowledge.  So the government needs to convince the

13   jury to; therefore, it's --

14             THE COURT:  You need it with four convictions?

15   You've got community supervision.  You're going to have an

16   officer get up there and say, he's been convicted.  He knows

17   subject to search conditions, and on top of that, he's been

18   convicted of possession of narcotics for sale, felon in

19   possession, and evading a peace officer.  I get it, I guess.

20   I have been in your shoes.  I understand.  I've been in both

21   your shoes.  I understand.  Just because you can, doesn't

22   mean you should; right?

23             MR. RODRIGUEZ:  That's correct, Your Honor.  Again,

24   the government's position would be that under U.S. v. Lloyd,

25   the Ninth Circuit has expressly declined to limit the

1  government to proof of one conviction in felon of possession

2  cases where the defendant refuses to stipulate.

3         THE COURT:  Okay.  What is your response to -- in

4  particular, I guess, conviction I'm most concerned with is

5  the felon in possession.  You put that out there.  You know,

6  I don't know what the jury is going to do, but he's charged

7  with felon in possession.  You're going to try to -- you're

8  basically -- whether you do intentionally or not, it leaves

9  open to interpretation well, if he was convicted of this

10 before, he had to have done this now.  That is, I guess, the

11 Court's concern.

12        So, I guess, that's a long-winded way of me saying,

13 why not, if anything, allow -- pick one or two or any one --

14 anything other than the felon in possession?

15        MR. RODRIGUEZ:  Your Honor, we think the

16 government's position would be that a limiting instruction

17 would be enough to cure that undue prejudice to the extent it

18 exists.

19        THE COURT:  Right.  Okay.  You know what many

20 people think of limiting instructions, but that's an aside.

21 You think that's the only way to cure this?

22        MR. RODRIGUEZ:  I don't think that's the only way

23 to cure this, Your Honor.  That's under the case law, that is

24 sufficient to cure it.

25        THE COURT:  Got it.  Okay.  Thank you.

1          Mr. Cleary, let me hear your thoughts.  Look, they

2     have to prove your client's been convicted of a felony in

3     order for the elements of the offense.  You've heard my

4     views.  And you've heard Mr. Rodriguez say they're entitled

5     to do it.  I have real concerns about introducing that felon

6     in possession.  Your thoughts as it relates to -- I don't

7     know.  Your view is none of it should come in, or at least

8     only one, but what is your response to the government's view

9     look, the case law suggests they're entitled to do this?

10          MR. CLEARY:  Well, I think that the case law would

11     suggest that if the case law admitted to termination, that it

12     wasn't unduly prejudicial.  That there would be no fear that

13     the jury would consider this as propensity evidence or

14     something to that effect and would convict him based on not

15     what he did in this case, but what he's done in the past.

16     Seeing that is exactly what would occur in this case, the

17     case law would probably take exception, and the Court's

18     indicated that in weighing the prejudicial effect, I think it

19     is overkill.  It seems like it's some type of retribution for

20     the fact that he wouldn't stipulate.

21          If -- if the government wants to impeach him on a

22     conviction, I would request that the Court not only limit the

23     conviction to one, but that the Court would cleanse the

24     conviction so as to not give the jury, you know, the full

25     cleanse flavor of, you know, what a conviction for evading

1    would mean.  So it would speculate he's a bad person and had

2    bad conduct.

3           THE COURT:  Doesn't that potentially cut against

4    you?  Let's say I do -- we cleanse up the conviction, so to

5    speak, just allow the jury to hear that he's been convicted

6    of a felony, does that run the risk of the jurors speculating

7    what that felony is?

8           MR. CLEARY:  The Court will give a limiting

9    instruction telling them not to do.

10          THE COURT:  Okay.  So you're okay with a limiting

11   instruction in that end, but I assume you're not okay with a

12   limiting instruction as it relates to felon in possession

13   charge; right?

14          MR. CLEARY:  That doesn't cure it.  It would be too

15   prejudicial.

16          THE COURT:  Got it.  Thank you, Mr. Cleary.  I

17   think you know where I'm going on this.  If he testifies and

18   I'm -- Mr. Rodriguez, I just want to confirm, it's only if he

19   testifies that this is coming in?  I'm sorry.  I don't

20   remember your response to that.

21          MR. RODRIGUEZ:  Your Honor, so -- if there's no

22   stipulation, the government would seek to introduce all

23   convictions to prove the convictions and knowledge thereof.

24          THE COURT:  Got it.  Here is my ruling.  If there's

25   no stipulation, you're allowed to present evidence of the

1    possession with controlled substance, the evading peace

2    officer, I think, there's two those.  I'm not going to allow

3    the felon in possession of a firearm at this time, because I

4    do think it's more prejudicial than probative.  Having said

5    that, we'll see how that the trial goes.

6           If for some reason during the course of the trial,

7    some testimony comes out, whether through Mr. Duarte or

8    otherwise that perhaps opens the door to that, I -- I will

9    revisit it, but my strong leaning is to avoid that

10   conviction.

11          I'm also inclined to -- what is the right -- to

12   cleanse those convictions so that the jurors don't need to

13   necessarily know what they are for, in light of the fact that

14   is Mr. Cleary's request.  I've gone both ways on this.  I

15   worry sometimes the jurors might speculate as to what those

16   convictions are, but Mr. Cleary is not as concerned with

17   that, and so the government can introduce the fact that he's

18   been convicted of one, two, three felonies on this date and

19   this time and you can prove that up.  I'll allow it.  I don't

20   want the evidence of the felon in possession to come in.

21   That's my ruling.

22          Mr. Rodriguez.

23          MR. RODRIGUEZ:  Your Honor, may I clarify the

24   ruling.  There's also a 2013 vandalism conviction.

25          THE COURT:  I'm sorry?

1          MR. RODRIGUEZ:  There's also a 2013 vandalism

2     felony conviction.  So I wanted to clarify whether you're

3     only excluding the felon in possession conviction and/or

4     whether your ruling means we must sanitize the convictions?

5          THE COURT:  Sanitize the convictions, all of them.

6     Okay.

7          MR. RODRIGUEZ:  Okay.

8          THE COURT:  I'm -- I may -- I'm sorry.  I didn't

9     see the vandalism.  I'm sorry about that.  You can introduce

10    the -- well, again, I'll ask the question.  You really need

11    to introduce four felony convictions?

12         MR. RODRIGUEZ:  Again, Your Honor, the answer is do

13    we need to, no.

14         THE COURT:  No.

15         MR. RODRIGUEZ:  Again --

16         THE COURT:  So then what I'm going to do -- look,

17    you can introduce three convictions.  You pick whatever three

18    with the exception of the felonies, all of which are

19    sanitized.  Does that make sense?

