1      UNITED STATES DISTRICT COURT

2    CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3    HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE

4

5  UNITED STATES OF AMERICA,        )
                                    )
6                  PLAINTIFF,       )
                                    )
7          vs.                      ) No. CR 20-0387-AB
                                    )
8  STEVEN DUARTE,                   )
                                    )
9                  DEFENDANT.       )
   _____ )
10

11

12

13           REPORTER'S TRANSCRIPT OF PROCEEDINGS

14          DAY 1 OF JURY TRIAL, MORNING SESSION

15              TUESDAY, AUGUST 24, 2021

16                    9:45 A.M.

17              LOS ANGELES, CALIFORNIA

18

19

20

21

22  _____

23          **CHIA MEI JUI, CSR 3287, CCRR, FCRR**
              FEDERAL OFFICIAL COURT REPORTER
24            350 WEST FIRST STREET, ROOM 4311
              LOS ANGELES, CALIFORNIA 90012
25                cmjui.csr@gmail.com

```
 1   APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFF:

 3         OFFICE OF THE UNITED STATES ATTORNEY
           BY: JUAN M. RODRIGUEZ
 4         BY: KYLE WALKER KAHAN
           BY: LAUREN RESTREPO
 5         ASSISTANT U.S. ATTORNEYS
           312 NORTH SPRING STREET
 6         13TH FLOOR
           LOS ANGELES, CALIFORNIA 90012
 7         (213) 894-2434

 8   FOR THE DEFENDANT:

 9         LAW OFFICE OF OLIVER P. CLEARY
           BY:  OLIVER P. CLEARY, ATTORNEY AT LAW
10         468 NORTH CAMDEN DRIVE
           SUITE 200
11         BEVERLY HILLS, CALIFORNIA 90210
           (424) 324-8874

12

13   ALSO PRESENT:

14         FBI SPECIAL AGENT UZONA ONWUMERE

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              LOS ANGELES, CALIFORNIA; TUESDAY, AUGUST 24, 2021

 2                            9:45 A.M.

 3                              - - -

 4              THE CLERK:  Calling CR 20-387, United States of

 5   America versus Steven Duarte.

 6              Counsel, please state your appearances.

 7              MR. RODRIGUEZ:  Good morning, Your Honor.

 8              Juan Rodriguez on behalf of the United States, and

 9   I am joined at counsel table by SAUSA Kyle Kahan and AUSA

10   Lauren Restrepo.

11              And we will be joined shortly by FBI

12   Special Agent Uzona Onwumere.

13              THE COURT:  Good morning to you all.

14              MR. CLEARY:  Good morning, Your Honor.

15              Oliver Cleary on behalf of Steven Duarte.  He is

16   present before the Court.  He is in custody seated to my

17   right.

18              THE COURT:  Good morning to you both.

19              Just bear with me for a moment.  I think we're all

20   in unfamiliar surroundings.  I am just trying to get my

21   bearings straight as far as getting my computer up and

22   running for our voir dire.

23              MR. CLEARY:  There were a couple of preliminary

24   matters, Your Honor, we wanted to raise.

25              THE COURT:  Just one moment, please.
```

```
 1            (Brief pause in the proceedings.)
 2            THE COURT:  All right.  I'm sorry.  Counsel, go
 3    ahead.  We're ready for trial, just going to bring up the
 4    jurors.
 5            But you said there were some preliminary matters,
 6    Mr. Cleary?
 7            MR. CLEARY:  Yes.  Thank you, Your Honor.
 8            I wanted to -- the prosecution and I were
 9    discussing the Indictment as it was cleansed to reflect the
10    Court's in limine motions.  There were -- the language was
11    altered in order to reflect the stipulation that we had
12    reached regarding the defendant, stipulating to the fact of
13    his prior conviction for a crime punishable by more than one
14    year.
15            THE COURT:  So he's now stipulated to that fact?
16            MR. CLEARY:  Correct.
17            THE COURT:  Okay.  All right.
18            MR. CLEARY:  We have signed a stipulation, and we
19    wanted the Indictment to reflect that.  The titled document
20    on the Indictment does say "Felon in possession."  It may be
21    a technical objection, but I don't think the statute says
22    actually "felon in possession."  It says "unlawful for a
23    person to -- who has been convicted of a crime punishable by
24    more than one year to possess" -- so injecting the word
25    "felon" into it may -- in our opinion is contrary to the in
```

1  limine ruling.  It should be redacted regarding that.

2          THE COURT:  What's the government's position?

3          MR. KAHAN:  Your Honor, the government would

4  request that the language of "felon in possession of a

5  firearm and ammunition" remain.

6          The stipulation, while it is for just being

7  convicted of a crime punishable by more than one year, that

8  is a felony.  And the Court's in limine ruling allowed the

9  government to use the language of felony.  The sanitation

10 came from the actual underlying offense, not necessarily

11 that the defendant is or isn't a felon.

12         THE COURT:  Say that last part again.  You lost me

13 there.

14         MR. KAHAN:  The sanitizing that this Court ordered

15 was for the actual offense.  So, for instance, we couldn't

16 say that the defendant was convicted of possession for

17 sale --

18         THE COURT:  I get that.  But doesn't -- it strikes

19 me it is a separate issue.  I get the sanitizing.

20         I guess they are now interposing an objection that

21 the caption reads "Felon in possession."  I guess they're

22 arguing that that is somewhat -- that that is prejudicial.

23         MR. KAHAN:  I am only bringing it up because

24 defense counsel mentioned that it would comport with

25 Your Honor's motion in limine rulings, which I don't believe

```
 1   is the case.

 2           THE COURT:  Fair point.

 3           But separate and apart from that, I think he is

 4   raising, at least, this objection that -- that

 5   referencing -- saying that he has been charged with being a

 6   felon in possession of a firearm is prejudicial.  Your

 7   response is that it's not.

 8           MR. KAHAN:  It is the name of the statute.

 9           THE COURT:  Is it the name of the statute?  I'm

10   sorry because I don't have my book.

11           MR. KAHAN:  I don't know it's the official name of

12   the statute, but it --

13           THE COURT:  I think you might have the cart behind

14   you.  Can someone just check.  I don't believe I have a Code

15   even.

16       (Brief pause in the proceedings.)

17           THE COURT:  What does the statute say?  Again, my

18   apologies.  I don't have my Code here.

19           MR. KAHAN:  It does not explicitly say the word

20   "felon" or "felony."  It simply says "Unlawful for any

21   person who has been convicted in any court of a crime

22   punishable by imprisonment for a term exceeding one year,"

23   among other prohibitions.

24           Stipulation itself that would be presented to the

25   jury which the government will be marking as Exhibit 43, the
```

```
 1    caption of it is "Trial stipulation Number 1 regarding felon

 2    status and knowledge of felon status."  The language

 3    comports with the statute, but the caption itself says

 4    "felon status."

 5              THE COURT:  Fair enough.  I hear what you are both

 6    saying.  The reason why I was, sort of, shuffling through my

 7    papers is because I was looking at -- I thought the

 8    proposed -- the joint proposed statement of the case --

 9    correct me if I am wrong on this.  Did you both submit a

10    statement of the case, or did the government just submit a

11    statement of the case?

12              MR. KAHAN:  It was a joint statement, Your Honor.

13              THE COURT:  The statement says, "The government

14    has charged Mr. Duarte with being a felon in possession of a

15    firearm and ammunition."  So that's what I was going to read

16    to the jury.  That's why I -- like I said, I was just

17    shuffling through everything.

18              All right.  Well, look.  Mr. Cleary, your

19    objection is noted but overruled.  Look, he is -- has been

20    convicted of a felony.

21              Again, I don't have my Webster's dictionary here,

22    but I think that describing somebody who has been convicted

23    of a felony as a felon is not prejudicial, but the objection

24    is noted nevertheless.

25              MR. CLEARY:  Thank you, Your Honor.
```

```
 1              And I did have one or two other matters to raise.
 2              THE COURT:  All right.
 3              MR. CLEARY:  The government and I have agreed
 4    that, for example, the defendant's nickname was removed from
 5    the Indictment so that it wasn't referenced, and I just
 6    wanted to bring up that I think the officers were on
 7    assigned gang supression duty.  They know him.  They know
 8    his moniker.  I just --
 9              THE COURT:  Let me just stop you.  I am sorry to
10    interrupt.
11              Is any of that going to come out during the course
12    of this trial?  And if so tell me what the relevance of that
13    is.
14              MR. KAHAN:  Government does not anticipate that
15    information coming up in trial.
16              THE COURT:  I appreciate that, and we're all
17    wordsmiths here.  You say "does not anticipate."  Should I
18    assume that you have maybe talked with some of the officers
19    to ensure that that kind of information doesn't come out?
20              MR. KAHAN:  The government has spoken to the
21    officers and witnesses about ensuring that that information
22    does not come out and will remind them prior to testimony.
23              THE COURT:  Great.
24              Mr. Cleary, I think, with that reminder, we should
25    be okay.  But, obviously, we'll all keep our antennas up to
```

```
 1   make sure it doesn't become an issue.

 2              MR. CLEARY:  Thank you very much, Your Honor.

 3              THE COURT:  Anything else, Mr. Cleary?

 4              MR. CLEARY:  No.  Thank you very much, Your Honor.

 5              THE COURT:  Anything from the government?

 6              MR. RODRIGUEZ:  Yes, Your Honor, couple things.

 7              First, I wanted to clarify some of the Court's

 8   prior rulings.  With regards -- now that there is a

 9   stipulation, if my recollection is correct, Your Honor

10   somewhat reserved the ruling with regard to impeachment

11   evidence and if defendant testifies.

12              I wanted to clarify what that is and really, to

13   the extent defendant is going to take the stand, clarify

14   what questions I can ask on cross-examination because I know

15   Your Honor wanted us to sanitize --

16              THE COURT:  But now he's admitted to being

17   convicted of a felony.  Right?  What more do you want to

18   ask, I guess, is the question.

19              MR. RODRIGUEZ:  For impeachment purposes, getting

20   him to admit that he is a felon, and part of being a felon

21   is that he is on post-release -- PRC, post-release --

22              THE COURT:  I thought for purposes of

23   demonstrating his knowledge -- or I think for motive

24   purposes, I thought I said that that testimony could come

25   in.
```

1          MR. RODRIGUEZ:  Okay.  So to clarify, PRCF can be

2     elicited on direct examination and via cross-examination?

3          THE COURT:  Hold on one second.

4       (Brief pause in the proceedings.)

5          THE COURT:  We were talking about whether or not

6     the post-conviction release status was going to come in.

7          MR. RODRIGUEZ:  Yes, Your Honor.

8          THE COURT:  What was your question?  I thought we

9     had said at the pretrial conference that that would come in.

10         MR. RODRIGUEZ:  That's my understanding, in order

11    to confirm that it can come out on direct examination and it

12    can come out to the -- on cross-examination to the extent

13    the defendant testifies.

14         THE COURT:  Can come out on direct examination --

15    just one second.  I'm sorry.

16      (Brief pause in the proceedings.)

17         THE COURT:  While we're waiting for the IT folks

18    to come, the post-conviction -- status that comes in.  He's

19    now admitted to being convicted of a felony.  What else do

20    you want?

21         MR. RODRIGUEZ:  Wanted to confirm whether that can

22    be elicited on cross-examination, to the extent he

23    testifies.

24         THE COURT:  That he was convicted of a felony that

25    he's already admitted to?

1          MR. RODRIGUEZ:  That he knew he was on PRCS.

2          THE COURT:  If he testifies, yes.

3          MR. RODRIGUEZ:  Thank you.

4          And I know we agreed to sanitize the conviction --

5    putting the cart before the horse because we don't know the

6    defendant is going to testify yet.  But to the extent he

7    does and disclaims knowledge of firearms, would Your Honor

8    then let the government specifically reference the fact he's

9    previously been convicted of being a felon in possession?

10         THE COURT:  Let's see how the testimony evolves.

11         MR. RODRIGUEZ:  Very well.  Couple of other

12   housekeeping matters.  Because there are two experts in this

13   case, how would you like the government to tender the

14   experts?  Would you like the government specifically

15   reference what they're experts in or just ask Your Honor if

16   we may proceed with the substance of the testimony?

17         THE COURT:  You are going to call the expert, lay

18   the foundation they are expert and ask the Court can they be

19   designated as an expert.  That's what I am used to.  Is

20   there something else you were thinking of?

21         MR. RODRIGUEZ:  That's perfectly fine.  Did you

22   want us to be specific as to what they're expert in or just

23   designating --

24         THE COURT:  I am assuming, if you lay the

25   foundation, it will become apparent as to what they're an

1     expert in.

