1          UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3      HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE

4

5   UNITED STATES OF AMERICA,        )
                                     )
6                   PLAINTIFF,       )
                                     )
7           vs.                      ) No. CR 20-0387-AB
                                     )
8   STEVEN DUARTE,                   )
                                     )
9                   DEFENDANT.       )
    _____)

10

11

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14             WEDNESDAY, FEBRUARY 23, 2022

15                    1:04 P.M.

16             LOS ANGELES, CALIFORNIA

17

18

19

20

21

22   _____

23          **CHIA MEI JUI, CSR 3287, CCRR, FCRR**
            FEDERAL OFFICIAL COURT REPORTER
24          350 WEST FIRST STREET, ROOM 4311
            LOS ANGELES, CALIFORNIA 90012
25              cmjui.csr@gmail.com

```
 1   APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFF:

 3           OFFICE OF THE UNITED STATES ATTORNEY
             BY: JUAN M. RODRIGUEZ
 4           BY: KYLE WALKER KAHAN
             ASSISTANT U.S. ATTORNEYS
 5           312 NORTH SPRING STREET
             13TH FLOOR
 6           LOS ANGELES, CALIFORNIA 90012
             (213) 894-2434
 7

 8   FOR THE DEFENDANT:

 9           LAW OFFICE OF OLIVER P. CLEARY
             BY:  OLIVER P. CLEARY, ATTORNEY AT LAW
10           468 NORTH CAMDEN DRIVE
             SUITE 200
11           BEVERLY HILLS, CALIFORNIA 90210
             (424) 324-8874
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1          LOS ANGELES, CALIFORNIA; WEDNESDAY, FEBRUARY 23, 2022

 2                              1:04 P.M.

 3                               -  -  -

 4          THE CLERK:  Calling CR 20-387, United States of

 5   America versus Steven Duarte.

 6          Counsel, please state your appearances.

 7          MR. KAHAN:  Good afternoon, Your Honor.

 8          Kyle Kahan for the United States.  I am also

 9   joined by Assistant United States Attorney Juan Rodriguez.

10          THE COURT:  Good afternoon.

11          MR. CLEARY:  Good afternoon, Your Honor.

12          Oliver Cleary appearing via video for my client

13   Steven Duarte who is also appearing on video, and he is

14   present on video.

15          THE COURT:  Good afternoon to you both.

16          And, Mr. Duarte, I just want to confirm with you

17   that you are okay with us proceeding via video today.

18          THE DEFENDANT:  Yes, I am okay, Mr. André Birotte.

19   If that is the only option, I am okay with it.

20          THE COURT:  Okay.  Great.

21          I understand, I think, Mr. Duarte, you have some

22   family members who are watching as well.  I don't know if

23   you know that, but I want to let you know that I believe you

24   have some family members watching as well.

25          We are here today for the sentencing of
```

1    Mr. Duarte.  We have had a trial in the matter.  So I am

2    familiar with the facts of the case.

3           I have had a chance to review the presentence

4    report in this case, the defendant's position, the

5    government's position, as well as -- I believe there were a

6    number of letters, some letters that were submitted in

7    support of Mr. Duarte.  I have had a chance to review all of

8    those letters as well.

9           And I believe also there were -- the family

10   members that were interviewed as well.  So I have had a

11   chance to review all of that.

12          Mr. Cleary, have you had enough time to go over

13   the presentence report and review it with Mr. Duarte?

14          MR. CLEARY:  Yes, Your Honor.

15          THE COURT:  And did you explain the contents of

16   the presentence report to him?

17          MR. CLEARY:  I did.

18          THE COURT:  Do you have any concerns about

19   Mr. Duarte's ability to understand the report?

20          MR. CLEARY:  No, Your Honor.

21          THE COURT:  Okay.  I am sorry.  To the extent I

22   didn't mention this before, if you see me looking over to my

23   left, that's only because I have a video screen that's

24   closer to me so I can see all your faces as opposed to

25   looking straight out to where the camera is.  I don't want

1    you to think that I am looking off to something else.

2           Mr. Duarte, let me ask you did you get the

3    presentence report and go over it with your lawyer?

4           THE DEFENDANT:  Yes, sir, Mr. André Birotte,

5    Your Honor, André Birotte.  I received it.  I went over it.

6    There were some things I wasn't okay with, but, yes, I read

7    over it, and I brought it to my lawyer, and we discussed a

8    couple things, and I believe we contested or opposed certain

9    things on it, but we went over it.

10          THE COURT:  And your lawyer did file some

11   objections to the report.

12          THE DEFENDANT:  All right.

13          THE COURT:  Do you think you understood the

14   report, sir?

15          THE DEFENDANT:  Yes, I understood it, yes.

16          THE COURT:  Okay.  Mr. Cleary, do you want to

17   contest or change anything in the presentence report other

18   than what has been submitted in writing?

19          MR. CLEARY:  No, Your Honor.

20          THE COURT:  The floor is yours, Mr. Cleary, if you

21   wish to be heard with respect to the sentencing.

22          You have some issues with the calculation.  The

23   two points for the stolen gun, overrepresentation of

24   criminal history.  I think that was it.  Is there anything

25   else?

1          MR. CLEARY:  Not as far as those objections,

2    Your Honor, no.

3          THE COURT:  All right.  But go ahead.  The floor

4    is yours as it relates to what you believe the appropriate

5    sentence should be in the case.