20         MR. RODRIGUEZ:  By sanitize, we can't reference

21    what the conviction was for?

22         THE COURT:  Correct.

23         MR. RODRIGUEZ:  Thank you.

24         THE COURT:  All right.  Next motion in limine,

25    Brady materials.  Some outstanding issue that you're

1    concerned about, Mr. Cleary?

2            MR. CLEARY:  If I could address the Court.

3    Potentially outstanding issues, because the government, you

4    know, under the prior Court's order was requested to file a

5    declaration regarding Rule 5 and what they had done.  That

6    declaration was due on July 30th.  The government submitted

7    an objection to the Court's order finding it was not their

8    understanding of the law they had to do this.  Nonetheless,

9    they -- when -- when they filed the declaration, the Court

10   specifically said, we need to know if -- what Brady material

11   you've identified, if you're turning it over.  If you're not

12   turning over Brady material, why are you not turning it over?

13   What is it and why not?

14           The government hadn't even conducted their manual

15   inspection of the police officer files until after the

16   declaration was due.

17           So, you know, my -- my fear -- if you postpone your

18   obligation to review the file until after the declaration is

19   due, the government should be submitting a renewed

20   declaration after they've completed the -- the Brady --

21           THE COURT:  In fairness, the Brady obligation is

22   always ongoing; right?  I mean, it's not as if, Judge Olguin

23   says, file this by X date.  They file it.  Are you worried

24   that the government would take the position well, we filed

25   this on this date, and if we do something thereafter that

 1    comes up with something, we don't have to supplement that

 2    declaration?

 3            MR. CLEARY:  Well, I don't think that under the

 4    Judge Olguin's order that the government has updated their --

 5            THE COURT:  No.  That is a different question.  My

 6    question is, do you -- is it your position or your worry that

 7    the government could conduct this Brady inquiry and find some

 8    other stuff and say well, we submitted something to Judge

 9    Olguin already, so we don't have to do anything more and by

10    extension, don't have to turn over anything to you?

11            MR. CLEARY:  Well, I think that's the better

12    question for the government to answer.

13            THE COURT:  I want to know is that your concern

14    that that could happen?

15            MR. CLEARY:  My concern is that could happen

16    because of the specific nature of the Court's request and the

17    government's response to it.  Then there is this disagreement

18    between the government and the Court as to what they need to

19    do under Brady.  I think that does call into question, you

20    know, what -- what their -- what they may or may not see as

21    their obligation.

22            THE COURT:  Okay.

23            MR. CLEARY:  That's why they're requested to

24    explain it.

25            THE COURT:  Okay.  Let me -- who is taking it for

```
 1    the -- who is going to respond for the government?

 2           Mr. Kahan?

 3           MR. KAHAN:  Yes, Your Honor.

 4           THE COURT:  You file a declaration, I get it.  The

 5    whole we disagree blah, blah, blah.  Here's what we have.

 6    We've done everything we're supposed to.  Is it the

 7    government's view if, in fact, something came up thereafter,

 8    that the government would not have to supplement that

 9    declaration and/or inform at a minimum defense counsel of any

10    new information?

11           MR. KAHAN:  Per Brady, I'm required to disclose all

12    material and exculpatory information afterwards.  I don't

13    believe I have to supplement a Rule 5(f) declaration, but I

14    have to disclose materials pursuant to Brady, which I've

15    done.

16           THE COURT:  Fair enough.  You acknowledge and you

17    understand that you have this ongoing obligation?

18           MR. KAHAN:  It is ongoing until this case is done

19    whatever the stage that is.

20           THE COURT:  Has there been any other information

21    that needs to be turned over or disclosed at this juncture?

22           MR. KAHAN:  At this juncture, no.  Everything that

23    defendant is concerned about that came after the Rule 5(f)

24    declaration has been consulted with our office as to what is

25    appropriate to be disclosed and has since been disclosed.
```

 1          THE COURT:  Does that include the information about

 2   the Inglewood P.D. that we're going to talk about soon

 3   enough?

 4          MR. KAHAN:  That is my understanding that is the

 5   only thing.

 6          THE COURT:  Okay.  So look, in light of that,

 7   Mr. Cleary, it seems to me, they have this obligation.  They

 8   understand the obligation.  Whether they file a supplemental

 9   declaration, I'm not sure is necessary or material as long as

10   you get the information, and I'm going to -- not assume, but

11   given the fact that the government has provided you with

12   information subsequent to the declaration that in many

13   respects demonstrates the government's at a minimum, their

14   knowledge, that this information needs to be turned over.

15          So respectfully, that motion is denied, but the

16   government understands, and my expectation is that if there

17   is any information that contains Brady, it needs to be turned

18   over ASAP.

19          The next motion I have is defendant's motion for

20   pre-indictment delay.  Again, respectfully, Mr. Cleary, my

21   inclination is to deny it.  I don't see the prejudice.  I

22   mean this, is a -- I'm sorry.  Let me get the -- the

23   indictment.  This is a 2020 case.  We're in 2021.  It's less

24   than a year after he was indicted, we're going to trial.  And

25   I get the sort of delay from the arrest to the indictment,

```
 1    but six months?  I mean, I'm not -- I'm saying this somewhat
 2    facetiously.
 3          Mr. Cleary, this is not your first time at the
 4    rodeo.  You've seen plenty of cases with greater delay.  Even
 5    with that delay, the concern I have substantively as it
 6    relates to the motion, what is the prejudice that you believe
 7    has occurred?  Please educate me as it relates to that?
 8          MR. CLEARY:  Yes, Your Honor.  You know, you're
 9    right in that the delay is not the most extensive line of
10    delay, but it is still a delay.  During that course of the
11    delay, it wasn't like the government was inactive.  Case
12    agents were submitting affidavits for cell site warrants
13    after the defendant was arrested and before he was indicted.
14    So the case investigation was continuing.  The defendant was
15    not indicted.  So as far as he knew, there was no charges to
16    be -- to face.  No defense to be made.  No evidence to
17    preserve.  No witnesses to seek out.
18          THE COURT:  Are there witnesses or evidence that
19    you believe are out there that are no longer available
20    because of the time period?
21          MR. CLEARY:  Well, I find that, you know, the time
22    period, although not super extensive, you know, any -- you
23    know, any delay, could harm a witness's memory, particularly,
24    the officer's memory as to whether or not they recall.  For
25    example, in the Franks motion, Officer Barragan submitted a
```

1  declaration where there were very important facts to be -- to

2  be addressed whether or not, for example, the defendant had

3  invoked his right to counsel.  Officer Barragan submitted a

4  declaration that he didn't recall.  He did not recall.