2               MR. RODRIGUEZ:  That's correct.

3               THE COURT:  I think that's fine.

4               MR. RODRIGUEZ:  Thank you, Your Honor.

5               And then does Your Honor pre-instruct prior to

6     closing or --

7               THE COURT:  Yes, before closing, yes.

8               MR. RODRIGUEZ:  Very well.  And I think just one

9     other housekeeping matter.

10              MR. KAHAN:  Your Honor, the defense and the

11    government have provided a stipulated exhibit list to the

12    Court.  We e-mailed it pursuant to Madam Clerk's

13    instructions yesterday.  Because there are no objections to

14    any of the exhibits that the government wishes to bring in

15    to this trial, the government wishes to pre-admit all of the

16    exhibits.

17              THE COURT:  Mr. Cleary, any objection?

18              MR. CLEARY:  No, Your Honor.

19              THE COURT:  So then the exhibits will be

20    admitted -- for your own protection, I am sure Ms. Restrepo

21    will confirm this -- make sure you lay the foundation for

22    the exhibits when necessary and work with them with now the

23    granting of the motions that all the exhibits -- well, is it

24    all the exhibits or all the exhibits -- I assume it's all

25    the exhibits that you intend to use.

1          Do you have a list of that that you might be able
2     to provide to either the Court or more specifically our
3     courtroom deputy so she can keep a tally and know that those
4     are admitted?
5          MR. KAHAN:  We can provide an additional exhibit.
6     The exhibit that we provided to the Court yesterday
7     differentiates exhibits that the government does not wish to
8     introduce as for identification only, and it specifically
9     lists that.
10         If there is no marking of identification only,
11    then they are actual exhibits that the government wishes to
12    introduce.
13         THE COURT:  So there are other exhibits you intend
14    to introduce only for identification purposes only.
15         MR. KAHAN:  Those are for like refreshing
16    recollection or anything like that.  We don't actually
17    intend on introducing them, but they are marked.
18         THE COURT:  At some point, can you give us a list
19    of the exhibits that the parties have stipulated will be
20    admitted into evidence.
21         MR. KAHAN:  Yes, Your Honor.  We will send an
22    itemized list.
23         THE COURT:  Great, thank you.
24         We're just waiting for IT to make sure this one
25    technical issue is resolved.

```
 1              MR. KAHAN:  Your Honor, did this Court decide on
 2    the schedule for --
 3              THE COURT:  We're going to go 9:00 to 12:00,
 4    1:00 to 4:30 every day.  So it's a one-hour break.
 5    4:30 ending.  It may go a little earlier, may a little
 6    later, just depending on how fast we're moving through this
 7    trial.
 8              One other thing.  All right.  I will, at the risk
 9    of regretting this question, the parties' position with
10    respect to voir dire.  Generally speaking, the Court does
11    the voir dire entirely.
12              In the past what I have done pre-COVID, at the end
13    of all the questions I bring the parties to sidebar to see
14    if there are any questions I may have missed, any areas they
15    wish to further inquire.  That creates a challenge when you
16    have got 40-some-odd people.
17              People experimented with different things.  One
18    experiment issue that I am cautious about is allowing the
19    attorneys to ask questions of each individual juror after
20    they're questioned.
21              Just so you understand, what I intend to do is
22    have Juror Number 1 go through the standard name, rank,
23    serial number and then ask them each of the questions I
24    would normally ask them, go through them one by one.
25              I will probably do that for the first five or six
```

```
 1    jurors.  Hopefully the other jurors are listening so that
 2    when I call Juror Number 6, say, have you listened to all
 3    the questions?  Do you have any yes answers to any of the
 4    questions?  And if they say yes, then we'll go through them.
 5    And they each -- all the jurors will have the same
 6    questionnaires that I believe the parties have.
 7             The issue is whether or not I allow the attorneys
 8    to do a limited, emphasis limited, voir dire based on
 9    responses of individual jurors.
10             Does either side have any positions with respect
11    to that?
12             MR. CLEARY:  From the defense, Your Honor, it
13    sounds like what the Court's inquiring is, if there is an
14    issue that we want to follow up on that -- to a specific
15    response that the Court would allow specific follow-up if we
16    felt so compelled.
17             THE COURT:  Right, in a limited fashion.
18             MR. CLEARY:  To an individual juror, not to the
19    panel.
20             THE COURT:  Correct.
21             MR. CLEARY:  Well, I think it may come up.  So
22    I -- and if the Court inquires and I don't have any
23    questions, I could just say no questions.
24             THE COURT:  Okay.
25             From the government.
```

```
 1            MR. RODRIGUEZ:  I think I concur with that answer,
 2   Your Honor.
 3            THE COURT:  I will allow limited voir dire as it
 4   relates to each juror if the attorneys have a question.
 5            I am going to be listening carefully because I
 6   don't want this to devolve into an argument in front of the
 7   jurors.  So that's what we will do.
 8            Just one moment, please.
 9            MR. CLEARY:  Will we get a copy of the list,
10   Your Honor, so we don't have to figure out how to spell the
11   jurors' names?
12            THE COURT:  Let me see if we can accommodate you.
13   Just hold on one second.
14        (Brief pause in the proceedings.)
15            THE COURT:  Counsel, for the lawyers, we have an
16   alphabetical list of the jurors.  It's not in the order
17   they're going to be called, though.  But at least you'll
18   have the names.  I guess that's better than nothing.  We'll
19   give you copies of that.
20            MR. CLEARY:  Thank you.
21            THE COURT:  Again, so the parties are clear, my
22   intention is to probably voir dire all -- I think we have
23   about 31 jurors here.  So my intention is to voir dire all
24   of them.  Then we'll go through the cause, challenges.
25   Depending what the number is we'll go right into
```

1   peremptories or -- actually go for cause, and then we'll

2   deal with peremptories.

3          We'll likely do all of that -- there is a room

4   behind us that is connected to our court reporter.  If it's

5   not, then we'll figure something out.  But there is a room,

6   at least my understanding, has a microphone that is

7   connected to our court reporter.

8          The lawyers will come back.  We'll discuss cause

9   and peremptories.  Once we've done that, if we got the 14

10  that we need, then I will come back and excuse the rest of

11  the jurors.

12         Yes, Counsel.

13         MR. RODRIGUEZ:  Your Honor, thank you.

14         You have previously said you consider having four

15  alternates instead of two.

16         THE COURT:  We're going to press our luck and just

17  go with the two.

18         MR. RODRIGUEZ:  Thank you.

19         THE COURT:  The jurors are going to be back in

20  about five minutes, if you need to take a brief recess.  I

21  am just going to wait here because I have everything working

22  and I don't want to jinx it.

23         But we'll take a brief recess, and then we'll have

24  the jurors come back.  Let me just confirm that, but at

25  least that is my understanding.  Hold on.

```
 1            (Brief pause in the proceedings.)

 2            THE COURT:  Take a few moments.  And then, like I

 3     said, I am going to stay here, and we'll bring the jurors

 4     up, and we'll start at 10:25.

 5            (Recess taken 10:18 to 10:44 a.m.)

 6            (The following was heard in open court in the presence

 7             of the prospective jurors.)

 8            THE COURT:  Good morning, everyone.  I want to

 9     welcome you again to the United States District Court here

10     in Los Angeles.

11            By way of information for those of you who don't

12     know, this district happens to have the largest population

13     in terms of -- largest population of any judicial district

14     in the country.  I want to thank you for your time and

15     attention to this matter.

16            You are all here today because we are here for

17     what's known as jury selection in the case of United States

18     versus Steven Duarte.

19            I will just ask just out of the gate just by the

20     name of the case alone has anyone know or heard anything

21     about the case, and if so please raise your hand?

22            I don't see any hands.

23            All right.  Secondly, I will ask -- I always ask

24     this question.  How many people in the audience, in the jury

25     box have a cell phone or personal digital assistant, some
```

```
 1    communication device?  Please raise your hand.
 2            Okay.  Good.  So that's almost everyone.  I ask
 3    that, A, to make sure you are paying attention; and, B, to
 4    make sure, if you wouldn't mind, if you please place them on
 5    silent or airplane mode just so it doesn't disrupt our
 6    proceedings here today.  This process is an important one,
 7    and your undivided attention will be greatly appreciated it.
 8            As I mentioned, this is what is known as
 9    voir dire.  The right to a jury trial goes back to the
10    Declaration of Independence back in 1776.  As you will see
11    in the screens, the history of the present king of
12    Great Britain is a history of repeated injuries and
13    usurpations for depriving us in many cases of the benefit of
14    a trial by jury.
15            The Declaration of Independence states explicitly
16    and our Constitution states explicitly that, under
17    Article III, crimes shall be tried by a jury and all
18    criminal prosecutions, the accused shall enjoy the right to
19    speedy and public trial by an impartial jury.
20            Thomas Jefferson said it, I think, best -- "I
21    consider a trial by jury as the only anchor yet imagined by
22    man by which a government can be held to the principles of
23    its Constitution."
24            Jury duty is indeed an obligation and a duty.
25    It's not something that we have as an option necessarily,
```

1    but it is one of the things that I do believe separates our

2    country and our justice system from the rest of the world.

3    My parents emigrated to the United States from an Island of

4    Haiti in the West Indies.  Some of you may have heard of

5    some the tragic news with respect to what's going on there

6    with respect to the earthquake, but I mention that for a

7    number of reasons.

8         The justice system there in Haiti has had its

9    trials and tribulations.  There was what was known as the

10   Tonton Macoute, sort of the secret police, and they would

11   literally scoop you up in the middle of the night, put you

12   in jail, and you may or may not see a judge.  You may or may

13   not have a trial, and it was street justice by and large.

14        We don't have that here.  We have good people like

15   you willing to come to court, listen to evidence and decide

16   these important cases.  So I can't tell you how much I

17   appreciate that and the importance of jury duty.

18        Now, this trial that we have here is scheduled to

19   last from today till, hopefully, we will close with evidence

20   by Thursday.  The schedule will generally be from 9:00 to

21   12:00 and then a break from 12:00 to 1:00, and we'll resume

22   from 1:00 to 4:30.

23        Generally speaking, we do not have trials on

24   Friday with one important caveat.  If we are concluded with

25   the evidence in the trial in this matter and you are

1   deliberating, you will be asked to come in on Friday so that

2   you can deliberate.

3          The reason why we generally don't have trials on

4   Friday in my courtroom is because I have other matters that

5   I deal with on Fridays.  But once you begin your

6   deliberations you can certainly continue into Friday.

7          Obviously, look.  Our world has been turned upside

8   down over the last year and a half.  I know you have heard

9   some information, but I just wanted to inform you and insure

10  you that we are doing everything that we can to make sure

11  that we are having these proceedings in as safe an

12  environment as possible.  We've established protocols here

13  in the courthouse.

14         Just so you know, what will happen in this court,

15  everyone is going to be required to wear a mask regardless

16  of your vaccination status.  During jury selection, you will

17  also be required to keep a mask on as well.

18         We have our voir dire here in this large courtroom

19  to try to keep you socially distanced.  Once we get a jury

20  of 12 -- once we have our jury, we will go into another

21  courtroom.  And in that courtroom.  You will be similarly

22  spaced or placed so that you can be socially distanced, but

23  the requirement will still remain the same.  You will wear a

24  mask.  The witnesses will wear a mask.  All the litigants

25  that you see here will all be wearing masks throughout the

```
 1    course of these proceedings.
 2              Do not make any negative inferences at all because
 3    someone is wearing a mask.  At the witness box they'll be
 4    behind the plexiglass and will either have a mask and/or
 5    face shield, and this is done to try to be as safe as
 6    possible.
 7              If for some reason you may be too distracted or
 8    worried about an issue with respect to COVID-19 and you are
 9    unable to listen carefully, let us know, and we'll do what
10    we can and have you come back at another time.
11              As I mentioned earlier, the witnesses will all be
12    wearing masks.  Mr. Duarte, who is on trial here, will be
13    wearing a mask.  In arriving at your verdict, you should not
14    draw any negative inferences at all by the fact that any
15    witness or any litigant here is wearing a mask.
16              As I mentioned, this is what's known as voir dire.
17    Voir dire, literally the French words are to see the words.
18    What we will do in a moment is we will ask you some
19    individual questions, then more, sort of, group questions.
20              Because of the circumstances that we're in now I
21    will ask each juror those group questions one by one at
22    least for the first five or six jurors.  And then after
23    that, I will ask the remaining jurors if they have any
24    affirmative answers, any yes answers to the questions that
25    have been answered by other jurors.
```

1          You should have a copy in your seats of a juror

2    questionnaire that will lay out what those questions are.  I

3    will have them up on the screen as well.