6          MR. CLEARY:  Thank you very much, Your Honor.

7          As the Court is well aware reading through the

8    letters and the presentence report, that Mr. Duarte had a

9    traumatic childhood.  And as a result this, his traumatic

10   childhood, I believe was a significant contributing factor

11   to his condition today that we had had him interviewed by a

12   trained professional who diagnosed Mr. Duarte with PTSD.

13         Still experiencing that, as is understandable,

14   from when he was a young child.  As the Court's aware, he

15   was present at the time his father was shot and killed, and

16   that is something that is not just traumatic to an adult,

17   but to a child it would be extra traumatic.  And it's

18   something he still lives with and breathes and experiences

19   on a daily basis.

20         That contributed to behaviors that I think we saw

21   present in this case.  We know that this case occurred right

22   in the middle of COVID shutdown.

23         This case involved Mr. Duarte being out late at

24   night in a friend's car, a firearm as the Court's aware was

25   found having been ejected from the vehicle.  The officers

1  indicated it was Mr. Duarte that threw the weapon out the

2  window.

3          This type of behavior, as many types of bad

4  behavior that occurred during this extraordinary time in our

5  history is not something that is consistent with who I think

6  Mr. Duarte has become.

7          He's a father of five.  He's the owner of a

8  tow truck business.  He was actively working, owning his own

9  business and raising his children.

10          He's a very involved father, as the Court is

11  aware, from the letters that were submitted.  He's a very

12  committed father.  He talks to his children on a daily

13  basis.

14          There is nothing that Mr. Duarte wants more than

15  to work hard and support his family and be there for his

16  children.  And it's especially important to him given his

17  circumstances and his background.

18          But his PTSD and as the psychologist noted is

19  something that brings to people behaviors that are

20  self-destructive, behaviors that are impulsive, and they

21  explain -- go a long way towards explaining how it is that a

22  person who is raising five children, a good father, owns his

23  own business, and is working can also be out at night up to

24  no good.

25          And I think that part of it can be explained, I

1    think, in the time and circumstances of the COVID epidemic.

2              When I talked to Mr. Duarte about it, he explained

3    that at the time you couldn't go down the street to the

4    local grocery store and get what he needed -- baby formula

5    or toilet paper, that in his neighborhood those things

6    weren't even available.  People were selling things like

7    that on the street.

8              We saw stories of hand sanitizers going for 15 and

9    $20 for a small bottle because during the time access to

10   those type of items were not equally dispensed.

11             He left his neighborhood to go out to find basic

12   necessities and then ended up hooking up with friend.  The

13   officer found beer, a six-pack of beer in the back seat.

14   Couple of them had empties in there.  That might go to

15   explain a little bit of what might not be helping Mr. Duarte

16   think clearly at this incident this time and in combination

17   with his background, you know, his reactions when confronted

18   by law enforcement.

19             And it was not the right thing to do, but I think

20   it can be seen through the lens of his experiences to at

21   least understand why it was that Mr. Duarte's actions maybe

22   were, from his perspective, not as unreasonable as it might

23   seem.

24             I think that the Court could, looking at the

25   divergent sentencing request -- we have a request from

1    probation and the U.S. government for 84 months.  The

2    defense request is for 38 months.

3         I think that our request is more reasonable.  I

4    think that it reflects that the Court could take into

5    consideration the mental and emotional conditions that

6    Mr. Duarte has present.

7         Not only in the opinion of the psychologist but in

8    case law, experiences of children that have experienced

9    traumatic events are one factor or one way in which a Court

10   can acknowledge a mental health issue is just childhood

11   trauma alone.

12        And in this case we have PTSD as well, and I think

13   that compounds or makes it more likely that it occurs and

14   that the Court can acknowledge it.

15        And then we have some delays in executive

16   functioning and attention and learning issues that the

17   psychologist attributed to some sleep deprivation, may be

18   caused by PTSD as well or a separate entity on to itself

19   that I think the Court could recognize in this matter and

20   find that there are grounds for departure based on his

21   conduct, based on his mental health.