5       THE COURT:  Sure.  That's when you'll utilize your

6  excellent cross-examination skills.  If there are any issues,

7  you'll bring that out during the course of the trial if those

8  are genuine issues; right?

9       MR. CLEARY:  And that would be my hope, yes,

10  Your Honor.  We'll submit on the Court's indicated.  Just

11  object to the delay as it occurred.

12       THE COURT:  I appreciate that.  Respectfully, the

13  motion is denied.  I don't see it -- for Mr. Duarte's

14  education, six months in these cases is jus not a long time,

15  and when you add a pandemic on top of it, and it does seem

16  the government was actively making efforts to try to get this

17  case to resolution.  So I don't think the motion for

18  preindictment delay is meritorious.  So it will be denied.

19       We talked about the motion to suppress.  We dealt

20  with that.

21       Now, I guess there's another motion to suppress

22  with respect to the illegal traffic stop.  Walk me through

23  this, Mr. Cleary.  Help me understand your position.

24  Unfortunately, for Mr. Duarte, there seems to be a lot of

25  other facts irrespective of the stop that led to this

1    incident.  You know, this is like a law school example.  All

2    these different things that happened that I think create

3    challenges for Mr. Duarte.  I want you to have a moment to be

4    heard.

5         MR. CLEARY:  Well, no doubt there's challenges to

6    address in the case of the stop motion here before the Court.

7         You know, as the Court is aware, the officers

8    indicated that they observed two not one to two traffic

9    violations, and our argument was that that the traffic

10   violations were more pretext for this stop and they were not

11   really valid.  That the stop sign violation is not a

12   violation, and the tinted windows were not obscured to such a

13   degree that the Court, of course, would have to weigh the

14   officer's testimony and decide whether or not it was credible

15   and decide whether or not -- the Court, after weighing and

16   considering the officer's testimony as to whether or not, you

17   know, a violation occurred.

18        We submit that -- that no -- no -- no probable

19   cause for a stop, no reasonable suspicion existed other than

20   a pretext, and that the officers fabricated the grounds for

21   the stop in order to search the defendant's vehicle.  Then,

22   you know, the officers also allege that something that I

23   think is a bit incredulous that with lights, you know,

24   forward, you know, spotlights, flood lights, sirens, every

25   light on the car illuminating the vehicle in front of them,

1    that at that point they saw Mr. Duarte or rear passenger or

2    whoever reach out and throw a weapon in flagrant -- right in

3    the wide open, right when every light known to that officer

4    to utilize was on.  It strains credibility to -- to believe

5    that is how -- that that is what the officers observed.  The

6    Court has to weigh the determination and satisfy himself

7    whether or not that was a reasonable belief.

8              The officers then, based on the discarded weapon,

9    stopped and the traffic stops, traffic infractions decide to

10   stop the vehicle at which point they -- they search the

11   vehicle and locate a magazine with ammunition in it, which is

12   part of the evidence that the government wants to introduce

13   against Mr. Duarte is that there was a magazine with rounds

14   in it.  That would satisfy the violation of the felon in

15   possession of ammunition or weapon.

16             In addition, they want to introduce the evidence of

17   firearm itself, which was located -- the question to where it

18   was located -- in our mind, the government indicates that it

19   was the retrieved from wherever it was thrown and then, you

20   know, identified by the -- the officers as being the weapon

21   that was tossed out.

22             It was -- it was not located in the same location

23   that the paragraphs depict.  I think there's some -- there's

24   some factual disputes as to where the actual weapon was

25   located, and then there's, you know -- in addition, the

1   officers' belief that the -- that the -- that the traffic

2   violations was really just a pretext to stop and search the

3   vehicle with the -- without reasonable suspicion or probable

4   cause.

5           THE COURT:  All right.  Thank you, Mr. Cleary.

6           Who from the government wishes to respond?

7           MR. RODRIGUEZ:  I would, Your Honor.

8           THE COURT:  Mr. Rodriguez.

9           MR. RODRIGUEZ:  Thank you.

10          So, first of all, the government would just note

11   that defense counsel is just alleging facts without putting

12   the defendant on the stand.  The government would, of course,

13   want the opportunity to cross-examine defendant to the extent

14   he's putting facts at issue.  To the extent that he's not

15   putting facts at issue, if he chooses not to testify at the

16   end of the day, the government would say there's no factual

17   dispute.  This is purely a legal issue.

18          THE COURT:  You say no factual dispute because he

19   hasn't submitted declaration?

20          MR. RODRIGUEZ:  Well --

21          THE COURT:  Or you're just champing at the bit to

22   have Mr. Duarte testify so you can cross-examine him?

23          MR. RODRIGUEZ:  The declaration was submitted

24   untimely, but submitted nonetheless.  But for the sake of

25   clarity, to the extent that facts will be put in dispute, the

1    government would ask that the defendant testify so the

2    government would have the opportunity to cross-examine.

3         To more substantively address some of defense

4    counsel's assertions, for example, that, you know, seems

5    somewhat preposterous that the officers turned on various set

6    of lights.  I would note that defendant's declaration

7    acknowledges that the officers activated bright lights.  So

8    to the extent that is being put at issue that whether the

9    officers could have seen the firearm being tossed.

10        Ultimately, defense counsel's assertion is it comes

11   down to a credibility contest.  Ultimately, it would either

12   require testimony and cross-examination.

13        THE COURT:  Okay.  Let's get to the merits, though,

14   of this suppression motion.  Is the government's view that

15   there was probable cause irrespective of these traffic

16   violations?

17        MR. RODRIGUEZ:  Yes, Your Honor.  So there's

18   reasonable suspicion to -- to follow the vehicle and

19   ultimately search it, but at the point that the officers saw

20   a weapon being tossed from the vehicle, at that point they

21   had probable cause to actually search the vehicle.  Then

22   ultimately, when they -- the vehicle came to a full stop and

23   the officers approach the vehicle, the officers will testify,

24   as they have noted in their declarations, that they

25   recognized the defendant was on PRCS; that he had these

1    search conditions.  They confirmed those search conditions

2    and searched the vehicle pursuant to the search conditions as

3    to the probable cause.

4            Not surprisingly, the government's position would

5    be that neither the ammo nor the firearm should be

6    suppressed.

7            THE COURT:  Thank you.

8            Mr. Cleary, I mean, look, it's a tough position to

9    be in.  I mean, just think based on the facts of this case.

10   A, I don't think any testimony is necessary.  I think there

11   was reasonable suspicion and ultimately probable cause once

12   at least the officers allege they saw the gun.  Obviously,

13   the issues you raised are ones that may be brought out during

14   trial as to -- you know, whether that is a plausible story,

15   but that's a trial issue not a suppression issue, at least

16   from the Court's perspective.  Respectfully, that motion will

17   be denied.