4          Obviously, honesty is most important.  We want to

5    have a fair and impartial juror.  Both sides want and need

6    that.  So your honesty and candor is important.

7          These questions are not designed to embarrass you

8    in any way, shape, or form.  If for some reason there is an

9    area that we talk about or question that's raised that you

10   don't feel comfortable in a -- open session answer, we have

11   an arrangement so that you can go to the side, and we can

12   have a semiprivate conversation.

13         It will be with the lawyers because, obviously,

14   the lawyers need to be present but outside the presence of

15   the rest of the jury panel.

16         Again, we're not trying to pry or unnecessarily

17   invading your privacy.  It's simply because we want to make

18   sure that all sides have a fair and impartial jury.

19         I suspect, when you first got your jury summonses

20   after jumping up and down with elation, you then went on the

21   Internet and tried to look up different places to go, to

22   park, and restaurants that you may want to visit and

23   perhaps, perhaps you may have come across Websites like

24   these.

25         Now, look, I get it.  Jury duty can be

 1   time-consuming, it's taking you out of your lives.  I

 2   understand that.

 3          But it's important.  We need good people like you

 4   to serve on important matters like this.  I recognize it's a

 5   sacrifice.  I have served on a jury.  I've been called to

 6   jury duty even as a federal judge, and I go because I think

 7   it is important.

 8          And just think, to the extent that you are served,

 9   you can join this illustrious group of other individuals who

10   have also come in for jury duty during the course of their

11   respective lives.

12          So at this point what I would like to do is to

13   introduce you to certain key personnel that you will be

14   seeing throughout the course of this trial.

15          I think you have already met our courtroom clerk

16   seated just beneath me.  She is the keeper of the house.

17   She keeps the minutes of the trial.  She will, sort of,

18   heard the cats, if you will, and get you all organized so

19   that we can begin testimony.  She places all the witnesses

20   under oath, and she will apologize for any unnecessary,

21   hopefully, unanticipated delays that we may have.

22          Perhaps the second, if not more important person

23   in this many courtroom, is our court reporter who is seated

24   to my right.  She has the unenviable task of recording

25   everything that is said during the course of these

proceedings.

She takes the transcript down in what we call real time, as you all are speaking.  So it is important when you are answering the questions to answer vocally.  She cannot take down any nods or "uh-huh" or "unh-unh."  So please do your best to give audible responses to the questions so that she can accurately take the information down.

To my right you have government counsel who is seated here closest to the jury box.  I will have them introduce themselves at this time.

Counsel.

MR. KAHAN:  Good morning, everyone.

My name is Kyle Kahan.  I am Special Assistant United States Attorney.

MR. RODRIGUEZ:  Good morning, everyone.

Juan Rodriguez, Assistant United States Attorney.

MS. RESTREPO:  Good morning, everyone.

Lauren Restrepo, Assistant United States Attorney.

SPECIAL AGENT ONWUMERE:  Good morning, everyone.

Uzona Onwumere, Special Agent with FBI.

THE COURT:  Thank you.

And then for defense to my left, if you could please introduce yourself and your client.

MR. CLEARY:  Good morning.

My name is Oliver Cleary, and this is Steven

```
 1   Duarte.

 2            THE DEFENDANT:  Good morning.

 3            THE COURT:  Thank you.

 4            Now that you have met them, just understand that,

 5   as we proceed through this jury selection and certainly

 6   during the trial if you are picked as a juror, the parties

 7   are under strict orders not to communicate with you at all

 8   during the course of this trial.

 9            So during the voir dire process, if we take a

10   break and you see them out in the hallway, they are going to

11   walk by you as if you do not exist.  And certainly during

12   the trial that will be the same as well.

13            And the reason we -- do this, they're not being

14   rude.  That's the Court's order.  And that's because the

15   purpose of you all as jurors is to listen to the evidence

16   and decide, based on what you hear, what you see and hear in

17   the courtroom, not in the hallways, not in the parking lot,

18   not on the street.  So they are under strict orders not to

19   speak to you or communicate with you in any way, shape, or

20   form.

21            All right.  So this is a criminal case.  And how a

22   criminal case begins is via a form of an Indictment.  And

23   the Indictment in this case has charged -- has leveled a

24   charge against Mr. Duarte.

25            He's denied the charge against him in the
```

1    Indictment.  Just so you all are clear, the Indictment is

2    not evidence, and you are not to make any presumptions

3    simply by the fact that Mr. Duarte has an Indictment that

4    has been filed against him.

5         I will give you a brief synopsis of the case just

6    to give you a sense of what we're dealing with here today.

7         The government has charged Mr. Duarte with being a

8    felon in possession of a firearm and ammunition.  The

9    government alleges that on or about March 20th of 2020 in

10   Inglewood, California, within the Central District of

11   California, Mr. Duarte knowingly possessed a Smith & Wesson

12   model Bodyguard 380, .380 caliber pistol, bearing

13   Serial Number EAT2760 and six rounds of Blazer .380

14   automatic caliber ammunition.

15        The government further alleges that, at the time

16   of the offense, Mr. Duarte had been convicted of at least

17   one crime punishable by imprisonment for a term exceeding

18   one year.

19        The government finally alleges that the firearm

20   and ammunition in Mr. Duarte's possession had been shipped

21   or transported from one state to another.

22        As I mentioned earlier, Mr. Duarte has denied the

23   charge and has pleaded not guilty.  He is presumed innocent

24   unless and until the government proves each and every

25   element of the offense and proves Mr. Duarte guilty beyond a

```
 1    reasonable doubt.
 2            Now, during the course of this trial, we
 3    anticipate there will be witnesses that will be called, and
 4    I am going to give you a list of potential witnesses.
 5    Please take a mental note because I am going to ask if any
 6    of you know or recognize any of the names of these
 7    witnesses.
 8            Inglewood Police Department Officer
 9    Tyler Villicana, Inglewood Police Department Officer
10    Troy Wunderlich, Inglewood Police Department Officer
11    Nicolas Bobbs, Inglewood Police Department Detective
12    Jose Barragan, Inglewood Police Department Senior Forensics
13    Specialist Celeste Hewson, FBI Special Agent Dan Lewis, and
14    Los Angeles County Sheriff's Department Laboratory Senior
15    Criminalist Luis Olmos.
16            Now, do any of you in the audience recognize any
17    of the names that I have just listed, or any of the parties
18    in this court, or myself, or the courtroom deputy, or
19    court reporter?  If so please raise your hand.
20            All right.  I see no hands.
21            So at this time what we're going to try to do --
22    and I am going to be up-front with you.  This is our first
23    time, sort of, in a post-COVID world conducting a jury
24    trial.  So there may be some kinks that we're going to try
25    to work out, but we're going to do our best.
```

```
 1            We are going to start with our questioning
 2   process, if you will.  And so I am going to ask
 3   Juror Number 1 -- is that Miss Wolf?
 4            I'm sorry.  Before we do that, we need to place
 5   everyone under oath.  So if you would all please stand and
 6   raise your right hand so we can place you under oath.
 7            THE CLERK:  Ladies and gentlemen, do you solemnly
 8   swear that you will make true answers to such questions as
 9   may be put to you touching upon your qualifications to serve
10   as jurors upon the trial of the cause now before this Court,
11   so help you God?
12            THE PROSPECTIVE JURORS:  I do.
13            THE CLERK:  Thank you.  Please be seated.
14            THE COURT:  Miss Wolf, if you would be so kind, if
15   you could step down to the nearest microphone that's closest
16   to you.  We are going to ask you some questions.
17            And I recognize this has a little bit of a hot
18   seat feel.  That's not intentional, but we're working with
19   the system that we are in right now.
20            If you could run through the answers to these
21   questions.  When we talk about area of residence, I don't
22   need your specific address.  Inglewood, Santa Monica,
23   Ventura, that will be more than sufficient.
24            So with that, Miss Wolf, why don't you get us
25   started here.  Good morning.
```

```
 1                    PROSPECTIVE JUROR:  Good morning.

 2               I live in Culver City.  I am a travel agent.

 3    Marital status is single.  My partner's occupation is

 4    personal trainer and voice actor.  No children and no prior

 5    jury of service.

 6                    THE COURT:  Okay.  So now I am going to ask you a

 7    series of questions.  Do you have the questionnaire in front

 8    of you?

 9               All right.  Why don't we go through those, if we

10    could.  The first question I ask -- and I think I asked this

11    of everyone earlier.  So forgive me.

12               Do you know or have any relationship with any of

13    the witnesses, parties to the case, the Court, court staff

14    at all?

15                    PROSPECTIVE JUROR:  No.

16                    THE COURT:  Okay.  Do you feel that because

17    Mr. Duarte has been charged with an offense that he must

18    have done something wrong?

19                    PROSPECTIVE JUROR:  No.

20                    THE COURT:  And is there anything about these

21    charges at all that make you unwilling or reluctant to serve

22    as a juror?

23                    PROSPECTIVE JUROR:  No.

24                    THE COURT:  And do you think that Mr. Duarte must

25    prove to you that he is innocent?
```

```
1              PROSPECTIVE JUROR:  No.

2              THE COURT:  And would you hold it against

3   Mr. Duarte if he didn't testify?

4              PROSPECTIVE JUROR:  No.

5              THE COURT:  And the reason why I ask these

6   questions, just for everyone's edification, because the

7   government has the burden of proof.

8              Under our Constitution an individual has the

9   absolute right not to testify in a criminal case, and that

10  should not be held against her or him in a criminal trial.

11             All right.  Now, some people believe that whether

12  it's for moral, religious, or ethical reasons it's not

13  proper, it would be difficult for them to be in judgment of

14  others.

15             Do you hold any such belief?

16             PROSPECTIVE JUROR:  No.

17             THE COURT:  Do you have any reservation about

18  sitting in judgment of an accused person and returning a

19  verdict of either guilty or not guilty?

20             PROSPECTIVE JUROR:  No.

21             THE COURT:  Do you have any problem judging the

22  credibility of all witnesses by the same standard regardless

23  of their occupation?

24             PROSPECTIVE JUROR:  No.

25             THE COURT:  Would you be more likely to accept the
```

1   testimony of the prosecution's witnesses just because there

2   are more of them or because they may be law enforcement?

3           PROSPECTIVE JUROR:  No.

4           THE COURT:  As I mentioned earlier, this case was

5   investigated by the Inglewood Police Department and the

6   Los Angeles County Sheriff's Department and the FBI.

7           To the best of your knowledge, have you, a

8   relative, or close friend have any particular positive or

9   particularly negative opinions about or experiences with any

10   of these agencies or entities?

11           PROSPECTIVE JUROR:  Yes.

12           THE COURT:  Okay.  If you wouldn't mind, is that

13   something that you can share with us right now?

14           PROSPECTIVE JUROR:  I had a negative experience as

15   a minor with the Sheriff's Department.

16           THE COURT:  Okay.  And again, I don't mean to pry.

17           Is there anything about that experience that would

18   make it difficult for you to be fair and impartial in a case

19   like this?

20           PROSPECTIVE JUROR:  Probably.

21           THE COURT:  And how long ago was that?

22           PROSPECTIVE JUROR:  Gosh, about 20 years.

23           THE COURT:  Twenty years ago.

24           And I believe -- would it matter whether or not

25   the witnesses, the majority of the witnesses were from the

1  Inglewood Police Department and not from the Sheriff's

2  Department?  Would that change your views at all?

3          PROSPECTIVE JUROR:  Not really, no.

4          THE COURT:  Okay.  Let's continue on.

5          Have you or anyone close to you -- well, I think

6  we covered this but just want to make sure it's a little

7  broader -- had a negative experience with state or federal

8  law enforcement, the government, or the Courts besides what

9  we just talked about?

10         PROSPECTIVE JUROR:  Yeah.

11         THE COURT:  Okay.  Anything that you can share

12  with us publicly, or do you want to go to the side?

13         PROSPECTIVE JUROR:  Just, you know, friends who

14  have had some -- some run-ins that were not great

15  experiences with law enforcement.

16         THE COURT:  Did they involve Inglewood Police

17  Department or Los Angeles County Sheriff's Department?

18         PROSPECTIVE JUROR:  No.

19         THE COURT:  Have you, relative, close friend had

20  military, law enforcement, or legal training or experience,

21  or had any involvement in law enforcement, worked with

22  lawyers or as a lawyer or worked with the court system in

23  any way?