22        In addition, I wanted to address one more argument

23   regarding the sentencing disparities.  I know that today

24   there is -- not in this case but oftentimes probation is

25   able to access sentencing data nationwide.

```
 1            There are tools on the Sentencing Commission's
 2   Website where we can also search through offense and
 3   defendant criminal history category, offense type, and do a
 4   nationwide search for this.
 5            I think I was sufficiently technologically savvy
 6   to operate the Sentencing Commission's Website.  And from my
 7   understanding of it, an individual, Hispanic male, 26 to 30
 8   years old, the same age as Mr. Duarte and the same criminal
 9   history category, not a career defender, like Mr. Duarte,
10   but that a 40-month sentence was the average prison sentence
11   for a firearm offense according to the United States
12   Sentencing Commission.
13            So I think that the aggravated sentence that the
14   probation and the government are asking for is not
15   consistent nationwide and is not consistent with the harm or
16   effect that Mr. Duarte caused in this case.
17            I understand that Mr. Duarte has criminal history
18   points that are multiple.  But at the same time, I believe
19   that his criminal history points are -- there aren't such to
20   a degree that his -- that he should be -- that he should
21   have the aggravated sentence that the government is calling
22   for.
23            I think the government is asking for a sentence
24   that is over what would be for somebody like Mr. Duarte.  I
25   understand he is in Criminal History Category VI, but many
```

```
 1    of the criminal history points -- it's 13 criminal history
 2    points.  He just passes the threshold to be in Criminal
 3    History Category of VI.  He's not a 20 or 30 criminal
 4    history points, he is a 13.
 5            And looking at them, for example, a criminal
 6    history point is attributed to a case in which he received
 7    the diversion.  He has six criminal history points from two
 8    felonies -- one was for a tagging offense, and one was for
 9    possession for less than a gram of cocaine.
10            And although the Court sees that he, obviously,
11    has a firearm possession case in the past which he was sent
12    to prison for, those same offenses in which he gets three
13    points for, he's also given an additional two points for
14    being on probation at the time of the instant offense even
15    though he was only ten days away from terminating probation
16    on that particular offense.
17            Most of his convictions are, you know, drug
18    related or -- I call them police avoidance behavior.
19    Although he does have two firearm offenses, there is no
20    serious or violence offenses in his record.
21            Criminal History Category VI is typically the
22    highest criminal history category.  It should reflect
23    individuals who are the worst of the worse.
24            But -- so that's why I think it would be more
25    reasonable for the Court to recognize that his criminal
```

```
 1   history is overstated and he would be more appropriately
 2   placed in Criminal History Category V with the recognition
 3   of the mental health conditions, with the recognition that
 4   his criminal history is overstated, with the recognition
 5   that the government's request, with all due respect, is
 6   highly aggravated and high and nationwide 40 months is the
 7   appropriate or the average sentence, that I think the
 8   defense request at 38 months reflects that he is an
 9   individual with goals and aspirations, five children, a
10   loving family, plenty of support, and the ability to return
11   to society and become a productive member of society.
12           And with that I would submit.
13           THE COURT:  Thank you, Mr. Cleary.  Appreciate the
14   comments.
15           Mr. Duarte, is there anything that you want to say
16   at this time before I sentence you?
17           THE DEFENDANT:  Yes.  I would like to,
18   Mr. André Birotte, just start -- I apologize if I haven't
19   taken -- I actually tried to take the time to write a letter
20   but I -- a little overwhelming, you know, just everything
21   going on right now.  And, you know, I wrote a little bit.
22   So I will just to address the courtroom, ask for, you know,
23   everybody's respect right now.
24           I come today to be sentenced as an adult.  I
25   understand that I -- I am responsible for all my actions,
```

```
 1   good and bad.  In this case, you know, I own an apology to
 2   my family overall.
 3          I know the ones that go through it the most -- but
 4   I understand that being a man is taking responsibility for
 5   your actions.  So I just ask the Court to just consider the
 6   fact that I know that I have been through some things but
 7   overall I'm pretty sure as human being we all go through
 8   some things.
 9          So what I would like to ask you if you would just
10   consider my stay here in the federal system, just being in
11   jail from juvenile hall to an adult is not somewhere I want
12   to be.  It's not something I want to show my family, not
13   something that brings me positivity.
14          It actually brings in some shame to my personal
15   self, you know.  It doesn't make me feel good.  I'm a person
16   that likes to get things done.  I believe in bettering
17   myself, helping people better themselves.
18          The only person I ever have is my mother.  I don't
19   have my father.  But I always wanted to give everything to
20   my mother.  She's a woman and deserves a lot.
21          And I feel like I haven't put my part to put out
22   what she deserves.  I would like to one day to be a son
23   that -- that every mother wants, you know, see their kids do
24   good.  I have been a good father.  I have been there for my
25   kids.  I don't have a problem working.
```

```
 1              I understand I need some help.  While on probation
 2    at times I took mental health substance abuse.  In this
 3    case, me personally, whether it's your decision or taking
 4    everything that Mr. Cleary just said but me personally one
 5    of my biggest things is the environment I grew up in it was
 6    a little challenging.
 7              But overall sometimes as a person you might use
 8    substances or alcohol to escape everything that we go
 9    through or things that we live.
10              But honestly the time I have been incarcerated, I
11    like living healthy life, like, being healthy.  I work out.
12    I take care of myself, and I don't have that problem.
13              We get tested, and I don't have that problem with
14    drugs.  I don't have to drive to drink alcohol or do any
15    drugs.  I'm okay sober.
16              I like being sober minded, and I like making sober
17    decisions.  And I understand this is something that happened
18    in the past, and today I am ready to move forward to
19    whatever is to come and accept whatever it is and just move
20    forward from this point on.
21              So that's it, Your Honor.  And I love my family,
22    and that's about it.
23              THE COURT:  Thank you, sir.
24              It's clear you have got a lot of support from your
25    family.  And I am hoping, regardless of what happens today,
```

1   you will remember the support of the family and move forward

2   and try to do something different.  Look.  You had a

3   tow truck business.  You could get back to it.  You have got

4   a way of supporting your family.

5          I don't think I need to say it, but I am just

6   going to say it just because.  You and guns shouldn't be in

7   the same sentence anymore.  Do you know what I mean?  It's

8   just not worth it.  You get caught again with a gun, the

9   sentence I give you will seem like nothing.  I am just being

10  straight with you.

11         So my hope is that you realize the seriousness of

12  this, is that you are going to get some time.  There is no

13  if's, and's, or but's about it.  But when you get back out,

14  you got to do something to change that lifestyle so you are

15  not in a position where you feel like you need to carry a

16  gun because, if you get caught again -- and look you got

17  caught on just a traffic stop.

18         You get caught again in Inglewood, the penalties

19  are really steep.  And, again, I am just being straight with

20  you.  I am talking to you man to man.  You don't think the

21  Inglewood PD knows about you?  You don't think they're going

22  to know when you get released?  They're going to be watching

23  you.

24         And the Vehicle Code is a thick document, a lot of

25  reasons to stop you.  Lot of reasons to search your car.