18           The next motion to suppress is statements taken by

19   Detective Barragan.  My understanding is that the government

20   is not opposed to that.  So they don't intend to offer any of

21   those statements; is that correct, Mr. Rodriguez?

22           MR. RODRIGUEZ:  That is correct, Your Honor.

23           THE COURT:  That motion is denied as moot.

24           Now we'll talk about the government's motions in

25   limine with respect to impeachment evidence regarding

1    detective -- I guess, specifically Detective Barragan.

2           This one I think is a tricky issue in the Court's

3    mind.  Maybe it's because just doing this for a while.  I get

4    the government's position that hey, Barragan is only here for

5    a limited portion.  I don't think the use-of-force incidents

6    should come in at all.  I do think, however, that his failure

7    to report is an issue.  I mean, if I understand the facts

8    correctly, he and a partner that got involved in something.

9    You know, something involving a family member of the

10   partner's.  Something happened.  They didn't report it.  It

11   was found out, I assume, through those other people.  They

12   call the police.  And he was -- this is the point where I

13   want to make sure I'm clear.  He was disciplined for failure

14   to report?

15          MR. KAHAN:  Yes, Your Honor.

16          THE COURT:  Okay.  So if that's the case, one might

17   argue, I think, fairly strongly that the failure to report is

18   tantamount to not being truthful.  It's like something

19   happened, you know something happened, but you never told

20   anyone that anything happened, and maybe it's a minor point

21   in connection with this case, but I'm assuming that

22   Mr. Cleary is going to try to challenge this case.  You know,

23   he's done a great job, you know, putting the government to

24   its task filing a whole bunch of motions going at it piece by

25   piece.  I suspect there will be much of that during the

```
 1   trial, and that, you know, Barragan is going to testify.
 2   Every witness's credibility is the issue, just like you say
 3   Mr. Duarte testifies, his credibility is at issue.
 4         Why wouldn't the fact that an officer, at a
 5   minimum, concealed or didn't come clean with something that
 6   happened, doesn't that go to that officer's credibility as it
 7   relates to what his role was within -- with this offense?
 8         MR. KAHAN:  I do not believe so, Your Honor, for a
 9   couple reasons.  One this failure to report is over ten years
10   old.  It's from 2007.
11         THE COURT:  I mean, it goes to -- I mean, like -- I
12   get that.  But I mean, what he did -- look, you may or may
13   not know.  I worked as a civilian at LAPD for years.  These
14   kind of things, that's like you lie, you die kind of thing.
15   He didn't come clean about that.  So go ahead.  I'm sorry.  I
16   was interrupting you.
17         MR. KAHAN:  No worries, Your Honor.  Number two,
18   based off of what I expect potential testimony to be, he
19   didn't believe he was obligated to write a report.
20         THE COURT:  I get that.  So what?  He may not have
21   thought he should have written a report.  That's almost
22   saying Mr. Barragan didn't believe he couldn't possess a gun.
23   So what?
24         MR. KAHAN:  That's the difference, though, between
25   an act of malice or subterfuge versus an act of policy or
```

```
 1    just an act of belief that he didn't have to report
 2    something.  If he was -- if he deliberately did not report it
 3    because of the underlying facts or for whatever reason or
 4    because he wanted to hide his involvement, and the --
 5              THE COURT:  Isn't that kind of the argument?  I
 6    mean --
 7              MR. KAHAN:  I don't think the evidence supports
 8    that given what has been disclosed to defense counsel and
 9    what is in the government's possession.  I don't believe it
10    supports that argument.
11              THE COURT:  Let me -- remind me if you would, what
12    is the exhibit -- oh, shoot.  I'm trying to find that letter
13    that you submitted to the government.
14              MR. KAHAN:  That would be attached to our initial
15    motion in limine.
16              THE COURT:  Is that number three?
17              MR. KAHAN:  Motion in limine number three.
18              THE COURT:  Let me pull up the letter.  I have the
19    attachment.  It's document 65.  Let me take a look at it
20    again.  Look, it is somewhat limited information.  I mean, is
21    going to be an issue if I read this?
22              MR. KAHAN:  Given it is under seal, if this Court
23    does read it, I would at least ask the transcript for this
24    portion to be --
25              THE COURT:  I do think it's relevant.  I mean, so
```

1    I'll order this portion to be sealed, as I discuss the

2    contents.

3              (The following proceedings held under seal)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (whereupon the sealed proceedings concluded)

2          THE COURT:  I'm sorry.  I think that covered all of

3    the motions.  That's not accurate.  Mr. Cleary filed a brief

4    in support of a motion in limine to exclude DNA evidence.

5          In essence, if I understood the motion, he's

6    basically saying that there's not -- let me just read it so I

7    don't -- that the inability to locate any forensic requests

8    sort of puts into question, I guess, the DNA evidence.  I'm

9    not sure I agree with that assertion.

10          In any event -- regardless of my view on that, it

11   appears that the government filed an opposition yesterday

12   evening, and they attached as an exhibit a Los Angeles County

13   Sheriff's Department Service Request, I believe, dated

14   April 13th, regarding buccal, B-u-c-c-a-l, reference swab

15   from suspect Duarte Steven.  This is my first time looking at

16   it.  To be candid, I didn't get a chance to look at it last

17   night.

18          So that appears to be the request.  In fairness to

19   you, Mr. Cleary, government counsel indicated they gave it to

20   you this afternoon.  So I'm assuming this is the first time

21   you're looking at it, but take a moment and look at it and

22   let me know if based on this, is the motion still ripe?

23          MR. CLEARY:  Well, from what I can tell, the -- it

24   appears that there is L.A. County Sheriff's Department

25   Service Request.  The confusion arose because the Inglewood

1    Police Department when they were queried regarding if there

2    was a request regarding DNA in this case, they had no

3    records.

4              THE COURT:  I'm assuming they farm it out to other

5    agencies.  That's how it got to the Sheriff's department.

6    We'll find out from the government.

7              MR. CLEARY:  I'm sure the government is -- as

8    officers of the Court, they are representing that there in

9    fact there is some type documentary link-up to this

10   particular sample.  And that I will reserve any objections

11   if, I have any, to the time of the introduction of the

12   evidence.

13             THE COURT:  Fair enough.

14             Mr. Kahan?

15             MR. KAHAN:  There's a bit of confusion by the

16   defense's part in terms of requests to who from who.  What I

17   believe defense counsel may be confused on is interoffice

18   e-mails between Inglewood Police Department Officers to the

19   Inglewood Forensics Unit, those e-mails were inadvertently

20   deleted or purged or whatever phrase Inglewood wanted to use

21   between the request.