24         PROSPECTIVE JUROR:  I have got a few friends who

25  were in the military, couple friends who are lawyers.  I

1   think that's probably it.

2         THE COURT:  Is there anything about your

3   relationship with those individuals that would make it

4   difficult for you to be fair and impartial in a case like

5   this?

6         PROSPECTIVE JUROR:  No.

7         THE COURT:  Thank you.

8         Do you have any personal feelings or beliefs about

9   the police or law enforcement that will prevent you from

10  making a fair assessment about the testimony of law

11  enforcement officers that will testify in this case?  I

12  think you talked about that briefly, but I want to give you

13  a chance to be heard if there is anything further.

14        PROSPECTIVE JUROR:  I generally distrust law

15  enforcement.

16        THE COURT:  Okay.  Have you, a relative, or close

17  friend ever had or do you or they expect to have filed a

18  claim, Complaint, lawsuit against the Inglewood Police

19  Department or any other law enforcement agency or

20  department?

21        PROSPECTIVE JUROR:  No.

22        THE COURT:  Have you or relative or close friend

23  ever had or do you or they expect to have a claim or case

24  against the United States government?

25        PROSPECTIVE JUROR:  No.

```
 1              THE COURT:  Would you have any difficulty
 2   measuring the testimony of a law enforcement officer or
 3   government agent by the same standards that you would judge
 4   the credibility of any other witness?
 5              PROSPECTIVE JUROR:  Probably yes.
 6              THE COURT:  Have you or relative or close friend
 7   ever been accused of or charged with or convicted of a
 8   crime, ever been a victim of a crime, or ever testified in a
 9   civil or criminal trial before a grand jury?
10              PROSPECTIVE JUROR:  Yes.
11              THE COURT:  Can you tell me a little bit more
12   about that, ma'am.
13              PROSPECTIVE JUROR:  Sure.
14              I have had close friends who have been the victim
15   of crimes, theft, assaults, sexual assault.
16              THE COURT:  As a result they were called as
17   witnesses in trials, if you know?
18              PROSPECTIVE JUROR:  I'm not sure, to be honest.
19              THE COURT:  All right.  Thank you.
20              Would you have difficulty or inability to believe
21   the testimony of a law enforcement officer if you did not
22   have audio or video evidence of the incident?
23              PROSPECTIVE JUROR:  Perhaps.
24              THE COURT:  And do you have any training or
25   experience or other specialized knowledge in forensic
```

```
 1   evidence collection, testing, and/or identification in

 2   subject matters including but not limited to fingerprint or

 3   DNA evidence?

 4            PROSPECTIVE JUROR:  No.

 5            THE COURT:  Have you or anyone close to you ever

 6   been accused of or charged with a firearm or ammunition

 7   offense?

 8            PROSPECTIVE JUROR:  No.

 9            THE COURT:  Do you or any member of your household

10   currently own or have access to a firearm?

11            PROSPECTIVE JUROR:  No.

12            THE COURT:  Do you have any personal feelings or

13   beliefs positive or negative about gun ownership?

14            PROSPECTIVE JUROR:  Generally negative.

15            THE COURT:  Is there anything about those feelings

16   that would make it difficult for you to be fair and

17   impartial and assess the testimony and evidence in a case

18   like this?

19            PROSPECTIVE JUROR:  Potentially.

20            THE COURT:  Do you have any personal feelings,

21   beliefs, positive or negative about federal or -- federal

22   laws or state laws governing firearms or ammunition?

23            PROSPECTIVE JUROR:  Yes.

24            THE COURT:  Okay.  Can you share with me those, if

25   you wouldn't mind.
```

```
 1            PROSPECTIVE JUROR:  I think they should be

 2    stricter laws.

 3            THE COURT:  Okay.  Is there anything that we

 4    haven't discussed that might affect your ability to be fair

 5    and impartial in a case like this?

 6            PROSPECTIVE JUROR:  No.

 7            THE COURT:  All right.

 8            For the government, do you have any questions you

 9    wish to inquire?

10            MR. RODRIGUEZ:  No, Your Honor.  Thank you.

11            THE COURT:  Mr. Cleary?

12            MR. CLEARY:  No, thank you, Your Honor.

13            THE COURT:  Thank you, Ms. Wolf.  I appreciate it.

14            PROSPECTIVE JUROR:  Okay.

15            THE COURT:  We'll go now to -- is it Mr. Payne?

16    If you wouldn't mind going to the microphone closest to you,

17    sir.

18            That's fine.  Perfect.

19            Let me go back to the questions.  All right.

20    Mr. Payne, good morning to you, sir, if you wouldn't mind

21    answering, sort of, the generic questions first.

22            PROSPECTIVE JUROR:  Certainly.

23            My name is Steve Payne.  I am retired.  I am

24    single, no girlfriends.  One adult son 36 years old.  I

25    served on a trial in Ventura last year on a domestic case.
```

```
 1    It was awful.  They put a stinky guy next to me.

 2              THE COURT:  Hopefully that's not the case today.

 3              PROSPECTIVE JUROR:  Sorry?

 4              THE COURT:  I said, hopefully that's not the case

 5    today.

 6              PROSPECTIVE JUROR:  Hopefully.

 7              THE COURT:  Go ahead.

 8              Anything -- well, let me ask you a couple of

 9    things.  You are retired.  Congratulations.

10              PROSPECTIVE JUROR:  Thank you.

11              THE COURT:  What did you do prior to retiring?

12              PROSPECTIVE JUROR:  Long-haul truck driver.

13              THE COURT:  And then you said you had an adult

14    son.  Is that adult son employed?

15              PROSPECTIVE JUROR:  Yes.  He has his own air

16    conditioning company.

17              THE COURT:  The trial you said was a domestic

18    case.  Was it domestic violence?

19              PROSPECTIVE JUROR:  Yes.

20              THE COURT:  And last year.  Was a verdict reached

21    in that trial?

22              PROSPECTIVE JUROR:  Yes.

23              THE COURT:  And that was -- I'm going to assume

24    that was in Ventura County Superior Court?

25              PROSPECTIVE JUROR:  Yes.
```

```
 1              THE COURT:  Great.  If you wouldn't mind, let's go

 2    through those questions.

 3              The first question talks about the witnesses.  And

 4    I believe, based on you not raising your hand, you don't

 5    have any relationship with any of the witnesses, you don't

 6    know any of these witnesses.

 7              PROSPECTIVE JUROR:  None of these officers, no.

 8              THE COURT:  All right.  And do you feel, sir, that

 9    because Mr. Duarte is charged with an offense that he must

10    have done something wrong?

11              PROSPECTIVE JUROR:  No.

12              THE COURT:  Is there anything about the charges in

13    this case that make you unwilling or reluctant to serve as a

14    juror?

15              PROSPECTIVE JUROR:  No.

16              THE COURT:  Do you think that Mr. Duarte must

17    prove to you that he is innocent?

18              PROSPECTIVE JUROR:  No.

19              THE COURT:  And would you hold it against

20    Mr. Duarte if he did not testify in this case?

21              PROSPECTIVE JUROR:  No.

22              THE COURT:  Now, there are some people, as I

23    mentioned earlier, that moral or religious or ethical

24    reasons, they don't believe it's proper for them to serve in

25    judgment of another.  Do you hold any such beliefs?
```

```
 1                 PROSPECTIVE JUROR:  No.

 2                 THE COURT:  Do you have any reservation about

 3     sitting in judgment of an accused person and returning a

 4     verdict of guilty or not guilty?

 5                 PROSPECTIVE JUROR:  No.

 6                 THE COURT:  Do you have any problem judging the

 7     credibility of witnesses by the same standard regardless of

 8     their occupation?

 9                 PROSPECTIVE JUROR:  No.

10                 THE COURT:  Would you be more or -- more likely to

11     accept the testimony of the prosecution's witnesses simply

12     because there are more of them or because they are law

13     enforcement?

14                 PROSPECTIVE JUROR:  No.

15                 THE COURT:  Now, this case was investigated by the

16     Inglewood Police Department, Los Angeles County Sheriff's

17     Department, and the FBI.

18                 To the best of your knowledge have you, a

19     relative, or close friend had any particularly positive or

20     particularly negative opinions or about -- or experiences

21     with these entities?

22                 PROSPECTIVE JUROR:  Well, I do.

23                 My father was a policeman, Beverly Hills

24     policeman, for 26 years.  I'm leaning towards the side of

25     police.  Compared to the last questions that were asked of
```

1    the last witness, I am totally opposite as far as feeling

2    credibility of police officers.

3              THE COURT:  To that end, though, would you be able

4    to listen to the testimony and assess the credibility one

5    way or the other regardless of what their status is?

6              PROSPECTIVE JUROR:  Yes.

7              THE COURT:  Thank you, sir.

8              I think you have covered it but, just in case, any

9    other relatives, close friends that have had military, law

10   enforcement, or legal training or experience in some way?

11             PROSPECTIVE JUROR:  No.

12             THE COURT:  Okay.

13             I think you also covered this about personal

14   feelings or beliefs about law enforcement officers.

15             If I understand correctly -- and I don't want to

16   put words in your mouth -- you say that your father was a

17   police officer, you have friends in law enforcement, you

18   believe in law enforcement; but are you suggesting that you

19   would give them more credibility than someone else

20   regardless of what the evidence is?

21             PROSPECTIVE JUROR:  Appearances are good.

22             THE COURT:  What's that?

23             PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Are you saying you would not be able

25   to listen to the evidence and judge it fairly and accurately

```
 1   just based on the testimony and evidence you receive versus,

 2   oh, they're law enforcement; so what they're saying must be

 3   true.

 4            PROSPECTIVE JUROR:  Well, with what's happened in

 5   the last couple of years and just the last two years, I am

 6   disgusted with the general attitude towards police.  So I

 7   would have a problem.

 8            THE COURT:  Okay.  All right.  Thank you.

 9            Any -- have you, close friend ever filed a

10   Complaint against Inglewood Police Department or any other

11   law enforcement agency?

12            PROSPECTIVE JUROR:  No.

13            THE COURT:  Have you, relative, close friend ever

14   filed a claim against the United States government?

15            PROSPECTIVE JUROR:  No, sir.

16            THE COURT:  I think we talked about this, but

17   would you have difficulty measuring the testimony of a law

18   enforcement officer or government agent by the same

19   standards that you use to judge the credibility of any other

20   witness?

21            PROSPECTIVE JUROR:  I am having issues with that,

22   Your Honor.  I would definitely be on the police side these

23   days.

24            THE COURT:  All right.

25            Have you, relative, close friend ever been accused
```

CHIA MEI JUI, CSR 3287, CCRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

```
 1   of, charged with or convicted of a crime or been the victim

 2   of a crime or testified in a criminal or civil trial?

 3              PROSPECTIVE JUROR:  No.

 4              THE COURT:  Would you have difficulty or inability

 5   to believe the testimony of a law enforcement officer if you

 6   didn't have audio or video evidence of the incident?

 7              PROSPECTIVE JUROR:  That would not make any

 8   difference, no.

 9              THE COURT:  Do you have any training or experience

10   or other specialized knowledge of forensic evidence

11   collection and identification including but not limited to

12   fingerprint or DNA?

13              PROSPECTIVE JUROR:  Only what I have seen on TV,

14   and that would be no.

15              THE COURT:  Good.  I am glad the answer is no if

16   the only thing you saw was on TV.

17              Have you or anyone close to you ever been accused

18   of or charged with a firearm or ammunition offense?

19              PROSPECTIVE JUROR:  No, sir.

20              THE COURT:  Do you or a member of your household

21   currently own or have access to a firearm?

22              PROSPECTIVE JUROR:  Several.

23              THE COURT:  Okay.  And if you don't mind sharing,

24   what kinds of firearms?

25              PROSPECTIVE JUROR:  Standard police issue.
```

```
 1                THE COURT:  Okay.  I think I know the answer, but
 2   I will ask.  Do you have any personal feelings or beliefs,
 3   positive or negative, about gun ownership?  I assume it's
 4   positive.
 5                PROSPECTIVE JUROR:  You bet, yes, sir.
 6                THE COURT:  Do you have any personal feelings or
 7   beliefs, positive or negative, about federal laws or state
 8   laws governing firearms and/or ammunition?
 9                PROSPECTIVE JUROR:  I have some issues, but there
10   is nothing I can do about it.
11                THE COURT:  Okay.  Is there anything else that
12   we've discussed -- I'm sorry.  Anything else we haven't
13   discussed, I should say, that might affect your ability to
14   be fair to both sides in this case?
15                PROSPECTIVE JUROR:  I don't think so.
16                THE COURT:  Thank you very much, sir.  Appreciate
17   it.
18                Okay.  Is it Mr. Brown?  Good morning, sir, if you
19   wouldn't mind stepping up to the microphone, please.
20                All right.  So if you can start off by answering
21   the preliminary questions, please.
22                PROSPECTIVE JUROR:  All right.  Good morning.
23                Area of residence, Los Angeles.  Occupation,
24   academic adviser.  Marital status, single.  So the answer is
25   no girlfriend or whatever.  Adult children, zero.  Prior
```

```
 1   jury service, none.

 2              THE COURT:  All right.  Thank you.

 3              Let's go through the questions.  You have them in

 4   front of you?  Okay.  Great.

 5              First off, do you know or have any relationship

 6   with any of the witnesses that I mentioned earlier?

 7              PROSPECTIVE JUROR:  None.

 8              THE COURT:  And do you feel that because

 9   Mr. Duarte has been charged with an offense that he must

10   have done something wrong?

11              PROSPECTIVE JUROR:  No.

12              THE COURT:  Is there anything about the charges in

13   this case that would make you unwilling or reluctant to

14   serve as a juror?

15              PROSPECTIVE JUROR:  No.

16              THE COURT:  Do you think that Mr. Duarte must

17   prove to you that he is innocent?

18              PROSPECTIVE JUROR:  No.

19              THE COURT:  Would you hold it against Mr. Duarte

20   if he did not testify in this case?

21              PROSPECTIVE JUROR:  No, I wouldn't.

22              THE COURT:  Now, with respect to any moral,

23   ethical, or religious reasons about passing judgment, do you

24   hold any such beliefs?

25              PROSPECTIVE JUROR:  No.
```

1          THE COURT:  Do you have any reservation about

2     sitting in judgment of an accused person and returning a

3     verdict of either guilty or not guilty?