1  They find a gun or if they see something tossed out of a

2  car, it's not a good look.  That's all I am saying.

3          So thank you, though, for your comments.

4          Let's hear from the government.  Do you want to

5  contest or change anything in the presentence report other

6  than what's been submitted in writing?  And I don't think

7  the government had any objections to the calculations.

8          MR. KAHAN:  That is correct, Your Honor.  And no

9  further corrections are needed from the government's point.

10         THE COURT:  Let's hear what the government's

11 position is, and I may have some questions about that.

12         MR. KAHAN:  Yes, Your Honor.

13         So the government maintains its recommendation for

14 a low end guidelines sentence of 84 months.  It

15 appropriately reflects the defendant's conduct.  It

16 appropriately reflects the defendant's decade of deviance of

17 criminal conduct including being on active supervision at

18 the time of this incident.

19         His conduct, despite what defense counsel says, is

20 not as insignificant as it's being presented to be.  It's a

21 prior conviction for being a felon in possession of a

22 firearm.

23         It's two prior convictions for evasion of law

24 enforcement under Vehicle Code 2800.2.  That requires at

25 least some sort of reckless conduct on the road or at least

1    three violations of Vehicle Codes.  So it's not just evading

2    the police, it's evading the police recklessly.

3            And it goes on from there, what the defendant has

4    previously done, and it's led to this, and it's led to where

5    we are today.

6            The government is, of course, sympathetic to the

7    defendant and his background, his PTSD, the environment he

8    grew up in.  The government is more than understanding of

9    what he has gone through, but this case should not have been

10   the wake-up call for him.  Being in federal court should not

11   have been the wake-up call for him.

12           He had the opportunity to have this reflection, to

13   have the understanding that he is a father of five children,

14   that he is a provider, that he has his own business, that he

15   had the opportunity to be there for those who needs to be

16   there, for those who are on this call.  He ignored that.

17           This is not just PTSD guiding the defendant to

18   possessing the gun that he knew he should not have possessed

19   because he was previously convicted and told that he was not

20   allowed to possess this firearm.

21           This was him getting a firearm and then having the

22   wherewithal once he realized that the law enforcement were

23   about to pull him over and discover this gun because he was

24   on active post-release community supervision, that he had

25   the wherewithal to separate the gun to try his best to hide

1    it.  He failed.  The gun was discovered, his DNA was on the

2    gun, and here we are now.

3              This is not an aberration.  This is something that

4    the guidelines adequately accounts for.  And I just don't

5    think this Court has enough of a nexus between the PTSD that

6    has been diagnosed from the defendant and the current

7    conduct.

8              This is not an assault case where his trauma led

9    him to act rashly.  This was a deliberate decision to try

10   and hide evidence of contraband.

11             So it's for this reason that the government still

12   firmly believes that the low end is appropriate.

13             THE COURT:  Mr. Kahan, couple of follow-up

14   questions.  What's your response to the defense argument

15   specifically as it relates to -- I think it's a two point

16   increase for possession of a stolen firearm?

17             There was no evidence at the trial about the

18   firearm being stolen.  I don't have it handy with me.  The

19   PSR talks about the government provided the probation

20   officer with some documentation with respect to that issue.

21   I've not seen it.

22             Can we increase his sentence when it's, basically,

23   a paragraph that says government says it's stolen and no

24   sort of evidence submitted to the Court at least on that

25   regard, unless I missed something?

1            MR. KAHAN:  No.  My -- that was not brought out at

2    trial.  My understanding is that the government does not

3    have to prove the enhancements beyond a reasonable doubt,

4    just needs to provide the evidence in order to satisfy the

5    Court and pretrial that there is some sort of evidence

6    enough to impose the enhancement, and the government has

7    provided it.

8            THE COURT:  What evidence is it that was submitted

9    to probation, and do you have a copy of that?

10           MR. KAHAN:  From my understanding, it was not just

11   the reports from law enforcement outlining that the firearm

12   was stolen but also records checks into the serial number of

13   the firearm which indicated that it was stolen -- I forget

14   when, but I can look for it in the document right now,

15   Your Honor, if you wish.

16           THE COURT:  The question is is that enough?  Is

17   that something -- it makes a difference in the case.  We're

18   asking for two point increase, and it's basically based on

19   three sentences -- or really two sentences.

20           The firearm possessed by Duarte was reported

21   stolen to the Roseburg Police Department in December of

22   2018.  Accordingly, this increase apply.  There is no

23   report.