22             However, there has been discovery for quite

23   sometime indicating that the forensic specialist who swabbed

24   the firearm and magazine for DNA, who she received a request

25   from, I believe that's in her narrative or at least in her

 1   report.  That's been disclosed, I believe, sometime since

 2   April.  Then there is the communication between the Inglewood

 3   Forensics Unit and the Los Angeles Sheriff's Department

 4   Laboratory, which ended up doing the DNA analysis.  That is

 5   what the government has attached.  That is what the

 6   government believed that the defendant was challenging,

 7   because he is asking for a Daubert motion for the DNA

 8   analyst.

 9           THE COURT:  Got it.

10           MR. KAHAN:  I think the government has laid out its

11   position as to why that is inappropriate given the

12   allegations in defense counsel's -- the defendant's letter

13   brief in support of a motion in limine.

14           THE COURT:  Okay.  But it sounds like -- I

15   appreciate the clarification, but it sounds like what

16   Mr. Cleary is saying is based on what he's seen, he is, you

17   know -- I don't want to put words in his mouth.  He is

18   reserving his right to challenge this again upon further

19   review.  I'm taking that as not a withdrawal, but perhaps a

20   pause as it relates to this motion if he sees some other

21   issues, he'll raise it presumably when we start trial next

22   week.

23           So I'm going to deny the motion right now without

24   prejudice subject to any reissues, but it does seem to me

25   you've laid out sort of, for lack of a better term, the chain

1   of custody as it relates to this request.  I would also add,

2   to me, again, not having delved into it deeply.  I got the

3   motions just in the last couple days, I'm not convinced that

4   the absence of such request would automatically trigger a

5   Daubert motion in my mind.  I mean, because if -- you know,

6   it's one thing to say that the testing was bad, I guess the

7   argument is that there is no request that, perhaps, it was

8   somebody else's testimony -- maybe.  I don't think the

9   absence of a request, I view that as more -- arguably --

10  arguably administrative would not necessitate a Daubert

11  motion.

12          I will let Mr. Cleary have some time to look at

13  this.  If we need to deal with it, we can deal with it during

14  the trial if necessary.

15          MR. KAHAN:  Yes, Your Honor.

16          THE COURT:  All right.  Let me take a look at my

17  notes.  I'm not sure.  I may have missed one motion.  If

18  either side believes I missed a motion because I think the

19  first motion was sort of intertwined with -- actually, it was

20  a second motion.  The prior bad acts.  We've covered that.

21  If it's unclear, please let me know.

22          Mr. Kahan?

23          MR. KAHAN:  I believe that the only potential

24  motion that this Court is yet to address may have been

25  intertwined with some of the others.  That was a -- in one of

1   the defendant's oppositions to our motion, he included a new

2   motion to strike the surplusage from the indictment.

3              THE COURT:  Right.

4              MR. KAHAN:  We filed -- in our reply we noted our

5   opposition to that.  I don't believe this Court has made a

6   ruling.

7              THE COURT:  Mr. Cleary, what is your view as it

8   relates to this surplusage, particularly, in light of what

9   we've discussed today?

10             MR. CLEARY:  The Court should order the indictment

11  to be redacted and the surplusage removed, as the Court

12  indicated to what is relevant.  The way the indictment reads

13  if the jury sees it, it lists out five felony convictions for

14  Mr. Duarte, which clearly prejudices him once the jury heard

15  or reviewed that information.

16             If I could, I'd like to take a third bite at the

17  apple --

18             THE COURT:  Okay.

19             MR. CLEARY:  -- at discovery.  That is as it

20  relates to the -- the -- the officer -- as it relates to, you

21  know, when I initially was contacted by the government

22  regarding the personnel file of these officers, did you know,

23  Your Honor, that Inglewood Police Department purges all files

24  after five years.  Purge.  Now, I don't know if purge is a

25  room down there or if it's a real thing.

```
 1              THE COURT:  Right.

 2              MR. CLEARY:  I was told that all files -- all

 3   personnel files purged.  Gone.  Deleted.  So that being hard

 4   to believe, I -- I -- the prosecutor was kind enough to

 5   inform me the name of the city attorney in Inglewood who

 6   handles files, who then sent me 500 pages of personnel

 7   records --

 8              THE COURT:  Right.

 9              MR. CLEARY:  -- that the prosecutor somehow was

10   unable to locate in their Brady review and request.

11              So my request was, you know, the prosecution has

12   indicated in Court even today that I believe -- my sense of

13   what he's saying is there are Brady materials that they've

14   identified that their Brady team has told them do not

15   disclose.  So he's disclosed what he feels, according to his

16   Brady team, has disclosed.  Judge Olguin said, okay.  If

17   you've identified Brady and not disclosing it, tell us why.

18              That step, I think, needs to be taken.  I think

19   it's a --

20              THE COURT:  Hold on one second.  Is that accurate,

21   Mr. Kahan?  As far as the assertion that I -- if I

22   understood, the government has identified Brady stuff, and

23   you discussed it with your supervisor who says it doesn't

24   need to be turned over?

25              MR. KAHAN:  *Henthorne*.
```

```
 1              THE COURT:  I'm sorry.  Henthorne.

 2              MR. KAHAN:  To give the Court an overview of what

 3     we're doing at the office.  There are multiple ways for us to

 4     obtain Henthorne information.  One requests personnel review

 5     file by the -- whatever agency we're dealing with it.  Two, a

 6     candid conversation with officers to test the background.

 7     That's how we were initially able to get Detective Barragan's

 8     failure to --

 9              THE COURT:  Right.

10              MR. KAHAN:  -- strike that.

11              THE COURT:  Information about Detective Barragan.

12              MR. KAHAN:  And upon personnel review, the only

13     thing I got what's I discussed earlier.

14              And then three -- let me see.  Three is just -- I

15     can't remember the third.

16              THE COURT:  Internal review within the office?

17              MR. KAHAN:  Of materials that are provided to us,

18     because sometimes agencies provide us information of just

19     here is what an officer has been cited for, disciplined

20     for --

21              THE COURT:  Right.

22              MR. KAHAN:  -- whatever.

23              We consult with Henthorne coordinators to see

24     whether or not this is actually material that we should

25     disclose.
```

```
 1                For instance, when I consulted with my Henthorne

 2     coordinator about Detective Barragan, I disclosed what --

 3                THE COURT:  What you disclosed.

 4                MR. KAHAN:  I will note that the 500 pages of

 5     material that defense counsel cited, that was provided by the

 6     city attorney to him because they were public records.  I did

 7     not have those materials, because based off consulting

 8     with -- let me -- there's one thing I do want to clarify.

 9                So there were two incidents that this Court decided

10     not to rule on --

11                THE COURT:  Right.

12                MR. KAHAN:  -- for detective Barragan.

13                One of them based off of how the -- when the result

14     of that use of force happened, would it be possible to seal

15     this portion?

16                THE COURT:  We can seal this portion as well.

17                (Whereupon the following proceedings held under

18     seal)

19

20

21

22

23

24

25
```

1

2

3

4

5

6              (whereupon sealed proceedings concluded.)