4          PROSPECTIVE JUROR:  I don't.

5          THE COURT:  Do you have any problem judging the

6     credibility of all witnesses by the same standard regardless

7     of their occupation?

8          PROSPECTIVE JUROR:  No.

9          THE COURT:  Would you be more likely to accept the

10    testimony of the prosecution's witnesses just because they

11    either had more of them or because they were law

12    enforcement?

13         PROSPECTIVE JUROR:  No.

14         THE COURT:  This case was investigated by

15    Inglewood Police Department, Los Angeles County Sheriff's

16    Department, and the FBI.

17         To the best of your knowledge, have you, relative,

18    or close friend had any particularly positive or negative

19    experiences or opinions about any of those entities?

20         PROSPECTIVE JUROR:  Negative opinions.

21         THE COURT:  Okay.  And is this based on personal

22    experience or just things that you have heard from friends

23    or both?

24         PROSPECTIVE JUROR:  Well, it's friends' opinions,

25    and it's particularly negative based upon what's been going

```
 1    on in the world, you know, the past year and a half.  I
 2    don't have to explain what but just cases with police and,
 3    you know.
 4              THE COURT:  Let me ask you, though.  Do you
 5    think -- we all know what's going on in the world.  Okay?
 6              The question I have for you is do you think that
 7    you would be able to listen to the testimony in this case on
 8    both sides, judge the credibility, meet with your fellow
 9    jurors, and decide a case based on the evidence that was
10    presented before you?
11              PROSPECTIVE JUROR:  Yes.
12              THE COURT:  All right.  Thank you.  And I
13    appreciate that.
14              Have you or anyone close to you had any negative
15    experiences with either the government or the courts, for
16    that matter.  We talked about law enforcement just now, but
17    what about the government or the courts more broadly?
18              PROSPECTIVE JUROR:  No.
19              THE COURT:  Have you, relative, or close friend,
20    family member or close friend, I should say, had any
21    military, law enforcement, legal training or involvement
22    with law enforcement or worked in the court system in any
23    way?
24              PROSPECTIVE JUROR:  No.
25              THE COURT:  Any personal feelings about police or
```

1   law enforcement that would prevent you from being fair and

2   impartial to both sides in this case?

3            PROSPECTIVE JUROR:  No.

4            THE COURT:  Have you, relative, close friend ever

5   filed a claim against Inglewood Police Department or any

6   other law enforcement agency or department?

7            PROSPECTIVE JUROR:  No.

8            THE COURT:  Have you, family member, or close

9   friend ever filed a case against the United States

10  government?

11           PROSPECTIVE JUROR:  No.

12           THE COURT:  Would you have any difficulty

13  measuring the testimony of law enforcement officer or

14  government agent by the same standards you would use to

15  judge the credibility of any other witness?

16           PROSPECTIVE JUROR:  No.

17           THE COURT:  Have you, a relative, close friend

18  ever been accused of or charged with or convicted of a crime

19  or ever testified in a criminal case or civil case or grand

20  jury?

21           PROSPECTIVE JUROR:  No.

22           THE COURT:  All right.  Would you have difficulty

23  or inability to believe the testimony of a law enforcement

24  officer if you didn't have audio or video evidence of the

25  incident?

```
 1                    PROSPECTIVE JUROR:  To a certain degree, yes.
 2                    THE COURT:  Let me ask.  You have been very
 3     specific about, sort of, your views.
 4                    My question is, if you were to listen to the
 5     evidence in this case and are you -- listening to the
 6     evidence -- and are you suggesting then that, if there was
 7     no audio or video, you would not believe the evidence in
 8     this case at all?
 9                    PROSPECTIVE JUROR:  I'm not saying that.  There
10     are certain cases where audio or video will be necessary.
11     But for this case I would just listen to the evidence.
12                    THE COURT:  Okay.  Great.  Thank you.
13                    Do you have any training or experience dealing
14     with fingerprint or DNA examination or analysis?
15                    PROSPECTIVE JUROR:  No.
16                    THE COURT:  Okay.  Have you or anyone close to you
17     ever been accused of or charged with a firearm or firearm
18     offense?
19                    PROSPECTIVE JUROR:  Yes.  Not me but yes.
20                    THE COURT:  Okay.  Is there anything about that
21     experience, and again I don't mean to pry.  Anything about
22     that experience that would make it difficult for you to be
23     fair or impartial to either side in this case?
24                    PROSPECTIVE JUROR:  No.
25                    THE COURT:  How long ago was that, if you don't
```

1    mind me asking.

2              PROSPECTIVE JUROR:  That was about a year ago.

3              THE COURT:  And do you remember whether or not

4    that was -- if you know, was it in state court or federal

5    court?

6              PROSPECTIVE JUROR:  This was in another state, but

7    I want to say in state.

8              THE COURT:  Do you know if that case has been

9    resolved?

10             PROSPECTIVE JUROR:  I believe not.

11             THE COURT:  Do you or any member of your household

12   currently own or have access to a firearm?

13             PROSPECTIVE JUROR:  No.

14             THE COURT:  Do you have any personal feelings or

15   belief, positive or negative, about gun ownership?

16             PROSPECTIVE JUROR:  I'm neutral on it.

17             THE COURT:  Do you have any personal feelings or

18   beliefs, positive or negative, about the federal or state

19   laws regarding firearms and/or ammunition?

20             PROSPECTIVE JUROR:  Negative.

21             THE COURT:  You have negative feelings about it?

22             PROSPECTIVE JUROR:  Yeah.

23             THE COURT:  The laws relative to ammunition and

24   firearms.

25             Is there anything about those feelings -- because

```
 1   this is not a trial about whether the law should exist.
 2   It's about whether the law was violated.
 3            Again, I go back to the fundamental question.  Do
 4   you think you will be able to listen to the evidence, listen
 5   to the law as I instruct you, and determine whether or not
 6   the government has met its burden of proof in this case?
 7            PROSPECTIVE JUROR:  Yes.
 8            THE COURT:  Okay.  Great.
 9            Is there anything that we haven't talked about
10   that might affect your ability to be fair to either side in
11   the case?
12            PROSPECTIVE JUROR:  No.
13            THE COURT:  Questions from the government?
14            MR. RODRIGUEZ:  Yes, Your Honor.
15            Given that you have some negative feelings towards
16   law enforcement, do you feel uncomfortable rendering a
17   guilty verdict if it's proven beyond a reasonable doubt if
18   the government's evidence heavily relies on officer
19   testimony?
20            PROSPECTIVE JUROR:  No.
21            MR. RODRIGUEZ:  Thank you.
22            THE COURT:  Mr. Cleary.
23            MR. CLEARY:  No, thank you, Your Honor.
24            THE COURT:  Let me make sure I got.
25            Thank you, sir.  I appreciate it.
```

```
 1              Mr. Cuevas.  Good morning, sir.

 2          PROSPECTIVE JUROR:  Good morning.

 3          THE COURT:  Why don't we get you started.  Let me

 4   just go back to my questions.

 5              All right.  Why don't you start off, please.

 6          PROSPECTIVE JUROR:  All right.  So I live in L.A.

 7   I am a department manager at a personal injury law firm.

 8   Single.  Girlfriend also works at that same company.  No

 9   children.  No prior jury service.

10          THE COURT:  Okay.  Let me get right to, sort of,

11   potential obvious question.  You are a department manager at

12   a personal injury law firm, you said?

13          PROSPECTIVE JUROR:  Correct.

14          THE COURT:  What does that entail exactly?

15          PROSPECTIVE JUROR:  90 percent car accidents, few

16   wrongful death cases, slip-and-falls, dog bites.

17          THE COURT:  What's your responsibility at the

18   firm?  Keep all the lawyers in check?  What is it?

19          PROSPECTIVE JUROR:  I wish.

20              Records manager.  So all the medical records,

21   bills that come in for each client's case.

22          THE COURT:  And you, sort of, alluded to the

23   challenges that -- well, I am going to assume with your

24   earlier comment alludes to the challenges, if you will, of

25   dealing with lawyers on a regular basis.
```

```
 1              PROSPECTIVE JUROR:  Correct.
 2              THE COURT:  So my question to you is that --
 3    obviously, this is a trial here.  These are lawyers here
 4    dealing with criminal law.
 5              Are you going to hold that against any of the
 6    lawyers here simply because this is your payback against all
 7    the knuckleheads that you have to deal with at the firm?
 8              PROSPECTIVE JUROR:  No.
 9              THE COURT:  Okay.  Great.  I appreciate that.
10              All right.  So let's go through the questions, if
11    you don't mind.  I asked do you know any of the witnesses or
12    any of court staff or anyone else?
13              PROSPECTIVE JUROR:  No.
14              THE COURT:  Okay.  Do you feel that because
15    Mr. Duarte is charged with an offense that he must have done
16    something wrong?
17              PROSPECTIVE JUROR:  No.
18              THE COURT:  Is there anything about the charges in
19    this case that make you unwilling or reluctant to serve as a
20    juror in this case?
21              PROSPECTIVE JUROR:  No.
22              THE COURT:  And do you think that Mr. Duarte must
23    prove to you that he is, in fact, innocent of the charges?
24              PROSPECTIVE JUROR:  No.
25              THE COURT:  Would you hold it against Mr. Duarte
```

```
 1   if he didn't testify in this case?

 2              PROSPECTIVE JUROR:  No.

 3              THE COURT:  Do you have any religious, moral, or

 4   ethical constraints or challenges that would make it

 5   difficult for you to pass judgment on someone else?

 6              PROSPECTIVE JUROR:  No.

 7              THE COURT:  Okay.  Do you have any reservation

 8   about sitting in judgment of an accused person or returning

 9   a verdict of guilty or not guilty?

10              PROSPECTIVE JUROR:  No.

11              THE COURT:  Do you have any problem judging the

12   credibility of all witnesses by the same standard regardless

13   of what their job is?

14              PROSPECTIVE JUROR:  No.

15              THE COURT:  Would you be more or less likely to

16   accept the testimony of a prosecution's witness simply

17   because there were more of them or because they were law

18   enforcement?

19              PROSPECTIVE JUROR:  Neither.

20              THE COURT:  This case dealing with Inglewood

21   Police Department, Sheriff's Department, and the FBI.

22              To the best of your knowledge, have you, relative,

23   close friend had any particularly positive or negative

24   experiences with these entities?

25              PROSPECTIVE JUROR:  No.
```

```
 1              THE COURT:  Have you or anyone else or anyone
 2    close to you had any positive or negative experiences with
 3    either state or federal law enforcement, the government, or
 4    the courts even?
 5              PROSPECTIVE JUROR:  Family, negative with the
 6    courts.
 7              THE COURT:  Again, I don't mean to pry, but how
 8    long ago was this?
 9              PROSPECTIVE JUROR:  I am going -- but it's with
10    immigration court.
11              THE COURT:  Is there anything about that
12    experience that would make it difficult -- obviously, this
13    is not an immigration case.  We're not in immigration Court.
14    Anything about those experiences that would make it
15    difficult for you to be fair and impartial to either side in
16    this case?
17              PROSPECTIVE JUROR:  No.
18              THE COURT:  Have you, relative, close friend,
19    family had any military, law enforcement, or legal training?
20              Obviously, you have legal training.  Or actually I
21    may have made an assumption.  Let me just ask the question.
22              With respect to legal training, friends, family,
23    or yourself, any legal training at all?
24              PROSPECTIVE JUROR:  No.
25              THE COURT:  Any friends, family that work in the
```

```
 1   court system?
 2              PROSPECTIVE JUROR:  No.
 3              THE COURT:  Do you have any personal feelings or
 4   belief about police or law enforcement officers that would
 5   prevent you from making a fair assessment about the
 6   testimony of law enforcement officers who will testify in
 7   the case?
 8              PROSPECTIVE JUROR:  Maybe.
 9              THE COURT:  And tell me -- if you wouldn't mind,
10   tell me why.  Go ahead.
11              PROSPECTIVE JUROR:  Honestly, I think everybody
12   has been touching on the same things, things that have been
13   happening.  I am trying to see if I could be like completely
14   impartial.
15              THE COURT:  I appreciate your honesty.
16              To the whole group, we all have -- we're all
17   shaped and informed by our experiences.  What's gone on the
18   last several years has been challenging on a whole host of
19   fronts.  But my hope is that good people like yourselves,
20   the entire jury pool will be able to listen to the evidence,
21   listen to the law, and make a determination on whether or
22   not the government has met its burden in this case.
23              So I come back to you.  Do you think you will be
24   able to do that in this case?
25              PROSPECTIVE JUROR:  Yes.
```

```
 1              THE COURT:  Have you, family members, friends,
 2    close relatives ever filed a lawsuit against the police
 3    department or any other law enforcement agency or the
 4    United States?
 5              PROSPECTIVE JUROR:  No.
 6              THE COURT:  Would you have difficulty measuring
 7    the testimony of law enforcement officers or government
 8    agents by the same standards you would use to judge any
 9    other witness that would testify?
10              PROSPECTIVE JUROR:  No.
11              THE COURT:  Have you, relative, close family
12    member ever been charged with or convicted of a crime or
13    been the victim of a crime or testified in a trial or grand
14    jury?
15              PROSPECTIVE JUROR:  Yes, charged and victim.
16              THE COURT:  Okay.  And is there anything about
17    those experiences that would make it difficult for you to
18    sit as a juror in this case?
19              PROSPECTIVE JUROR:  No.
20              THE COURT:  Would you have difficulty or inability
21    to believe the testimony of law enforcement officer if you
22    didn't have audio or video evidence of the incident?
23              PROSPECTIVE JUROR:  I want to say it depends
24    but --
25              THE COURT:  Look, that's a fair answer.  It
```