24           And you mentioned just now a records check.

25   That's not mentioned in the PSR, and none of which has even

```
 1   been looked at by defense counsel and/or the Court.

 2         MR. KAHAN:  Well, defense counsel has had access

 3   to the discovery in this case since the inception of the

 4   matter.  So he's had ample knowledge and opportunity to know

 5   that this firearm was, in fact, reported stolen.

 6         THE COURT:  So it was provided in discovery?  Even

 7   though the -- you were not -- it's not an element of the

 8   offense.  It's not anything you need to prove, but you are

 9   saying it was provided.

10         MR. KAHAN:  To my understanding, yes.

11         THE COURT:  When you say to your understanding

12   because you weren't the initial AUSA on the case?

13         MR. KAHAN:  That's correct.  I was assigned to the

14   case maybe a month and a half before the trial.

15         THE COURT:  Mr. Rodriguez, were you the AUSA

16   assigned on the case initially?

17         MR. RODRIGUEZ:  I was not, Your Honor.  I was

18   assigned shortly around the same time as AUSA Kahan was

19   assigned.

20         THE COURT:  Got it.  That's an issue that I see.

21         One other issue is criminal history category.

22   He's a VI, but it's basically by one number.  And look.  I'm

23   the old guy in the room.  So I have seen a lot of cases in

24   Criminal History Category VI.  I have seen a lot of Criminal

25   History Category VIs.  This seems sort of on the light side.
```

```
1            I am not condoning conduct.  It's more a function

2     of timing than anything.  I think it's the fact that he

3     committed a crime while on probation.

4            If it's a month or year later, he's not in

5     Criminal History Category VI, is there an argument that

6     could be made that a more accurate reflection of his

7     criminal history is a V as opposed to a VI?

8            MR. KAHAN:  No, Your Honor.  I believe Category VI

9     is still appropriate.  The simple fact is he was on active

10    post-release community supervision.

11           In fact, that's one of the reasons why we are even

12    here and what led to the eventual search of the car outside

13    of him tossing the firearm and law enforcement seeing him

14    toss the firearm out of the car.

15           THE COURT:  Hold on.  I'm sorry.  I can't

16    remember -- my memory is fuzzy.  He got pulled over on a

17    traffic stop.  Did they know he was in the car?  Or I

18    thought this was a traffic violation that caused the stop.

19           MR. KAHAN:  My recollection of the incident -- my

20    apologies for the noise in the background.  My recollection

21    of the incident is Inglewood officers were following the car

22    where defendant was in the back seat, the defendant's friend

23    was the driver, they followed it after seeing tinted

24    windows, then they saw it run a stop sign as it was turning.

25           THE COURT:  Right.  I'm sorry.  Let me stop you
```

1   there.  That's my point.  My point is it's not like they ran

2   the plates and it came back to Steven Duarte who they knew

3   was on supervision.  They just stopped the car, and it

4   happened that he -- that it was him.  I think there is a

5   difference.

6              MR. KAHAN:  That's correct.  Yes.  But it led to

7   the eventual search of the car that led to the discovery of

8   the magazine that then fit into the recovered firearm frame

9   that was found on the sidewalk.

10             THE COURT:  I'm not questioning that.  It's his

11  gun, no question.  The jury has spoken as it relates to

12  that.

13             My concern is more is Criminal History Category VI

14  an overrepresentation given, one, he crossed that line by

15  one point and the tipping point was the fact that he was on

16  supervision?  He has suffered a suspended license case,

17  possession of controlled substance of which he got

18  diversion.  One might say he is being penalized for -- he

19  did what he was supposed to do.  Diversion is supposed to,

20  sort of, have the case dismissed, but he is still getting

21  tagged for that.

22             He's got his possession for controlled substance

23  and vandalism and then suspended license and then another

24  possession case from the felon case.

25             So he's got, basically, a total of -- let's take

```
 1   out the traffic tickets for a moment.  One -- is four felony
 2   convictions, not minor, but Criminal History Category VI,
 3   you're starting to talk about people who are not career
 4   offenders but have a much more substantial criminal history,
 5   one might argue.
 6           And in particular I guess I am somewhat troubled,
 7   and maybe this is not an issue for calculations and maybe
 8   this is more in the variance realm, you know.  He gets a
 9   point for possession of a controlled substance where he got
10   diversion.
11           I used to work in that system.  Diversion, it's
12   supposed to -- all right.  You did what you were supposed to
13   do, case is done, and he's -- nevertheless it's coming back
14   to haunt him ten years later.
15           MR. KAHAN:  I understand, Your Honor.
16           Well, the simple fact is that the defendant's
17   criminal history, unlike maybe some of the offenders that
18   you have seen before your Court, is very compact in terms of
19   what he did and when he did it.
20           The defendant -- this isn't a person who, based
21   off of his age and everything, has had decades of criminal
22   experience.
23           He managed to get everything done in a short
24   period of time, and in between that period of time he was in
25   prison or on some sort of supervision.
```

```
 1              Everything that he has done is aggravating in some

 2   sort of way.  The fact that he was on supervision in this

 3   case, the fact that he was on supervision in other cases,

 4   the fact that he has a prior conviction for felon in

 5   possession of a firearm.  This is not just a repeat

 6   offender.  It is a repeat offense offender.

 7              THE COURT:  True.

 8              MR. KAHAN:  And this isn't just that.  It's also

 9   other things that have put the public at risk.  Like I said,

10   the Vehicle Code 2800, he has a misdemeanor hit-and-run

11   offense for his last one which was part of the package that

12   led to him being on current post-release community

13   supervision.

14              This is someone who has endangered the community

15   and from the government's perspective continues to endanger

16   the community when he tossed the gun frame out on to the

17   street and then also maintained possession of a loaded

18   firearm when he was not supposed to, something that he's

19   already been arrested, convicted, and incarcerated for.

20              One other thing I did want to note before the

21   Court in terms of one of defense's arguments, the 40-month

22   Ninth Circuit citation in terms of the average sentence and

23   the factors that were listed in the defendant's brief in

24   terms of how we calculate that.  I will note that there

25   appears to not be any factor or variable for acceptance of
```

 1  responsibility, be it minus two or minus three, or whether

 2  or not the firearm was stolen or not.

 3       When you add that plus two and you get rid of the

 4  minus two or minus three enhancements or variances, that

 5  significantly changes the potential sentence that someone

 6  like -- in the same category that the defendant would have.

 7       What we have here though is a defendant who simply

 8  was in possession of a stolen firearm, has suffered multiple

 9  convictions in a truncated period of time, was on active

10  supervision, and was convicted.