7              THE COURT:  Now, with respect to surplusage, how

8    are we going to deal with this for the jury, as far as the

9    indictment goes?  I'll be honest.  I'm trying to jog my

10   memory as to how we've dealt with this in the past.  It seems

11   to be problematic to go through all of this exercise of

12   sanitizing of things.  Then we slip into the jury room, hey,

13   here's all of this stuff.  What's the government's view?

14             MR. RODRIGUEZ:  I won't take a second bite at

15   the apple, Your Honor.  You know our position whether the

16   conviction should be admitted.  Based on that ruling, the

17   only thing that would be consistent based on the motion to

18   strike would be that the indictment be sanitized to

19   reflect -- to be consistent with your prior rulings with the

20   admissions --

21             THE COURT:  Great minds think alike.  The

22   government will sanitize this indictment so what is submitted

23   to the jury is consistent with the Court's prior rulings.

24             So we're clear, I don't want a redaction.  I don't

25   want a bunch of black lines of an indictment.  We're going to

1    basically redo the indictment in a clean way.  Does that make

2    sense?  I think Ms. Estrepo has a curious look through the

3    mask.

4            MS. ESTREPO:  No, no.  Apologize, Your Honor.

5            THE COURT:  No need to apologize.  I'm clear so

6    there is no issues.  A redone indictment that sanitizes, just

7    indicates prior felony convictions, doesn't -- you know,

8    consistent with the Court's rulings that I made earlier.

9            MR. RODRIGUEZ:  Yes.  To clarify, Your Honor,

10   because I don't know if it will trigger legal issues.  That

11   will only be for the jury.  The indictment in this case --

12           THE COURT:  The indictment remains there.  It is

13   just what is submitted to the -- just submitted to the Court.

14           MR. RODRIGUEZ:  One second, Your Honor.

15           THE COURT:  Take your time.

16           MR. CLEARY:  So the motion to strike surplusage

17   would be granted then?

18           THE COURT:  Correct.  Consistent with the Court's

19   rulings in the prior motions.

20           MR. CLEARY:  We're getting close to the end here,

21   before I forget.  The defendant is housed at San Louise.

22   That's why there is a delay this morning.  If the Court has

23   any power to --

24           THE COURT:  I certainly will recommend the

25   recommendation that he be housed closer.  There was a

1    discussion between the Marshal and my courtroom deputy that

2    we informed them he's going to go to trial next Tuesday.  You

3    know, I don't have the power to order the Marshals to

4    house -- to house anyone in a specific location.  I can make

5    a recommendation so that we avoid him being transported back

6    and forth.

7              MR. CLEARY:  Thank you.

8              THE COURT:  All right.  Mr. Rodriguez?

9              MR. RODRIGUEZ:  Yes.  Thank you, Your Honor.  To

10   confirm, Your Honor's prior ruling the government would be

11   able to select three convictions.  We would only be able to

12   introduce the date of the conviction and nothing more?

13             THE COURT:  Correct.

14             MR. RODRIGUEZ:  So you would like the government to

15   propose or to confer with defense counsel as to a new

16   indictment just to show the jury that would remove two

17   convictions and would just list the conviction dates of the

18   three convictions.

19             THE COURT:  Conviction date, case numbers, if you

20   need to.  You can figure that out.  Just -- you know what I'm

21   getting at.  We're trying to avoid the jurors to see all of

22   these convictions unnecessarily.

23             If he testifies, different story.  We'll deal --

24   that may cause a change in the indictment.  In the meantime,

25   get an indictment ready.  Give it to Mr. Cleary so you can

1   figure all of that out and have it ready come Tuesday.

2          MR. RODRIGUEZ:  Understood, Your Honor.  Thank you.

3          THE COURT:  Let me look at my notes to see what

4   else we need to deal with today.  I took a quick look at the

5   jury instructions.  I seem to recall defense had some motion

6   for some special jury instructions about constructive

7   possession, DNA fingerprints.

8          Did the government file an opposition to that?

9          MR. RODRIGUEZ:  We didn't, Your Honor.  Consistent

10  with Judge Olguin's order, he asked that the parties confer

11  and -- and determine whether there were any objections --

12  better yet, to confer and propose a joint set of

13  instructions, which we did.  And then the -- this notice of

14  special instructions was filed, so it was originally the

15  government's position that it shouldn't be considered because

16  it --

17          THE COURT:  I know.  Look, let's deal well reality.

18  What's the government's position as it relates to those

19  instructions?  Do you object?

20          MR. RODRIGUEZ:  Government's position, yes.

21  They're unnecessary.

22          THE COURT:  They're unnecessary.  What's the basis

23  for that?

24          MR. RODRIGUEZ:  One second to pull those up,

25  Your Honor.  As to the first instruction -- the second

1    instruction, the constructive possession.  It's the

2    government's position that the possession as defined by the

3    Ninth Circuit instructions is more that than sufficient and

4    really it's -- the proposed instruction is more -- it's

5    trying to insert defense's argument.  There's no reason to

6    deviate from the --

7              THE COURT:  Does it matter?  Is this the kind of

8    thing that should wait until we see what comes out at trial?

9    We don't know if Mr. Duarte will testify; right?

10             MR. RODRIGUEZ:  Correct.  We don't.

11             THE COURT:  Could that change the analysis?  What

12   if he says, it wasn't my gun; it was the driver's gun?

13             MR. RODRIGUEZ:  Sure, yes.  Depending on defense's

14   theory of the case, it is reasonable that an instruction

15   would be necessary, but as we sit here today --

16             THE COURT:  Okay.  Well, it seems to me without

17   having to go through a vigorous debate on this, let's reserve

18   my ruling as it relates to these two special instructions.

19   Let's see what comes out at trial to see if they are indeed

20   even relevant.  I think that's everything on this case.

21             Any other issues -- well, I'm sorry.  Any other

22   motions that either side feels that the Court didn't rule on

23   or wasn't clear on?  I think we've covered everything?