1  depends on what the testimony is.  Right?

2           PROSPECTIVE JUROR:  Yeah.

3           THE COURT:  And I don't think there is anything

4  necessarily wrong with that.  My question is more specific.

5           You know, in this day and age people watch

6  television shows -- we alluded to it earlier -- and some

7  people expect every case have this super scientific evidence

8  that's going to prove a civil or criminal case.

9           But I think your point is a valid one.  It would

10  depend on the facts and the evidence that you hear.  And so

11  my question to you is maybe a little more specific.

12           Would you be unable to decide a case simply

13  because, for example, there may not be audio or video of the

14  incident?

15           PROSPECTIVE JUROR:  No.

16           THE COURT:  Do you have any training or experience

17  in DNA or fingerprinting testing?

18           PROSPECTIVE JUROR:  No.

19           THE COURT:  Have you or anyone close to you ever

20  been accused or charged of a firearm or --

21           PROSPECTIVE JUROR:  No.

22           THE COURT:  Okay.  Do you or family member own a

23  firearm?

24           PROSPECTIVE JUROR:  Yes.

25           THE COURT:  Is it yourself, personal, or family

```
 1   members?

 2            PROSPECTIVE JUROR:  My own.

 3            THE COURT:  If you don't mind me asking, what

 4   kind?

 5            PROSPECTIVE JUROR:  Pistol and a rifle.

 6            THE COURT:  Is this protection, sport, both?

 7            PROSPECTIVE JUROR:  Both.

 8            THE COURT:  And do you have any personal feelings

 9   or beliefs, positive or negative, about gun ownership?

10            PROSPECTIVE JUROR:  Neutral.

11            THE COURT:  Do you have any personal feelings,

12   positive or negative, about the laws relative to firearms

13   and ammunition?

14            PROSPECTIVE JUROR:  Negative in California.

15            THE COURT:  And now this is not a trial about the

16   laws of California.  Again, I come back to could you listen

17   to the evidence in this case, based on the law that you were

18   instructed on, and work with your jurors to determine if the

19   government has proved its case?

20            PROSPECTIVE JUROR:  No, I wouldn't have a problem.

21            THE COURT:  Is there anything else that we haven't

22   talked about that may go to your ability to be fair and

23   impartial in this case?

24            PROSPECTIVE JUROR:  No.

25            THE COURT:  For the government?
```

1          MR. RODRIGUEZ:  Very briefly, Your Honor.

2          If you disagree with the law that is presented in

3     this case, are you -- and I prove the case yard beyond a

4     reasonable doubt, are you still able to convict?

5          PROSPECTIVE JUROR:  Yeah.

6          MR. RODRIGUEZ:  Thank you.

7          THE COURT:  Thank you, sir.

8          Mr. Cleary.

9          MR. CLEARY:  Yes.  Thank you.

10         Mr. Cuevas, just one follow-up question for you.

11         On Question Number 23 I think the question was

12    that you had discussed -- if you had any negative feelings

13    about federal or California law regarding firearms, and you

14    answered that you had a negative feeling.  What was that

15    regarding specifically?

16         PROSPECTIVE JUROR:  The new law that they imposed

17    on the purchase of ammunition.  Before you would be able to

18    just go in, get what you wanted.  Now you have to wait, I

19    think, a day if you don't have your DROS card, and it seems

20    like it's more registering and tracking of ammunition sales.

21         MR. CLEARY:  Your feeling is it's negative and

22    maybe a little overregulated at this point?

23         PROSPECTIVE JUROR:  Yes.

24         MR. CLEARY:  Thank you very much.

25         THE COURT:  Thank you, sir.  I appreciate it.

1          Is it Mr. Koomson?

2          PROSPECTIVE JUROR:  Yes.

3          THE COURT:  Thank you, sir.  If you wouldn't mind

4    stepping up to the microphone, please.

5          All right, go ahead, sir.

6          PROSPECTIVE JUROR:  I am from Los Angeles.  I am a

7    comedian.  I am single.  I am a Libra.  I got no kids, and I

8    never served jury duty before.

9          THE COURT:  So this has a potential to be

10   entertaining.

11         Okay.  All right.  Let's go through the questions.

12         Do you know or have any relationship with any of

13   the witnesses, anyone in the courtroom that we've discussed

14   this morning?

15         PROSPECTIVE JUROR:  No, unh-unh.

16         THE COURT:  Do you believe that Mr. Duarte,

17   because he is charged with an offense, he must have done

18   something wrong?

19         PROSPECTIVE JUROR:  No, unh-unh.

20         THE COURT:  Is there anything about the charges

21   that make you unwilling or reluctant to serve as a juror in

22   the case?

23         PROSPECTIVE JUROR:  No, unh-unh.

24         THE COURT:  Do you think that Mr. Duarte must

25   prove to you that he is innocent?

```
 1              PROSPECTIVE JUROR:  Low-key, I kind of feel like
 2    he is trying to, you know, saying prove himself innocent,
 3    but it's not his fault.
 4              THE COURT:  But you understand -- do me a favor.
 5    Just bring the mask just a little bit just for everyone's --
 6    protected -- you understand under our laws, under our system
 7    of justice Mr. Duarte is presumed innocent.  Right now we
 8    say presumed innocent, and it's up to the government to
 9    prove its case beyond a reasonable doubt.  He doesn't have
10    to do a thing.
11              Do you understand that?
12              PROSPECTIVE JUROR:  Okay.  Yeah.  I do, but I am
13    just trying to say it's my feelings, how I feel.
14              THE COURT:  So my question, though, to you is, if
15    you were picked as a juror on this case, would you listen to
16    the evidence and after hearing the evidence you would
17    determine whether or not the government's proved its case to
18    you beyond a reasonable doubt?
19              PROSPECTIVE JUROR:  Yeah, I will listen,
20    definitely.
21              THE COURT:  Okay.  Thank you.
22              Would you hold it against Mr. Duarte if he didn't
23    testify in this case?
24              PROSPECTIVE JUROR:  No.
25              THE COURT:  Do you have any moral, religious, or
```

1    ethical beliefs that would make it difficult for you to sit

2    in judgment of another person?

3             PROSPECTIVE JUROR:  No.

4             THE COURT:  Any reservations about sitting in

5    judgment and returning a verdict of guilty or not guilty?

6             PROSPECTIVE JUROR:  Nope.

7             THE COURT:  Do you have any problem judging the

8    credibility of all witnesses by the same standard regardless

9    of what their job is?

10            PROSPECTIVE JUROR:  Nope.

11            THE COURT:  Would you be more or likely -- I'm

12   sorry.  Would you be more likely to accept the testimony of

13   the prosecution's witnesses just because there were more of

14   them or because they were law enforcement?

15            PROSPECTIVE JUROR:  Doesn't make a difference, no.

16            THE COURT:  Does not make a difference.  Is that

17   what you said?

18            PROSPECTIVE JUROR:  That's what I said, yes.

19            THE COURT:  Okay.  Great.  Thank you.

20            Inglewood Police Department, Sheriff, FBI, to the

21   best of your knowledge, have you, relative, close friend had

22   any particularly positive or negative opinions or

23   experiences with any of those agencies?

24            PROSPECTIVE JUROR:  I have had a lot of negative

25   experiences, yes.

```
 1                    THE COURT:  Okay.  And again I don't mean to pry.
 2                    Let me just, kind of, get right to it.  Is there
 3       anything about those -- well, let me rewind for a second.
 4                    What agencies are we talking about?
 5                    PROSPECTIVE JUROR:  L.A., just L.A. perhaps.
 6                    THE COURT:  Inglewood Police Department?
 7                    PROSPECTIVE JUROR:  Yeah.  Before, yeah.
 8                    THE COURT:  L.A. Sheriff's Department?
 9                    PROSPECTIVE JUROR:  Yeah, like L.A. Sheriff, yeah,
10       Inglewood, uh-huh.
11                    THE COURT:  How long ago, approximately?
12                    PROSPECTIVE JUROR:  It's often.  It's just, like,
13       you know, just like harassment, being pulled over, whatever.
14                    THE COURT:  Is there anything about those
15       experiences that would make it difficult for you to be fair
16       and impartial in a case -- this is not a case involving
17       harassment.  This is a case involving the possession of a
18       firearm.
19                    Anything about your experiences -- could you put
20       those to the side and just listen to the evidence to see
21       whether or not the government has proved its case?
22                    PROSPECTIVE JUROR:  I mean I will try my best.
23                    THE COURT:  Okay.  That's all I can ask, and I
24       appreciate your candor.  Okay?
25                    All right.  Have you or anyone close to you ever
```

1    had any negative experiences with the government or the

2    court system at all?

3             PROSPECTIVE JUROR:  No.

4             THE COURT:  Do you, family, close friends that

5    have any law enforcement or legal training or been involved

6    with the court system at all?

7             PROSPECTIVE JUROR:  No.

8             THE COURT:  Okay.  Do you have any personal

9    feelings or beliefs about police or law enforcement that

10   would make it difficult for you to sit as a juror in this

11   case?

12            PROSPECTIVE JUROR:  I think that they target, you

13   know, like, blacks and Hispanics.  And I feel like they're,

14   like, the whole system is, like, just the tactics to

15   pinpoint us as the bad guys.

16            THE COURT:  Let me ask you specifically.

17            This case is not about larger challenges.  This is

18   a specific case charging someone with possession of a

19   firearm.

20            Do you think because of your experiences you could

21   not listen to the evidence, listen to the law as I give it

22   to you, and work with your jurors to decide whether or not

23   the government has proved its case?