11       The only time that government has heard acceptance

12  of responsibility is after his conviction.

13            THE COURT:  Okay.

14            MR. KAHAN:  Which the government commends the

15  defendant for owning up at this stage.

16            THE COURT:  Any other insights from the

17  government?  I am concerned about the fact that -- look.

18  They're saying the gun has been stolen.  Nothing has been

19  submitted to the Court, like nothing.

20       And, you know, preponderance of the evidence, even

21  if we go to the preponderance of the evidence standard, I

22  don't have anything.  I just have a probation office that

23  says -- that makes the conclusory statement, "The firearm

24  possessed was reported stolen to the Roseburg

25  Police Department on December 18th, 2019."

1          And I'm not faulting either of you.  I am just --

2     I guess I'm just concerned, and I'm worried about, you know,

3     upon appellate review that I have given this two-point

4     enhancement when nothing in the trial talked about it, and

5     it shouldn't have because it's not an element of the

6     offense, but we're still applying a plus two to his

7     sentence.

8          MR. KAHAN:  If -- the government would not have

9     had the opportunity to present that at the trial, be it for

10    it not being an element of the offense or for any potential

11    motion in limine reason such as being too prejudicial to

12    introduce that the firearm was stolen, then it's hard to

13    imagine that this Court in other cases could accept

14    enhancements for things that weren't necessarily brought up

15    in court that weren't necessary for proving the elements or

16    that were excluded for one reason or another.

17         THE COURT:  But I would submit in other cases --

18    in fact, the other cases I have had, there is some

19    documentation either in the PSR or that the government

20    submits saying -- you know, like with fraud cases or felony

21    convictions where the government has to prove one felony

22    conviction but at the time of sentencing the government

23    submits documentation to show they've been convicted of

24    multiple felonies and there is actual documentation.  Here

25    we don't have that here.

```
1          Again, it's not a criticism other than I'm
2     concerned that I don't know if I can apply that enhancement
3     with literally nothing in the record other than the
4     statement.  I think that there might be an issue there.
5          MR. KAHAN:  I understand, Your Honor.
6          This Court does have a documentation for it
7     from -- the PSR is in there.  It is from documentation
8     provided by the government.
9          And from my recollection in terms of the
10    objection, I don't believe the defense objected to the fact
11    that the gun was stolen or not.  It just objected to the
12    enhancement being applied because it wasn't proven before
13    this Court in terms of the --
14         THE COURT:  But isn't that -- I don't think --
15    well, let's look at the defense objection.  Obviously,
16    Mr. Cleary can clarify for us.
17         He's making an argument -- he's couched it as
18    never addressed at trial nor found by the jury.  The
19    Indictment never mentions that it's stolen.  That's how he's
20    couched it.  But one might argue all of that is -- there is
21    no evidence to suggest that that's occurred.
22         And my worry is that a higher Court looking at
23    this will say he's objected to do this.  Well, let's look at
24    the record and see.  And the only thing we see in response
25    to that is that paragraph -- I think it's paragraph 16, and
```

```
 1    I worry that even under the preponderance of the evidence
 2    standard, is that enough?  The PSR doesn't attach any
 3    reports or anything in that regard.
 4          But look.  I have to make a final call, and I just
 5    wanted to give you a full and robust opportunity to be heard
 6    as it relates to that.
 7          The government's position is that there is
 8    adequate evidence in the record for purposes of sentencing
 9    to support the two-level enhancement.
10          MR. KAHAN:  Yes, Your Honor.  And if the defense
11    wishes to broaden its objection to not only include what it
12    has objected to regarding the stolen firearm enhancement but
13    also to object to the substance and make arguments that the
14    firearm is not stolen, the government believes that further
15    briefing is appropriate.
16          THE COURT:  Okay.  All right.
17          Anything further from the government as it relates
18    to its position?
19          MR. KAHAN:  No, Your Honor.  Submitted.
20          THE COURT:  Mr. Cleary, anything you wish to say
21    in response to the government's argument and more
22    specifically as it relates to the last point about the two
23    points.
24          MR. CLEARY:  I think I encapsulated my arguments
25    in my objection which put the government on notice and
```

1    probation on notice that, if they thought that there was

2    proof that they wanted the Court to consider, all they had

3    to do was put it in their revised addendum to the PSR or

4    submit it in their government's sentencing memorandum.

5         They chose not to.  I don't know why, but it seems

6    a little -- I had the same reaction as the Court.  It seems

7    a little thin to be imposing that enhancement for this

8    record.

9         And on that I would submit.

10        THE COURT:  All right.  Let me have just one

11   moment.  Let me look at something real quick.

12        All right.  Thank you both.  I appreciate the

13   arguments on both sides.

14        Here is where the Court stands.  All right.

15        As it relates to the calculation of the

16   guidelines, I have some questions or corrections to the

17   guidelines.  Forgive me.  I am just going to do this as

18   we're talking here.

19        Looking at the PSR, at least according to the

20   probation, they start at 20.  They do the specific offense

21   characteristic of two points for the firearm being stolen.

22        I have to tell you.  I am concerned about applying

23   that enhancement.  I don't think that there is a

24   preponderance of the evidence to demonstrate that because it

25   is just -- it is basically just statement upon statement

1    that it happened.

2            Other cases that I have had when it deals with

3    specific offense characteristics there is generally, not all

4    the time, generally more evidence, particularly when you

5    have the defense filing objection, I would have thought

6    probation or would have provided a police report, something

7    along that line to show that there is evidence that it was

8    stolen.  So I am not going to apply the two points for that.