24             MR. KAHAN:  Regarding the motions, Your Honor, I

25   believe we have covered everything outside of housekeeping

```
1    matters and voir dire and --
2              THE COURT:  Got it.
3              MR. KAHAN:  -- some other requests for discovery
4    or --
5              THE COURT:  Great.
6              Mr. Cleary, anything as it relates to the motions?
7              MR. CLEARY:  The defendant requests -- the Court
8    did deny the motion to suppress the DNA buccal draw from the
9    defendant.
10             THE COURT:  Yes.
11             MR. CLEARY:  Based on the fact that there was a
12   warrant and --
13             THE COURT:  There was independent probable cause.
14   So I did not even get to the initial fact because there was
15   independent probable cause.
16             MR. CLEARY:  Very well.
17             THE COURT:  All right.  So let's talk about
18   housekeeping.  I'll run through what I'm proposing.
19   Obviously, because of COVID-19, there's a whole host of
20   restrictions that we need to go through.  My proposal is
21   we're going to do the voir dire downstairs in the ceremonial
22   courtroom.  This is all subject to the change.
23             We will do in the grand ceremonial courtroom.  I'll
24   call 40 or so jurors.  Go through a voir dire, if you will,
25   of probably at least 25 to 30.  I may do all 40, just
```

1    depending on the timing.  You'll get a chart that sort of

2    outlines where they will be seated.  The challenge for you

3    all is going to be remembering where they are and where they

4    will be in connection with the 14, because I'll probably -- I

5    will pick 14 jurors.  12 jurors, two alternates.

6              Mr. Rodriguez?

7              MR. RODRIGUEZ:  Your Honor, may be briefly be heard

8    on that point, given the experience that we've seen with

9    other trials, we've noticed there is one case going on now

10   where two jurors got exposed or had COVID within the first

11   couple days.

12             THE COURT:  I'm aware of that.  I might consider 16

13   just in the abundance of caution.

14             MR. RODRIGUEZ:  Thank you.

15             THE COURT:  I'm aware of that.  That's a fair

16   point.  So I may consider 16.  We'll do the voir dire

17   downstairs.  My proposal, subject to change, a little

18   different from what I normally do.  Downstairs we'll bring

19   each juror up to the microphone.  They'll answer the basic

20   questions.  And then I will give them all in advance a sheet

21   of questions that I intend to ask all of the jurors.  They'll

22   have that, and I'll have the jurors go through those

23   questions.  Okay.

24             I generally do not allow attorney voir dire.  I may

25   in the next couple days reconsider that.  Emphasis on the

1    word may.  Just to avoid -- I think it may be more efficient

2    if I allow brief questions of each juror at the time they're

3    up as opposed to doing the whole voir dire and having you all

4    come and see if you have questions or not.  We'll go through

5    those jurors.  And then I anticipate we'll take a break.

6    I'll -- we do the peremptories and cause outside the presence

7    of the jurors.

8              So I may have you all come back into the jury room

9    in -- there's -- a room in the grand ceremonial courtroom.

10   We can discuss for-cause challenges and depending on how many

11   peremptory challenges.

12             Mr. Kahan?

13             MR. KAHAN:  Your Honor, if I could interject with a

14   question in terms of peremptories.  Is this Court limiting

15   the peremptories to those in the 12 seats, or is it just

16   anyone --

17             THE COURT:  If you want to do them to anyone,

18   that's on you.  You use them, you use them.  Right.

19             MR. KAHAN:  Thank you.

20             THE COURT:  So the hope is that we'll get a jury

21   before the afternoon.  So be ready for opening statements at

22   at a minimum and calling your first witness.  Again, this is

23   all subject to change.  We don't know the dynamics.  I'm sure

24   we have heard the different sort of anecdotes of what has

25   been working, what is not in this crazy time that we're in.

1    We'll do what we can to get a jury in.  At the minimum, get a

2    jury before the end of the day.  If it starts getting late, I

3    may say we got a jury.  Everyone come back to this courtroom.

4    The trial will be here in this courtroom.  I plan on having

5    the jurors seated in the gallery.  Meaning, no audience

6    members allowed in the courtroom.

7          The only people that will be allowed in the

8    courtroom are counsel, obviously, Mr. Duarte, the courtroom

9    personnel.  That is it.  If there are folks that wish to

10   observe, we will have -- I'm not sure if it will be on this

11   floor or another courtroom where they can observe the

12   proceedings via video and audio.  The jurors will typically

13   take a break in one of the other courtrooms and, in fact,

14   they'll deliberate in the other courtroom as opposed to the

15   jury room.

16         One thing I'm still working on, I may for purposes

17   of avoiding a lot of back-and-forth cross population in the

18   hallways, if you all need to use rest rooms, et cetera, we

19   may allow you to use the rest rooms in the courtroom hallway

20   so that you're there, and the jurors are elsewhere.  I'm

21   trying to avoid as much sort of cross pollination, if you

22   will.  Still to be determined.  I'm debating whether we go

23   full days, your standard 9:00 to 5:00 or 9:00 to 3:00 or 9:00

24   to 2:00 with limited breaks.

25         How long do you think the government's case will

```
 1   be?
 2           MR. RODRIGUEZ:  Your Honor, we estimate two days.
 3           THE COURT:  Two full days?
 4           MR. RODRIGUEZ:  Probably not two full days.
 5           THE COURT:  How many witnesses are you going to
 6   call?
 7           MR. KAHAN:  Your Honor, we have seven witnesses.
 8           THE COURT:  Give me the rundown on chose those
 9   witnesses are.
10           MR. KAHAN:  Officer Tyler Villacana.
11           THE COURT:  He's Inglewood PD.  He's going to talk
12   about the stop, what he observed, et cetera?
13           MR. KAHAN:  He will talk about that, correct,
14   Your Honor, plus the observation of a firearm coming out of
15   the window, and the seating of the defendant.
16           THE COURT:  Who is next?
17           MR. KAHAN:  Troy Wunderlich, also of Inglewood PD.
18   He was Villacana's partner.  He searched the car and found
19   the magazine and then connected the magazine with the
20   recovered firearm.
21           THE COURT:  Who is next?
22           MR. KAHAN:  Officer Nicolas Bobbs, B-O-B-B-S.  He
23   is the Inglewood police officer who responded to the scene
24   and recovered the firearm.
25           THE COURT:  Okay.  Who is next?
```

1          MR. KAHAN:  After that is Celeste Hewson,

2     H-e-w-s-o-n.  She's the senior forensic specialist who took

3     DNA biological swabs of the firearm and magazine and made the

4     request to the Sheriff Department laboratory to conduct DNA

5     analysis on the those biological samples compared to the swab

6     collected by Detective Barragan, who is the next witness.