24            PROSPECTIVE JUROR:  I mean, I try my best.  But,

25   like I said, he could simply be pulled over for even them to

```
 1    see that he has a pistol or whatever just because he's

 2    Hispanic.  So --

 3              THE COURT:  But would you listen to the evidence

 4    and determine whether or not --

 5              PROSPECTIVE JUROR:  Yeah, I am listening, yeah.  I

 6    will listen.

 7              THE COURT:  All right.  That's all I can ask you

 8    to do.  And I appreciate your candor.  Okay?

 9              Have you, family member, close friends ever filed

10    a lawsuit or claim against Inglewood Police Department, FBI,

11    Sheriff's, or the government?

12              PROSPECTIVE JUROR:  No, unh-unh.

13              THE COURT:  Would you have the -- would you have

14    any difficulty measuring the testimony of a law enforcement

15    officer or government agent by the same standard as any

16    other witness?

17              PROSPECTIVE JUROR:  It depends.  You have to -- it

18    just depends.

19              THE COURT:  Again, I appreciate your answer.  And

20    I am not trying to put words in your mouth.

21              When you say, "it depends," should I assume that

22    it's "I am going to listen to their testimony.  It doesn't

23    matter whether they're a cop or civilian.  I am going to

24    listen to the testimony, listen to the evidence.  If it

25    makes sense, it makes sense.  If it doesn't, it doesn't."
```

```
 1              Would that be fair to say?
 2              PROSPECTIVE JUROR:  I would hear him out, yeah.
 3              THE COURT:  Okay.  Great.  Thank you.
 4              Okay.  Have you, relative, friends, family ever
 5    been charged with or convicted of a crime or ever testified
 6    in a trial or been -- or ever testified in a trial?
 7              PROSPECTIVE JUROR:  No.
 8              THE COURT:  Would you have any difficulty or
 9    inability to believe the testimony of a law enforcement
10    officer if there was not audio or video evidence of the
11    incident?
12              PROSPECTIVE JUROR:  I definitely need to see some
13    audio or, like, you know, a body cam or something, you know,
14    just to verify.
15              THE COURT:  Okay.  Thank you.
16              Do you have any training or experience in DNA or
17    fingerprint evidence?
18              PROSPECTIVE JUROR:  I have seen all five seasons
19    of "Dexter."
20              THE COURT:  Are you going to watch the next
21    season?
22              PROSPECTIVE JUROR:  Yes, sir.
23              THE COURT:  I may beat you to it, but all right.
24              But other than that, no training?
25              PROSPECTIVE JUROR:  No.
```

```
 1              THE COURT:  Have you, any friends, family members
 2    ever been accused of or charged with a firearm or ammunition
 3    offense?
 4              PROSPECTIVE JUROR:  Not me, though.  Yeah, not me.
 5              THE COURT:  Any family members or --
 6              PROSPECTIVE JUROR:  Yes.
 7              THE COURT:  Okay.  Anything about that experience
 8    that would make it difficult for you to be fair and
 9    impartial in a case like this?
10              PROSPECTIVE JUROR:  No.
11              THE COURT:  Do you or any member of your household
12    currently own or have access to a firearm?
13              PROSPECTIVE JUROR:  No.
14              THE COURT:  Do you have any personal feelings or
15    beliefs, positive or negative, about gun ownership?
16              PROSPECTIVE JUROR:  I feel that when blacks own
17    guns they just use it like another tactic to lock us up and
18    put us in jail like it's targeting.
19              THE COURT:  Do you have any personal feelings,
20    positive or negative, about -- about the laws related to it?
21    And we just touched upon that.
22              PROSPECTIVE JUROR:  Uh-huh.
23              THE COURT:  Is there anything else that we haven't
24    talked about that might affect your ability to be fair to
25    both sides in this case?
```

```
 1              PROSPECTIVE JUROR:  Just that I am glad to see a

 2    black judge out here.  You know what I'm saying?  It was

 3    just you, Terry and Consuelo over here, and that's it.  And

 4    I am rooting for you, Brother.

 5              THE COURT:  I am glad to see I am here too.  I

 6    appreciate that.  Okay?

 7              From the government.

 8              MR. RODRIGUEZ:  No questions, Your Honor.  Thank

 9    you.

10              THE COURT:  Mr. Cleary.

11              MR. CLEARY:  No, thank you, Your Honor.

12              THE COURT:  Thank you, sir.

13              All right.  Let's -- we're going to jump, if we

14    could, to Juror Number 6.  And forgive me.  I am going to --

15    do you know what?  I am not even going to try to pronounce

16    the name.  I will just have you do it first.  So, hopefully,

17    I will get it right the next go round.

18              Mr. -- I will leave it to you.

19              PROSPECTIVE JUROR:  Mr. John Fjellberg.  The J is

20    silent.

21              THE COURT:  That makes it easy.

22              PROSPECTIVE JUROR:  My area of residence is

23    Lancaster in the Antelope Valley.  I am a defense contractor

24    working on a classified project up there.

25              I am married.  My spouse is an engineer.  I have
```

```
 1   no adult children, and I have never been on a jury before.
 2             THE COURT:  Okay.  A lot of big brains in the
 3   household.  Okay.
 4             All right.  So if you wouldn't mind, I am going to
 5   ask you -- were you listening to the colloquy that was going
 6   on with the other jurors?
 7             PROSPECTIVE JUROR:  Yes, sir.
 8             THE COURT:  Have you been following along with
 9   your questionnaire?
10             PROSPECTIVE JUROR:  Yes.
11             THE COURT:  Are there any questions that you would
12   answer in the affirmative to and, if so, which ones?
13             PROSPECTIVE JUROR:  Only one is I was in the
14   military for 24 years but had nothing to do with law
15   enforcement.  I was a flight engineer, which is the third
16   pilot on an old airplane.  And my sister got through about a
17   year of law school and quit.
18             THE COURT:  She was smart.  Okay.
19             Is your sister involved in doing anything legal at
20   all?
21             PROSPECTIVE JUROR:  No.  No.  She does something
22   totally different.
23             THE COURT:  Got it.
24             Anything else, sir?
25             PROSPECTIVE JUROR:  Only other thing is the
```

```
 1   firearms laws.  I think California gets a little too
 2   ridiculous, but, other than that, it wouldn't affect my
 3   judgment on any firearms case.
 4            THE COURT:  Do you think you could be fair and
 5   impartial in a case like this?
 6            PROSPECTIVE JUROR:  Yes.
 7            THE COURT:  Not going to place undue weight or
 8   testimony on a witness simply because of their occupation?
 9            PROSPECTIVE JUROR:  Not at all.
10            THE COURT:  Would you be expecting to have any
11   audio or video testimony like body cams, things of that
12   nature?  Would that be, for lack of a better term, a deal
13   breaker for you?
14            PROSPECTIVE JUROR:  No, not in this case.
15            THE COURT:  Okay.  Thank you.
16            From the government.
17            MR. RODRIGUEZ:  No questions, Your Honor.  Thank
18   you.
19            THE COURT:  Mr. Cleary.
20            MR. CLEARY:  No, thank you, Your Honor.
21            THE COURT:  All right.  Thank you, sir.
22            Let's see.  I think the next -- I should --
23   Mr. Bronner.
24            Good morning still, sir.  Let's have you go
25   through the information, please.
```

```
 1              PROSPECTIVE JUROR:  I am from Los Angeles.  I am a
 2   glass sculptor.  I am not married.  I have a girlfriend who
 3   is a hairstylist.  No children and never been on a jury or
 4   anything.
 5              THE COURT:  So another big brain, a creative brain
 6   here.  Glass sculptor.  How long have you been doing that,
 7   sir?
 8              PROSPECTIVE JUROR:  Since 2004.
 9              THE COURT:  All right.  Good for you.
10              Were you listening to the questions that were
11   asked of the other jurors here?
12              PROSPECTIVE JUROR:  Yes.
13              THE COURT:  Again, I am not trying to short
14   circuit.  I want to give everyone an opportunity to be
15   heard, but I want to try to get to what I think you might
16   ascertain as far as the heart of the matter.
17              Are there any questions that you would answer
18   affirmative to?
19              PROSPECTIVE JUROR:  Number 6.  I would have some
20   moral objections to judging someone.
21              THE COURT:  Okay.  Is it simply -- do you simply
22   believe you could not listen to the evidence, work with your
23   fellow jurors to make a determination of whether or not the
24   government has proved their case?
25              PROSPECTIVE JUROR:  I don't think I would like
```

```
 1    that on my conscience of sending somebody to jail or letting
 2    somebody go, you know.
 3              THE COURT:  To be fair -- look.  This -- penalty
 4    is not an issue here.  You are -- the challenge -- not the
 5    challenge.  The responsibility of a juror is simply to
 6    determine whether or not the evidence is proven, the
 7    facts -- there is a violation of the law.
 8              With that as a backdrop, do you still think it
 9    would be difficult for you to sit as a juror in this case?
10              PROSPECTIVE JUROR:  If I keep reading and go to
11    the audio or video evidence, yes.
12              THE COURT:  And tell me a little bit about that,
13    sir.
14              PROSPECTIVE JUROR:  I would need to see audio and
15    video evidence.
16              THE COURT:  And I am just curious.  Is this -- I
17    don't mean this -- don't take this wrong.  I don't mean
18    this -- is this sort of a product of the times we're in with
19    all of the television shows and things like that?  Or just
20    the expectation there is always going to be an audio or
21    video camera somewhere in the vicinity?
22              PROSPECTIVE JUROR:  Personal experience with --
23    negative experience with law enforcement.
24              THE COURT:  Okay.  Got it.
25              And do you believe, then, that you would not be
```

```
 1   able to listen to the testimony of law enforcement fairly

 2   and without any bias?

 3            PROSPECTIVE JUROR:  Yes, sir, not fairly.

 4            THE COURT:  Okay.  Great.  Thank you, sir, I

 5   appreciate your candor.

 6            All right.  Let's move on to Mr. Fishman.

 7            Good morning, sir.

 8            PROSPECTIVE JUROR:  Good morning.

 9            THE COURT:  If you wouldn't mind answering the

10   questions.

11            PROSPECTIVE JUROR:  I live in Sherman Oaks.  I am

12   married.  My wife is an esthetician.  I work in the TV

13   industry in postproduction.  I don't have adult children,

14   and I have never served on a jury.

15            THE COURT:  And did you also follow the questions

16   that were being asked of your fellow jurors?

17            PROSPECTIVE JUROR:  Yes, sir.

18            THE COURT:  And I'm more than happy to go through

19   them one by one.  Or, if you like, if there are any

20   affirmative answers to any of the questions, you could let

21   me know.

22            PROSPECTIVE JUROR:  I do have a couple of friends

23   that are in law enforcement.  One is a sheriff -- actually

24   both.  One is an actual sheriff, one is a volunteer sheriff.

25            THE COURT:  I think the volunteer might be upset
```

1    you called him volunteer because they are both sheriffs.

2                PROSPECTIVE JUROR:  Yes.

3                THE COURT:  Is that for Los Angeles County

4    Sheriff?

5                PROSPECTIVE JUROR:  Yes, sir.

6                THE COURT:  Do you know how long they have served

7    in those capacities?

8                PROSPECTIVE JUROR:  Minimum 15 years each.

9                THE COURT:  And what's the nature of the

10   relationship?  Is it a work relationship, social

11   relationship, or both?

12               PROSPECTIVE JUROR:  Social.

13               THE COURT:  And are you suggesting that you might

14   give greater credibility to someone who is a sheriff's

15   deputy simply because they are a sheriff's deputy?

16               PROSPECTIVE JUROR:  I want to say no.  I want to

17   be impartial, but I am --

18               THE COURT:  But it's a reality.

19               PROSPECTIVE JUROR:  I am human.

20               THE COURT:  I appreciate everyone's candor as it

21   relates to these issues because they're real issues.  We all

22   have friends.

23               As I said earlier, we are shaped and informed by

24   our experiences, and you have friends that are law

25   enforcement.  I have friends that are in law enforcement.  I

1    have friends that are defense lawyers.  I have friends that

2    are prosecutors.  But the question is, the challenge is, for

3    jurors, we ask jurors to listen to the evidence and judge

4    it.

5              PROSPECTIVE JUROR:  That's a challenge.

6              THE COURT:  And that I think exists for everyone.

7              And my question to you is do you think that this

8    is the kind of case that, because there may be a sheriff's

9    deputy, you couldn't be fair to both sides in this case?

10             PROSPECTIVE JUROR:  I would work on it.  It would

11   be something to make sure I am checking myself on for sure.

12             THE COURT:  Do you know what?  I think that's a

13   great answer, something that -- that's what -- I am of the

14   belief, sort of, we should always be striving to improve in

15   everything that we do.  And checking on yourself for those

16   issues, I think, is part of that.  So that's all I could

17   ask.  Okay.  Thank you.