9            So we're at offense Level 20, with a Criminal

10   History Category VI.  That would put his offense range at 70

11   to 87 months.

12           I also find that -- I think the criminal history

13   is overrepresented.  I recognize and acknowledge the fact

14   that he has committed a crime while on supervision, and

15   that's going to be a factor in the sentencing, but I don't

16   think he's a VI particularly when one of the points -- he

17   just reached the number amount to get to Criminal History

18   Category VI, one of which is a diversion case.  It is a

19   compact period of time, but I think he's more appropriately

20   Criminal History Category V.  That puts him at 63 to 78

21   months, at least by my calculation before any variances or

22   departures.

23           Defense has submitted documentation to suggest

24   that Mr. Duarte has gone through PTSD.  I don't think there

25   is any dispute as it relates to the facts underlying it.

1    There is a dispute as it relates to the effect of it, and

2    reasonable minds can differ, and I can respect that.  And so

3    I do believe a variance is appropriate in light of that.

4            Now, again -- well, I shouldn't say again.  I

5    say -- oftentimes I say both sides are not going to be happy

6    with my sentence, probably means I got it right.  Because I

7    do think on the one hand he has gone through a challenging

8    life circumstance.

9            But to the government's point, and, Mr. Duarte, I

10   am just speaking to you man to man, you knew.  You knew the

11   deal.  I mean there is no if's, and's, or but's about it.

12   You knew you weren't supposed to have a gun.  You had been

13   before a court having been convicted of that offense.

14           You made the choice for whatever reason you need

15   to, but when you make that choice, it comes with a risk.

16   And in your case it didn't work out for you.  So the

17   sentence has to take that into account.

18           And so I do intend to vary but not to the extent

19   that the government -- I'm sorry, the defense wishes the

20   Court to do so.

21           With that said, I will now state the sentence.  As

22   I mentioned earlier, I think we went through the guideline

23   range.  To be clear, the fine range in this case is -- I'm

24   sorry.  The supervised release range is one to three years.

25   The fine range is 15,000 to $150,000.

```
 1              Otherwise absent those notations that I mentioned
 2    earlier, I find the guideline calculation to be otherwise
 3    accurate.  I am considering the nature and circumstances of
 4    the offense -- it is a serious offense -- he was on
 5    supervision for this offense, the need for the sentence to
 6    reflect the seriousness of the offense, to protect the
 7    public from any further crimes of the defendant.
 8              Again, Mr. Duarte, I am going to say it again.
 9    You get caught with a gun again.  It's going to be very hard
10    for any judge to give you any sympathy even with your
11    background and circumstances because I have considered it.
12    You are on notice.  Again, you and guns can't be in the same
13    sentence, same room, same planet, quite frankly.  It just --
14    it can't.
15              And I am saying this not only for you but for your
16    family members.  If you want to spend more time away from
17    your kids, you keep walking around with a gun because that's
18    what's going to happen.  And I don't mean that
19    disrespectfully.
20              I am just telling you the real.  I'm just trying
21    to be straight with you.  You are a young man.  You got the
22    hustle and ingenuity to do something different.
23              In that sense, I am saying you got what it takes
24    to start a business and be productive and provide for your
25    family.
```

```
 1              But you got to make choices.  And when you make a

 2     choice like this to be strapped, this is what's going to

 3     happen.

 4              And like you said it yourself, the people that are

 5     hurt by this, it's not only you.  It's like when you throw a

 6     rock in the water.  It has that ripple effect.  And that

 7     ripple effect is including your five kids, the mother of

 8     those kids, your family members, that are all watching,

 9     trying to figure out when their loved one is going to come

10     home.  I have to hold you accountable for that particularly

11     because you knew you weren't supposed to do that --

12     considering the kinds of sentences that are available in

13     this case, the deterrent factor as well.

14              So I will now state the sentence, but I want to

15     give counsel a final chance to make any legal objections

16     before the sentence is now imposed.

17              Does either counsel know of any reason other than

18     what's been stated why the sentence should not now be

19     imposed?

20              Mr. Kahan?

21              MR. KAHAN:  No, Your Honor.

22              THE COURT:  Mr. Cleary?

23              MR. CLEARY:  No.  Thank you, Your Honor.

24              THE COURT:  I find the following sentence is

25     reasonable and is sufficient but no greater than necessary
```

1  to comply with the purposes stated in Title 18 United States

2  Code Section 3553(a).

3         It's ordered that Mr. Duarte shall pay to the

4  United States a special assessment of $100 that will be due

5  immediately.  Any unpaid balance that will be due payable

6  during the period of incarceration at a rate of not less

7  than $25 per quarter pursuant to the Bureau of Prisons

8  Inmate Financial Responsibility Program.

9         I am going to waive any further fines in the case.

10        Mr. Kahan, was there a preliminary order of

11  forfeiture in this case?  I don't believe so.

12        MR. KAHAN:  I don't believe so, Your Honor.

13        THE COURT:  So I am not going to mention that.

14        I am going to recommend that Mr. Duarte be

15  considered for the RDAP program, the Bureau of Prisons

16  Residential Drug Abuse Treatment Program.

17        Pursuant to the Sentencing Reform Act of 1984, it

18  is the judgment of this Court that Mr. Steven Duarte is

19  hereby committed on Count 1 of the single count Indictment

20  to the custody of the Bureau of Prisons for the term of 51

21  months.

22        Upon release from imprisonment, he will be placed

23  on supervised release for a term of three years under the

24  following terms and conditions.