7          THE COURT:  Barragan.  Okay.  He took the swab of

8     Mr. Duarte.  Then who is after that?

9          MR. KAHAN:  After that are two government experts.

10    One is FBI Special Agent Dan Lewis, who will establish the

11    nexus of the firearm, the interstate nexus.

12         THE COURT:  Okay.

13         MR. KAHAN:  Last on the government's experts is

14    Luis Olmos, O-l-m-o-s.  He's the senior criminalist who

15    conducted the DNA analysis.

16         THE COURT:  So.  Hewson, H-e-w-s-o-n, took the

17    swab?

18         MR. KAHAN:  Of the firearm.

19         THE COURT:  Okay.  Of the firearm.  Barragan took

20    the swab of Mr. Duarte?

21         MR. KAHAN:  Correct.

22         THE COURT:  Olmos is going to talk about the

23    analysis connecting the two.

24         MR. KAHAN:  Connecting the defendant's DNA to the

25    biological swabs of the firearm and magazine.

```
 1              THE COURT:  Okay.
 2              MR. KAHAN:  I will note that Officer Bobb,
 3    Ms. Hewson, and Special Agent Luis's testimony, I believe,
 4    will be very short.
 5              THE COURT:  Okay.  They will be ready to go on
 6    Tuesday and Wednesday.
 7              MR. KAHAN:  We have informed them, yes.
 8              THE COURT:  We'll see if there will be a defense
 9    case.  Okay.  So I'm debating, like I said, be prepared for a
10    full day.  And look, you're all trial lawyers.  You have to
11    be flexible.  Bring power bars, whatever you need to do to
12    get this trial going.  My main interest is not keeping this
13    jury waiting.  I don't anticipate a lot of other issues.  If
14    there are, we'll deal with them early in the morning or late
15    in the afternoon after the trial.
16              Masks on for everyone.  Witnesses, if you're
17    testifying.  As far as sanitizing and trying to make sure
18    we're as safe as possible, I'll allow you, if you wish, to
19    conduct your examination from where you are seated or I
20    prefer you stand, if you wish, or you can use the lectern.
21    As it relates to using the lectern, there are wipes.  There
22    are other items there.  I'm leaving that responsibility up to
23    you.  We don't have the staff to wipe down each and every
24    time someone goes up there.
25              Similarly, as it relates to the witnesses, unless
```

1    there's a compelling objection, witnesses will have masks on

2    and/or face shields.  I've heard in other trials the

3    government has provided face shields for witnesses, that's

4    fine, if that's what you want to do.  As you can see, they'll

5    be testifying behind the plexiglass.  Obviously, we have

6    plexiglass at the lectern as well.

7              Any other housekeeping matters that I missed that

8    you wanted to raise from the government's standpoint?

9              MR. KAHAN:  Your Honor, the government intends to

10   have physical exhibits during the trial.  So I'm still

11   clearing it with the Marshal to make sure everything is

12   clear.  I want to make sure the Court is aware that the

13   government intends to bring in the firearm, ammunition, and

14   magazine.

15             THE COURT:  Just make sure it's clear with the

16   Marshal.

17             MR. KAHAN:  Yes, Your Honor.

18             THE COURT:  Okay.

19             MR. KAHAN:  This is -- in terms of this Court's --

20   what the CRD informed government counsel in terms of

21   materials it needs to provide by Monday, that included a

22   witness list and a stipulated exhibit list?

23             THE COURT:  Right.

24             MR. KAHAN:  I will note that I -- I am, again,

25   asking defense counsel to please respond to my repeated

1    requests to provide stipulations to the exhibit list that I

2    have sent to him, otherwise I will have to --

3              THE COURT:  Exhibit list or witness list?

4              MR. KAHAN:  Exhibit list.

5              THE COURT:  Okay.

6              MR. KAHAN:  Pursuant to Judge Olguin's court order

7    when Judge Olguin had this case, we were to submit a

8    stipulated exhibit list.  I did not receive any response from

9    defendant about stipulations.  So I submitted a government

10   exhibit list with no indication of stipulations.

11             In the event that there are stipulations or

12   anything like that, I have two questions, one, does this

13   Court pre-admit exhibits, and two, in the event the

14   government wishes to use exhibits multiple times, will this

15   Court -- this Court require the government to request publish

16   each and every time?

17             THE COURT:  If the parties have agreed, and if the

18   witness -- if a document is in evidence, you don't -- once

19   it's admitted, you can publish it.  Obviously, if it's not

20   admitted, don't publish it.

21             If you all agree as it relates to the exhibit, let

22   the Court know in advance, and you can just work with that

23   exhibit and proceed accordingly.

24             MR. KAHAN:  Okay, Your Honor.

25             THE COURT:  Does that answer your questions?

1          MR. KAHAN:  That answers my questions.  The last

2     thing I'll note for the record, the government, again,

3     requests discovery related to defendant's expert witness.

4          THE COURT:  Okay.  That request is duly noted.

5          Anything further from the government?

6          MR. KAHAN:  No, Your Honor.

7          THE COURT:  Mr. Cleary, anything further from you,

8     sir?

9          MR. CLEARY:  No, Your Honor.  Did you say that we

10    were meeting in courtroom one at 9:00 a.m.?

11          THE COURT:  It will be 9:00 a.m.  Let me confer if

12    it is 9:00 or 8:30 on Tuesday.  If I were you, I would get

13    here at 8:00 o'clock.  We're going to have jurors.  If there

14    are issues we need to discuss, I want to get all of that done

15    before the jurors come in at 8:30.  Be there 8, o'clock,

16    courtroom one downstairs.

17          MR. CLEARY:  Very well.

18          THE COURT:  Anything further, Mr. Cleary?  Any

19    other issues?  Concerns?  Questions?

20          MR. CLEARY:  No, Your Honor.  Again, the request,

21    if possible, that my client be housed at MDC.

22          THE COURT:  I made that request.  We'll make it

23    again.  Mr. Duarte, I can't guarantee it.  They know we have

24    a trial on Tuesday.  You know, my hope is they find an

25    accomodation for you so you don't have to keep going back and

1    forth.  All right, sir.

2              THE DEFENDANT:  Thank you.

3              THE COURT:  If there's nothing further, I will see

4    you Tuesday for trial 8:30 a.m.  I appreciate the time and

5    special thanks to our court reporter for working through the

6    last several hours.  Thank you.  That concludes this matter.

7              Have a good day everyone.

8              (Proceedings concluded at 2:25p.m.)

9                          CERTIFICATE

10   I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT

11   TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN

12   THE ABOVE MATTER.

13   FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE

14   REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE

15   REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

16

17   /s/ Miriam V. Baird          06/21/2022

18   MIRIAM V. BAIRD                      DATE
     OFFICIAL REPORTER
19

20

21

22

23

24

25