18             Anything else?

19             PROSPECTIVE JUROR:  I do own firearm.

20             THE COURT:  Okay.  If you don't mind me asking,

21   what kind?

22             PROSPECTIVE JUROR:  Handgun.

23             THE COURT:  Personal protection, both?  I mean,

24   I'm sorry.  Protection, sport, or both?

25             PROSPECTIVE JUROR:  Protection.

```
 1              THE COURT:  Any other yes questions?

 2              PROSPECTIVE JUROR:  I am -- I feel like the gun

 3  laws both in California and federal are bananas, not strict

 4  enough.

 5              THE COURT:  Okay.  And I think you heard me

 6  mention earlier.  This is not a trial about the validity or

 7  the propriety of gun laws.  It's simply whether or not there

 8  has been a violation of federal law here.

 9              PROSPECTIVE JUROR:  Understood.

10              THE COURT:  Would your opinions on gun laws

11  unfairly impact the ability to make a decision in this case?

12              PROSPECTIVE JUROR:  They would color the opinion

13  for sure.  I don't see how they really couldn't if I feel

14  strongly about it one way or another.

15              THE COURT:  Anything else that we haven't talked

16  about?  And please take your time.

17              PROSPECTIVE JUROR:  No.  All good on everything

18  else even though --

19              THE COURT:  All right.

20              For the government.

21              MR. RODRIGUEZ:  Nothing from the government,

22  Your Honor.

23              THE COURT:  Mr. Cleary.

24              MR. CLEARY:  No, thank you.

25              THE COURT:  All right.
```

```
1              Miss Haw.  You will tell me if I got that right or
2    wrong.
3              PROSPECTIVE JUROR:  Yes, that's correct,
4    Your Honor.
5              THE COURT:  Miss Haw, if you would be so kind.
6              PROSPECTIVE JUROR:  I live in Los Angeles.  I am
7    an attorney.  My position is senior counsel at a law firm.
8    I am not married.  My partner is a physician.  No children
9    and no prior jury service.  I just had to do the call-in the
10   day before, but I was excused.
11             THE COURT:  My condolences on your occupation.  We
12   could talk about that for a moment.
13             PROSPECTIVE JUROR:  Sure.
14             THE COURT:  What's the nature of your practice?
15             PROSPECTIVE JUROR:  I represent consumers in
16   breach of warranty cases against auto manufacturers on the
17   civil side.
18             THE COURT:  How long have you been doing that,
19   ma'am?
20             PROSPECTIVE JUROR:  Since 2015.
21             THE COURT:  Any criminal experience at all?
22             PROSPECTIVE JUROR:  No.
23             THE COURT:  Have you tried any cases at all?
24             PROSPECTIVE JUROR:  I have, and that's part of my
25   job duties currently and in the past.
```

```
 1            THE COURT:  And are you a litigator in federal
 2   court, state court, or both?
 3            PROSPECTIVE JUROR:  Both.  I have actually done a
 4   trial in this courthouse, not this department.
 5            THE COURT:  Forgive me.  We've not -- you have not
 6   done a trial in our court -- in --
 7            PROSPECTIVE JUROR:  I don't believe so.
 8            THE COURT:  Obviously, as a civil litigator you
 9   are familiar with a different burden of proof, a
10   preponderance of the evidence generally or clear and
11   convincing evidence, depending on the case.
12            This case has a different burden of proof --
13   beyond a reasonable doubt.  If you were selected as a juror
14   in this case, would you be able to follow the law generally
15   but specifically as it relates to the different reasonable
16   doubt, which would be different than what you are used to
17   dealing with?
18            PROSPECTIVE JUROR:  Yes.
19            THE COURT:  Did you have an opportunity to go
20   through all the questions that we have been discussing this
21   morning?
22            PROSPECTIVE JUROR:  I have.
23            THE COURT:  We can go through them one by one if
24   you wish or you can tell me if you have any affirmative
25   answers to any of the questions.  The choice is yours.
```

```
 1              PROSPECTIVE JUROR:  I, obviously, have a lot of
 2   friends and colleagues who are attorneys in different areas
 3   of law.
 4              I have had my father and relatives, they were part
 5   of the military, just the mandatory conscription in Asia
 6   back in the day.
 7              And then I guess the only other thing is just,
 8   generally, about law enforcement and policemen just,
 9   basically, what the other prospective jurors have already
10   touched on regarding the climate in the past couple of
11   years.
12              THE COURT:  Based on the climate, is there
13   anything that that would make it difficult for you to be
14   fair and impartial as a juror in this case?
15              PROSPECTIVE JUROR:  I would try my best to block
16   that out.
17              THE COURT:  Anything else?  Anything else that you
18   think that -- look.  You are a litigator.  You are a trial
19   lawyer.  You have been in this seat, so to speak.
20              Anything that you think either side should know as
21   they are trying to assess whether you should be a juror or
22   not in this case?
23              PROSPECTIVE JUROR:  I think the only last thing
24   would be the regulations on laws on gun control.
25              THE COURT:  Okay.
```

```
 1              PROSPECTIVE JUROR:  I understand that the laws are
 2    what they are, but I am leaning more towards stricter
 3    regulations.
 4              THE COURT:  Is there anything about your personal
 5    beliefs about the law that would make it difficult for you
 6    to be fair and impartial in a case like this?
 7              Again, this is not a case about the propriety of
 8    the law.  It's a case of whether or not there has been a
 9    violation of it.
10              PROSPECTIVE JUROR:  No.
11              THE COURT:  Thank you very much.
12              Mr. Rodriguez.
13              MR. RODRIGUEZ:  No questions, Your Honor.  Thank
14    you.
15              THE COURT:  Mr. Cleary.
16              MR. CLEARY:  No, thank you, Your Honor.
17              THE COURT:  Thank you.
18              Let's see if we can get one more person in if we
19    can.
20              Is it Mr. Viramontes?
21              PROSPECTIVE JUROR:  That's correct, Your Honor.
22              THE COURT:  You may be the last person of the
23    morning.  Good morning, sir.
24              PROSPECTIVE JUROR:  Good morning.  Top of the
25    morning.
```

```
 1              THE COURT:  If you wouldn't mind filling out --
 2    I'm sorry, not filling out.  Stating some of the preliminary
 3    answers to the questions.
 4              PROSPECTIVE JUROR:  Sure, yes.
 5              I live in Los Angeles.  I'm a project manager,
 6    construction.  Single.  I have a girlfriend.  She's in the
 7    construction field as well.
 8              I have one daughter.  She's a psychotherapist.
 9    And I have done some jury duty.  I can't remember if it was
10    criminal or federal.  It was a double murder, wherever that
11    winds up, and there was a verdict.
12              THE COURT:  How long ago was that, sir?
13              PROSPECTIVE JUROR:  Oh, probably four years, five.
14    Five years ago or so.
15              THE COURT:  Okay.  And, sir, have you listened to
16    all the questions that we have been discussing this morning?
17              PROSPECTIVE JUROR:  Yes, I have.
18              THE COURT:  And, again, the choice is yours.  We
19    can go through the questions one by one or if you have any
20    affirmative responses that you wish to share, you can do
21    that.
22              PROSPECTIVE JUROR:  No.  Just really my niece is a
23    lawyer.
24              THE COURT:  If you don't mind me asking do you
25    know how long she's been a lawyer and what the nature of her
```

```
 1   practice is?
 2              THE WITNESS:  Five years.  And, no, I don't know
 3   exactly.  She moves around a lot.
 4              THE COURT:  Do you know if she does any criminal
 5   law or civil law?
 6              PROSPECTIVE JUROR:  No.  It's more family.
 7              THE COURT:  Anything about that relationship --
 8   has she told you about crazy lawyers or, God forbid, crazy
 9   judges that she's had to deal with?
10              PROSPECTIVE JUROR:  No.
11              THE COURT:  Go ahead.
12              PROSPECTIVE JUROR:  I have a cousin that's a
13   lawyer, and then there is a judge in the family.
14              THE COURT:  Okay.  If you don't -- I am just going
15   to walk through those.
16              The cousin who is a lawyer, same kind of
17   questions -- criminal, civil, if you know.
18              PROSPECTIVE JUROR:  It's -- he's in an
19   organization now, Southern California Edison.
20              THE COURT:  Got it.  Okay.  How long has he been a
21   lawyer, if you know?
22              PROSPECTIVE JUROR:  Probably 30 years.
23              THE COURT:  Has he shared any experiences with you
24   about his job that would make it difficult for you to be
25   fair and impartial in a case like this?
```

```
 1                    PROSPECTIVE JUROR:  No.

 2                    THE COURT:  You said you have a judge in the

 3   family?

 4                    PROSPECTIVE JUROR:  Yes.

 5                    THE COURT:  Do you know where the judge --

 6                    PROSPECTIVE JUROR:  She's not in this -- it's

 7   around here but not here.

 8                    THE COURT:  Okay.  Do you know how long she's been

 9   a judge?

10                    PROSPECTIVE JUROR:  Two, two years.

11                    THE COURT:  Has she shared with you the highs and

12   lows of being a judicial officer and her experiences with

13   litigants?

14                    PROSPECTIVE JUROR:  No, sir.

15                    THE COURT:  Is there anything about your

16   relationship with her that would make it difficult for you

17   to be fair and impartial to either side in this case?

18                    PROSPECTIVE JUROR:  No.

19                    THE COURT:  Any other questions that you wish to

20   discuss with the Court?

21                    PROSPECTIVE JUROR:  No.  That's about it.

22                    There are a few -- a couple of nephews in

23   San Bernardino, anger issues.  So they were, you know, they

24   went to court, they went through the process.

25                    THE COURT:  Is there anything about those
```

```
 1   experiences that would make it difficult for you to be fair

 2   and impartial to either side in this case?

 3              PROSPECTIVE JUROR:  No, sir.

 4              THE COURT:  All right.  Thank you, Mr. Viramontes.

 5              Mr. Rodriguez.

 6              MR. RODRIGUEZ:  No questions, Your Honor.  Thank

 7   you.

 8              THE COURT:  Mr. Cleary.

 9              MR. CLEARY:  No, thank you, Your Honor.

10              THE COURT:  It is now the noon hour.  And so what

11   I will ask you do is we take a one-hour recess, have

12   everyone come back here at 1:00 o'clock in the same chairs,

13   we'll continue the process.

14              Even though you haven't been sworn in as a juror

15   specifically on the case, you have still been sworn in.  So

16   please do not discuss this matter with anyone.  Don't form

17   any opinions about the case.  Don't allow anyone to talk to

18   you about the case.  Don't talk with anyone about the case,

19   and do not conduct any research of any kind on any subject

20   matter connected with this case.

21              We'll see you all back at 1:00 P.M.  Thank you.

22              THE CLERK:  All rise for the jury.

23      (The following was heard outside the presence of the

24       prospective jurors.)

25              THE CLERK:  Please be seated.
```

```
 1              THE COURT:  All right.  Counsel, is there anything
 2    further we need to discuss before we come back at
 3    1:00 o'clock?
 4              We're going at the pace we're going.  Look.  I,
 5    sort of, not -- I changed up the pattern just because I
 6    didn't want to be here until 6:00 P.M. this evening.  But if
 7    either side wishes me to do something different, think about
 8    it during the lunch hour and let me know.  But I am trying
 9    to give the jurors each an opportunity to go through 1
10    through 17 or 18 of the questions -- or I should say 25 or
11    just responding to what I trust and hope are the issues that
12    either side is concerned with.
13              Unless there is anything further, we'll see you
14    back here at 1:00 o'clock.
15              Mr. Rodriguez?
16              MR. RODRIGUEZ:  Nothing from the government,
17    Your Honor.  Thank you.
18              THE COURT:  Mr. Cleary?
19              MR. CLEARY:  No.
20              THE COURT:  See you at 1:00 o'clock.  Thank you.
21              THE CLERK:  All rise.  This Court is in recess.
22         (Lunch recess taken 12:03 p.m.)
23                           --oOo--
24
25
```

```
 1                        CERTIFICATE

 2

 3        I hereby certify that pursuant to Section 753,

 4   Title 28, United States Code, the foregoing is a true and

 5   correct transcript of the stenographically reported

 6   proceedings held in the above-entitled matter and that the

 7   transcript page format is in conformance with the

 8   regulations of the Judicial Conference of the United States.

 9

10   Date:  June 30, 2022.

11

12

13

14                     /S/ CHIA MEI JUI

15                Chia Mei Jui, CSR No. 3287

16

17

18

19

20

21

22

23

24

25
```