25        He shall comply with the rules and regulations of

1    probation and Pretrial Services office and Second Amended

2    General Order 20-04.

3           He shall refrain from any unlawful use of a

4    controlled substance.

5           He shall submit to one drug test within 15 days of

6    his release from custody and at least two periodic drug

7    tests thereafter, not to exceed eight tests per month, as

8    directed by the probation officer.

9           He shall participate in an outpatient substance

10   abuse treatment and counseling program that will include

11   urinalysis, breath and/or sweat patch testing as directed by

12   the probation officer.

13          He shall abstain from using alcohol and illicit

14   drugs and from abusing prescription medications while on

15   supervision.

16          While on supervision, the probation officer with

17   the agreement of Mr. Duarte and his lawyer may place

18   Mr. Duarte in a residential drug treatment program approved

19   by the probation office for treatment of narcotics addiction

20   and/or drug dependency which may include counseling and/or

21   testing to determine if Mr. Duarte has reverted back to the

22   use of drugs.  And he shall reside in the treatment program

23   until discharged by the program director or probation

24   officer.

25          He shall pay for all or part of the cost of the

1    Court-ordered treatment and shall provide proof of payment

2    as directed by the probation officer.  If he has no ability

3    to pay, he is not required to pay.

4            While on supervision, he shall pay the special

5    assessment to the extent it has not been paid during his

6    incarceration.

7            While out on supervision, if he is not employed or

8    excused by his probation officer, you have to do 20 hours of

9    community service per week.

10           You shall not associate with anyone known to you,

11   sir, to be a member of the 18th Street Gang and others known

12   to you to be participants in the 18th Street Gang's criminal

13   activities with the exception of your family members.

14           You cannot wear, display, use, or possess any gang

15   insignia, emblems, badges, buttons, caps, hats, jackets,

16   shoes, or any other clothing that you know shows connection

17   or affiliation with the 18th Street Gang and may not display

18   any signs or gestures that you know evidence affiliation

19   with the 18 Street Gang.

20           You shall not be present in any area known to you

21   to be a location where members of the 18th Street Gang meet

22   or assemble.

23           You shall submit your person, property, house,

24   residence, vehicles, papers, or other areas under your

25   control to a search by your probation officer or law

1    enforcement officer.  Failure to submit to search may be

2    grounds for revocation.

3           You shall warn any other people that you live with

4    that the premises that you all live in together may be

5    subject to searches pursuant to this condition.

6           Now, any search pursuant to that condition has to

7    be conducted at a reasonable time and in a reasonable manner

8    based on reasonable suspicion that Mr. Duarte has violated a

9    condition of his supervision and that the area to be

10   searched contains evidence of that violation.

11          You shall cooperate in the collection of a DNA

12   sample as well.

13          I am going to authorize probation to disclose the

14   presentence report to any treatment providers.  Any further

15   redisclosure by the treatment provider is prohibited without

16   the consent of this Court.

17          Sir, you have the right to appeal your conviction

18   and sentence.  Generally speaking, you must file a Notice of

19   Appeal within 14 days of the judgment being entered.

20          If you can't afford a transcript of these

21   proceedings, one will be provided for you at government's

22   expense.

23          If you can't afford a lawyer to file your appeal,

24   you can make a request from the Court of Appeals to have a

25   lawyer appointed for you for purposes of filing that appeal.

```
 1              Like I said, generally speaking, that must be done
 2   within 14 days of the judgment being entered.
 3              Do you understand that, Mr. Duarte?
 4              THE DEFENDANT:  Yes, I do, Mr. André Birotte.
 5              THE COURT:  There are no remaining counts that
 6   need to be dismissed; correct, Mr. Kahan?
 7              MR. KAHAN:  Yes.
 8              THE COURT:  Anything further from the government?
 9              MR. KAHAN:  Nothing, Your Honor.
10              THE COURT:  Mr. Cleary, anything further?
11              MR. CLEARY:  No, Your Honor.
12              THE COURT:  All right.
13              Mr. Duarte, I am just going to say one more
14   time -- I keep a note -- a computer notebook of all my
15   cases.  And I am putting down here that I warned you about
16   you and gun activity.
17              You are a grown man.  You make decisions that you
18   need to make.  But if you come back, I am going to see here
19   that I warned you.  And, you know, you may not like the
20   sentence now, but you are looking at a much higher sentence
21   if I accepted the government's recommendation.
22              I am giving you a chance for you to prove to
23   yourself and your family members that you can do
24   differently.  If you come back, I am not going to be as
25   kind.  Okay, sir?
```

1            THE DEFENDANT:  No.  My mind is already made up

2    about what I want to do.  I am going to make it right for my

3    family, for myself, and just to live a right life.  That's

4    all I want, Mr. André Birotte, thank you.  Thank you for

5    just everything.

6            THE COURT:  Good luck to you, sir, thank you.

7            THE DEFENDANT:  Thank you.

8        (Proceedings concluded at 1:57 p.m.)

9                        --oOo--

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                            CERTIFICATE

2

3         I hereby certify that pursuant to Section 753,

4    Title 28, United States Code, the foregoing is a true and

5    correct transcript of the stenographically reported

6    proceedings held in the above-entitled matter and that the

7    transcript page format is in conformance with the

8    regulations of the Judicial Conference of the United States.

9

10   Date:  July 7, 2022.

11

12

13

14                    __/S/ CHIA MEI JUI_____

15                    Chia Mei Jui, CSR No. 3287

16

17

18

19

20

21

22

23

24

25
```

CHIA MEI JUI, CSR 3287, CRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA